CIVIL ACTION NO. 3:23-CV-00769-N

---

# In the United States District Court
# Northern District of Texas - Dallas Division

---

JEFFREY W. CARPENTER,

*Plaintiff*,

v.

TWIN CITY FIRE INSURANCE COMPANY,

*Defendant*.

---

## APPENDIX TO BRIEF IN SUPPORT OF MOTION FOR PROTECTION

---

Twin City Fire Insurance Company ("Twin City") files this appendix to its brief in support

of its motion for protection from Carpenter's second request for production.

| DOCUMENT DESCRIPTION | APPENDIX PAGE |
|---|---|
| Jeff Carpenter's Second Request for Production to Twin City Fire Insurance Company | App. 1-App. 18 |
| Declaration of Joseph Coppola | App. 19-App. 21 |

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, P.C.

By: _____/s/ Steven J. Knight_____
    CHRISTINE KIRCHNER
    State Bar No. 00784403
    c.kirchner@chamberlainlaw.com
    STEVEN J. KNIGHT
    State Bar No. 24012975
    steven.knight@chamberlainlaw.com
    CHRIS M. LEMONS
    State Bar No. 24094799
    chris.lemons@chamberlainlaw.com
    1200 Smith Street, Suite 1400
    Houston, Texas 77002
    (713) 658-1818

COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

    MICHAEL W. JOHNSTON
    State Bar No. 10840300
    johnston@johnstonlegalgroup.com
    JOHNSTON LEGAL GROUP P.C.
    1616 Wabash Avenue
    Fort Worth, Texas 76107-6598
    (817) 820-0825

LOCAL COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record via the court's electronic filing system on October 3, 2023.

_____/s/ Steven J. Knight_____
STEVEN J. KNIGHT

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | Case No. 3:23-cv-00769-N |
| | § | |
| Twin City Fire Insurance Company, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF JEFF CARPENTER'S SECOND REQUEST FOR PRODUCTION TO TWIN CITY FIRE INSURANCE COMPANY

Plaintiff Jeff Carpenter — through undersigned counsel — requests that Defendant Twin City Fire Insurance Company produce the following documents within 30 days after service of this request.

**App. 1**

## DEFINITIONS

THE FOLLOWING DEFINITIONS ARE AN
INTEGRAL PART OF THESE DOCUMENT REQUESTS

1. you, your, and defendant

You, your, and defendant shall mean Twin City Fire Insurance Company.

2. Jeff

Jeff shall mean Plaintiff Jeffrey W. Carpenter.

3. lawsuit

Lawsuit shall mean the above-captioned lawsuit.

4. underlying suit

Underlying suit shall mean the case styled *Jeffrey W. Carpenter v. Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., Affordable Housing Construction, Inc., and Brian Potashnik*, that was pending in Dallas County Court at Law No. 5 and bearing Cause Number CC-08-2072-E.

5. answer

Answer shall mean, collectively, your general denial and answer filed in *Carpenter v. Twin City Fire Insurance Company*, Cause No. CC-23-01483-C in Dallas County Court at Law No. 3 on or about April 3, 2023, and any amended answers you file in the lawsuit— such as your first amended answer [doc. 12] filed in the above-captioned lawsuit on May 19, 2023, and your second amended answer [doc. 18] filed June 9, 2023.

6. trial

Trial shall mean the start time of trial in the lawsuit.

7. person

Person shall mean any individual or entity.

8. concerning

Concerning shall mean referring to, describing, or constituting.

9. documents

Documents shall be synonymous in meaning and equal in scope to the terms documents and electronically stored information as used in Federal Rule of Civil Procedure 34. Some examples include books, magazines, articles, policies, checklists, memos, notes, calendars, journals, emails, text messages, instant messages, social media messages, online search results, drafts, unsigned letters, drawings, photographs, images, videos, audio recordings, voicemail, presentation materials, spreadsheets, receipts, and data compilations. A draft of a nonidentical copy is a separate document within the meaning of this term.

10. communication

Communication shall mean any document (a) to which at least two people are permitted access through foldering or (b) that is provided, shared, or transmitted to at least one other person through any means. Foldering is the practice of communicating through messages or information saved to a folder or similar location, such as a draft email folder, that multiple people can access. The messages or information are intentionally communicated that way but are never actually "sent."

