IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | |
| | § | Civil Action No. 3:23-CV-00769-N |
| Twin City Fire Insurance Company, | § | |
| | § | Jury Demand |
| *Defendant*. | § | |

---

**JEFF CARPENTER'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS UNDER RULE 12(B)(1) AND RULE 12(C)
AND BRIEF IN SUPPORT**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………….. 4

I. CONTEXT: NATURE OF THE *STOWERS* CASE…………………………………………… 7

II. CONTEXT: TERMS OF THE TURNOVER ORDER……………………………………… 8

A.      No assignment of claims, just turnover for certain purposes...……………………... 8

B.      Turnover purposes: to liquidate *Stowers* claim toward satisfaction of judgment……. 10

C.      Turnover of certain document and privilege rights co-extensive with insureds…….. 11

D.      No appeal or other direct challenge to turnover order……………………………… 12

III.  REQUEST FOR JUDICIAL NOTICE OF STATE COURT PROCEEDINGS...………………….... 12

IV.  ARGUMENT AND AUTHORITIES...……………………………………………………… 12

A.      Some *Stowers* fundamentals...…………………………………………………….. 12

      1.      *Stowers* sounds in negligence.………………………………………….. 12

      2.      *Stowers* claims may result in punitive damages……………………………. 14

B.      Some Texas turnover fundamentals...……………………………………………… 14

      1.      Turnover statute helps reach nonexempt assets with aid of court………….. 14

      2.      Causes of action, including *Stowers*, are subject to turnover……………….. 15

      3.      Costs and attorneys' fees are available under turnover statute……………. 15

      4.      Turnover is not assignment — judgment debtors might receive surplus……. 16

      5.      Turnover itself is a final judgment subject only to direct attack……………. 17

      6.      State court has continuing jurisdiction to clarify and enforce its judgment….. 18

C.      Fifth Circuit: turnover confers standing for *Stowers* claim……………………………. 18

D.      All challenges to turnover: no jurisdiction due to improper collateral attack………… 19

E.    Gross negligence and malice challenge: not separate claims from negligence………    21

F.    Twin City erroneously relies on the *Puga* opinion………………………………..    23

G.    Challenge to equitable relief: Twin City relies on wrong standard…………………    24

H.    A note about claims versus remedies………………………………………………    26

I.    Objections to unsupported statements, spin, and personal attacks…………………    27

V.  CONCLUSION..…………………………………………………………………………    27

## TABLE OF AUTHORITIES

**Cases**

*Alexander, Dubose, Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*,
    540 S.W.3d 577 (Tex. 2018) .................................................................... 17

*Allstate Fire & Cas. Ins. Co. v. Love*,
    71 F.4th 348 (5th Cir. 2023)................................................................... 18

*In re Altman Nursing, Inc.*,
    299 B.R. 813 (Bankr. N.D. Tex. 2003)................................................. 15

*Arndt v. Farris*,
    633 S.W.2d 497 (Tex. 1982) ................................................................. 18

*Austin Indep. Sch. Dist. v. Sierra Club*,
    495 S.W.2d 878 (Tex. 1973) ................................................................. 4

*Beaumont Bank, N.A. v. Buller*,
    806 S.W.2d 223 (Tex. 1991).................................................................. 14

*Browning v. Placke*,
    698 S.W.2d 362 (Tex. 1985) ................................................................. 20

*Burns v. Miller, Hiersche, Martens & Hayward, P.C.*,
    909 S.W.2d 505 (Tex. 1995).................................................................. 17

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
    445 S.W.3d 716 (Tex. 2014).................................................................. 4

*Consumer Cnty. Mut. Ins. Co. v. Mendoza*,
    No. 13-05-0024-CV, 2007 WL 687157 (Tex. App.—Corpus Christi 2007, no pet.)...... 18

*D&M Marine, Inc. v. Turner*,
    409 S.W.3d 853 (Tex. App.—Fort Worth 2013, no pet.) ...................................... 15

*Davis v. West*,
    317 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2009, no pet.)............................. 21

*Ford v. State*,
    305 S.W.3d 530 (Tex. Crim. App. 2009) ................................................ 14

*G.A. Stowers Furniture Co. v. Am. Indem. Co.*,
  15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved)...............................

*Goggans v. Ford*,
  No. 05-15-00052-CV, 2016 WL 2765033,
  (Tex. App.—Dallas May 11, 2016, pet. denied) ...............................................

*Goin v. Crump*,
No. 05-18-00307-CV, 2020 WL 90919 (Tex. App.—Dallas Jan. 8, 2020, no pet.)..............

*Inthavong v. Roosa*,
  No. 4:21-cv-00366, 2021 WL 5999279 (S.D. Tex. Dec. 20, 2021)............................

*Katz v. Bianchi*,
  848 S.W.2d 372 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding)................

*Kenseth v. Dallas Cnty.*,
  126 S.W.3d 584 (Tex. App.—Dallas 2004, pet. denied)....................................

*Memom v. Ngyen*,
  No. 01-21-00706-CV, 2023 WL 3513135
  (Tex. App.—Houston [1st Dist.] May 18, 2023) ...........................................