11. claim file

Claim file shall mean any record either in its original form or as recorded by any process which can accurately and reliably reproduce the original material regarding the claim, its investigation, adjustment, or settlement. The phrase "material regarding the claim," in this context, shall include [in addition to its ordinary meaning] meaning that it was relied upon in making any decision concerning the insurance policy at issue or was submitted or considered or generated in the course of making any such decision [regardless of whether relied upon].

## INSTRUCTIONS

**THE FOLLOWING INSTRUCTIONS ARE AN
INTEGRAL PART OF THESE DOCUMENT REQUESTS**

1. **reasonable time, place, and manner for inspection**

You are requested to produce documents via electronic delivery to amy@gwfirm.com and david@gwfirm.com at the time service of your written response is due — unless the parties agree otherwise or the Court orders otherwise.

2. **form for electronically stored information**

Electronically stored information shall be produced in native format, with the exception of text messages, which shall be produced as screen images. Though the parties, in their Federal Rule of Civil Procedure 26(f) conference have discussed a proposed agreement to allow the parties to initially request and produce documents in .pdf format and later request, in writing and without the need for another formal discovery request, the native format of any .pdf document that had been previously produced. Should the parties agree in writing to such procedure, then the initial production in .pdf format in accordance with such procedure shall suffice.

3. **possession, custody, or control**

Pursuant to Federal Rule of Civil Procedure 34(a), the requests require you to produce documents in your possession, custody, or control.

4. **privilege**

Pursuant to Federal Rule of Civil Procedure 26(b)(5):

(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

**App. 4**

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.[1]

## 5. **duty to supplement**

Pursuant to Federal Rule of Civil Procedure 26(e)(1):

A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A)    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B)    as ordered by the court.

## 6. **objections and responses**

State only specific objections and

(a) don't state rote or boilerplate objections;[2]

---

[1] *See also EEOC v. BDO USA, LLP*, 876 F.3d 690, 695-97 (5th Cir. 2017) (describing privilege log requirements).

[2] *Heller v. City of Dallas*, 303 F.R.D. 466, 484 (N. D. Tex. 2014) ("As to the particular general objections that Defendant raised in this case, the objection to all requests to the extent that they exceed or conflict with the scope of permissible discovery is an off-the-shelf and decidedly non-specific objection that gains the responding party nothing without tying it to a particular discovery request and explaining precisely how that request exceeds or conflicts with the scope of permissible discovery.").

(b) don't state general objections[3] or include any preamble;[4]

(c) don't state prophylactic objections — stating an objection *to the extent that* it might apply — and instead specify all objections;[5]

(d) don't state any response as *subject to* a stated objection without specifying the extent to which you withhold documents on that basis;[6] and

---

[3] *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N. D. Tex. 2014) ("Another Court has put the matter at hand well: General objections such as the ones asserted by [Defendant] are meaningless and constitute a waste of time for opposing counsel and the court."); *id*. at 484 ("Counsel should cease and desist from raising these freestanding and purportedly universally applicable 'general objections' in responding to discovery requests. Deploying these general objections in this manner is, for the reasons explained above, inconsistent with the Federal Rules and is not warranted by existing law.").

[4] *See, e.g., id*. at 484 ("And the Court agrees with Plaintiffs' counsel that disavowing interrogatory responses as 'admissions of any nature,' [], flies in the face of Rule 33(c)'s provision that '[a]n answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence.' [] Finally, any statement reserving the 'right' to supplement discovery responses merely reflects an already existing duty ….").

[5] *Id*. at 483 ("And another court has persuasively explained: This Court has on several occasions disapproved [of] the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery. This Court has characterized these types of objections as worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, this Court has deemed such 'ostensible' objections waived, or declined to consider them as objections.").

[6] *See* Fed. R. Civ. P. 34(b)(2) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons. … An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."); *Athridge v. Aetna Casualty & Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (mem. op.) ("This type of answer hides the ball. It leaves the plaintiff wondering what documents are being produced and what documents are being withheld. Furthermore, it permits the defendant to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld. … Asserting a relevance objection, then proceeding to agree to produce 'relevant, non-privileged' documents '[s]ubject to and without waiving' that objection, serves only to obscure potentially discoverable information and provides no mechanism for either plaintiffs or the Court to review defendant's decisions."); *Heller*, 303 F.R.D. at 486-87 ("Having reflected on it, the Court agrees with judges in

(e) don't state that more documents will or may follow later without specifying a reasonable deadline for completion.