*Meyer v. Brown & Root Constr. Co.*,
  661 F.2d 369 (5th Cir. 1981) ..............................................................

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*,
  955 S.W.2d 120, 133 (Tex. App.—Houston [14th Dist.] 1997),
  *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  20 S.W.3d 692 (Tex. 2000)..................................................................

*Newman v. Tropical Visions, Inc.*,
  891 SW 2d 713 (Tex. App.—San Antonio 1994, writ denied)...............................

*PPG Indus. v. JMB/Houston Ctrs.*,
  146 S.W.3d 79 (Tex. 2004)..................................................................

*Puga v. N.Y. Marine & Gen. Ins. Co.*,
  No. 2:19-CV-381, 2021 WL 293270 (S.D. Tex. Jan. 28, 2021) ..............................

*Ranger Cnty. Mut. Ins. Co. v. Guin*,
  723 S.W.2d 656 (Tex. 1987).................................................................

*Renger Mem'l Hosp. v. State*,
    674 S.W.2d 828, (Tex. App.—Austin 1984, no writ) …………...……………………

*Rogers v. Atmos Energy Corp.*,
    No. 3:18-cv-0869-M, 2018 WL 11348093 (N.D. Tex. May 11, 2018)……………..……….

*Shafer v. Muro*,
    No. 2:20-CV-167, 2021 WL 2143614 (S.D. Tex. May 25, 2021)………………………..

*Schultz v. Fifth Jud. Dist. Ct. of Appeals at Dallas*,
    810 S.W.2d 738 (Tex. 1991) (orig. proceeding),
    *abrogated on other grounds by In re Sheshtawy*,
    154 S.W.3d 114 (Tex. 2004) (orig. proceeding)………………………………..………..

*Sun Tec Comput., Inc. v. Recovar Group, LLC*,
    No. 05–14–00257–CV, 2015 WL 5099191
    (Tex. App.—Dallas Aug. 31, 2015, no pet.)…………………………..……………

*Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*,
    106 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)……………..……

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) …………………………….…………………………….

*Travelers Ins. Co. v. Joachim*,
    315 S.W.3d 860 (Tex. 2010) .)……………………………..……………………

**Statutes**

Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇм. Cᴏᴅᴇ § 31.002……………..……………………………….

Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇм. Cᴏᴅᴇ § 34.047……………..……………………………….

**Rules**

Fᴇᴅ. R. Eᴠɪᴅ. 201(b)……………..…………………………………………..

Tᴇx. R. Cɪᴠ. P. 308……………..……………………………………………

Tᴇx. R. Cɪᴠ. P. 621……………..……………………………………………

**Other**

2 Robert P. Mosteller *et. al.*, *McCormick on Evidence* (8th ed. 2020) …………..…………..

# I. Context: Nature of the *Stowers* Case[1]

> If [a liability] insurer refuses an offer of settlement when it appears that an ordinary prudent person in the insured's situation would have settled, the insurer may be held liable for damages.
>
> —*Ranger Cnty. Mut. Ins. Co. v. Guin*,
> 723 S.W.2d 656, 659 (Tex. 1987)

This is a *Stowers* case.[2] It arises out of an earlier jury verdict and judgment in favor of Jeff Carpenter in Dallas County Court at Law No. 5, Cause Number CC-08-2072-E, styled *Jeffrey W. Carpenter v. Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., Affordable Housing Construction, Inc., and Brian Potashnik* ("prior case").[3]

In that prior case, defendants' liability insurance carrier — Twin City — rejected a reasonable opportunity to settle for less than remaining policy limits.[4] It did so even though policy limits were

---

[1] Unless otherwise noted, Jeff Carpenter's attorneys have supplied all emphases, omitted all internal quotation marks and internal citations from case quotations, and omitted all citing and quoting references from case citations.

  This response is supported by the *Appendix in Support of Jeff Carpenter's Response to Defendant's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(c)*. The Appendix is bates-labeled on the bottom right. It is cited as App., followed by the relevant bates-labeled appendix page.

[2] *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

[3] App., pp. 6-7 ¶ 2 [2023-03-09 Original Petition and Jury Demand].

[4] *Id.* at 7 ¶ 3.

eroding toward zero with every penny of litigation costs and every dollar of attorneys' fees.[5] Ultimately, four of its insureds were hit with an adverse jury verdict and a judgment that exceeded remaining policy limits by around $2 million.[6]

The defendant insureds appealed to the Fifth District Court of Appeals at Dallas and the Texas Supreme Court but were not successful.[7] The judgment was affirmed and remains unsatisfied.[8]

## II. CONTEXT: TERMS OF THE TURNOVER ORDER

### A.    No assignment of claims, just turnover for certain purposes

Some turnover orders require a judgment debtor to assign away causes of action. That was the situation in *Goin v. Crump*.[9] But here, the turnover order does not include an assignment of causes of action, as opposed to turnover of the *Stowers* claim for certain purposes.[10]

---

[5] App., p. 7 ¶ 3 [2023-03-09 Original Petition and Jury Demand].

[6] *Id.*; *see also* App., pp. 105-28 [February 1, 2018 Charge of the Court & Jury Verdict] & pp. 131-38 [December 17, 2018 Final Judgment].