7. **construction**

All requests shall be broadly construed as necessary to bring within the scope of a request any documents or tangible things that might otherwise be construed to be outside the scope of the request. For example, "and" and "or" shall be construed in the conjunctive or the disjunctive as necessary to bring within the scope of a request any documents or tangible things that might otherwise be construed to be outside the scope of the request. References to the plural shall include the singular, and vice versa. References to the masculine gender shall include the female gender, and vice versa. "Including" shall be construed to be illustrative — that is, it shall mean "including, but not limited to."

## DOCUMENT REQUESTS

You are requested to produce the following documents. Captions are meant to generally categorize document requests. Captions are *not* meant to explain the relevance or discoverability of each document request, as many requested documents are relevant and discoverable for more than one reason. In some document requests, blue font is used to help the reader quickly identify the general category of documents sought or key differences in similar document requests.

Please note that as Plaintiff Jeff Carpenter's First Request for Production to Twin City Fire Insurance Company contained requests numbered 1 through 14, numbering here begins with request 15.

---

this circuit and other jurisdictions that the practice of responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure."); *id.* at 487 ("If a responding party makes such an objection but answers or responds 'subject to' and 'without waiving' the objection, [s]uch objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court.").

CLAIMS HANDLING

**Request 15**

All claims manuals, policy manuals, standards, guidelines, procedures, best practices, training materials, seminar materials, litigation manuals, and all other documents or reference sources which were used by you at any time since April 28, 2008, in connection with the adjusting or claims-handling for claims arising out of any employment practices liability you cover or insure.

**Request 16**

All claims manuals, policy manuals, standards, guidelines, procedures, best practices, training materials, seminar materials, litigation manuals, and all other documents or reference sources which were used by you at any time since April 28, 2008, to train your employees or adjusters or independent contractors doing work for you, on *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved) or what is commonly referred to as the *Stowers doctrine* or *Stowers liability*.

**Request 17**

All reports, or documents, or data received from any consultants concerning claims handling strategies, tactics, and practices.

**Request 18**

All reports, or documents, or data you received from any source containing any discussion of how claims handling practices affect the earnings of an insurance company.

**Request 19**

All documents concerning, constituting, or referencing awards or bonuses paid to employees, or unpaid but written commendations given, for denying certain numbers of claims.

**Request 20**

All documents concerning, constituting, or referencing awards or bonuses paid to employees, or unpaid but written commendations given, for approving certain numbers of claims.

**Request 21**

A copy of any and all policies, booklets, and procedural guidelines describing or explaining your implementation of employee performance reviews/evaluations for your claims-handling unit — or any other employee of yours involved in the assessment or adjustment of any claim concerning the underlying suit or the rejection of any offer to settle the underlying suit — between the period of April 28, 2008, and June 1, 2016.

**Request 22**

A copy of any and all forms, documents, templates, and writings utilized in conducting employee performance reviews/evaluations for your claims-handling unit — or any other employee of yours involved in the assessment or adjustment of any claim concerning the underlying suit or the rejection of any offer to settle the underlying suit — between the period of April 28, 2008, and June 1, 2016. Note: This request is limited to the blank forms, templates, and other documents and writings, as they existed before any information was added pertaining to any specific employee.

**Request 23**

A copy of any and all memoranda, letters, e-mails, reports, notes, or written documents provided to supervisors of your claims-handling unit [or of any other employees involved in the assessment or adjustment of any claim concerning the underlying suit or the rejection of any offer to settle the underlying suit] outlining, describing, or setting forth unit or employee performance goals/expectations — between the period of April 28, 2008, and June 1, 2016.

**Request 24**

All communications in the calendar year 2016 with any of your employees involved in the assessment or adjustment of any claim concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit, or with such employee's supervisor(s), made for the purposes of training, motivation, quality assurance, performance review, performance evaluation, file review, or employee compensation, if such communication contains any of the following terms (including the plural form where indicated):

"leakage," "settlement size," "ratio," "industry," "loss," "profit," "goal(s)," "outcome(s)," "average(s)," "mean," "favorable settlement(s)," "unfavorable settlement(s)" "overpay," "overpaid," "overpayment(s)," "average claim(s) pending," "bonus," "congratulations," "congratulate," "congratulated" or "incentive."