[7] App., p. 7 ¶ 4 [2023-03-09 Original Petition and Jury Demand]; *see also* App., pp. 139-54 [August 27, 2020 Dallas Court of Appeals Memorandum Opinion affirming judgment] & pp. 155-60 [January 22, 2021 notice — Texas Supreme Court denies petition for review] & pp. 161-66 [March 5, 2021 notice — Texas Supreme Court denies motion for rehearing] & pp. 167-71 [March 12, 2021 file-stamped Mandate].

[8] App., p. 7 ¶ 4 [2023-03-09 Original Petition and Jury Demand].

[9] *See Goin v. Crump*, No. 05-18-00307-CV, 2020 WL 90919, *2-3 (Tex. App.—Dallas Jan. 8, 2020, no pet.) (mem. op.) (noting that turnover order required assignment of claims and quoting assignment language).

[10] *See generally* App., pp. 28-31 [April 30, 2021 Order Granting Amended Motion for Turnover of *Stowers* claim] (no assignment of claims).

On April 19, 2021 after the defendant insureds exhausted all appeals and the mandate issued, Jeff seeks turnover of their *Stowers* claim "so it can be prosecuted and liquidated and recovery, if any, can be applied as a credit to satisfy the judgment in whole or in part."[11]

On April 30, 2021, Dallas County Court at Law No. 5 Judge Mark Greenberg orders turnover to Jeff of the defendant insureds' common law *Stowers* claims against their liability insurance carrier Twin City.[12] The order states in that regard:[13]

> part, the judgment in this case.  So, in aid of the judgment in this case, IT IS ORDERED, ADJUDGED AND DECREED that any claims Judgment Debtors own under *Stowers* arising out of or related to this case are immediately TURNED OVER to Judgment Creditor Jeff Carpenter.  This specifically includes, without limitation, those concerning Private Choice Encore! Policy number 00KB 0229269-07 that Twin City Fire Insurance Company issued.

---

[11] App., pp. 172-73 (file date and title of motion) & p. 174 (quoted language).

[12] *Id.* at 28-31 (turnover order) & p. 7 ¶ 4 (pleaded allegation of turnover).

[13] *Id.* at 30.

**B.**     **turnover purposes: to liquidate *Stowers* claim toward satisfaction of judgment**

Judge Mark Greenberg finds that Jeff is "entitled to the right to have liquidated all common law causes of action" the judgment debtors [defendant insureds] may own under *Stowers* "to see if they might satisfy, in whole or in part, the judgment."[14] The finding states:[15]

> The Court is of the opinion that Jeff Carpenter is entitled to the right to have liquidated all common law causes of action Judgment Debtors may own under *G. A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved) and its progeny, to see if they might satisfy, in whole or in part, the judgment in this case.  So, in aid of the judgment in this case, IT IS

Another finding is that the right to "prosecute and recover" on the *Stowers* claim cannot readily be attached or levied by ordinary legal process. It states:[16]

> this case; (4) the right to prosecute and recover on any such cause(s) of action cannot readily be attached or levied on by ordinary legal process and that right is not exempt under any statute from attachment, execution, or seizure; and (5) Judgment Debtors

---

[14] App., p. 30.

[15] *Id.*

[16] *Id.*

**C.   Turnover of certain document and privilege rights co-extensive with insureds**

Judge Mark Greenberg also turns over to Jeff (1) an "equal right of access" to certain documents, co-extensive with that of the insured judgment debtors and (2) a "right co-extensive with judgment debtors" to assert or waive attorney-client privilege and work product.[17] The order states in part in that regard:[18]

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Judgment Creditor Jeff Carpenter shall immediately have an equal right of access — co-extensive to that held by each and every Judgment Debtor — to information and documents related to the above-referenced claims. This specifically includes, without
>
> ***
>
> IT IS FURTHER ORDERED that Jeff Carpenter is immediately GRANTED — a right co-extensive with Judgment Debtors to assert or waive the attorney-client privilege and any work product exemption arising from or concerning communications to, from, or among Twin City Fire Insurance Company and any of its adjusters or their representatives, agents, or attorneys, concerning this case.

---

[17] App., pp. 30, 31.

[18] *Id.*

**D.      No appeal or other direct challenge to turnover order**

No one appealed the April 30, 2021 turnover order.[19] No one pursued any other type of direct

attack on the April 30, 2021 turnover order.[20] The April 30, 2021 turnover order has become a final

judgment that is not subject to collateral attack unless void, as explained in Part IV below.

### III. REQUEST FOR JUDICIAL NOTICE OF STATE COURT PROCEEDINGS

Jeff respectfully requests that the Court take judicial notice[21] of public records from state

court proceedings in the prior case. The Appendix includes the docket sheet and selected filings

from the prior case.

### IV. ARGUMENT AND AUTHORITIES

**A.      Some *Stowers* fundamentals**

**1.      *Stowers* sounds in negligence**

When insurance companies have the right to control settlement of claims against their in-

sureds, they owe their insureds a *Stowers* duty. The *Stowers* opinion explains that the insurance

company is:[22]

---

[19] *See generally* App., pp. 32-104 [online docket sheet as of October 15, 2023].