**Request 25**

Relevant portion of all documents constituting employee performance reviews/evaluations, claim file audits, file review questions, or quality assurance reviews for each of your employees involved in the assessment or adjustment of any claim concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit, or such employee's supervisor(s). Notes: (1) "Relevant portions" as used in this request means only the parts of such documents which (a) could provide an incentive or motivation to pay less on claims or to delay payment of claims or (b) could provide a disincentive or discouragement to pay more on claims or to pay claims sooner.

**Request 26**

All documents that establish, implement, report upon, or refer to incentive pay, bonus pay, performance-based pay, or financial award programs — during the period of April 28, 2008, and June 1, 2016 — for each of your employees involved in the assessment or adjustment of any claim for benefits concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit, and such employee's supervisor(s).

**Request 27**

All communications made at any time during the period of April 28, 2008, and June 1, 2016, that informed each of your employees involved in the assessment or adjustment of any claim for benefits concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit, and each of such employee's supervisor(s), of the manner in which they could expect to get bonuses, commissions, performance-based pay or increases in pay or salary. Include any notes taken, and recordings taken, of any such communications that were made orally.

**Request 28**

All documents that reference the setting of reserves as any consideration in the compensation, performance pay, or bonuses payable to each of your employees involved in the assessment or adjustment of any claim for benefits concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit, and each of such employee's supervisor(s).

**Request 29**

All communications in the calendar year 2016 with any of your employees involved in the assessment or adjustment of any claim concerning the underlying suit or the rejection of any offer to settle the underlying suit, or with such employee's immediate supervisor(s), describing, stating, discussing, or referring to unit or employee performance goals or management's expectations.

**Request 30**

All transcripts and recordings of speeches or presentations in any form whatsoever, including but not limited to power point presentation materials, overheads, or slides, made by any of the following of your employees — between the period of April 28, 2008, and June 1, 2016 — on the subjects of employment practices liability claims investigation or the evaluation and determination or payment of employment practices liability claims:

    (a) executive officers,
    (b) claims officers [including claims vice presidents], and
    (c) in-house legal counsel.

**Request 31**

All documents (including but not limited to video presentations, power point presenta-
tions, manuals, computer presentations, bulletins, guidelines) used to train any of your em-
ployees who were involved in the assessment or adjustment of any claim concerning the
underlying suit or the rejection of any offer to settle the underlying suit, or their immediate
supervisors. This request is limited to documents created or used during any part of the
period between April 28, 2008, and June 1, 2016. It includes, but is not limited to, infor-
mation available on the internet or on your private networks.

**Request 32**

All documents constituting job descriptions for any of your employees who were involved
in the assessment or adjustment of any claim concerning the underlying suit or the rejection
of any offer to settle the underlying suit, and all of their supervisors, and for each person in
the chain of command above these individuals up to the head of your claims department.

**Request 33**

All transcripts of all trial or deposition testimony of each of your current or former employ-
ees, in any civil action in which you were aware that you were being accused of violating a
law by negligently [or in bad faith] failing or refusing to accept an offer to settle a lawsuit —
within policy limits — against one or more of your insureds.

**Request 34**

For each of your employees involved in the assessment or adjustment of any claim concern-
ing the underlying suit or the rejection of any offer to settle the underlying suit, and each of
their supervisors — all documents used before hiring each to investigate whether they had
ever been accused of violating any law governing the provision of insurance, and all docu-
ments referencing the methods used in, and results of, such investigation.

**Request 35**

The ***described portions*** of all personnel files for each of your employees involved in the
assessment or adjustment of any claim concerning the underlying suit or the decision to
accept or reject any offer to settle the underlying suit, and for each of their immediate su-
pervisors. For the purposes of this request for production "***described portions***" means only
those parts of the personnel files which:

>     (a)     mention the underlying suit or any offer to settle the underlying suit;
>             or,

>     (b)     which could tend to show that an employee or agent was in any way
>             encouraged, commended for, or incentivized (whether or not in-

tended by Twin City Fire Insurance Company or any of its parent entities) to cause Twin City Fire Insurance Company to pay less on claims or to delay payment of claims; or,

(c)    which could tend to show that a Twin City Fire Insurance employee or agent was in any way discouraged, criticized for, or disincentivized (whether or not intended by Twin City Fire Insurance Company or any of its parent entities) from causing Twin City Fire Insurance Company to pay more on claims or to pay claims sooner.