[20] *Id.*

[21] *See* FED. R. EVID. 201(b) (courts may take judicial notice of facts (1) "generally known within the trial court's territorial jurisdiction" or (2) that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also* 2 Robert P. Mosteller *et. al.*, *McCormick on Evidence* § 330, pp. 650-51 (8th ed. 2020).

[22] *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

> held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages.

This duty sounds in negligence, has been around for almost a century, and is similar to other areas of law in which a right of control gives rise to a legal duty.[23] So, the ultimate issue in a *Stowers* case is whether a settlement offer is such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the potential harm to the insured, such as exposure to a judgment higher than policy limits.

The *Stowers* duty is born of insurance companies who want to save money for themselves to the detriment of insureds. If a policy limit is the maximum insurance company risk — whether a case settles or goes to trial —, then why settle at all? Why not gamble the insured's personal finances and take a chance at trial? Even if odds of a defense win are slim. Even if trial could expose the insured to damages higher than policy limits.

---

[23] *Compare, e.g., Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("Having undertaken to install a plumbing system in the house, the plumber assumed an implied duty not to flood or otherwise damage the [] house while performing its contract with the builder.").

### 2. *Stowers* claims may result in punitive damages

*Stowers* claims may result in punitive damages, subject of course to the requisite factual predicate under the law at the time.[24]

## B. Some Texas turnover fundamentals

### 1. Turnover statute helps reach nonexempt assets with aid of court

Texas Civil Practice and Remedies Code Chapter 31 is commonly known as the turnover statute. It entitles judgment creditors to court aid in satisfying a judgment.[25] It is a "procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process."[26] For example, nonexempt property may be turned over to a sheriff or constable for execution [sale].[27]

---

[24] *Ranger Cnty. Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 660 (Tex. 1987) (affirming jury findings on punitive damages in a *Stowers* case).

[25] *See* TEX. CIV. PRAC. & REM. CODE § 31.002(a) ("A judgment creditor is entitled to aid from a court of appropriate jurisdiction, including a justice court, through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.").

[26] *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991).

[27] *See* TEX. CIV. PRAC. & REM. CODE § 31.002(b) ("The court may: (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution; ...."). The statute lists a number of things a court *may* do in aid of collection. That list is illustrative, not exclusive. *Cf. Ford v. State*, 305 S.W.3d 530, 537 (Tex. Crim. App. 2009) ("[W]hen statutes or rules use the permissive word 'may,' that term generally indicates that the specified items are merely examples of the types of topics covered or methods allowed.").

### 2. Causes of action, including *Stowers*, are subject to turnover

Causes of action cannot readily be attached or levied on by ordinary legal process. So, "a cause of action or claim is a property right that can be subject to turnover" under the Texas turnover statute.[28] Turning over causes of action directly to a judgment creditor is a decades-old practice.[29] This includes turnover of *Stowers* claims.[30]

### 3. Costs and attorneys' fees are available under turnover statute

The turnover statute permits a judgment creditor to recover "reasonable costs including attorneys' fees" in connection with the turnover process.[31] Here, the issue of costs including attorneys' fees is something Dallas County Court at Law No. 5 would take up after the *Stowers* claim is liquidated. This separate statutory remedy is independent of remedies for a *Stowers* claim.

---

[28] *In re Altman Nursing, Inc.*, 299 B.R. 813, 820 (Bankr. N.D. Tex. 2003); *see also D&M Marine, Inc. v. Turner*, 409 S.W.3d 853, 857 (Tex. App.—Fort Worth 2013, no pet.) ("Generally, causes of action constitute property subject to turnover by a court.").

[29] *See, e.g., Renger Mem'l Hosp. v. State*, 674 S.W.2d 828, 829 (Tex. App.—Austin 1984, no writ) ("Renger Memorial Hospital appeals from a district court order requiring a turnover (by way of assignment) to appellees The University of Texas and Texas Lutheran College of a cause of action. We affirm.").

[30] *See Goggans v. Ford*, No. 05-15-00052-CV, 2016 WL 2765033, **1, 2, 3 (Tex. App.—Dallas May 11, 2016, pet. denied) (mem. op.) (affirming turnover of a *Stowers* claim directly to a judgment creditor and rejecting argument that turnover violated public policy). This opinion is included in the Appendix at pages 213-17.

[31] Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 31.002(e) ("The judgment creditor is entitled to recover reasonable costs, including attorney's fees.").

**4.      Turnover is not assignment — judgment debtors might receive surplus**

Until a claim is liquidated, the amount to be applied toward judgment satisfaction, costs, and attorneys' fees is unknown. When it comes to liquidating causes of action, a judgment debtor *might* be entitled to any surplus after satisfaction of judgment and the judgment creditor's costs and attorneys' fees.[32]

Just like this scenario: if execution on personal property results in excess, the judgment debtor may receive the surplus.[33] In fact, as a matter of public policy, a judgment creditor's pursuit of maximum recovery *supports* the turnover of judgment debtor claims to it.[34]

This possibility of surplus return to the judgment debtor would not exist with assignment. The assignee keeps the proceeds of the claim assigned. Regardless of value received from it. Turnover is different. With turnover, there is a possibility of return of surplus to the judgment debtor.