"***Described portions***" include, but are not limited to, any mention of bonus pay, profit sharing, incentive pay, alternative compensation, performance pay or other employee compensation arrangements based on mean settlement size, claims payment goals, or on Twin City Fire Insurance Company's financial performance or loss ratios.

### Request 36

The entire personnel file for each of your employees involved in the assessment or adjustment of any claim concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit, and for each of their immediate supervisors, and for each person in the chain of command above these individuals up to the head of the claims department. ***Except*** the following documents are **excluded** from this request and need not be produced pursuant to this request unless Twin City Fire Insurance Company may use the documents to support any of its claims or defenses:

(a)    Documents solely concerning the employee's health, medical, sexual, psychological, substance use, or disability issues;

(b)    Documents solely concerning vacation, orderliness, neatness, work hours, attendance, or tardiness;

(c)    Documents solely concerning interoffice personal relationships;

(d)    Documents solely concerning the employee's personal habits or traits, so long as those habits are not stated to be tied to claims-handling activities.

(e)    Documents solely concerning any combination of the above-listed documents.

### Request 37

For the period between April 28, 2008, and June 1, 2016, all communications to any employees involved in the assessment or adjustment of any claim concerning the underlying

suit or the decision to accept or reject any offer to settle the underlying suit, or their imme-
diate supervisors, and all persons in the chain of command above these individuals up to
the head of the claims department, suggesting or stating directly or indirectly that any such
person might be able to make more money if

(a)     you paid less in claims or rejected settlement offers or

(b)     your combined ratio or other measure of underwriting profitability
        met certain goals.

Include any notes taken, and recordings taken, of any such communications that were made
orally.

## Request 38
All quality assurance audits and claim file reviews for any of your employees or agents in-
volved in the assessment or adjustment of any claim concerning the underlying suit or any
decision whether to accept or reject any offer to settle the underlying suit.

## Request 39
All forms, documents, templates, and writings used in conducting claim file audits or qual-
ity assurance reviews of your claims department. This request is limited to the blank forms,
templates, and other documents and writings, as they existed before any information was
added pertaining to any specific file.

## Request 40
All file reviews or audits for any claim for coverage or for payment of benefits in the under-
lying suit — or the decision to accept or reject any offer to settle the underlying suit — that
you keep in the normal course of business and that also mentions Jeff or any of the insureds
to the insurance policy named Private Choice Encore! Policy number 00 KB 0229269-07.

## Request 41
All documents referring to goals, targets, or objectives established for claim payments, or
loss ratios, or combined ratios, applicable to the adjustment of claims involving coverage
contained in any management practices insurance policies, "Private Choice Encore!" in-
surance policies, or insurance policies covering any employment practices liability.

## Request 42
All documents constituting agreements with any third-party administrators involved in the
assessment or adjustment of any claim concerning the underlying suit or the rejection of
any offer to settle the underlying suit.

**Request 43**

All communications with any third-party administrators involved in the assessment or adjustment of any claim concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit — that concern or reference such claim or offer.

**Request 44**

For any advice of outside counsel on which you relied [in part or in whole] in the assessment or adjustment of any claim for payment of benefits concerning the underlying suit or any decision to either accept or reject any offer to settle the underlying suit — all written advice, all notes made or recordings made of oral advice, and all communications about or referencing any such written or oral advice.

**Request 45**

To the extent not produced in response to any other request, all communications with any of your employees involved in the assessment or adjustment of any claim concerning the underlying suit or the decision to accept or reject any offer to settle the underlying suit — that concern or reference such claim or offer or decision.

COVERAGE INTERPRETATION

**Request 46**

A copy of each and every communication in which you either denied an insurance claim for payment of benefits or declined to settle a civil proceeding, in whole or in part, because

    (a)    the loss alleged was for "salaries, wages, or bonuses, except as a component of a front or back pay award" or

    (b)    under any exclusion for "employment termination severance payments."