---

[32] Many factors may affect this, like if a defendant insured entity is defunct, or a defendant insured individual cannot be found, etc. The specifics of what happens if there is a surplus is not before the Court.

[33] *See, e.g.,* TEX. CIV. PRAC. & REM. CODE § 34.047 (distribution of sale proceeds) ("(a)  An officer shall deliver money collected on execution to the entitled party at the earliest opportunity. (b)  The officer is entitled to retain from the proceeds of a sale of personal property an amount equal to the reasonable expenses incurred by him in making the levy and keeping the property. (c)  If more money is received from the sale of property than is sufficient to satisfy the executions held by the officer, the officer shall immediately pay the surplus to the defendant or the defendant's agent or attorney.").

[34] *D&M Marine, Inc. v. Turner*, 409 S.W.3d 853, 858 (Tex. App.—Fort Worth 2013, no pet.) ("The Turners requested a turnover order regarding D & M's insurance policies that possibly provided coverage for D & M against the Turners' construction-defect suit. The Turners would have the same interest as D & M would to pursue any bad faith or failure-to-indemnify claims against Mid–Continent to maximum recovery.").

### 5.      Turnover itself is a final judgment subject only to direct attack

As a general rule, turnover orders are final, appealable judgments,[35] and so must be attacked on direct appeal. "A direct attack is a proceeding instituted for the purpose of correcting the earlier judgment. It may be brought in the court rendering the judgment or in another court that is authorized to review the judgment on appeal or by writ of error."[36]

Specifically, any part of a turnover order "that acts as a mandatory injunction is a final, appealable judgment."[37] Parts of a turnover order "can be injunctive in nature and, thus, final and appealable," while other parts "can be interlocutory and unreviewable because they do not resemble injunctive relief."[38] The turnover itself acts as a mandatory injunction and so is a final judgment.[39]

---

[35] *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 909 S.W.2d 505, 506 (Tex. 1995) (per curiam) ("The court of appeals erred in applying the deadline for interlocutory appeals to this case because a turnover order is a final, appealable judgment.").

[36] *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973).

[37] *Alexander, Dubose, Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 582 (Tex. 2018) ("This Court has held that a turnover order that acts as a mandatory injunction is a final, appealable judgment."); *see also Schultz v. Fifth Jud. Dist. Ct. of Appeals at Dallas*, 810 S.W.2d 738, 740 (Tex. 1991) (orig. proceeding) ("The turnover order at issue in this case resolved the property rights issues and acted as a mandatory injunction as to the judgment debtor Schultz and the receiver. We therefore hold that the turnover order was in the nature of a mandatory injunction and was appealable."), *abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114 (Tex. 2004) (orig. proceeding).

[38] *Alexander, Dubose, Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 587 (Tex. 2018).

[39] *See supra* footnote 37.

### 6.    State court has continuing jurisdiction to clarify and enforce its judgment

Even after plenary power has expired, a trial court retains the inherent power to clarify and enforce its judgments.[40] This power does not extend to enforcement orders "inconsistent with the original judgment" or enforcement orders that "constitute a material change in substantial adjudicated portions of the judgment."[41]

## C.    Fifth Circuit: turnover confers standing for *Stowers* claim

> Although it is true that the insured generally owns a *Stowers* claim, a third-party beneficiary may pursue such a claim by turnover.
>
> —*Allstate Fire & Cas. Ins. Co. v. Love*,
> 71 F.4th 348, 354 (5th Cir. 2023)

In *Allstate Fire & Casualty Ins. Co. v. Love*, the Fifth Circuit *rejects* the contention that a *Stowers* claim "belongs solely to the insured" such that others have "no standing to assert an unassigned

---

[40] *See* TEX. R. CIV. P. 308 ("The court shall cause its judgments and decrees to be carried into execution."); TEX. R. CIV. P. 621 ("The judgments of the district, county, and justice courts shall be enforced by execution or other appropriate process."); *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) ("The general rule is that every court having jurisdiction to render a judgment has the inherent power to enforce its judgments."); *Kenseth v. Dallas Cnty.*, 126 S.W.3d 584, 600 (Tex. App.—Dallas 2004, pet. denied) ("The only post-judgment proceedings over which the trial court retains jurisdiction after the expiration of its plenary power are proceedings to clarify or enforce a judgment.").

[41] *Katz v. Bianchi*, 848 S.W.2d 372, 374 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding); *see, e.g.*, *Consumer Cnty. Mut. Ins. Co. v. Mendoza*, No. 13-05-0024-CV, 2007 WL 687157, *5-6 (Tex. App.—Corpus Christi 2007, no pet.) (mem. op.) (finding that *later* order adding parties to original turnover was outside court's plenary power, substantively changed the original turnover order, and so was void).