For any oral communications about such history, all notes or recordings made of such oral communications.

**Request 47**

A copy of each communication in which you approved an insurance claim for payment of benefits, in whole or in part, because the claimed loss was for a component of a front or back pay award under any insurance policy you issued. For any oral communications about such history, all notes or recordings made of such oral communications.

**Request 48**

A copy of each communication in which you approved an insurance claim for payment of benefits, in whole or in part, where the claimed loss was for breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising out of any personnel manual, employee handbook, or policy statement — other than in the underlying suit. For any oral communications about such history, all notes or recordings made of such oral communications.

**Request 49**

A copy of each complaint or petition filed in any court of law or court of equity in which you were a party and involving exclusions for "salaries, wages, or bonuses, except as a component of a front or back pay award" or under any exclusion for "employment termination severance payments." In this request, you may limit the phrase "involving exclusions" to meaning only those cases in which you denied any obligation to pay benefits, in whole or in part, because of such exclusions.

**Request 50**

All drafting history for your insurance exclusions for "salaries, wages, or bonuses, except as a component of a front or back pay award" or "employment termination severance payments." Include all written communications about such history and for any oral communications about such history, all notes and recordings made of such oral communications.

MORAL HAZARD

**Request 51**

All communications with the Texas Department of Insurance or the Office of Public Insurance Counsel concerning or referencing any of these topics:

    (a)    assessment or adjustment of any claim for payment of benefits concerning the underlying suit or any decision to either accept or reject any offer to settle the underlying suit; or

    (b)    any belief you had that any insurance you sold has coverage that is unenforceable as being against public policy or a moral hazard.

Include any notes and recordings taken of any such communications that were made orally.

**Request 52**

For any advice of outside counsel on which you relied [in part or in whole] in the assessment of whether coverage of oral or written agreements for "salaries, wages, or bonuses, except

as a component of a front or back pay award" creates any moral hazard or violation of public policy making such coverage unlawful — all written advice, all notes made or recordings made of oral advice, and all communications about or referencing any such written or oral advice.


### HISTORY OF BAD FAITH OR NEGLIGENCE

**Request 53**

A copy of each and every complaint or petition filed against you in any court of law or court of equity, within the past 15 years, in which you were accused of (a) violating any duty under *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved), (b) engaging in any negligent refusal to settle a case or claim, or (c) committing any bad faith or unfair insurance, trade, or practice — including any concerning or arising out of your provision of employment practices liability insurance.


### REINSURANCE

**Request 54**

Any reinsurance agreements or contracts providing you reinsurance for the insurance policy named Private Choice Encore! Policy number 00 KB 0229269-07.

**Request 55**

All your communications concerning reinsurance for the insurance policy named Private Choice Encore! Policy number 00 KB 0229269-07, including those that took place through any one or more of the following means:

    (a)    email
    (b)    foldering [explained in definition of communication]
    (c)    text message
    (d)    electronic messaging application
    (e)    social media
    (f)    social media messaging
    (g)    audio recording
    (h)    video recording
    (i)    facsimile

DOCUMENTS REMOVED FROM CLAIM FILE

**Request 56**

All documents that were once in, or part of, the claim file, diary notes, adjuster's notes, claims specialists' notes, claims manager's notes, special investigation unit notes, or management reports concerning the underlying suit or any offer to settle the underlying suit — but that are no longer in the claim file, notes, or reports.

Respectfully submitted,

*David L. Wiley*

---

Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Jeff Carpenter*

## Certificate of Service

The undersigned certifies that, on September 5, 2023, he served the foregoing *Plaintiff Jeff Carpenter's Second Request for Production to Twin City Fire Insurance Company* to defendant through its counsel of record as follows:

**Via email to**

Ms. Christine Kirchner
c.kirchner@chamberlainlaw.com
Mr. Steven J. Knight
steven.knight@chamberlainlaw.com
Mr. Chris M. Lemons
chris.lemons@chamberlainlaw.com

Chamberlain Hrdlicka, White,
Williams & Aughtry
1200 Smith Street #1400
Houston, Texas 77002

*Attorneys for*
*Twin City Fire Insurance Company*

Mr. Michael W. Johnston
johnston@johnstonlegalgroup.com

Johnston Legal Group PC
1616 Wabash Avenue
Fort Worth, Texas 76107-6598

*Local Counsel for*
*Twin City Fire Insurance Company*

David L. Wiley
_____
David L. Wiley

App. 18

CIVIL ACTION NO. 3:23-CV-00769-N
_____

## In the United States District Court
## Northern District of Texas - Dallas Division
_____

JEFFREY W. CARPENTER,

*Plaintiff,*

v.