*Stowers* claim directly against an insurer."[42] The Fifth Circuit responds: "But this is not unequiv-ocally true. Although it is true that the insured generally owns a *Stowers* claim, a third-party bene-ficiary may pursue such a claim by turnover."[43] As explained above, *Stowers* claims are subject to turnover.[44]

As also explained above, the pursuit of *maximum recovery* supports the public policy in permit-ting turnover to judgment creditors like Jeff.[45] Again, the judgment debtors — insured defendants in the prior case — may have a right to any surplus after satisfaction of judgment in the prior case and costs including attorneys' fees.[46] And again, this is one reason turnover is different from as-signment of a claim to judgment creditors.[47] In other words, Twin City's reliance on assignment opinions is erroneous because assignment, and turnover without assignment [this turnover order], are so different.

### D.    All challenges to turnover: no jurisdiction due to improper collateral attack

Again, Texas treats turnover as a mandatory injunction that is a final judgment subject only to direct attack.[48] No one appealed or otherwise directly attacked the turnover order in the prior

---

[42] *Allstate Fire & Cas. Ins. Co. v. Love*, 71 F.4th 348, 354 (5th Cir. 2023).

[43] *Id.*

[44] *See supra* Part IV(B)(2).

[45] *See supra* Part IV(B)(4) & footnote 34.

[46] *See id.*

[47] *See id.*

[48] *See supra* Part IV(B)(5).

case.[49] So, unless that turnover judgment "is void, it is not subject to collateral attack in another court of equal jurisdiction."[50] If void, it "is subject to collateral attack in a new lawsuit," but if merely voidable, it "must be corrected by direct attack; unless successfully attacked, a voidable judgment becomes final."[51]

A Texas judgment is only void when the rendering court "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court"[52] All other errors "render the judgment merely voidable, and such errors must be corrected on direct attack."[53] Twin City does not challenge jurisdiction of the state court on any grounds that would render turnover void.[54]

So, challenges to the scope of turnover, and public policy challenges to turnover, cannot be collaterally attacked in state or federal court.[55] For example, turnover of malpractice claims, even

---

[49] *See supra* Part II(D).

[50] *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (per curiam) (orig. proceeding); accord *In re Altman Nursing, Inc.*, 299 B.R. 813, 820 (Bankr. N.D. Tex. 2003).

[51] *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010).

[52] *Browning*, 698 S.W.2d at 363; *accord Joachim*, 315 S.W.3d at 863.

[53] *Browning*, 698 S.W.2d at 363 ("When time for direct attack by appeal has elapsed, a bill of review in the court rendering the initial judgment is the exclusive remedy to attack the judgment.").

[54] *See generally* Twin City's Brief [ECF Doc. 35] (absence of such challenges).

[55] *See, e.g.*, *In re Altman Nursing, Inc.*, 299 B.R. 813, 821 (Bankr. N.D. Tex. 2003) ("Any argument that the state court erroneously ordered turnover of the Claim because such turnover was against public policy would certainly fall under the category of 'all errors other than jurisdictional defects

if against public policy, is not subject to collateral attack.[56] Nor are complaints that a turnover order lacked necessary evidentiary underpinnings or exceeded statutory authority.[57] Even a claim that turnover violates the Texas Constitution is not subject to collateral attack.[58]

### E.    Gross negligence and malice challenge: not separate claims from negligence

Again, challenges to scope of turnover are impermissible collateral attacks.[59] Independently, for the challenge about turnover of gross negligence and malice, negligence and gross negligence

---

[that] render the judgment voidable rather than void and [that] must be corrected on direct appeal.'"); *see also id.* ("Having determined that the state court had jurisdiction over the person and the subject matter, this Court is without the power or jurisdiction to render any opinion as to the validity of the state court proceedings. Any arguments that CCC has that the state court proceedings resulting in Pronske's ownership of the Claim were invalid must be brought before the state court pursuant whatever remedies are available to it under Texas law.").

[56] *See, e.g.*, *Memom v. Ngyen*, No. 01-21-00706-CV, 2023 WL 3513135, *4 (Tex. App.—Houston [1st Dist.] May 18, 2023) (mem. op.) ("Finally, appellants contend that the Receiver's decision to settle the Malpractice Action claims that were turned over and the turnover order itself violate public policy and the Texas Constitution. This appeal is not the proper vehicle to attack the Meisner court's turnover order. To the extent appellants argue that the turnover order contains an error by ordering them to surrender the Malpractice Action claims, they may not circumvent the ordinary process to correct the alleged error.").

[57] *Davis v. West*, 317 S.W.3d 301, 309, 310 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("… Davis complains on appeal that the turnover order was issued without the necessary evidentiary underpinnings, and that the scope of [the receiver's] powers exceeds that allowed by the statute. We construe this as a collateral attack on the turnover order. … Davis cannot use these alleged deficiencies … to hold [the receiver] … liable for actions taken in reliance upon the turnover order when she failed to timely prosecute a direct appeal of the turnover order or seek injunctive or mandamus relief prohibiting the execution of the turnover order.").

[58] *See Sun Tec Comput., Inc. v. Recovar Group, LLC*, No. 05-14-00257-CV, 2015 WL 5099191, *3-4 (Tex. App.—Dallas Aug. 31, 2015, no pet.) (mem. op.) (declaratory judgment action was an impermissible collateral attack on turnover of claims, "even if the turnover order and receiver's sale violated the open courts provision, a question we need not decide in this case").