TWIN CITY FIRE INSURANCE COMPANY,

*Defendant.*
_____

## DECLARATION OF JOSEPH M. COPPOLA
_____

1.   My name is Joseph M. Coppola. I hold the position of Assistant Vice President of Hartford Fire Insurance Company, which is an affiliate of Twin City Fire Insurance Company. Part of my role is to provide assistance to the law department on claims handled by the claims department that result in litigation against the company. I have been in this role since 2002.

2.   I have reviewed Carpenter's second request for production of documents. To say that the requests appear to include a staggering amount of information would be an understatement. Importantly, Twin City is licensed to engage in the business of insurance in fifty states plus the District of Columbia. Carpenter's forty-two requests appear to have no geographic limitation. Many of them have no temporal limitation, and those that do typically date back to 2008, over a decade ago when documents were not stored electronically.

3.   All of Carpenter's requests are extremely burdensome. To point out the many reasons for this in connection with all forty-two requests would cause this declaration to be quite lengthy. Accordingly, this declaration highlights certain requests that are indicative of the types of problems that are persistent.

4.   In Request No. 15, Carpenter seeks claim "handling manuals," "seminar materials," and all "other documents" dating back to 2008 that Twin City used to adjust "any employment practices liability you cover or insured." As I read this, Carpenter wants to see every document that Twin City's adjusters have ever referenced or used in connection with adjusting every claim for employment practice liability insurance coverage since 2008, on a nationwide basis. Responding to this request would require Twin City to research every claim

**App. 19**

submitted by insureds (which would be in the thousands), figure out which ones involved employment practices liability coverage (also in the thousands), and review the claims files and gather "all documents" that were "used" to adjust the claim. I am not aware of a database that would simplify the search process. This request would presumably necessitate someone to travel to all Twin City offices housing old claims files and sifting through them to identify the documents that the adjuster used in connection with that particular claim. Alternatively, Twin City would have to hire outside consultants across the nation to perform these searches. It is impossible to pinpoint the precise amount of time and expense associated with such an endeavor, but, given the number of insureds and claims going back over a decade, this process could easily take years at an astronomical expense well into the six-figure range if not higher. Carpenter seeks similar information in Request Nos. 16, 17, 18, 30, 31.

5.     In Request No. 53, Carpenter seeks a copy of "each and every complaint or petition" filed against Twin City alleging bad faith. There is no geographic or temporal limit—he apparently wants this information for every court across the nation, state by state, county by county, going back to the inception of Twin City. I am unaware of a database that would enable me to locate every lawsuit filed against Twin City. Responding to this request would necessitate contacting every court in America to hunt down the documents Carpenter seeks—documents that would appear to be of a public nature and equally available to him. This process would involve the same type of burden and expense mentioned in the previous paragraph. Carpenter seeks similar information in Request Nos. 33 and 49.

6,     In Request No. 47, Carpenter seeks "each communication" approving a request for coverage that involved a front or back pay award. This request has no geographic or temporal limitation. Once again, I am unaware of a database that would enable Twin City to search for the records Carpenter seeks. Twin City would have to locate every claim file and attempt to figure out if it involved a front pay or back pay award or claim. This would require an examination of tens of thousands of claim files from offices across the country. This request would involve similar time and expense as discussed previously. Carpenter made similar requests about the payment of other insureds' claims in Request Nos. 46 and 48.

7.     In Request No. 21, Carpenter seeks documents and information concerning employee evaluations for Twin City's entire "claims handling unit." As with many of his other requests, this would necessitate contacting every office nationwide to search for responsive documents. This could take hundreds of hours of time. He seeks similar information spanning Twin City's entire "claims handling unit" in request Nos. 22 and 23

8.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of October, 2023.

[SIGNATURE ON PAGE 3]

**App. 20**

_Joseph Coppola_
Joseph M. Coppola

**App. 21**