[59] *See supra* Part IV(D).

are not separate causes of action.[60] "Negligence that proximately causes actual damage" supports actual damages.[61] But when "indifference to a given risk rises to the level of conscious indifference, that negligence becomes gross negligence" and supports punitive damages.[62]

*Ranger County Mutual Ins. Co. v. Guin*[63] illustrates this point in the *Stowers* context. First, the Texas Supreme Court approves jury instructions on negligence-based liability under *Stowers*. It finds: "The instructions given by the trial court properly explained the basis upon which the jury could find negligence in a case of this type."[64]

---

[60] *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 126 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Negligence and gross negligence are not separable causes of action, but are inextricably intertwined. Negligence is a liability finding, involving duty, breach, and causation. Gross negligence presumes a negligent act or omission and includes [further elements] ….."); *accord Inthavong v. Roosa*, No. 4:21-cv-00366, 2021 WL 5999279, *2 (S.D. Tex. Dec. 20, 2021) ("And Texas courts also observe, 'Negligence and gross negligence are not separable causes of action, but are inextricably intertwined.'"); *Rogers v. Atmos Energy Corp.*, No. 3:18-cv-0869-M, 2018 WL 11348093, *1 n.1 (N.D. Tex. May 11, 2018) (applying Texas law) ("Plaintiffs allege negligence, negligence per se, and gross negligence. These all constitute a single cause of action.").

[61] *Newman v. Tropical Visions, Inc.*, 891 SW 2d 713, 721 (Tex. App.—San Antonio 1994, writ denied).

[62] *Id.*

[63] *Ranger Cnty. Mut. Ins. Co. v. Guin*, 723 S.W.2d 656 (Tex. 1987).

[64] *Id.* at 660.

**F.     Twin City erroneously relies on the *Puga* opinion**

The district court opinion in *Puga v. New York Marine & General Ins. Co.* is not correct on the issue of whether punitive damages accompany assignment of a *Stowers* claim. Again, the case before this Court involves turnover without assignment, which is materially different.[65] Even so, the opinion is incorrect. The *Puga* opinion acknowledges the right to recover punitive damages in a *Stowers* case.[66] That part is accurate. But the opinion incorrectly concludes that no claim for punitive damages accompanies assignment of a *Stowers* claim.

First, the opinion notes that claimants were "silent on that issue" — *i.e.,* silent on whether the right to recover punitive damages "remains intact when the insured assigns the *Stowers* claim to a third party."[67] So, the court did not have the benefit of adversarial briefing on the issue.

Second, the recitation of law for assignments implicitly, though not expressly, recognizes that the assignment issue is one of *claims*, not *remedies*.[68] When it speaks of "actions for punitive damages" that do not survive death, it speaks of *claims* like malicious prosecution or "maliciously suing out a writ of attachment."[69] And it does not explain any relevance to the assignment issue.

---

[65] *See supra* Part IV(B).

[66] *Puga v. N.Y. Marine & General Ins. Co.,* No. 2:19-CV-381, 2021 WL 293270, *4 (S.D. Tex. Jan. 28, 2021).

[67] *Id.*

[68] *Id.* ("As Defendants assert, 'Courts addressing assignability have often distinguished between claims that are property-based and remedial and claims that are personal and punitive, holding that the former are assignable and the latter are not.").

[69] *Id.*

Third, it erroneously relies on a state court *equitable subrogation* opinion to find that no claim for punitive damages accompanies a *Stowers* negligence claim.[70] The relied-upon opinion explains that an *equitable subrogation* claimant "can only recover the amount he was required to pay because of the actions of the defendant."[71] That state court opinion explains the nature of that common law claim when it says: "We will follow the view of the majority of the supreme court justices, and therefore hold that an excess carrier, who brings suit based on the doctrine of equitable subrogation, cannot recover statutory or punitive damages from the primary carrier or the insured's defense counsel."[72] This is not an equitable subrogation case. This is not an assignment case.

## G.   Challenge to equitable relief: Twin City relies on wrong standard

The complaint asserts one cause of action — the *Stowers* claim.[73] It seeks *post-verdict* equitable injunctive relief as requested *remedies* for that claim, *if appropriate*.[74] First, it seeks "*appropriate*

---

[70] *Puga v. N.Y. Marine & General Ins. Co.,* No. 2:19-CV-381, 2021 WL 293270, *4 (S.D. Tex. Jan. 28, 2021) ("Consistent with that body of law, when a *Stowers* action is transferred to an excess carrier by equitable subrogation, no claim for punitive damages accompanies the *Stowers* negligence claim. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 134 (Tex. App. —Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692 (Tex. 2000). The Court holds that, for the same reasons, the same result obtains in a contractual assignment of a Stowers claim. Therefore, the Court GRANTS IN PART the motion to dismiss with respect to the claim for exemplary damages.").

[71] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 955 S.W.2d at 133.

[72] *Id*.

[73] *See generally* App., pp. 5-26 [2023-03-09 Original Petition and Jury Demand] (no other cause of action asserted).

[74] *See id*. at 25 ¶ 54(B)-(C).

injunctive relief" contingent on "a finding that Twin City violated the *Stowers* duty."[75] Any such relief is to be tailored to "*systemic* problems, deficiencies, and gaps that the *evidence* shows."[76] Second, it seeks "additional equitable relief *as may be appropriate*" to reduce risk of future violations, perhaps training or practices modifications "with the specifics to be tailored to the problems, deficiencies, and gaps that the *evidence* shows."[77]

Twin City attacks this relief as purportedly "frivolous" because the complaint cites no authority and does not plead the preliminary injunction standard.[78] But the complaint is not a brief, and Twin City provides zero basis to contest a request for *post-verdict* equitable injunctive relief *if appropriate* based on the *evidence*.

Twin City challenges this relief based on the wrong legal standard. It cites the standard for *preliminary* injunctive relief.[79] Like temporary restraining orders or preliminary injunctions. Twin City solely relies on *Shafer v. Muro*, which involved a *pro se* prisoner's motion for preliminary injunction.[80] The *Shafer* parenthetical cite is also to a case involving a "preliminary injunction," which is an "extraordinary remedy."[81] Neither involves standing or post-verdict relief.

---

[75] *See id.* at 25 ¶ 54(B).

[76] *See* App., p. 25 ¶ 54(B) [2023-03-09 Original Petition and Jury Demand].

[77] *See id.* at 25 ¶ 54(C).

[78] Twin City's Brief [ECF Doc. 35], p. 5, PageID 3102.

[79] *See id.* at 5-6.

[80] *Shafer v. Muro*, No. 2:20-CV-167, 2021 WL 2143614, *1 (S.D. Tex. May 25, 2021).

[81] *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013).

Twin City does not asset any other ground for the motion on this issue. So, the motion should be denied. But Jeff notes that post-verdict injunctive relief that benefits non-parties may sometimes be proper.[82]

### H.    A note about claims versus remedies

Twin City challenges remedies, not the claim. So, there is no doubt that the Court has jurisdiction over the *Stowers* claim at issue. Delving into whether jurisdictional attacks on remedies is appropriate, as opposed to jurisdictional attacks on claims, is not necessary. Because the Twin City challenges fail in any event.

Although the case before this Court does not involve an assignment, it is worth noting that public policy problems with assignment are directed to claims, not remedies. The analysis of remedies is part of a much broader analysis of whether *a claim* may be assigned. For example, the Texas Supreme Court in *PPG Industries* carved out from its opinion some DTPA *claims* that were not duplicative of other existing claims.[83]

---

[82] *Cf. Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 374 (5th Cir. 1981) ("Injunctive relief which benefits non-parties may sometimes be proper even where the suit is not brought as a Rule 23 class action.").

[83] *See PPG Indus. v. JMB/Houston Ctrs.*, 146 S.W.3d 79, 91-92 (Tex. 2004) ("… [W]e also reserve for another day the assignment of claims that were created within and could not be brought without the DTPA, such as false going-out-of-business sales or price-gouging during a disaster.").

I.    **Objections to unsupported statements, spin, and personal attacks**

Once again, Twin City's brief is full of unsupported statements, unnecessary adjectives, and personal attacks on Jeff's counsel. Jeff objects to all of it. For example, the brief states in conclusory fashion that there is no insurance coverage in this case.[84] If this is the first motion the Court addresses, that statement may mislead the Court into believing that lack of coverage is undisputed. Twin City had the benefit of analysis showing coverage with no exclusions from A-Z in connection with the *Stowers* settlement offer years ago.[85]

**V. Conclusion**

For the foregoing reasons, Jeff Carpenter respectfully requests that the Court deny the motion.

---

[84] *See, e.g.,* Twin City's Brief [ECF Doc. 35], p. 6.

[85] *See Appendix in Support of Plaintiff Jeff Carpenter's Response to Defendant's Motion for Summary Judgment* [ECF Doc. 29], pp. 1742-1937 (coverage analysis provided to Twin City March 11, 2016).

Respectfully submitted,


*/s/ Amy Gibson*

Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Jeff Carpenter*

### CERTIFICATE OF SERVICE

The undersigned certifies that, on October 18, 2023, she filed *Jeff Carpenter's Response to Defendant's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(c) and Brief in Support* with the United States District Court for the Northern District of Texas through the CM/ECF system, such that defendant should be served with a copy of the filed document as follows:

**VIA CM/ECF SYSTEM**

Ms. Christine Kirchner
c.kirchner@chamberlainlaw.com
Mr. Steven J. Knight
steven.knight@chamberlainlaw.com
Mr. Chris M. Lemons
chris.lemons@chamberlainlaw.com

Chamberlain Hrdlicka, White, Williams & Aughtry
1200 Smith Street #1400
Houston, Texas 77002

*Attorneys for Twin City Fire Insurance Company*

Mr. Michael W. Johnston
johnston@johnstonlegalgroup.com

Johnston Legal Group PC
1616 Wabash Avenue
Fort Worth, Texas 76107-6598

*Local Counsel for Twin City Fire Insurance Company*

*/s/ Amy Gibson*

Amy E. Gibson