IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | Civil Action No. 3:23-CV-00769-N |
| Twin City Fire Insurance Company, | § | |
| | § | Jury Demand |
| *Defendant.* | § | |

---

## APPENDIX IN SUPPORT OF JEFF CARPENTER'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(B)(1) AND RULE 12(C)

---

Appendix exhibits are bookmarked. This Appendix is bates-labeled at the bottom right of each page. Its pagination starts with this page so it will match the PACER pagination.

### INDEX OF EXHIBITS

Exhibit 1        March 9, 2023 Original Petition and Jury Demand

Exhibit 2        selected filings from prior case — judicial notice requested

Exhibit 2-1      April 30, 2021 Order Granting Amended Motion for Turnover of *Stowers* Claim

Exhibit 2-2      online docket sheet as of October 15, 2023

Exhibit 2-3      February 1, 2018 Charge of the Court & Jury Verdict

Exhibit 2-4      December 17, 2018 Final Judgment

Exhibit 2-5      August 27, 2020 Dallas Court of Appeals Memorandum Opinion
                 affirming judgment

Exhibit 2-6      January 22, 2021 notice — Texas Supreme Court denies
                 petition for review

Exhibit 2-7      March 5, 2021 notice — Texas Supreme Court denies motion
                 for rehearing

Exhibit 2-8      March 12, 2021 file-stamped Mandate

Exhibit 2-9      April 19, 2021 Amended Motion for Turnover of *Stowers* Claim

Exhibit 3        *Goggans v. Ford* opinion

Respectfully submitted,


*/s/ Amy Gibson*

Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Jeff Carpenter*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on October 18, 2023, she filed the *Appendix in Support of Jeff Carpenter's Response to Defendant's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(c)* with the United States District Court for the Northern District of Texas through the CM/ECF system, such that defendant should be served with a copy of the filed document as follows:

**<u>VIA CM/ECF SYSTEM</u>**

Ms. Christine Kirchner
c.kirchner@chamberlainlaw.com
Mr. Steven J. Knight
steven.knight@chamberlainlaw.com
Mr. Chris M. Lemons
chris.lemons@chamberlainlaw.com

Chamberlain Hrdlicka, White, Williams & Aughtry
1200 Smith Street #1400
Houston, Texas 77002

*Attorneys for Twin City Fire Insurance Company*

Mr. Michael W. Johnston
johnston@johnstonlegalgroup.com

Johnston Legal Group PC
1616 Wabash Avenue
Fort Worth, Texas 76107-6598

*Local Counsel for Twin City Fire Insurance Company*

*/s/ Amy Gibson*

———————————————————
Amy E. Gibson

# Exhibit 1

# 2023 Original Petition & Jury Demand

FILED
3/9/2023 11:25 PM
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

Case 3:23-cv-00769-N   Document 40   Filed 10/18/23   Page 6 of 217   PageID 3174

CAUSE NO. CC-23-01483-C

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | In the County Court |
| *v.* | § | |
| | § | At Law Nº |
| Twin City Fire Insurance Company, | § | |
| | § | Dallas County, Texas |
| *Defendant.* | § | |

---

# ORIGINAL PETITION AND JURY DEMAND

---

### DISCOVERY PLAN

1.     Jeff Carpenter intends discovery to be conducted under Level 3 of Texas Rule of Civil Procedure 190.

### INTRODUCTION AND NOTICE OF RELATED CASE: DALLAS COUNTY COURT AT LAW NO. 5

2.     This case appears to be a *related case* as described in Local Civil Rules 1.06, 1.07(a), and maybe 1.07(d).[1] It arises out of an earlier jury verdict and judgment in favor of Jeff Carpenter in Dallas County Court at Law No. 5, Cause Number CC-08-2072-E, styled

---

[1] Local Civ. R. 1.06 ("… pending case is so related to another case previously filed in or disposed of by another Court of Dallas County … that a transfer of the later case to such other Court would facilitate orderly and efficient disposition of the litigation …"); Local Civ. R. 1.07(a) ("Any case arising out of the same transaction or occurrence as an earlier case …."); Local Civ. R. 1.07(d) ("Any suit concerning which the duty of an insurer to defend was involved in the earlier suit.").

APPENDIX 000006

*Jeffrey W. Carpenter v. Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., Affordable Housing Construction, Inc., and Brian Potashnik.*

3.      In that earlier case, defendants' liability insurance carrier rejected a reasonable opportunity to settle for less than remaining policy limits. It did so even though policy limits were eroding toward zero with every penny of litigation costs and every dollar of attorneys' fees. Ultimately, four of its insureds were hit with an adverse jury verdict and a judgment that exceeded remaining policy limits by around $2 million.

4.      The defendant insureds appealed to the Fifth Court of Appeals and the Texas Supreme Court but were not successful. The judgment was affirmed and remains unsatisfied. Dallas County Court at Law No. 5 ordered turnover of the defendant insureds' common law *Stowers* claim against their liability insurance carrier, along with associated rights and privileges, to Jeff Carpenter. The present case involves that *Stowers* claim.

**PARTIES**

5.      Twin City Fire Insurance Company is licensed to conduct multiple lines of insurance business in Texas, according to the Texas Department of Insurance. It was licensed to conduct business in Texas, and did conduct business in Texas, at the time the claims asserted herein accrued. It may be served with process through its registered agent in Texas as follows:

CT Corporation System
1999 Bryan Street
Suite 900
Dallas, Texas 75201

6.      Jeff Carpenter is an individual who resided in Dallas County, Texas at the time the claims asserted herein accrued and who continues to reside in Dallas County, Texas.

## JURISDICTION

7.      The Court has subject matter jurisdiction over this case because (1) Jeff Carpenter seeks damages within its jurisdictional limits and (2) the asserted claims are not subject to exclusive jurisdiction in any other court.

8.      The Court has personal jurisdiction over Twin City Fire Insurance Company ("Twin City") because (1) the asserted claims arose directly from Twin City's acts and omissions in Texas, and (2) Twin City's affiliations with Texas are so continuous and systematic that Twin City is "essentially at home" in Texas.

## VENUE

9.      Venue is proper under Texas Civil Practice and Remedies Code § 15.002(a)(1) because all or a substantial part of the events and omissions giving rise to the asserted claims occurred in Dallas County, Texas. This case involves a liability insurance

company's negligence in Dallas County, Texas in rejecting a reasonable opportunity to set-tle within policy limits. It involves a jury verdict and judgment in Dallas County, Texas against the defendant insureds in excess of policy limits.

### SOME *STOWERS* FUNDAMENTALS

### basic negligence duty and reason for rule

10.    When insurance companies have the right to control settlement of claims against their insureds, they owe their insureds a *Stowers* duty. The *Stowers* opinion explains that the insurance company is:[2]

> held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages.

This duty sounds in negligence, has been around for almost a century, and is similar to other areas of law in which a right of control gives rise to a legal duty.[3]

---

[2] *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

[3] *See, e.g., Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("Having undertaken to install a plumbing system in the house, the plumber assumed an implied duty not to flood or otherwise damage the [] house while performing its contract with the builder.").

11.    The ultimate issue in a *Stowers* case is whether a settlement offer is such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to a judgment higher than the policy limits. The *Stowers* negligence standard is flexible and depends on context. Here is an example. The *Stowers* duty usually arises only with a settlement offer within policy limits. But it may also arise with a settlement offer above policy limits when the insured agrees to pay the excess.[4]

12.    The *Stowers* duty is born of insurance companies who want to save money for themselves to the detriment of insureds. If a policy limit is the maximum insurance company risk — whether a case settles or goes to trial —, then why settle at all? Why not gamble the insured's personal finances and take a chance at trial? Even if odds of a defense win are slim. Even if trial could expose the insured to damages higher than policy limits.

### insurer excuses: coverage dispute is no excuse

13.    Sometimes an insurance company admits a duty to defend but decides there is no indemnity coverage and so rejects a reasonable settlement offer within policy limits. In those situations, the insurance carrier "risks significant potential liability for bad-faith insurance practices [*Stowers*] if it does not ultimately prevail in its coverage contest."[5]

---

[4] *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 n.13 (Tex. 1994) ("We do not reach the question of when, if ever, a *Stowers* duty may be triggered if an insured provides notice of his or her willingness to accept a reasonable demand above the policy limits, and to fund the settlement, such that the insurer's share of the settlement would remain within the policy limits.").

[5] *Excess Underwriters at Lloyds, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 46 (Tex. 2008).

APPENDIX 000010

When it comes to the *Stowers* duty, the insurance carrier "bear[s] the risk that its point of view [on coverage] might have been incorrect, which could result in liability for any excess judgment."[6]

14.     So, a good faith dispute about insurance coverage is not a defense to *Stowers* liability. Reasonable doubt about insurance coverage is not a defense. Uncertainty about insurance coverage is not a defense. That a reasonable liability insurance carrier would contest coverage is not a defense. A mistaken belief that there is no coverage is not a defense.

### insurer excuses: not knowing all facts is no excuse

15.     Not knowing all the facts, or even most of the facts, does not mean there is no *Stowers* duty.[7] The question is whether, based on facts the insurer knew or should have known at the time, a settlement offer is such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to a judgment higher than the policy limits.

---

[6] *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 850 (Tex. 1994).

[7] *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, C.A. No. 3:10-CV-2048-D, n.10 (N.D. Tex. March 5, 2013) (citing references omitted) ("There is no per se requirement that an insurer know all, or even most, of the facts of the case in order to have a *Stowers* duty.").

APPENDIX 000011

## ABBREVIATED BACKGROUND: THE LIABILITY INSURANCE POLICY

### Twin City Fire Insurance Company



16.     The Hartford Financial Services Group, Inc. operates through subsidiaries under the brand name *The Hartford*. Twin City Fire Insurance Company ("Twin City") is one of those subsidiaries and uses *The Hartford* brand. It is part of the Hartford Fire & Casualty Group and is licensed to conduct multiple lines of insurance business in Texas.

### the named insureds

17.     Twin City issues a liability insurance policy under which named insureds include all the defendants in the earlier case:

---

[8] photograph credit: www.vacuumglassllc.com/the-hartford

| defendant insureds | abbreviated name |
|---|---|
| Southwest Housing Development Company, Inc. | SH Development |
| Affordable Housing Construction, Inc. | AH Construction |
| Southwest Housing Management Corporation, Inc. *a/k/a* and *d/b/a* Southwest Housing Management Company, Inc. | SH Management |
| Brian Potashnik | Brian |
| Cheryl Potashnik | Cheryl |

### control over defense and settlement

18.     Twin City controls the defense of its insureds.[9] It also controls settlement of claims against its insureds. It forbids its insureds, under any circumstances, from entering any settlement agreement without its prior written consent:[10]

> **(C)** The **Insureds** shall not admit nor assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** regarding any **Claim** without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any admission, assumption, settlement, stipulation, or **Defense Costs** to which it has not consented.

---

[9] Policy Common Terms & Conditions § VII(A) ("The Insurer shall have the right and duty to defend any Claim for which the Insureds give notice to the Insurer, even if such Claim is groundless, false or fraudulent. The Insurer may make any investigation it deems appropriate."); *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 846 (Tex. 1994) (describing this policy provision as giving insurance carrier control over the insured's defense).

[10] Policy Common Terms & Conditions § VII(C).

### deductible then $1 million eroding policy limits

19.     The policy has a $75,000 deductible and a $1 million aggregate limit of liabil-ity.[11] Defense costs are part of that $1 million limit:[12]

Once the deductible is met, policy limits erode toward zero with every penny of litigation costs and every dollar of attorneys' fees.[13]

### employment practices liability coverage

20.     At the time, the policy has a relatively high premium for such low aggregate policy limits. The employment practices liability ("EPL") coverage may partially explain this. The EPL part of the policy covers what many other insurance policies do not[14] — such as punitive damages, intentional misconduct, failure to comply with implied employment agreements, and failure to comply with  oral employment agreements.

---

[11] Policy Declarations, Item 5: Liability Coverage Part Elections.

[12] Policy Common Terms & Conditions § VI(A).

[13] *Id.* & Policy Common Terms & Conditions § II(E).

[14] *See, e.g.,* L.D. Simmons, II & Lowndes C. Quinlan, *New Appleman on Insurance Law* § 28.02[2][g], p. 28-22 (2015) ("Outside of the EPL market, insurance policies typically do not cover breach of contract claims.").

21.     Most other types of insurance policies — such as commercial general liability, auto, homeowners, errors and omissions, and directors and officers liability — do not cover these types of claims. But insurance companies developed and marketed EPL policies to cover gaps in other types of insurance policies.[15]

### duty to defend, duty to indemnify, and reservation of rights

22.     Policy premiums pay for two overarching forms of EPL coverage: (1) defense costs including attorneys' fees, and (2) liability for damages, also called indemnity. As to defense costs, Twin City owes the insureds a duty to defend. As to liability for damages, Twin City owes the insureds a duty to indemnify.

23.     In the earlier case, Twin City admits it has a duty to defend. After the defendant insureds meet the $75,000 deductible, Twin City defends under a reservation of rights on indemnity coverage. In the reservation of rights letter, Twin City wrongly claims lack of coverage on even dirt simple coverage issues, showing a lack of reasonable insurer conduct.

### ABBREVIATED BACKGROUND: FACTS TWIN CITY KNEW OR SHOULD HAVE KNOWN

24.     What follows is factual information Twin City knew, or should have known, at the time it rejected a reasonable settlement offer within policy limits.

---

[15] *See* Jeffrey W. Stemple, *Law of Insurance Contract Disputes* § 21.06, at 21-47 to 21-48.

**nature of insureds' business**

25.     The defendant insureds are in the affordable housing industry throughout Texas and a few other states. They work together to (1) develop or acquire sites for affordable housing communities, (2) construct new affordable housing units, and (3) manage continuing operation of the affordable housing community properties.



16

**decision to sell business, oral 3% pay-to-stay agreement**

26.     Brian and Cheryl Potashnik decide to sell their business. Brian — the highest-level person over all business entities — promises lucrative additional pay to executive Jeff Carpenter if Jeff will stay on to help make the asset sale happen. There will be a lot more work, such as due diligence and working to retain other important employees in the interim

---

[16] Potter's House at Primrose Senior Housing, photograph credit: www.apartment-guide.com/apartments/Texas/Dallas/Potters-House-at-Primrose-Senior-Housing/156183/

before any asset sale happens. Other than the Potashniks, Jeff will be the most important person to effectuate the sale and will often serve as the "face" of the companies.

27.     Once a letter of intent to sell assets is signed, Brian offers Jeff 3% of net proceeds from the asset sale if Jeff will continue to stay on as long as needed to help make the asset sale happen. The 3% is the total of: gross asset sale revenue to sellers, less normal closing costs, less sales proceeds bonuses paid to other employees [latter pay-to-stay incentives to be decided by Jeff]. They estimate the 3% deal at just over $1 million. The agreement is oral. They shake hands on the deal.

28.     Jeff stays on as long as needed. He delays start at a new job to stay on. He knows he will not have a job with the asset purchaser because the purchaser already has someone in his position. An asset sale agreement goes forward. The anticipated asset sale price is around $37 million. A separate agreement is signed to transfer asset management to the purchaser — including management of the affordable housing community properties. At that point, Brian and Cheryl inform their executive Jeff that he has completed his end of the bargain in staying on and is no longer needed.

### criminal investigation of owners
### and importance of pay-to-stay deal

29.     Before the decision to sell the business, the FBI raids the business and criminally investigates Brian and Cheryl Potashnik. The Potashniks deny any criminal wrongdoing. Employees including Jeff believe and trust them. Logically, preventing employee

mass exodus due to the criminal investigation, coupled with the potential sale of the busi-

ness, is important to attracting buyers for any actual sale of the business. Logically, pre-

venting mass exodus of key employees like Jeff is even more important.

### failure to comply with oral 3% deal and motive for doing so

30.     Once Brian and Cheryl confirm that Jeff kept his end of the bargain and will

no longer be needed or employed, they quickly back off the oral 3% deal. They've recently

been indicted on criminal charges. They're concerned about the asset sale and whether

they will have enough money left over to fund their own criminal defense.



---

[17] Photograph credit of Brian and Cheryl outside federal courthouse: Paul O'Donnell, published in the *The Dallas Morning News*, March 19, 2012.

31.   Brian says to Jeff in part:

Um, and as far as our agreement goes, where we compensate you, as we promised, it's gonna depend on where we end up in all of this.

***

I mean, I'm telling you that we're, we're going to dig ourselves out of this thing and then hopefully, you know, at the end of the day, get something out of it from Cascade [asset purchaser] and get the deal closed and pay the costs that we have to defend ourselves [in criminal proceedings] and have money left over so that we can, you know, give you a bonus, …

***

I mean, you have Cheryl and I both committed to you that when things work themselves out that there will be a bonus if there's anything there at the end of the day that we have where we can you know, actually give out bonuses …

***

I mean, and, you know, it sucks because obviously, at this point, we thought we'd have everything closed and that we would have some money. Um, we didn't think we would get, you know, would have been indicted. You know, I've been hearing for two years plus from Mike Uhl [criminal defense attorney] that you're not gonna get indicted, don't worry. They don't have a case. They don't have a case. You know.

***

It's a cluster fuck is what it is. And that's the whole problem right now. We just have no idea where this thing is going to uh, to settle out, you know. And I have the additional pressure, as does Cheryl on top of it, of not knowing where we're going to end up. You know, in our own lives personally and being separated as a family, God forbid and you know, I mean, I just don't uh, I don't know what to tell you.

***

We're, we're just trying to pay bills – trying to stay out of prison. I mean, what more can I tell you?

32.     Cheryl also does not appear to know or care that Texas enforces oral agreements and says to Jeff in part:

> You have conversations that we've had. You have intentions that we've had. You have what we intend to do and what we wanna do. You don't have any rights.
>
> ***
>
> So, you know, at the end of the day, you could not, you know, $37 million [asset sale price] goes like that. You know, it sounds like a lot of money, but on the business side and with all the contingent liability. You know, it's scary.
>
> ***
>
> You know it looked one way July 15th or June 15th whenever, I don't remember the exact time frame. But, you know, anticipating another six months of overhead and all the obligations that go along with it um, you know, it really starts to eat away at what's gonna be left.
>
> ***
>
> You know, and then it was like when, when we got indicted all of a sudden it was like oh my God. (inaudible 8:19 – 8:30) But, you know, there's just so much concern about what everybody's gonna do an how they're gonna react.

**lawsuit, insured defendants' loss on summary judgment**

33.     During the earlier case, the defendant insureds filed motions for summary judgment — a total of at least 4 motions for summary judgment. They claimed there was no evidence sufficient for a jury to return a verdict in Jeff's favor. The Court denied the motions.

**reasonable settlement offer within policy limits,
Twin City rejection, and consequences for insureds**

34.     Twin City receives a reasonable settlement offer within policy limits. The settlement offer is within coverage, within policy limits, and offers an unconditional and

full release of all insureds on all claims. The defendant insureds request and instruct Twin City to accept the offer.

35.     Twin City also receives warnings about common mistakes in *Stowers* evaluations, an extensive written coverage analysis showing that the oral handshake agreement claim [among others] is clearly covered, and additional information.

36.     After multiple extensions of time to consider the *Stowers* settlement offer, Twin City rejects the *Stowers* settlement offer and offers nothing to resolve the case — *i.e.*, zero. The highest settlement offer from the defense through multiple pretrial mediations is $100,000. The jury returns a verdict in favor of Jeff against four insureds for past earned wages due under an oral agreement. The jurors refer to this as the 3% deal. After a bench trial on attorneys' fees, the trial court renders a judgment that now exceeds $2 million. The defendant insureds appeal to the Fifth Court of Appeals and the Texas Supreme Court but are not successful.

37.     Twin City had the right under Texas law to seek a declaration on coverage before the harm occurred[18] — rejection of the *Stowers* offer and denial of coverage. The purpose is to clarify the parties' rights *before* harm occurs.[19] Twin City had about five years

---

[18] Tex. Civ. Prac. Rem. Code § 37.004(b) ("A contract may be construed either before or after there has been a breach.").

[19] *See* Tex. Civ. Prac. Rem. Code § 37.008 ("The court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy

to do so before the *Stowers* offer. It chose not to do so. It ignored coverage analysis provided

to it. It rejected a full-release settlement offer within policy limits. It instead exposed its

insureds to a multi-million-dollar final judgment that was more than 3 times the settlement

offer. It chose to exhaust its policy limits on an unsuccessful defense rather than a full-

release settlement. Its policy limits are now zero. Its later conduct also shows lack of rea-

sonableness, intent, and motive.

### FIRST CLAIM FOR RELIEF:
### VIOLATION OF *STOWERS* DUTY

38.    The above allegations are incorporated herein.

39.    Jeff has standing to bring this claim pursuant to a turnover order.

40.    Twin City received and rejected a reasonable settlement offer, such that an

ordinarily prudent insurer would accept the settlement offer, considering the likelihood and

degree of the insureds' potential exposure to a judgment higher than the policy limits.

41.    The oral handshake agreement claim against the insureds [among others] was

within the scope of policy coverage.

42.    The settlement offer was within policy limits and included a full release of all

insureds on all claims.

---

giving rise to the proceeding.'").

43.     The insureds agreed to dismiss their counterclaims and instructed Twin City to accept the settlement offer.

44.     The jury verdict and judgment resulted in covered damages far higher than policy limits.

45.     This petition seeks all foreseeable damages to the insureds as a result of the *Stowers* violation, including but limited to the amount of the judgment in excess of policy limits.

## EQUITABLE RELIEF

46.     Due to apparent systemic problems at Twin City, there is a reasonable likelihood that Twin City practices will result in noncompliance with the *Stowers* duty in the future. Twin City has not taken steps to show that it is unlikely to violate the law in the future.

## PUNITIVE DAMAGES

47.     The harm Twin City caused to its insureds resulted from malice or gross negligence. *Malice* means a specific intent to cause substantial injury or harm to the insureds. *Gross negligence* means an act or omission by Twin City:

> (1) which when viewed objectively from the standpoint of Twin City at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(2) of which Twin City has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

48.     Twin City was actually aware that the foreseeable consequences of its conduct could or would probably result in extraordinary harm not ordinarily associated with breach of contract or bad faith denial of an insurance claim — such as death, grievous physical injury, or financial ruin.

## CONDITIONS PRECEDENT

49.     All conditions precedent to filing suit and to recovery on the asserted claims have occurred, been performed, or been waived.

## JURY DEMAND

50.     Jeff requests a jury trial on all issues triable of right or choice by a jury.

## NO FEDERAL CLAIMS

51.     Jeff does not assert any claim, cause of action, or request for relief under any federal law in this original petition.

## REMEDIES REQUESTED

52.     Texas Rule of Civil Procedure 47 requires an original petition to select among specified ranges of potential relief. This original petition selects the range in Texas Rule of Civil Procedure 47(c)(4). This range may change over time. Jeff is free to suggest more or

less based on the evidence. The jury is free to find more or less at trial based on the evidence.

53.    This is because the rule is just meant to identify any expedited actions and the nature of the case at the time of filing. The rule does not affect a party's substantive rights.

54.    Jeff respectfully requests all appropriate legal and equitable remedies that may be available to him, including:

A.    judgment on the *Stowers* claim asserted herein;

B.    upon a finding that Twin City violated the *Stowers* duty, appropriate injunctive relief prohibiting Twin City from engaging in the systemic insurance practices that led to the violation — with the specifics to be tailored to the systemic problems, deficiencies, and gaps that the evidence shows;

C.    the following additional equitable relief as may be appropriate:

(1) requiring Twin City to provide training and otherwise modify its insurance practices in a way that reduces the risk of future violations of the *Stowers* duty — with the specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows;

(2) ordering all non-monetary equitable relief that may be appropriate to remedy the harm from a *Stowers* violation;

D.    all damages that the *Stowers* violation proximately caused;

E.    punitive damages as may be appropriate under Texas law;

F.    costs under the Texas Rules of Civil Procedure;

G.    prejudgment interest as allowed by law;

H.     postjudgment interest as allowed by law.

Respectfully submitted,

*/s/ Amy Gibson*

Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Jeff Carpenter*

APPENDIX 000026

# Exhibit 2

## selected filings from prior case

## —

## judicial notice requested

# Exhibit 2-1

# April 30, 2021 Order Granting Amended Motion for Turnover of *Stowers* Claim

CAUSE NO. CC-08-2072-E

| | |
|---|---|
| Jeffrey W. Carpenter, § | |
| § | |
| *Judgment Creditor,* § | |
| § | |
| v. § | In the County Court |
| § | |
| Southwest Housing § | at Law № 5 |
| Development Company, Inc.; § | |
| Southwest Housing § | Dallas, County, Texas |
| Management Corporation, § | |
| Inc. a/k/a and d/b/a Southwest § | |
| Housing Management § | |
| Company, Inc.; Affordable § | |
| Housing Construction, Inc.; § | |
| and Brian Potashnik, § | |
| § | |
| *Judgment Debtors.* § | |

## ORDER GRANTING AMENDED MOTION
## FOR TURNOVER OF *STOWERS* CLAIM

On ⟨*April 30, 2021*⟩ , the Court held a hearing by submission on Jeff

Carpenter's Amended Motion for a Turnover Order. Having considered the motion,

the pleadings on file, the evidence, and argument presented at that hearing, the

Court is of the opinion that this motion should be, and hereby is, GRANTED.

The Court FINDS that (1) Jeff Carpenter is a judgment creditor of the Judgment

Debtors listed above for the final judgment in this case; (2) the final judgment

remains unsatisfied; (3) the Judgment Debtors own a cause of action or causes of

action against their insurance carrier concerning liability for the final judgment in

CC - 08 - 02072 - E
COTO
ORDER - TURNOVER
2423441

APPENDIX 0029

this case; (4) the right to prosecute and recover on any such cause(s) of action cannot readily be attached or levied on by ordinary legal process and that right is not exempt under any statute from attachment, execution, or seizure; and (5) Judgment Debtors may have rights of access from their insurers, attorneys, and representatives to records and information and they should share those rights with Jeff Carpenter as a judgment creditor to aid in the evaluation and any prosecution of those claims.

The Court is of the opinion that Jeff Carpenter is entitled to the right to have liquidated all common law causes of action Judgment Debtors may own under *G. A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved) and its progeny, to see if they might satisfy, in whole or in part, the judgment in this case. So, in aid of the judgment in this case, IT IS ORDERED, ADJUDGED AND DECREED that any claims Judgment Debtors own under *Stowers* arising out of or related to this case are immediately TURNED OVER to Judgment Creditor Jeff Carpenter. This specifically includes, without limitation, those concerning Private Choice Encore! Policy number 00KB 0229269-07 that Twin City Fire Insurance Company issued.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Judgment Creditor Jeff Carpenter shall immediately have an equal right of access — co-extensive to that held by each and every Judgment Debtor — to information and documents related to the above-referenced claims. This specifically includes, without limitation, information and documents from each and every of Judgment Debtors'

individual insurers, attorneys, and representatives. It also specifically includes, without limitation, all insurance claim files and evaluations of coverage and communications between each and every Judgment Debtor and each and every of their insurers via their respective counsel. So, all current and former counsel for Judgment Debtors should immediately make all such information and documents equally available to Judgment Creditor Jeff Carpenter, via his counsel of record in this civil action, as they are available to any Judgment Debtor.

IT IS FURTHER ORDERED that Jeff Carpenter is immediately GRANTED — a right co-extensive with Judgment Debtors to assert or waive the attorney-client privilege and any work product exemption arising from or concerning communications to, from, or among Twin City Fire Insurance Company and any of its adjusters or their representatives, agents, or attorneys, concerning this case.

IT IS FURTHER ORDERED that this Order shall become effective on today's date. IT IS SO ORDERED this _30_ day of April, 2021, by

The Honorable Mark Greenberg
Dallas County Court Judge

# Exhibit 2-2

## online docket sheet
## as of October 15, 2023

## Case Information

CC-08-02072-E | JEFFREY W. CARPENTER vs. SOUTHWEST HOUSING DEVELOPMENT COMPANY, INC..et al

| | | |
|---|---|---|
| Case Number | Court | Judicial Officer |
| CC-08-02072-E | County Court at Law No. 5 | GREENBERG, MARK |
| File Date | Case Type | Case Status |
| 03/11/2008 | OTHER (CIVIL) | CLOSED |

## Party

PLAINTIFF
CARPENTER, JEFFREY W.

Active Attorneys ▾
Lead Attorney
GIBSON, AMY E
Retained

Attorney
SANFORD, BRIAN PAUL
Retained

Inactive Attorneys ▾
Attorney
DUNN, R ROGGE
Retained

Work Phone
214-888-5000

Fax Phone
214-220-3833

Attorney
HALOFTIS, DOUGLAS D
Retained

Work Phone
214-258-4200

Fax Phone
214-258-4199

APPENDIX 000033

Attorney

HALOFTIS, DOUGLAS D
Retained

Work Phone
214-258-4200

Fax Phone
214-258-4199

DEFENDANT
SOUTHWEST HOUSING DEVELOPMENT COMPANY, INC.

Active Attorneys▾
  Pro Se

Inactive Attorneys▾
Attorney
FRIEDMAN, JASON H.
Retained

Attorney
DONOHUE, MICHAEL D
Retained

Attorney
GILBREATH, ROBERT B
Retained

Attorney
ISRAELOFF, SIM
Retained

Work Phone
214-672-2000

Fax Phone
214-672-2020

DEFENDANT
SOUTHWEST HOUSING MANAGEMENT COMPANY, INC.

Active Attorneys▾
  Pro Se

Inactive Attorneys▾
Attorney
FRIEDMAN, JASON H.

APPENDIX 000034

Retained

Attorney
GILBREATH, ROBERT B
Retained

Attorney
DONOHUE, MICHAEL D
Retained

Attorney
ISRAELOFF, SIM
Retained

Work Phone
214-672-2000

Fax Phone
214-672-2020

DEFENDANT
AFFORDABLE HOUSING CONSTRUCTION, INC.

Active Attorneys ▾
  Pro Se

Inactive Attorneys ▾
Attorney
FRIEDMAN, JASON H.
Retained

Attorney
GILBREATH, ROBERT B
Retained

Attorney
DONOHUE, MICHAEL D
Retained

Attorney
ISRAELOFF, SIM
Retained

Work Phone
214-672-2000

Fax Phone
214-672-2020

APPENDIX 000035

DEFENDANT
POTASHNIK, BRIAN

Active Attorneys ▾
  Pro Se

Inactive Attorneys ▾
Attorney
FRIEDMAN, JASON H.
Retained

Attorney
GILBREATH, ROBERT B
Retained

Attorney
DONOHUE, MICHAEL D
Retained

Attorney
ISRAELOFF, SIM
Retained

Work Phone
214-672-2000

Fax Phone
214-672-2020

DEFENDANT
POTASHNIK, CHERYL

  Aliases
  N/K/A CHERYL GEISER

Active Attorneys ▾
Attorney
FRIEDMAN, JASON H.
Retained

Lead Attorney
GILBREATH, ROBERT B
Retained

Attorney
DONOHUE, MICHAEL D
Retained

APPENDIX 000036

DEFENDANT
CHERYL POTASHNIK N/K/A CHERYL GEISER

## Events and Hearings

03/11/2008 ISSUE CITATION  ▾

    Comment
    5 CIT 5TRO

03/11/2008 CITATION ▾

**Unserved**

Anticipated Server
**ATTORNEY**

Anticipated Method
Comment
**FF**

03/13/2008 ORIGINAL PETITION (OCA - NEW CASE FILED) ▾

03-11-2008 - Petition - CC Civ P - CC0802072E - 2710664.pdf

03/13/2008 CITATION ▾

Served
**03/20/2008**

Anticipated Server
**ATTORNEY**

Anticipated Method
Actual Server
**PRIVATE PROCESS SERVER**

Returned
**03/25/2008**
Served
**03/20/2008**

Anticipated Server
**ATTORNEY**

Anticipated Method
Actual Server

APPENDIX 000037

Actual Server
PRIVATE PROCESS SERVER

Returned
03/25/2008
Served
03/20/2008

Anticipated Server
ATTORNEY

Anticipated Method
Actual Server
PRIVATE PROCESS SERVER

Returned
03/25/2008
Served
03/21/2008

Anticipated Server
ATTORNEY

Anticipated Method
Actual Server
PRIVATE PROCESS SERVER

Returned
03/25/2008
Served
03/21/2008

Anticipated Server
ATTORNEY

Anticipated Method
Actual Server
PRIVATE PROCESS SERVER

Returned
03/25/2008
Comment
FF

04/07/2008 ORIGINAL ANSWER ▾

04-07-2008 - Answer - CC Civ P - CC0802072E - 2710660.pdf

   Comment
   COUNTERCLAIM

04/14/2008 COUNTER CLAIM

06/27/2008 MOTION - COMPEL ▾

06-27-2008 - Motion - CC Civ P - CC0802072E - 2710659.pdf

07/07/2008 DISMISSAL HEARING ▾

APPENDIX 000038

Judicial Officer
**GREENBERG, MARK**

Hearing Time
**9:00 AM**

Comment
**ANS FILED**

07/29/2008 RESPONSE ▾

RESPONSE

Comment
**IN OPPOSITON TO PLTY'S MOTION TO COMPEL**

08/01/2008 ORDER - MEDIATION

08/26/2008 CORRESPONDENCE - LETTER TO FILE ▾

08-26-2008 - Correspondence - CC Civ P - CC0802072E - 2710656.pdf

09/05/2008 MOTION - COMPEL ▾

Judicial Officer
**GREENBERG, MARK**

Hearing Time
**2:00 PM**

10/22/2008 MOTION - CLARIFY ▾

10-22-2008 - Motion - CC Civ P - CC0802072E - 2710654.pdf

Comment
**AND RECONSIDERATION**

10/24/2008 VACATION LETTER

12/12/2008 MOTION - HEARING ▾

Judicial Officer
**GREENBERG, MARK**

Hearing Time
**10:30 AM**

Comment
**ON CLARIFY AND RECONSIDERATION**

12/12/2008 MOTION - WITHDRAW ATTORNEY ▾

12-12-2008 - Motion - CC Civ P - CC0802072E - 2710651.pdf

**APPENDIX 000039**

12/18/2008 ORDER - WITHDRAW ATTORNEY

12/18/2008 ORDER - ARBITRATION

03/16/2009 MOTION - QUASH ▾

03-16-2009 - Motion - CC Civ P - CC0802072E - 2710650.pdf

    Comment
    AND PROTECTIVE ORDER

06/05/2009 RESPONSE ▾

RESPONSE

    Comment
    MOTION QUASH AND FOR PROTECTIVE ORDER

06/12/2009 MOTION - CONTINUANCE ▾

06-12-2009 - Motion - CC Civ P - CC0802072E - 2710647.pdf

06/12/2009 MOTION - PROTECT ▾

06-12-2009 - Motion - CC Civ P - CC0802072E - 2710646.pdf

06/22/2009 CORRESPONDENCE - LETTER TO FILE ▾

06-12-2009 - Notice - CC Civ P - CC0802072E - 2710648.pdf

07/06/2009 SUPPLEMENTAL - AFFIDAVIT ▾

07-06-2009 - Affidavit - CC Civ P - CC0802072E - 2710644.pdf

    Comment
    TO MOTION FOR CONTINUANCE

07/06/2009 SUPPLEMENTAL - AFFIDAVIT ▾

07-06-2009 - Affidavit - CC Civ P - CC0802072E - 2710643.pdf

    Comment
    MOTION FOR PROTECTIVE ORDER

07/17/2009 MOTION - QUASH ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

APPENDIX 000040

Comment
AND M/ FOR PROTECTIVE ORDER

07/22/2009 CORRESPONDENCE - LETTER TO FILE ▾

07-22-2009 - Correspondence - CC Civ P - CC0802072E - 2710641.pdf

07/24/2009 MOTION - CONTINUANCE ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
per nina

09/04/2009 STATUS CONFERENCE ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
11:30 AM

12/29/2009 ORDER - MEDIATION

01/05/2010 MOTION - SUBSTITUTING MEDIATOR ▾

01-05-2010 - Motion - CC Civ P - CC0802072E - 2710637.pdf

Comment
AGREED

01/07/2010 ORDER - SUBSTITUTING MEDIATOR ▾

Comment
AGREED

03/01/2010 MOTION - CONTINUANCE ▾

03-01-2010 - Motion - CC Civ P - CC0802072E - 2710634.pdf

Comment
AGREED

03/03/2010 ORDER - CONTINUANCE ▾

03-03-2010 - Notice - CC Civ P - CC0802072E - 2710636.pdf

APPENDIX 000041

03/22/2010 OBJECTION ▾

OBJECTION

Comment
to referral to mediation - ec057j015712917

03/22/2010 CORRESPONDENCE - LETTER TO FILE ▾

03-22-2010 - Correspondence - CC Civ P - CC0802072E - 2710632.pdf

03/26/2010 RESPONSE ▾

Comment
TO OBJECTION TO REFERRAL TO MEDIATION

04/09/2010 OBJECTIONS ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

04/30/2010 OBJECTIONS ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

04/30/2010 OBJECTION ▾

Comment
overruling objection to referral to mediation

05/05/2010 NON JURY TRIAL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

07/13/2010 MOTION - SUBSTITUTION OF COUNSEL ▾

07-13-2010 - Motion - CC Civ P - CC0802072E - 2710631.pdf

APPENDIX 000042

07/14/2010 ORDER - SUBSTITUTION OF COUNSEL ▾

07-14-2010 - Order - CC Civ M - CC0802072E - 3048 - 2124735.pdf

07-14-2010 - Order - CC Civ M - CC0802072E - 3048 - 2124735 (1).pdf

09/16/2010 VACATION LETTER ▾

Comment
NOV. 17 - 28, 2010

10/14/2010 VACATION LETTER ▾

Comment
NOV. 17 - 26, DEC. 20, 2010 - JAN. 3, MARCH 14 - 25, 2011

11/08/2010 BAILIFF DEMAND

11/08/2010 JURY TRIAL DEMAND

11/08/2010 MOTION - CONTINUANCE ▾

Comment
AGREED JOINT

11/10/2010 NON JURY TRIAL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

11/10/2010 JURY DEMAND ▾

Comment
PLAINTIFF AND COUNTER-DEFENDANT'S

11/10/2010 MOTION - MISCELLANEOUS ▾

Comment
CLIENT CONSENT TO AGREED JOINT MOTIONFOR CONTINUANCE OF SECOND TRIAL SETTING

11/10/2010 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

Comment
agreed

APPENDIX 000043

02/25/2011 VACATION LETTER

04/11/2011 VACATION LETTER

05/12/2011 MOTION - CONSOLIDATE ▾

05-12-2011 - Motion - Consol. - CC Civ P - CC0802072E - 4144096.pdf

Comment
AGREED AND JOINT ORDER CONSOLIDATE 5/18/11

05/18/2011 ORDER - CONSOLIDATE ▾

ORDER - CONSOLIDATE

06/16/2011 VACATION LETTER

07/26/2011 MOTION - CONTINUANCE ▾

07-26-2011 - Motion - CC Civ P - CC0802072E - 4831498.pdf

07-26-2011 - Motion - CC Civ P - CC0802072E - 4831493.pdf

08/01/2011 JURY TRIAL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

12/02/2011 VACATION LETTER ▾

Comment
DEC. 16, 2011 - JAN. 2, 2012; JAN. 19 - 23, 2012; FEB. 1 - 17, 2012; MAR. 28 - 30, 2012; APR. 24 - 27, 2012; MAY 11, 2012; MAY 23 - 28, 2012; + JUN. 28 - JUL. 13, 2012

02/23/2012 MOTION - CONTINUANCE ▾

02-23-2012 - Motion - CC Civ P - CC0802072E - 7409799.pdf

Comment
AGREED JOINT AND PROPOSED ORDER

02/23/2012 MISCELLANEOUS ▾

02-23-2012 - Motion - CC Civ P - CC0802072E - 7409800.pdf

Comment
VERIFICATION FOR AGREED JOINT MOTION FOR BRIEF CONTINUANCE OF MARCH 5 2012 TRIAL SETTING

APPENDIX 000044

02/24/2012 CORRESPONDENCE - LETTER TO FILE ▾

02-24-2012 - Correspondence - CC Civ P - CC0802072E - 7452159.pdf

02/27/2012 MOTION - CONTINUANCE ▾

02-27-2012 - Motion - CC Civ P - CC0802072E - 7460592.pdf

Comment
JOINT AGREED

02/27/2012 MISCELLANEOUS ▾

02-27-2012 - Misc. Document - CC Civ P - CC0802072E - 7454964.pdf

02-27-2012 - Misc. Document - CC Civ P - CC0802072E - 7454964 (1).pdf

Comment
CLIENTS CONSENT ON BEHALF OF DEFT'S

02/27/2012 ORDER - CONTINUANCE ▾

02-28-2013 - Order - Continuance - CC Civ M - CC0802072E - - 13610526.pdf

02-28-2013 - Order - Continuance - CC Civ M - CC0802072E - - 13610526 (1).pdf

02/28/2012 CORRESPONDENCE - LETTER TO FILE ▾

02-28-2012 - Correspondence - CC Civ P - CC0802072E - 7486818.pdf

Comment
RECEIVED CORRESPONDENCE BUT NOTHING WAS ENCLOSED

03/05/2012 JURY TRIAL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
AGREED ORDER CON'T 2/27/12

03/26/2012 VACATION LETTER

03/27/2012 ORDER - MEDIATION ▾

ORDER - MEDIATION

APPENDIX 000045

04/06/2012 OBJECTION ▾

OBJECTION

   Comment
   TO MEDIATION

---

07/18/2012 MOTION - CONFERENCE ▾

07-18-2012 - Motion - CC Civ P - CC0802072E - 9453337.pdf

   Comment
   JOINT MOTION FOR STATUS CONFERENCE,,, WITH PROPOSED ORDER

---

07/20/2012 CORRESPONDENCE - LETTER TO FILE ▾

07-20-2012 - Correspondence - CC Civ P - CC0802072E - 9510213.pdf

---

07/24/2012 CORRESPONDENCE - LETTER TO FILE ▾

07-24-2012 - Correspondence - CC Civ P - CC0802072E - 9565650.pdf

---

07/27/2012 MOTION - CONTINUANCE ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

---

08/15/2012 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

   Comment
   AGREED

---

08/17/2012 STATUS CONFERENCE ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

Cancel Reason
BY COURT ADMINISTRATOR

Comment
PER SANDRA

---

08/20/2012 JURY TRIAL ▾

Judicial Officer
GREENBERG, MARK

APPENDIX 000046

Hearing Time
9:00 AM

Comment
AGREED ORDER CON'T 8/15/12

01/02/2013 VACATION LETTER

02/26/2013 MOTION - CONTINUANCE ▾

02-26-2013 - Motion - CC Civ P - CC0802072E - 13558975.pdf

Comment
AGREED FOR APRIL 22, 2013 TRIAL SETTING. Agreed Order Con't 2/28/13

02/28/2013 ORDER - CONTINUANCE ▾

02-28-2013 - Order - Continuance - CC Civ M - CC0802072E - - 13610526.pdf

02-28-2013 - Order - Continuance - CC Civ M - CC0802072E - - 13610526 (1).pdf

04/22/2013 JURY TRIAL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

04/22/2013 VACATION LETTER

05/28/2013 MOTION - PROTECTIVE ORDER ▾

MOTION - PROTECTIVE ORDER

Comment
JOINT - W/PROPOSED ORDER

05/29/2013 ORDER - PROTECTIVE ▾

ORDER - PROTECTIVE

Comment
INTERIM

05/31/2013 MOTION - NO EVIDENCE ON SUMMARY JUDGMENT ▾

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

APPENDIX 000047

05/31/2013 MOTION - NO EVIDENCE ON SUMMARY JUDGMENT ▾

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

05/31/2013 MOTION - NO EVIDENCE ON SUMMARY JUDGMENT ▾

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

07/03/2013 MOTION - NO EVIDENCE ON SUMMARY JUDGMENT ▾

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

Comment
AND TRADITIONAL NO ORDER ATTACHED

07/08/2013 CORRESPONDENCE ▾

CORRESPONDENCE

Comment
HEARING NOTICE

07/11/2013 VACATION LETTER ▾

VACATION LETTER

07/19/2013 AMENDED PETITION ▾

AMENDED PETITION

07/19/2013 RULE 11 AGREEMENT ▾

RULE 11 AGREEMENT

07/22/2013 MISCELLANEOUS ▾

MISCELLANEOUS

Comment
APPENDIX IN SUPPORT OF JEFFREY CARPENTER'S CONSODLIATED RESPONSE TO DEFT MTN FOR
SUMMARY JUDGEMENT

07/22/2013 RESPONSE ▾

RESPONSE

Comment
TO DEFTS' MSJ

APPENDIX 000048

07/22/2013 MISCELLANEOUS ▼

Comment
APPENDIX IN SUPPORT OF PLTF'S RESPONSE

07/26/2013 MOTION - NO-EVIDENCE SUMMARY JUDGMENT ▼

Judicial Officer
GREENBERG, MARK

Hearing Time
2:00 PM

07/26/2013 REPLY ▼

REPLY

Comment
DEFENDANT SOUTHWEST HOUSING MANAGEMENT COMPANY, INC.'S REPLY TO PLAINTIFF'S
RESPONSE TO MOTION FOR SUMMARY JUDGMENT

07/26/2013 OBJECTION ▼

OBJECTION

Comment
TO EVIDENCE PROFFERED IN SUPPORT OF DEFTS' MOTIONS FOR SUMMARY JUDGMENT AND BRIEF
IN SUPPORT

07/31/2013 SPECIAL EXCEPTION ▼

SPECIAL EXCEPTIONS

08/01/2013 NOTICE - HEARING ▼

NOTICE OF HEARING

08/08/2013 ORDER - DENYING ▼

ORDER - DENYING

Comment
DEFTS' (4) MSJ'S

08/08/2013 ORDER - JUDGE'S RULING ▼

ORDER - JUDGE'S RULING

Comment
RE: DEFTS' (4) MSJ'S

APPENDIX 000049

08/15/2013 RESPONSE ▾

RESPONSE

    Comment

    TO DEFENDANTS' SPECIAL EXCEPTIONS AND BRIEF IN SUPPORT

08/19/2013 SPECIAL EXCEPTIONS ▾

SPECIAL EXCEPTIONS

Judicial Officer

GREENBERG, MARK

Hearing Time

8:30 AM

Comment

30 MIN

09/10/2013 MOTION - CONTINUANCE ▾

MOTION - CONTINUANCE

    Comment

    AGREED ORDER CON'T 9/12/13

09/12/2013 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

    Comment

    AGREED

10/14/2013 JURY TRIAL ▾

Judicial Officer

GREENBERG, MARK

Hearing Time

9:00 AM

Cancel Reason

REQUESTED BY ATTORNEY/PRO SE

11/06/2013 VACATION LETTER

02/20/2014 VACATION LETTER

03/11/2014 MOTION - CONTINUANCE ▾

2014-03-11 Agreed Motion for Continuance.pdf

    Comment

    AGREED ORDER CON'T 3/12/14

03/11/2014 PROPOSED ORDER ▾

**APPENDIX 000050**

Proposed Order.pdf

Comment
AGREED ORDER CONTINUANCE 3/12/14

03/12/2014 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

Comment
AGREED

04/07/2014 JURY TRIAL ▾

NOTICE

NOTICE

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

04/14/2014 JURY TRIAL ▾

NOTICE

NOTICE

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
BY COURT ADMINISTRATOR

05/21/2014 VACATION LETTER

06/05/2014 VACATION LETTER

08/15/2014 MOTION - CONTINUANCE ▾

CONTINUANCESWH.pdf

Comment
AGREED

08/15/2014 PROPOSED ORDER ▾

ORDERSWH.pdf

APPENDIX 000051

Comment

08/19/2014 CORRESPONDENCE
PROPOSED ORDER GRANTING CONTINUANCE

LETTERSWH.pdf

08/19/2014 CORRESPONDENCE - LETTER TO FILE ▾

ORDERSWH.pdf

Comment
W/Proposed Order

08/19/2014 PROPOSED ORDER ▾

PROPOSED ORDER

Comment
FOR AGREED CONTINUANCE

08/19/2014 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

Comment
AGREED

09/08/2014 JURY TRIAL ▾

NOTICE

NOTICE

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
3/12/14 Agreed Scheduling Order (Non Jury Week)

09/09/2014 VACATION LETTER

02/04/2015 VACATION LETTER

03/03/2015 MOTION - QUASH ▾

7300-005[2015-03-03 15-16-14].pdf

Comment
NON-PARTY SUBPEONA

APPENDIX 000052

03/11/2015 RESPONSE ▾

2015-03-11 JC Response to MTQuash.doc.pdf

Exh A Excerpts from Carpenter's First Amended Petition.pdf

Exh B Excerpts from Non-Party Notice SDT.pdf

Exh C Email from Attorney for Non-Party.pdf

Comment
TO MOTION TO QUASH AND BRIEF IN SUPPORT

03/11/2015 MOTION - CONTINUANCE ▾

Mtn for Cont.pdf

Comment
AGREED

03/11/2015 PROPOSED ORDER ▾

PROPOSED ORDER FOR CONTINUANCE

Comment
FOR CONTINUANCE

03/13/2015 MOTION - QUASH ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

03/13/2015 MISCELLANEOUS ▾

Jeff Carpenter Consent to Continuance

Comment
JEFF CARPENTER'S CONSENT TO CONTINUANCE

03/13/2015 ORDER - DENYING ▾

ORDER - DENYING

Comment
MTQ

APPENDIX 000053

03/13/2015 ORDER - SCHEDULING ▾

ORDER - SCHEDULING

> Comment
> AGREED

04/20/2015 JURY TRIAL ▾

NOTICE

NOTICE

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

04/28/2015 VACATION LETTER

09/09/2015 AMENDED ANSWER - AMENDED GENERAL DENIAL ▾

Amd Answer -Amd Counterclaim.pdf

> Comment
> FIRST AMENDED ANSWER AND FIRST AMENDED COUNTERCLAIM

09/29/2015 AMENDED ANSWER - AMENDED GENERAL DENIAL ▾

2nd Amnd Petition.pdf

> Comment
> SECOND

10/05/2015 AMENDED PETITION ▾

2015-10-05 2nd Amended Petition.docx.pdf

> Comment
> SECOND

10/13/2015 ORIGINAL ANSWER ▾

2015-10-13 Answer to Counterclaim.pdf

03/16/2016 MOTION - CONTINUANCE ▾

MOTION FOR CONTINUANCE

APPENDIX 000054

03/16/2016 MISCELLANEOUS ▾

CONSENT TO CONTINUANCE

Comment
JEFF CARPENTER'S CONSENT TO CONTINUANCE

03/17/2016 CORRESPONDENCE - LETTER TO FILE ▾

COVER LETTER

AGREED ORDER ON AGREED JOINT MOTION TO CONTINUE TRIAL SETTING

03/22/2016 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

Comment
AGREED

04/25/2016 JURY TRIAL ▾

NOTICE

NOTICE

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

05/10/2016 CORRESPONDENCE ▾

CORRESPONDENCE - LETTER TO FILE

PROPOSED AGREED SCHEDULING ORDER

05/11/2016 VACATION LETTER

05/11/2016 ORDER - SCHEDULING ▾

ORDER - SCHEDULING

Comment
AGREED

07/05/2016 AMENDED ANSWER - AMENDED GENERAL DENIAL ▾

FIRST AMENDED TO DEFT'S SECOND AMENDED CC

Comment
FIRST TO DEFENDNAT'S SECOND AMENDED COUNTERCLAIMS

APPENDIX 000055

07/05/2016 AMENDED PETITION ▼

PLAINTIFF'S THIRD AMENDED PETITION

Comment
PLAINTIFF'S THIRD AMENDED PETITION ANF JURY DEMAND

07/20/2016 MOTION - DISMISS ▼

MOTION TO DISMISS

07/25/2016 NOTICE - HEARING ▼

NOTICE OF HEARING

07/29/2016 MOTION - QUASH ▼

DEFENDANT'S MOTION TO QUASH

08/02/2016 DESIGNATION - EXPERT WITNESS ▼

DEFENDANTS??? DESIGNATION OF EXPERT.pdf

08/03/2016 RESPONSE ▼

RESPONSE

Comment
TO DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT

08/05/2016 MOTION - DISMISS ▼

Judicial Officer
GREENBERG, MARK

Hearing Time
1:15 PM

08/05/2016 MISCELLANEOUS ▼

MISCELLANEOUS

Comment
DEPUTY REPORTERS STATEMENT

08/05/2016 ORDER - DENYING ▼

ORDER - DENYING

Comment
MOTION TO DISMISS

08/15/2016 RETURN OF SERVICE ▼

**APPENDIX 000056**

RETURN

Comment
SUBPOENA SERVED UPON: VAN TRACY ON 8/10/16 @ 11:35 A.M.

08/30/2016 NOTICE - HEARING ⌄

NOTICE OF HEARING

09/13/2016 RESPONSE ⌄

MOTION TO QUASH RESPONSE

Comment
TO MOTION TO QUASH

09/16/2016 MOTION - QUASH ⌄

Judicial Officer
GREENBERG, MARK

Hearing Time
1:15 PM

09/16/2016 ORDER - QUASH ⌄

ORDER - QUASH

12/08/2016 RETURN OF SERVICE ⌄

RETURN OF SERVICE

Comment
SUBPOENA SERVED ON VILLAGE GREEN MANAGEMENT COMPANY ON 12/08/16 @ 11:30 A.M.

12/15/2016 RETURN OF SERVICE ⌄

RETURN

Comment
FORE PROPERTY COMPANY SUBPOENA PROOF OF SERVICE ON 12/14/16

01/05/2017 MOTION - PARTIAL SUMMARY JUDGMENT ⌄

MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Comment
AND BRIEF IN SUPPORT

01/17/2017 NOTICE - HEARING ⌄

2017-01-17 Hearing Notice [JC MPSJ].docx.pdf

APPENDIX 000057

01/25/2017 MOTION - CONTINUANCE ▾

PROPOSED ORDER FOR CONTINUANCE

MOTION FOR CONTINUANCE

01/26/2017 NOTICE - HEARING ▾

Notice of Hearing_Defs' Motion for Continuance.pdf

02/02/2017 SUPPLEMENTAL - MOTION ▾

SUPPLEMENTAL MOTION

Comment
JEFF CARPENTER'S JOINDER IN AND SUPPLEMENTAL TO MOTION FOR CONTINUANCE

02/02/2017 CORRESPONDENCE - LETTER TO FILE ▾

CORRESPONSE-CONSENT TO CONTINUANCE

Comment
JEFF CARPENTER'S CONSENT TO CONTINUANCE

02/03/2017 MOTION - CONTINUANCE ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:00 AM

02/08/2017 NOTICE - HEARING ▾

AMENDED NOTICE OF HEARING

Comment
AMENDED

02/08/2017 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

02/20/2017 JURY TRIAL ▾

NOTICE

NOTICE

Judicial Officer
GREENBERG, MARK

Hearing Time

APPENDIX 000058

9:00 AM

Cancel Reason
BY COURT ADMINISTRATOR

03/06/2017 JURY TRIAL ▾

CCL#5 JURY LETTER - Only

CCL#5 JURY LETTER - Only

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

04/13/2017 NOTICE - HEARING ▾

SECOND AMENDED NOTICE OF HEARING

> Comment
> SECOND AMENDED NOTICE OF HEARING

04/28/2017 RESPONSE ▾

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION

> Comment
> TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

05/19/2017 MOTION - PARTIAL SUMMARY JUDGMENT ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

06/29/2017 VACATION LETTER ▾

> Comment
> FRIEDMAN'S VACATION LETTER

09/18/2017 JURY TRIAL ▾

CCL#5 JURY LETTER - Only

CCL#5 JURY LETTER - Only

Judicial Officer
GREENBERG, MARK

Hearing Time

APPENDIX 000059

9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

---

11/20/2017 MOTION - QUASH ▾

MOTION TO QUASH

Comment
DEFENDANT BRIAN POTASHNIK'S MOTION TO QUASH DEPOSITION NOTICE, AND MOTION FOR
PROTECTIVE ORDER

---

11/22/2017 NOTICE - HEARING ▾

NOTICE OF HEARING

Comment
MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER FOR 12/1/2017 AT 11:00 AM

---

11/29/2017 RESPONSE ▾

RESPONSE TO MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

Comment
TO MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

---

11/30/2017 NOTICE ▾

NOTICE OF WITHDRAWAL

Comment
OF WITHDRAWAL OF MOTION TO QUASH DEPOSITION NOTICE, AND MOTION FOR PROTECTIVE
ORDER

---

12/01/2017 MOTION - QUASH ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
11:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
AMY GIBSON 214-417-9233

---

12/11/2017 MOTION - PROTECTIVE ORDER ▾

EMERGENCY MOTION FOR CONTINUANCE

Comment
EMERGENCY

APPENDIX 000060

12/11/2017 RULE 11 AGREEMENT ▼

RULE 11 AGREEMENT

12/11/2017 MOTION - COMPEL ▼

MOTION TO COMPEL DISCOVERY

Comment
DISCOVERY

12/11/2017 RESPONSE ▼

RESPONSE TO EMERGENCY MOTION FOR PROTECTION

Comment
TO EMERGENCY MOTION FOR PROTECTION

12/11/2017 SPECIAL EXCEPTION ▼

SPECIAL EXCEPTION TO THIRD AMENDED PETITION

Comment
TO THIRD AMENDED PETITION

12/13/2017 CORRESPONDENCE - LETTER TO FILE ▼

REQUEST TO JUDGE

Comment
LETTER TO JUDGE GREENBERG

12/13/2017 NOTICE - HEARING ▼

NOTICE OF HEARING

12/13/2017 NOTICE - HEARING ▼

HEARING FOR SPECIAL EXCEPTION

Comment
SPECIAL EXCEPTION

12/15/2017 MOTION - CONTEMPT ▼

MOTION FOR CONTEMPT

Comment
FOR MISSING COURT APPOINTED MEDIATION

APPENDIX 000061

12/15/2017 NOTICE ▾

NOTICE OF SECURITY GUARD TO ATTEND DEPO

Comment
NOTICE OF SECURITY GUARD TO ATTEND ORAL DEPOSITION OF BRIAN POTASHNIK

12/19/2017 RESPONSE ▾

DEFENDANTS BRIAN POTASHNIK S RESPONSE

Comment
RESPONSE TO PLAINTIFF'S MOTION TO HOLD DEFENDANT BRIAN POTASHNIK IN CONTEMPT FOR SKIPPING COURT-ORDERED MEDIATION,

12/21/2017 MOTION - NO EVIDENCE ON SUMMARY JUDGMENT ▾

MOTION - NO EVIDENCE SUMMARY JUDGMENT

12/21/2017 NOTICE - HEARING ▾

NOTICE OF HEARING

12/22/2017 NOTICE - HEARING ▾

RESPONSE

12/22/2017 MOTION - IN LIMINE ▾

MOTION - IN LIMINE

12/22/2017 SUPPLEMENTAL ANSWER - GENERAL DENIAL ▾

DEFENDANT'S SUPPLEMENT TO SECOND AMENDED ANSWER

Comment
DEFENDANTS SUPPLEMENT TO SECOND AMENDED ANSWER

12/27/2017 BRIEF FILED ▾

DEFENDANTS BRIEF IN SUPPORT OF MOTION IN LIMINE ON

Comment
DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE ON THE INADMISSIBILITY OF EVIDENCE OF PRIOR CONVICTIONS OF DEFENDANTS BRIAN POTASHNIK AND CHERYL POTASHNIK

12/28/2017 MOTION - EMERGENCY ▾

DEFENDANTS EMERGENCY MOTION FOR HEARING SETTING

APPENDIX 000062

12/28/2017 OBJECTION ▾

OPPOSITION

> Comment
> TO EMERGENCY MOTION

01/02/2018 SERVICE OF PROCESS ▾

RETURN OF SERVICE

> Comment
> SUMMON: DEEPAK SUILAKHE ON 12/29/2017 AT 7:06PM

01/05/2018 NOTICE OF FILING BUSINESS RECORDS AFFIDAVITS ▾

DEFENDANTS NOTICE OF FILING BUSINESS RECORD AFFIDAVIT

> Comment
> DEFENDANTS' NOTICE OF FILING BUSINESS RECORD AFFIDAVIT

01/08/2018 MOTION - COMPEL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
8:45 AM

Comment
AMY; 214-417-9233

01/08/2018 NOTICE - HEARING ▾

Letter Cancellation of 1-10-18 Hearing.pdf

> Comment
> CANCELLATION

01/08/2018 MOTION - MISCELLANEOUS ▾

MOTION TO EQUALIZE

> Comment
> MOTION TO EQUALIZE AND BRIEF IN SUPPORT

01/08/2018 MOTION - RECONSIDER ▾

MOTION FOR RECONSIDERATION OF ORDER

> Comment
> OF ORDER ON JEFF CARPENTER'S MOTION TO COMPEL DISCOVERY

01/08/2018 ORDER - COMPEL ▾

ORDER - COMPEL

**APPENDIX 000063**

01/09/2018 RESPONSE ▾

RESPONSE

Comment
RESPONSE TO SPECIAL EXCEPTIONS

01/09/2018 CERTIFICATE - CONFERENCE ▾

CERTIFICATE OF CONFERENCE

Comment
ON MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO COMPEL DISCOVERY

01/10/2018 MOTION - HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
08:40 AM

Cancel Reason
CLERICAL ERROR

Comment
DEFENDANTS' MOTION IN LIMINE ROLAND JACKSON 972-450-7334 (STATED DOES NOT NEED A COURT REPORTER)

01/10/2018 NOTICE - HEARING ▾

NOTICE OF HEARING

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 1/3/2018

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 1/4/2018

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 1/9/2018

APPENDIX 000064

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 1/6/2018

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 1/2/2018

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 1/8/2018

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 12/30/2017

01/10/2018 RETURN OF SERVICE ▾

SUBPOENA

Comment
SUBPOENA SERVED 1/3/2018

01/10/2018 NOTICE ▾

THIRD AMENDED NOTICE OF INTENT TO TAKE ORAL DEPOSITION

Comment
THIRD NOTICE OF INTENT TO TAKE DEPOSITION

01/12/2018 SPECIAL EXCEPTIONS ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

Comment
ANTOINETTE; 972-450-7329

APPENDIX 000065

01/12/2018 ORDER - SPECIAL EXCEPTIONS ▾

ORDER - SPECIAL EXCEPTIONS

Comment
TO THIRD AMENDED PETITION

01/16/2018 SUPPLEMENTAL ▾

SECOND SUPPLEMENTAL TO AMENDED ANSWER

Comment
DEFENDANTS' SECOND SUPPLEMENT TO ITS SECOND AMENDED ANSWER

01/16/2018 SERVICE OF PROCESS ▾

NOTICE OF INTENT TO TAKE ORAL DEPOSITION

Comment
COMMANDED TO SUMMON: KEITH R. JONES ON 1/12/2018

01/16/2018 RESPONSE ▾

RESPONSE TO MOTION FOR CONSIDERATION

EXHIBITS A

Comment
TO MOTION FOR CONSIDERATION

01/16/2018 RESPONSE ▾

RESPONSE TO CROSS MOTION

Comment
TO CROSS MOTION

01/16/2018 CORRESPONDENCE - LETTER TO FILE ▾

CORRESPONDENCE LETTER TO FILE

Comment
RE: VERIFICATION OF BRIAN AND CHERYL POTASHNIK

01/17/2018 MOTION - RECONSIDER ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
08:50 AM

Comment
ANOTIONETTE 972-450-7329 (STATED DOES NOT NEED A COURT REPORTER)

01/17/2018 ORDER - ▾

APPENDIX 000066

ORDER - DENYING RECONSIDERATION

Comment
ORDER FOR RECONSIDERATION DENIED

01/18/2018 RESPONSE ▾

RESPONSE

Comment
TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THEIR CRIMINAL HISTORIES AND BRIEF IN
SUPPORT

01/19/2018 MOTION - HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:00 AM

Comment
RESPONSE; ROLAND 972-450-7334

01/19/2018 MOTION - HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

Comment
PLAINTIFF S MOTION TO HOLD DEFENDANT BRIAN POTASHNIK IN CONTEMPT FOR SKIPPING COURT-
ORDERED MEDIATION DAVID WILEY 214-522-2121

01/19/2018 ORDER - DENYING ▾

ORDER - DENYING

Comment
MOTION TO HOLD PLAINTIFF IN CONTEMPT

01/22/2018 JURY TRIAL ▾

CCL#5 JURY LETTER - Only

CCL#5 JURY LETTER - Only

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Comment

APPENDIX 000067

Plft-Ready 7-10 days total; Deft-Ready 3 days

---

01/22/2018 EXPERT WITNESS LIST ▾

EXPERT WITNESS LIST

---

01/22/2018 SERVICE OF PROCESS ▾

SUBPOENA RETURN OF SERVICE

Comment
OF SUBPOENA AS TO PAUL COHEN

---

01/22/2018 MOTION - SANCTIONS ▾

MOTION FOR SANCTIONS

---

01/22/2018 SERVICE OF PROCESS ▾

SUBPOENA RETURN OF SERVICE

Comment
OF SUBPOENA AS TO AARON GOLDSTEIN

---

01/22/2018 RESPONSE ▾

RESPONSE TO MOTION IN LIMINE

Comment
TO DEFENDANTS' MOTION IN LIMINE [ISSUES OTHER THAN CRIMINAL HISTORIES] AND BRIEF IN
SUPPORT

---

01/22/2018 MOTION - EXCLUDE ▾

MOTION TO EXCLUDE PLAINTIFF S EVIDENCE

Comment
PLAINTIFF'S EVIDENCE

---

01/22/2018 MOTION - EXCLUDE ▾

MOTION TO EXCLUDE

Comment
EVIDENCE AND EXPERT TESTIMONY REGARDING ATTORNEY'S FEE

---

01/22/2018 EXPERT WITNESS LIST ▾

WITNESS LIST

---

01/22/2018 BRIEF FILED ▾

TRIAL BRIEF

APPENDIX 000068

Comment
01/22/2018 EXHIBIT LIST
ON ALTER EGO ISSUE AND ADDED RELEVANCE OF CRIMINAL PROSECUTION / GUILTY PLEAS

DEFENDANTS TRIAL EXHIBIT LIST

01/22/2018 REPLY ▾

REPLY TO RESPONSE

Comment
DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
THEIR CRIMINAL HISTORIES AND BRIEF IN SUPPORT

01/22/2018 RESPONSE ▾

RESPONSE

Comment
TO DEFENDANTS' MOTION TO EXCLUDE EVIDENCE AND EXPERT TESTIMONY REGARDING
ATTORNEYS' FEE

01/22/2018 MOTION - EXCLUDE ▾

DEFENDANT MOTION TO EXCLUDE

Comment
LATE FILED DISCLOSURES

01/22/2018 RESPONSE ▾

RESPONSE TO MOTION TO EXCLUDE

Comment
TO MOTION TO EXCLUDE ALL EVIDENCE

01/22/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATION

Comment
DEPSOITION OF JEFFREY W. CARPENTER JANUARY 10 2018

01/22/2018 BRIEF FILED ▾

TRIAL BRIEF

Comment
ON ALTER EGO, JOINT ENTERPRISE, AND GOVERNING PERSON IDENTITY

01/22/2018 EXHIBIT LIST ▾

EXHIBIT LIST

APPENDIX 000069

01/22/2018 SUPPLEMENTAL - MOTION ▾

SUPPLEMENTAL MOTION IN LIMINE

Comment
IN LIMINE

01/22/2018 NOTICE - APPEARANCE ▾

NOTICE OF APPEARANCE

01/22/2018 BRIEF FILED ▾

TRIAL BRIEF

Comment
DEFENDANTS' TRIAL BRIEFONNOPERSONAL LIABILITY FOR FAILURE TO SEND WINDING UP NOTICE

01/23/2018 MOTION - IN LIMINE ▾

MOTION IN LIMINE

Comment
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE ALL REFERENCES TO THE CRIMINAL INVESTIGATION, PROCEEDINGS, ANDCONVICTION

01/25/2018 MISCELLANEOUS ▾

MISCELLANEOUS

Comment
DEPUTY REPORTER STATEMENT

01/29/2018 BRIEF FILED ▾

BRIEF ON STATUE OF FRAUDS

Comment
ON STATUE OF FRAUDS

01/29/2018 BRIEF FILED ▾

TRIAL BRIEF ON BONUS AGREEMENTS

Comment
ON BONUS AGREEMENTS

01/29/2018 RESPONSE ▾

DEFENDANTS RESPONSE TO JEFF CARPENTER S OBJECTIONS

Comment
TO PLTF'S OBJECTIONS & REQUESTS FOR RULING

APPENDIX 000070

TO PLTF'S OBJECTIONS & REQUESTS FOR RULING

01/29/2018 BRIEF FILED ▾

TRIAL BRIEF

Comment
TRIAL BRIEF ON ORAL MODIFICATION

01/30/2018 ORDER - JUDGE'S RULING ▾

ORDER - JUDGE'S RULING

Comment
QUANTUM MERUIT - UNCLEAN HANDS

01/31/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATE - JEFFREY ROBERT RICHARDS

Comment
DEPOSITION OF JEFFREY ROBERT RICHARDS

01/31/2018 CHARGE OF COURT ▾

CHARGE OF COURT

Comment
WITH JUROR QUESTIONS

02/05/2018 ORDER - JUDGE'S RULING ▾

ORDER - JUDGE'S RULING

Comment
REGARDING TRIAL FOR ATTORNEY FEES

02/06/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATE

Comment
VIDEOTAPED ORAL DEPOSITION OF MARK JONES JANUARY 18, 2018

02/06/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATE

Comment
ORAL DEPOSITION OF KEITH R. JONES JANUARY 13, 2018

02/13/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATE - BRIAN POTASHNIK

APPENDIX 000071

Comment

DEPOSITION OF BRIAN POTASHNIK DECEMBER 18, 2017

02/16/2018 REPORTER CERTIFICATE ▾

REPORTER CERTIFICATE

Comment

REPORTER'S CERTIFICATION DEPOSITION OF CHERYL POTASHNIK DECEMBER 12, 2017

02/21/2018 NOTICE - APPEARANCE ▾

NOTICE OF APPEARANCE

02/26/2018 CERTIFICATE - DEPOSITION ▾

SARA REIDY

Comment

DEPO OF SARA REIDY; JANUARY 19, 2018

02/26/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATE

Comment

DEPO OF JEFFREY W. CARPENTER JANUARY 15, 2018

02/27/2018 MOTION - MISCELLANEOUS ▾

MOTION FOR JUDGMENT NOV

Comment

MOTION FOR JUDGMENT N.O.V OR IN THE ALTERNATIVE, MOTION TO DISREGARD JURY FINDINGS

03/06/2018 FINAL DISPOSITION HEARING ▾

CCL#5 FINAL DISPOSITION LTR

CCL#5 FINAL DISPOSITION LTR

CCL#5 FINAL DISPOSITION LTR

Judicial Officer

GREENBERG, MARK

Hearing Time

9:00 AM

Cancel Reason

REQUESTED BY JUDGE

03/12/2018 NON JURY TRIAL ▾

CCL#5 Jury Letter N/J - Only

APPENDIX 000072

CCL#5 Jury Letter N/J - Only
CCL#5 Jury Letter N/J - Only

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
atty's fee

---

06/11/2018 MOTION - CONTINUANCE ▾

AGREED MOTION FOR CONTINUANCE

Comment
AGREED

---

06/11/2018 NOTICE ▾

CONSENT TO CONTINUANCE OF ATTORNEY FEES

Comment
CONSENT TO CONTINUANCE OF JUNE 8, 2018 BENCH TRIAL ON ATTORNEY FEES

---

06/11/2018 NOTICE OF FILING ▾

NOTICE OF FILING

Comment
BRIAN POTASHNIK'S CONSENT TO CONTINUANCE OF JUNE 18, 2018 BENCH TRIAL ON ATTORNEYS' FEES

---

06/12/2018 CORRESPONDENCE - LETTER TO FILE ▾

COVER LETTER TO AGREED ORDER FOR CONTINUANCE

PROPOSED AGREED ORDER FOR CONTINUANCE

Comment
PROPOSED AGREED ORDER FOR CONTINUANCE ATTACHED

---

06/12/2018 ORDER - CONTINUANCE ▾

ORDER - CONTINUANCE

Comment
AGREED

---

06/18/2018 NON JURY TRIAL ▾

3 CCL#5 NON-JURY TRIAL LETTER

APPENDIX 000073

3 CCL#5 NON-JURY TRIAL LETTER
3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
atty fees

07/25/2018 REPORTER CERTIFICATE ▾

BRAIN SANFORD; MAY 21, 2018

Comment
BRAIN SANFORD; MAY 21, 2018

07/25/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATION DEPOSITION OF BARRY SANDER HERSH 5-16-18

Comment
REPORTER'S CERTIFICATION DEPOSITION OF BARRY SANDER HERSH 5-16-18

08/06/2018 REPORTER CERTIFICATE ▾

REPORTER'S CERTIFICATION DOUGLAS HALOFTIS 5-31-18

Comment
DOUGLAS HALOFTIS 5-31-18 REPORTER'S CERTIFICATION

09/24/2018 VACATION LETTER ▾

Comment
ATTORNEY: JASON H. FRIEDMAN

10/08/2018 NON JURY TRIAL ▾

3 CCL#5 NON-JURY TRIAL LETTER
3 CCL#5 NON-JURY TRIAL LETTER
3 CCL#5 NON-JURY TRIAL LETTER
3 CCL#5 NON-JURY TRIAL LETTER

APPENDIX 000074

3 CCL#5 NON-JURY TRIAL LETTER

Judicial Officer
GREENBERG, MARK

Hearing Time
9:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
Atty Fees

---

10/29/2018 ORDER - JUDGE'S RULING ▾

ORDER - JUDGE'S RULING

Comment
REGARDING TRIAL FOR NOVEMBER 15, 2018

---

11/12/2018 EXPERT WITNESS LIST ▾

WITNESS LIST

---

11/12/2018 EXHIBIT LIST ▾

EXHIBIT LIST

---

11/14/2018 BRIEF FILED ▾

TRIAL BRIEF ON FEES

Comment
ON TRIAL FEES: CONTINGENCY FEE

---

11/14/2018 BRIEF FILED ▾

BRIEF ON TRIAL FEES: PRESENTMENT

Comment
BRIEF ON TRIAL FEES: PRESENTMENT

---

11/15/2018 NON JURY TRIAL ▾

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

Judicial Officer
GREENBERG, MARK

**APPENDIX 000075**

Hearing Time

9:00 AM

Comment

Plft (D Wiley)-Ready 1-1 1/2 day; Deft (M Donohue)-Ready 3 hrs

12/14/2018 BRIEF FILED ▾

BRIEF IN SUPPORT OF COST TAXATION IN JUDGMENT

Comment

IN SUPPORT OF COST TAXATION IN JUDGMENT

12/14/2018 CORRESPONDENCE - LETTER TO FILE ▾

CORRESPONDENCE LETTER TO FILE

PROPOSED FINAL JUDGMENT

Comment

WITH PROPOSED FINAL JUDGMENT

12/17/2018 FINAL JUDGMENT ▾

FINAL JUDGMENT

12/17/2018 ORDER - JUDGE'S RULING ▾

ORDER - JUDGE'S RULING

Comment

COURTESY COPY OF COURT'S RULING

12/17/2018 BRIEF FILED ▾

BRIEF IN SUPPORT OF DEFENDANT MOTION FOR JUDGMENT N.O.V.

Comment

IN SUPPORT OF DEFENDANT MOTION FOR JUDGMENT N.O.V.

12/18/2018 FINAL DISPOSITION HEARING ▾

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

Judicial Officer

GREENBERG, MARK

Hearing Time

9:00 AM

APPENDIX 000076

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

12/18/2018 MOTION - MISCELLANEOUS ▾

BILL OF COSTS

Comment
BILL OF COSTS

12/18/2018 MOTION - NEW TRIAL ▾

MOTION FOR NEW TRIAL

01/24/2019 MOTION - PROTECTIVE ORDER ▾

MOTION FOR PROTECTIVE ORDER

02/11/2019 RESPONSE ▾

RESPONSE TO MOTION FOR JUDGMENT N.O.V., ALTERNATIVE MOTION TO DISREGARD JURY FINDINGS

Comment
TO MOTION FOR JUDGMENT N.O.V., ALTERNATIVE MOTION TO DISREGARD JURY FINDINGS

02/15/2019 MOTION - HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
11:00 AM

Comment
DEFENDANTS MOTION FOR JUDGMENT N.O.V OR IN THE ALTERNATIVE, MOTION TO DISREGARD JURY
FINDINGS AND MOTION FOR NEW TRIAL ROBERT G. 214-780-5114

02/15/2019 MISCELLANEOUS ▾

MISCELLANEOUS - DEPUTY REPORTER STATEMENT

Comment
DEPTUY REPORTER STATEMENT

02/18/2019 ORDER - JUDGE'S RULING ▾

ORDER - JUDGE'S RULING

Comment
COPY OF ORDER DENYING DEFEDANT MOTION FOR N.O.V.

02/18/2019 ORDER - DENYING ▾

APPENDIX 000077

ORDER - DENYING

> Comment
> MOTION FOR NEW TRIAL

02/21/2019 NOTICE - APPEAL ▾

NOTICE OF APPEAL

02/26/2019 REQUEST FOR CLERK PREPARED RECORD ▾

DEFENDANTS' REQUEST FOR CLERKS RECORD

02/27/2019 CORRESPONDENCE - LETTER TO FILE ▾

CORRESPONDENCE LETTER TO FILE RE: REQUEST FOR REPORTER'S RECORD

> Comment
> RE: REQUEST FOR REPORTER'S RECORD

03/12/2019 COURT OF APPEALS - NOTICE CARD ▾

COURT OF APPEALS - NOTICE CARD

04/19/2019 COURT OF APPEALS - NOTICE CARD ▾

COURT OF APPEALS - NOTICE CARD

04/22/2019 MOTION - COMPEL ▾

MOTION TO COMPEL TO PROVIDE POST JUDGMENT DISCOVERY

> Comment
> TO PROVIDE POST JUDGMENT DISCOVERY

04/24/2019 NOTICE - HEARING ▾

MOTION TO COMPEL

> Comment
> MOTION TO COMPEL

04/26/2019 MOTION - WITHDRAW ATTORNEY ▾

MOTION TO WITHDRAW AS DEFENDANTS' COUNSEL OF RECORD

PROPOSED ORDER WITHDRAWING COUNSEL

> Comment
> WITH PROPOSED ORDER (BRIAN POTASHNIK IS OPPOSED)

05/02/2019 NOTICE - HEARING ▾

**APPENDIX 000078**

NOTICE OF HEARING

Comment
MOTION TO WITHDRAW

05/17/2019 MOTION - COMPEL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
AMY G. 214-522-2121

05/24/2019 MOTION - WITHDRAW ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

Comment
VERONICA 972-788-1400

05/24/2019 ORDER - WITHDRAW ATTORNEY ▾

ORDER - WITHDRAW ATTORNEY

Comment
(MICHAEL DONOHUE AND JASON FRIEDMAN ONLY)

05/24/2019 NOTICE - HEARING ▾

NOTICE OF HEARING

Comment
MOTION TO COMPEL

06/03/2019 MOTION - COMPEL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
8:30 AM

Comment
DAVID WILEY 214-522-2121

APPENDIX 000079

06/03/2019 ORDER - COMPEL ⌄

ORDER - COMPEL

Comment
BRIAN POTASHNIK TO PROVIDE POST-JUDGMENT DISCOVERY

06/18/2019 NOTICE - APPEARANCE ⌄

NOTICE OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL

Comment
AND DESIGNATION OF LEAD COUNSEL

06/24/2019 APPLICATION - TURNOVER ⌄

MOTION FOR A TURNOVER ORDER

Comment
FOR A TURNOVER ORDER

06/24/2019 NOTICE - HEARING ⌄

NOTICE HEARING

Comment
MOTION FOR A TURNOVER ORDER

06/25/2019 RESPONSE ⌄

RESPONSE TO MOTION FOR TURNOVER

Comment
RESPONSE TO MOTION FOR TURNOVER ORDER

06/26/2019 COURT OF APPEALS - NOTICE CARD ⌄

ORDER -

Comment
ORDER

06/26/2019 NOTICE - HEARING ⌄

MOTION FOR TURNOVER CANCELLED

Comment
CANCELLATION OF MOTION FOR A TURNOVER ORDER

06/28/2019 APPLICATION FOR TURNOVER ⌄

Judicial Officer
GREENBERG, MARK

Hearing Time
10:00 AM

APPENDIX 000080

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

Comment
JEFF CARPENTER'S MOTION FOR A TURNOVER ORDER---DAVID 214-522-2121

07/02/2019 CLERKS RECORDS ▾

CLERKS RECORDS

Comment
ON APPEAL $2368

07/02/2019 NOTICE OF FILING ▾

NOTICE OF AFFIDAVIT OF NET WORTH AND SUPERSEDEAS BOND

Comment
OF AFFIDAVIT OF NET WORTH AND SUPERSEDEAS BOND

07/05/2019 MOTION - MISCELLANEOUS ▾

JEFF CARPENTER S CONTEST TO BRIAN POTASHNIK S CLAIMED NET WORTH

Comment
JEFF CARPENTER'S CONTEST TO BRIAN POTASHNIK'S CLAIMED NET WORTH

07/05/2019 NOTICE - HEARING ▾

NOTICE OF HEARING

Comment
CONTEST TO BRIAN POTASHNIKS CLAIMED NET WORTH

07/09/2019 RESPONSE ▾

DEFENDANT BRIAN POTASHNIK S RESPONSE TO PLAINTIFF S CONTEST

Comment
RESPONSE TO PLAINTIFF'S CONTEST

07/10/2019 SUPPLEMENTAL CLERKS RECORD REQUEST ▾

SUPPLEMENTAL RECORD REQUEST

07/10/2019 SUPPLEMENTAL ▾

SUPPLEMENTAL DECLARATION IN LIEU OF AFFIDAVIT OF NET WORTH

Comment
DECLARATION IN LIEU OF AFFIDAVIT OF NET WORTH; FILED BY DEFENDANT BRIAN POTASHNIK

07/10/2019 REPLY ▾

APPENDIX 000081

REPLY

Comment
JEFF CARPENTER'S REPLY REGARDING CONTEST TO BRIAN POTASHNIK'S CLAIMED NET WORTH

07/11/2019 CORRESPONDENCE ▾

CORRESPONDENCE

07/12/2019 MOTION - HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:00 AM

Comment
JEFF CARPENTER S CONTEST TO BRIAN POTASHNIK S CLAIMED NET WORTH---DAVID W. 214-522-2121

07/12/2019 COURT OF APPEALS - NOTICE CARD ▾

COURT OF APPEALS - NOTICE CARD

07/18/2019 CLERKS RECORDS ▾

CLERKS RECORDS

Comment
supplemental clerks record on appeal $60.00

07/22/2019 MOTION - SET BOND ▾

MOTION TO SET LESSER ALTERNATIVE SUPERSEDEAS BOND

Comment
MOTION TO SET LESSER, ALTERNATIVE SUPERSEDEAS

07/22/2019 NOTICE - HEARING ▾

MOTION TO SET LESSER, ALTERNATIVE SUPERSEDEAS

Comment
MOTION TO SET LESSER, ALTERNATIVE SUPERSEDEAS

07/29/2019 RESPONSE ▾

JEFF CARPENTER S RESPONSE

Comment
RESPONSE TO BRIAN POTASHNIK'S MOTION TO SET LESSER, ALTERNATIVE SUPERSEDEAS

07/31/2019 CORRESPONDENCE ▾

APPENDIX 000082

CORRESPONDENCE

---

08/02/2019 MOTION - HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

Comment
MOTION TO SET LESSER, ALTERNATIVE SUPERSEDEAS---LUPE 214-672-2000

---

08/02/2019 ORDER - SET BOND ▾

ORDER - SET BOND

Comment
LESSER, ALTERNATIVE SUPERSEDEAS

---

08/19/2019 MOTION - COMPEL ▾

JEFF C. MOTION TO COMPEL

Comment
MOTION TO COMPEL BRIAN POTASHNIK TO PROVIDE NET WORTH DISCOVERY

---

08/30/2019 NOTICE - HEARING ▾

NOTICE OF HEARING

Comment
MOTION TO COMPEL

---

09/03/2019 RESPONSE ▾

RESPONSE TO MOTION TO COMPEL NET WORTH DISCOVERY

Comment
TO MOTION TO COMPEL NET WORTH DISCOVERY

---

09/06/2019 MOTION - COMPEL ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

Comment
DAVID W. 214-336-6476

---

APPENDIX 000083

09/06/2019 ORDER - COMPEL ▼

ORDER - COMPEL

09/26/2019 CORRESPONDENCE - LETTER TO FILE ▼

LETTER ADDRESSING JUDGE GREENBERG OF DOCUMENTS FILED IN THE FIFTH COURT OF APPEALS

PETITION FOR MANDAMUS

RECORD FOR PETITION FOR WRIT OF MANDAMUS

RELATORS EMERGENCY MOTION FOR STAY

> Comment
> LETTER ADDRESSING JUDGE GREENBERG OF DOCUMENTS FILED IN THE FIFTH COURT OF APPEALS

10/07/2019 SUPPLEMENTAL ▼

SUPPLEMENT TO PETITION FOR WRIT OF MANDAMUS

> Comment
> TO PETITION FOR WRIT OF MANDAMUS (FILED IN FIFTH COURT OF APPEALS)

10/28/2019 REPLY ▼

REPLY IN SUPPORT OF HIS PETITION FOR WRIT OF MANDAMUS

> Comment
> IN SUPPORT OF HIS PETITION FOR WRIT OF MANDAMUS

04/23/2020 ORDER - JUDGE'S RULING ▼

ORDER - JUDGE'S RULING

> Comment
> REGARDING WRIT OF MANDADUS

04/23/2020 COURT OF APPEALS - NOTICE CARD ▼

COURT OF APPEALS - NOTICE CARD

04/23/2020 MEMORANDUM - OPINION ▼

MEMORANDUM - OPINION

APPENDIX 000084

04/28/2020 PROPOSED ORDER ▾

LETTER TO COURT PROPOSED ORDER

PROPOSED ORDER MOTION TO COMPEL

Comment
PROPOSED ORDER MOTION TO COMPEL

04/29/2020 PROPOSED ORDER ▾

PROPOSED ORDER COMPELLING DISCOVERY

Comment
PROPOSED ORDER COMPELLING DISCOVERY

05/01/2020 ORDER - JUDGE'S RULING ▾

ORDER - JUDGE'S RULING

Comment
REGARDING TWO ORDERS (CLERK RECORD AND ORDER TO COMPEL)

05/01/2020 ORDER - ▾

ORDER -TO FILE SUPPLEMENTAL CLERK'S RECORD

Comment
TO CLERK TO FILE SUPPLEMTAL CLERK RECORDS

05/01/2020 ORDER - COMPEL ▾

ORDER - COMPEL

05/07/2020 MOTION - STAY ▾

MOTION TO STAY REHEARING

Comment
ON REHEARING (ALSO FILED IN FIFTH COURT OF APPEALS)

05/07/2020 MOTION - MISCELLANEOUS ▾

MOTION FOR REHEARING

Comment
REHEARING

APPENDIX 000085

05/27/2020 NOTICE ▾

PETITION

Comment
PETITION FOR WRIT OF MANDAMUS

05/27/2020 NOTICE ▾

RECORD

Comment
MANDAMUS RECORD

05/27/2020 NOTICE ▾

MOTION

Comment
MOTION FOR EMERGENCY RELIEF

06/03/2020 NOTICE - HEARING ▾

NOTICE OF HEARING; AMENDED

Comment
AMENDED NOTICE; SET LESSER, ALTERNATIVE SUPERSEDEAS

06/15/2020 SUPPLEMENTAL ▾

DEFEDNANT SUPPLEMENT TO MOTION TO SET LESSER

Comment
DEFENDANT BRIAN POTASHNIK'S SUPPLEMENT TO MOTION TO SET LESSER, ALTERNATIVE
SUPERSEDEAS

06/16/2020 RESPONSE ▾

JEFF C. FIRST AMENDED RESPONSE TO MOTION TO SET LESSER

Comment
FIRST AMENDED RESPONSE TO BRIAN POTASHNIK'S MOTION TO SET LESSER, ALTERNATIVE
SUPERSEDEAS

06/17/2020 REPLY ▾

DEFENDANT REPLY IN SUPPORT OF MOTION TO SET LESSER

Comment
DEFENDANT BRIAN POTASHNIK'S REPLY IN SUPPORT OF MOTION TO SET LESSER, ALTERNATIVE
SUPERSEDEAS

06/18/2020 MOTION - HEARING ▾

APPENDIX 000086

06/19/2020 MOTION - HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

Comment
DEFENDANT BRIAN POTASHNIK S MOTION TO SET LESSER,ALTERNATIVE SUPERSEDEAS----DAVID WILEY 214-336-4276

06/19/2020 ORDER - JUDGE'S RULING ▾

ORDER - JUDGE'S RULING

Comment
REGARDING MOTION AND SUPPLEMENTAL MOTION TO SET LESSER BOND

07/20/2020 COURT OF APPEALS - NOTICE CARD ▾

COURT OF APPEALS - NOTICE CARD

08/31/2020 MEMORANDUM - OPINION ▾

MEMORANDUM - OPINION

09/23/2020 COURT OF APPEALS - NOTICE CARD ▾

COURT OF APPEALS - NOTICE CARD

09/24/2020 MOTION - SHOW CAUSE ▾

MOTION FOR AN ORDER COMMANDING TO APPEAR AND SHOW CAUSE

Comment
APPEAR AND SHOW CAUSE

09/25/2020 NOTICE - HEARING ▾

MOTION FOR SHOW CAUSE

Comment
MOTION FOR SHOW CAUSE

10/02/2020 SHOW CAUSE HEARING ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:00 AM

Comment
MOTION FOR AN ORDER COMMANDING BRIAN POTASHNIK TO APPEAR AND SHOW CAUSE---DAVID W.

APPENDIX 000087

214-522-2121

---

**10/02/2020 ORDER - JUDGE'S RULING** ▾

ORDER - JUDGE'S RULING

Comment
REGARDING SHOW CAUSE HEARING

---

**10/07/2020 PROPOSED ORDER** ▾

PROPOSED ORDER TO APPEAR AND SHOW CAUSE

Comment
TO APPEAR AND SHOW CAUSE

---

**10/16/2020 ORDER - COMPEL** ▾

ORDER - COMPEL

Comment
COMPELLING BRIAN POTASHNIK TO APPEAR AND SHOW CAUSE

---

**10/23/2020 SHOW CAUSE HEARING** ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
10:30 AM

Comment
DAVID W; 214-336-4276

---

**03/12/2021 MANDATE - AFFIRM** ▾

MANDATE - AFFIRM

---

**03/24/2021 MOTION - WITHDRAW ATTORNEY** ▾

MOTION TO WITHDRAW AS COUNSEL

Comment
(SUBMITTED WITHOUT AN ORDER)

---

**03/25/2021 NOTICE - HEARING** ▾

NOTICE OF HEARING

Comment
MOTION TO WITHDRAW

---

APPENDIX 000088

03/30/2021 RESPONSE ▾

RESPONSE TO MOTION TO WITHDRAW AS COUNSEL

Comment
TO MOTION TO WITHDRAW AS COUNSEL

03/31/2021 REPLY ▾

REPLY IN SUPPORT OF MOTION TO WITHDRAW OF COUNSEL

Comment
IN SUPPORT OF MOTION TO WITHDRAW OF COUNSEL

04/01/2021 RESPONSE ▾

RESPONSE TO MOTION TO WITHDRAW

Comment
TO MOTION TO WITHDRAW

04/02/2021 MOTION - WITHDRAW ▾

Judicial Officer
GREENBERG, MARK

Hearing Time
09:30 AM

Comment
LUPE 214-672-2149

04/02/2021 ORDER - JUDGE'S RULING ▾

Comment
NOTICE TO COUNSEL REGARDING PENDING MOTION TO WITHDRAW

04/09/2021 CORRESPONDENCE - LETTER TO FILE ▾

CORRESPNDENCE LETTER TO FILE

Comment
LETTER TO JUDGE

04/09/2021 PROPOSED ORDER ▾

Comment
TO WITHDRAW

04/09/2021 PROPOSED ORDER ▾

PROPOSED ORDER TO WITHDRAW AS COUNSEL

APPENDIX 000089

Comment
04/19/2021 ORDER - WITHDRAW ATTORNEY ▼
TO WITHDRAW AS COUNSEL

ORDER - WITHDRAW ATTORNEY

04/19/2021 CORRESPONDENCE ▼

CORRESPONDENCE

04/19/2021 DEFAULT JUDGMENT ▼

DEFAULT JUDGMENT

04/19/2021 ABSTRACT OF JUDGMENT

04/19/2021 MOTION - MISCELLANEOUS ▼

JEFF C. AMENDED MOTION FOR TURNOVER OF STOWERS CLAIM

PROPOSED ORDER AMENDED MOTION FOR TURNOVER OF STOWERS CLAIM

Comment
AMENDED MOTION FOR TURNOVER OF STOWERS CLAIM; WITH PROPOSED ORDER

04/20/2021 NOTICE - HEARING ▼

NOTICE OF HEARING

Comment
AMENDED MOTION FOR TURNOVER OF STOWERS CLAIM

04/20/2021 MOTION - WITHDRAW ATTORNEY ▼

UNOPPOSED MOTION TO WITHDRAW AS COUNSEL

Comment
UNOPPOSED

04/20/2021 PROPOSED ORDER ▼

PROPOSED UNOPPOSED ORDER TO WITHDRAW AS COUNSEL

Comment
UNOPPOSED; TO WITHDRAW AS COUNSEL

04/20/2021 ORDER - WITHDRAW ATTORNEY ▼

ORDER - WITHDRAW ATTORNEY

Comment
UNOPPOSED

04/30/2021 APPLICATION FOR TURNOVER ▼

Judicial Officer
GREENBERG, MARK

Hearing Time
10:00 AM

Comment
DAVID WILEY; 214-336-4276

04/30/2021 ORDER - TURNOVER ▼

ORDER - TURNOVER

Comment
AMENDED MOTION FOR TURNOVER OF STOWERS CLAIM

06/10/2021 MOTION - CLARIFY ▼

NONPARTY TWIN CITY MOTION FOR CLARIFICATION

Comment
NONPARTY TWIN CITY FIRE INSURANCE COMPANY'S MOTION FOR CLARIFICATION, OR, IN THE
ALTERNATIVE, OBJECTIONS AND MOTION FOR PROTECTION

## Financial

CARPENTER, JEFFREY W.
    Total Financial Assessment                                           $314.00
    Total Payments and Credits                                           $314.00

| Date | Transaction | Receipt # | Party | Amount |
|---|---|---|---|---|
| 3/11/2008 | Transaction Assessment | | | $202.00 |
| 3/11/2008 | Transaction Assessment | | | $40.00 |
| 3/11/2008 | PAYMENT (CASE FEES) | Receipt # CV-2008-13092 | CLOUSE DUNN KHOSHBIN LLP | ($242.00) |
| 11/8/2010 | Transaction Assessment | | | $57.00 |
| 11/8/2010 | PAYMENT (CASE FEES) | Receipt # CV-2010-22424 | GIBSON WILEY PLLC | ($57.00) |
| 7/19/2012 | Transaction Assessment | | | $2.00 |
| 7/23/2012 | PAYMENT (MAIL) | Receipt # CV-2012-17298 | JANELLE FRIEDMAN | ($2.00) |

APPENDIX 000091

CV-2012-17298

| Date | Description | Receipt | Payer | Amount |
|------|-------------|---------|-------|--------|
| 7/22/2013 | Transaction Assessment | | | $2.00 |
| 7/22/2013 | Transaction Assessment | | | $2.00 |
| 7/23/2013 | Transaction Assessment | | | $2.00 |
| 7/23/2013 | Transaction Assessment | | | $2.00 |
| 7/24/2013 | PAYMENT (MAIL) | Receipt # CV-2013-19635 | GIBSON, AMY | ($2.00) |
| 7/24/2013 | PAYMENT (MAIL) | Receipt # CV-2013-19636 | GIBSON, AMY | ($2.00) |
| 7/25/2013 | PAYMENT (MAIL) | Receipt # CV-2013-19776 | GIBSON, AMY | ($2.00) |
| 7/25/2013 | PAYMENT (MAIL) | Receipt # CV-2013-19777 | GIBSON, AMY | ($2.00) |
| 4/19/2021 | Transaction Assessment | | | $5.00 |
| 4/19/2021 | PAYMENT (CASE FEES) | Receipt # CV-2021-03745 | CARPENTER, JEFFREY W. | ($5.00) |

SOUTHWEST HOUSING DEVELOPMENT COMPANY, INC.

| | | |
|---|---|---|
| Total Financial Assessment | | $2,479.00 |
| Total Payments and Credits | | $2,479.00 |

| Date | Description | Receipt | Payer | Amount |
|------|-------------|---------|-------|--------|
| 4/14/2008 | Transaction Assessment | | | $35.00 |
| 4/14/2008 | PAYMENT (CASE FEES) | Receipt # CV-2008-15936 | FRIEDMAN & FEIGER LLP | ($35.00) |
| 7/6/2009 | Transaction Assessment | | | $2.00 |
| 7/6/2009 | Transaction Assessment | | | $2.00 |
| 7/9/2009 | PAYMENT (MAIL) | Receipt # CV-2009-13999 | FRIEDMAN, JASON H. | ($2.00) |
| 7/9/2009 | PAYMENT (MAIL) | Receipt # CV-2009-14000 | FRIEDMAN, JASON H. | ($2.00) |
| 3/23/2010 | Transaction Assessment | | | $2.00 |
| 3/23/2010 | Transaction Assessment | | | $2.00 |
| 3/25/2010 | PAYMENT (MAIL) | Receipt # CV-2010-05773 | FRIEDMAN, JASON H. | ($2.00) |
| 3/25/2010 | PAYMENT (MAIL) | Receipt # CV-2010-05774 | FRIEDMAN, JASON H. | ($2.00) |

APPENDIX 000092

| Date | Transaction | Receipt | Name | Amount |
|---|---|---|---|---|
| 2/28/2012 | Transaction Assessment | | | $2.00 |
| 3/2/2012 | PAYMENT (MAIL) | Receipt # CV-2012-05045 | JANELLE FRIEDMAN | ($2.00) |
| 4/6/2012 | Transaction Assessment | | | $2.00 |
| 4/11/2012 | PAYMENT (MAIL) | Receipt # CV-2012-08278 | JANELLE FRIEDMAN | ($2.00) |
| 8/1/2013 | Transaction Assessment | | | $2.00 |
| 8/1/2013 | Transaction Assessment | | | $2.00 |
| 8/5/2013 | PAYMENT (MAIL) | Receipt # CV-2013-20699 | JASON FRIEDMAN | ($2.00) |
| 8/5/2013 | PAYMENT (MAIL) | Receipt # CV-2013-20700 | JASON FRIEDMAN | ($2.00) |
| 7/2/2019 | Transaction Assessment | | | $2,368.00 |
| 7/11/2019 | CASE FEE PAYMENT-MAINFRAME | Receipt # CV-2019-09444 | GILBREATH, ROBERT B | ($2,368.00) |
| 7/18/2019 | Transaction Assessment | | | $60.00 |
| 7/31/2019 | PAYMENT (CASE FEES) | Receipt # CV-2019-10496 | GILBREATH, ROBERT B | ($60.00) |

## Documents

04-07-2008 - Answer - CC Civ P - CC0802072E - 2710660.pdf

07-06-2009 - Affidavit - CC Civ P - CC0802072E - 2710644.pdf

07-06-2009 - Affidavit - CC Civ P - CC0802072E - 2710643.pdf

02-28-2013 - Order - Continuance - CC Civ M - CC0802072E - - 13610526.pdf

07-14-2010 - Order - CC Civ M - CC0802072E - 3048 - 2124735.pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710628.pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710627.pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710626.pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710625.pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710624.pdf

07-14-2010 - Order - CC Civ M - CC0802072E - 3048 - 2124735 (1).pdf

02-28-2013 - Order - Continuance - CC Civ M - CC0802072E - - 13610526 (1).pdf

02-28-2012 - Correspondence - CC Civ P - CC0802072E - 7486818.pdf

APPENDIX 000093

07-20-2012 - Correspondence - CC Civ P - CC0802072E - 9510213.pdf

07-24-2012 - Correspondence - CC Civ P - CC0802072E - 9565650.pdf

02-24-2012 - Correspondence - CC Civ P - CC0802072E - 7452159.pdf

03-11-2008 - Correspondence - CC Civ P - CC0802072E - 2710661.pdf

08-26-2008 - Correspondence - CC Civ P - CC0802072E - 2710656.pdf

06-22-2009 - Correspondence - CC Civ P - CC0802072E - 2710645.pdf

07-22-2009 - Correspondence - CC Civ P - CC0802072E - 2710641.pdf

03-02-2010 - Correspondence - CC Civ P - CC0802072E - 2710635.pdf

03-22-2010 - Correspondence - CC Civ P - CC0802072E - 2710632.pdf

03-11-2008 - Docket Sheet - CC Civ P - CC0802072E - 2710623.pdf

02-27-2012 - Misc. Document - CC Civ P - CC0802072E - 7454964.pdf

07-18-2012 - Motion - CC Civ P - CC0802072E - 9453337.pdf

05-12-2011 - Motion - Consol. - CC Civ P - CC0802072E - 4144096.pdf

02-23-2012 - Motion - CC Civ P - CC0802072E - 7409800.pdf

02-23-2012 - Motion - CC Civ P - CC0802072E - 7409799.pdf

02-27-2012 - Motion - CC Civ P - CC0802072E - 7460592.pdf

02-27-2012 - Misc. Document - CC Civ P - CC0802072E - 7454964 (1).pdf

07-26-2011 - Motion - CC Civ P - CC0802072E - 4831498.pdf

07-26-2011 - Motion - CC Civ P - CC0802072E - 4831493.pdf

02-26-2013 - Motion - CC Civ P - CC0802072E - 13558975.pdf

06-27-2008 - Motion - CC Civ P - CC0802072E - 2710659.pdf

10-22-2008 - Motion - CC Civ P - CC0802072E - 2710654.pdf

12-12-2008 - Motion - CC Civ P - CC0802072E - 2710651.pdf

03-16-2009 - Motion - CC Civ P - CC0802072E - 2710650.pdf

06-12-2009 - Motion - CC Civ P - CC0802072E - 2710647.pdf

06-12-2009 - Motion - CC Civ P - CC0802072E - 2710646.pdf

01-05-2010 - Motion - CC Civ P - CC0802072E - 2710637.pdf

03-01-2010 - Motion - CC Civ P - CC0802072E - 2710634.pdf

07-13-2010 - Motion - CC Civ P - CC0802072E - 2710631.pdf

02-28-2013 - Notice - CC Civ P - CC0802072E - 13621884.pdf

02-28-2013 - Notice - CC Civ P - CC0802072E - 13621883.pdf

02-27-2012 - Notice - CC Civ P - CC0802072E - 7459287.pdf

08-15-2012 - Notice - CC Civ P - CC0802072E - 9879549.pdf

11-10-2010 - Notice - CC Civ P - CC0802072E - 2799065.pdf

03-12-2008 - Notice - CC Civ P - CC0802072E - 2710662.pdf

03-15-2008 - Notice - CC Civ P - CC0802072E - 2710663.pdf

08-01-2008 - Notice - CC Civ P - CC0802072E - 2710658.pdf

09-22-2008 - Notice - CC Civ P - CC0802072E - 2710655.pdf

12-18-2008 - Notice - CC Civ P - CC0802072E - 2710652.pdf

**APPENDIX 000094**

06-12-2009 - Notice - CC Civ P - CC0802072E - 2710648.pdf

07-20-2009 - Notice - CC Civ P - CC0802072E - 2710642.pdf

09-09-2009 - Notice - CC Civ P - CC0802072E - 2710640.pdf

12-29-2009 - Notice - CC Civ P - CC0802072E - 2710639.pdf

12-29-2009 - Notice - CC Civ P - CC0802072E - 2710638.pdf

03-03-2010 - Notice - CC Civ P - CC0802072E - 2710636.pdf

03-11-2008 - Petition - CC Civ P - CC0802072E - 2710664.pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710628 (1).pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710627 (1).pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710626 (1).pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710625 (1).pdf

03-25-2008 - Service - Return - CC Civ P - CC0802072E - 2710624 (1).pdf

MOTION - PROTECTIVE ORDER

ORDER - PROTECTIVE

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

MOTION - NO EVIDENCE ON SUMMARY JUDGMENT

CORRESPONDENCE

VACATION LETTER

AMENDED PETITION

RULE 11 AGREEMENT

RESPONSE

MISCELLANEOUS

REPLY

OBJECTION

SPECIAL EXCEPTIONS

NOTICE OF HEARING

ORDER - JUDGE'S RULING

ORDER - DENYING

RESPONSE

MOTION - CONTINUANCE

NOTICE

NOTICE

ORDER - CONTINUANCE

NOTICE

NOTICE

RESPONSE

RESPONSE

APPENDIX 000095

OBJECTION

ORDER - CONTINUANCE

ORDER - CONSOLIDATE

ORDER - MEDIATION

OBJECTION

ORDER - CONTINUANCE

2014-03-11 Agreed Motion for Continuance.pdf

Proposed Order.pdf

NOTICE

NOTICE

ORDER - CONTINUANCE

LETTERSWH.pdf

ORDERSWH.pdf

CONTINUANCESWH.pdf

ORDERSWH.pdf

PROPOSED ORDER

NOTICE

NOTICE

ORDER - CONTINUANCE

7300-005[2015-03-03 15-16-14].pdf

2015-03-11 JC Response to MTQuash.doc.pdf

Exh A Excerpts from Carpenter's First Amended Petition.pdf

Exh B Excerpts from Non-Party Notice SDT.pdf

Exh C Email from Attorney for Non-Party.pdf

Mtn for Cont.pdf

PROPOSED ORDER FOR CONTINUANCE

Jeff Carpenter Consent to Continuance

NOTICE

NOTICE

ORDER - SCHEDULING

ORDER - DENYING

Amd Answer -Amd Counterclaim.pdf

2nd Amnd Petition.pdf

2015-10-05 2nd Amended Petition.docx.pdf

2015-10-13 Answer to Counterclaim.pdf

MOTION FOR CONTINUANCE

CONSENT TO CONTINUANCE

COVER LETTER

AGREED ORDER ON AGREED JOINT MOTION TO CONTINUE TRIAL SETTING

**APPENDIX 000096**

NOTICE

NOTICE

ORDER - CONTINUANCE

CORRESPONDENCE - LETTER TO FILE

PROPOSED AGREED SCHEDULING ORDER

ORDER - SCHEDULING

FIRST AMENDED TO DEFT'S SECOND AMENDED CC

PLAINTIFF'S THIRD AMENDED PETITION

MOTION TO DISMISS

NOTICE OF HEARING

DEFENDANT'S MOTION TO QUASH

DEFENDANTS??? DESIGNATION OF EXPERT.pdf

RESPONSE

ORDER - DENYING

MISCELLANEOUS

RETURN

NOTICE OF HEARING

MOTION TO QUASH RESPONSE

ORDER - QUASH

CCL#5 JURY LETTER - Only

CCL#5 JURY LETTER - Only

CCL#5 JURY LETTER - Only

CCL#5 JURY LETTER - Only

RETURN OF SERVICE

RETURN

MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

2017-01-17 Hearing Notice [JC MPSJ].docx.pdf

PROPOSED ORDER FOR CONTINUANCE

MOTION FOR CONTINUANCE

Notice of Hearing_Defs' Motion for Continuance.pdf

SUPPLEMENTAL MOTION

CORRESPONSE-CONSENT TO CONTINUANCE

AMENDED NOTICE OF HEARING

ORDER - CONTINUANCE

SECOND AMENDED NOTICE OF HEARING

CCL#5 JURY LETTER - Only

CCL#5 JURY LETTER - Only

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION

CCL#5 JURY LETTER - Only

**APPENDIX 000097**

CCL#5 JURY LETTER - Only

MOTION TO QUASH

NOTICE OF HEARING

RESPONSE TO MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

NOTICE OF WITHDRAWAL

EMERGENCY MOTION FOR CONTINUANCE

RULE 11 AGREEMENT

MOTION TO COMPEL DISCOVERY

RESPONSE TO EMERGENCY MOTION FOR PROTECTION

SPECIAL EXCEPTION TO THIRD AMENDED PETITION

REQUEST TO JUDGE

NOTICE OF HEARING

HEARING FOR SPECIAL EXCEPTION

MOTION FOR CONTEMPT

NOTICE OF SECURITY GUARD TO ATTEND DEPO

DEFENDANTS BRIAN POTASHNIK S RESPONSE

MOTION - NO EVIDENCE SUMMARY JUDGMENT

NOTICE OF HEARING

RESPONSE

MOTION - IN LIMINE

DEFENDANT'S SUPPLEMENT TO SECOND AMENDED ANSWER

DEFENDANTS BRIEF IN SUPPORT OF MOTION IN LIMINE ON

DEFENDANTS EMERGENCY MOTION FOR HEARING SETTING

OPPOSITION

RETURN OF SERVICE

DEFENDANTS NOTICE OF FILING BUSINESS RECORD AFFIDAVIT

Letter Cancellation of 1-10-18 Hearing.pdf

MOTION TO EQUALIZE

MOTION FOR RECONSIDERATION OF ORDER

RESPONSE

CERTIFICATE OF CONFERENCE

ORDER - COMPEL

NOTICE OF HEARING

SUBPOENA

SUBPOENA

SUBPOENA

SUBPOENA

SUBPOENA

SUBPOENA

**APPENDIX 000098**

SUBPOENA

SUBPOENA

THIRD AMENDED NOTICE OF INTENT TO TAKE ORAL DEPOSITION

SECOND SUPPLEMENTAL TO AMENDED ANSWER

NOTICE OF INTENT TO TAKE ORAL DEPOSITION

RESPONSE TO MOTION FOR CONSIDERATION

EXHIBITS A

ORDER - SPECIAL EXCEPTIONS

RESPONSE TO CROSS MOTION

CORRESPONDENCE LETTER TO FILE

ORDER - DENYING RECONSIDERATION

RESPONSE

EXPERT WITNESS LIST

SUBPOENA RETURN OF SERVICE

MOTION FOR SANCTIONS

SUBPOENA RETURN OF SERVICE

RESPONSE TO MOTION IN LIMINE

MOTION TO EXCLUDE PLAINTIFF S EVIDENCE

MOTION TO EXCLUDE

WITNESS LIST

TRIAL BRIEF

DEFENDANTS TRIAL EXHIBIT LIST

REPLY TO RESPONSE

RESPONSE

DEFENDANT MOTION TO EXCLUDE

RESPONSE TO MOTION TO EXCLUDE

REPORTER'S CERTIFICATION

TRIAL BRIEF

EXHIBIT LIST

SUPPLEMENTAL MOTION IN LIMINE

NOTICE OF APPEARANCE

TRIAL BRIEF

MOTION IN LIMINE

ORDER - DENYING

MISCELLANEOUS

BRIEF ON STATUE OF FRAUDS

TRIAL BRIEF ON BONUS AGREEMENTS

DEFENDANTS RESPONSE TO JEFF CARPENTER S OBJECTIONS

TRIAL BRIEF

**APPENDIX 000099**

REPORTER'S CERTIFICATE - JEFFREY ROBERT RICHARDS

CCL#5 FINAL DISPOSITION LTR

CCL#5 FINAL DISPOSITION LTR

CCL#5 FINAL DISPOSITION LTR

ORDER - JUDGE'S RULING

CHARGE OF COURT

CCL#5 Jury Letter N/J - Only

CCL#5 Jury Letter N/J - Only

CCL#5 Jury Letter N/J - Only

REPORTER'S CERTIFICATE

REPORTER'S CERTIFICATE

ORDER - JUDGE'S RULING

REPORTER'S CERTIFICATE - BRIAN POTASHNIK

REPORTER CERTIFICATE

NOTICE OF APPEARANCE

SARA REIDY

REPORTER'S CERTIFICATE

MOTION FOR JUDGMENT NOV

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

AGREED MOTION FOR CONTINUANCE

CONSENT TO CONTINUANCE OF ATTORNEY FEES

NOTICE OF FILING

COVER LETTER TO AGREED ORDER FOR CONTINUANCE

PROPOSED AGREED ORDER FOR CONTINUANCE

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

ORDER - CONTINUANCE

BRAIN SANFORD; MAY 21, 2018

REPORTER'S CERTIFICATION DEPOSITION OF BARRY SANDER HERSH 5-16-18

REPORTER'S CERTIFICATION DOUGLAS HALOFTIS 5-31-18

**APPENDIX 000100**

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

3 CCL#5 NON-JURY TRIAL LETTER

ORDER - JUDGE'S RULING

WITNESS LIST

EXHIBIT LIST

TRIAL BRIEF ON FEES

BRIEF ON TRIAL FEES: PRESENTMENT

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

CCL#5 FINAL DISPOSITION

BRIEF IN SUPPORT OF COST TAXATION IN JUDGMENT

CORRESPONDENCE LETTER TO FILE

PROPOSED FINAL JUDGMENT

FINAL JUDGMENT

ORDER - JUDGE'S RULING

BRIEF IN SUPPORT OF DEFENDANT MOTION FOR JUDGMENT N.O.V.

BILL OF COSTS

MOTION FOR NEW TRIAL

MOTION FOR PROTECTIVE ORDER

RESPONSE TO MOTION FOR JUDGMENT N.O.V., ALTERNATIVE MOTION TO DISREGARD JURY FINDINGS

MISCELLANEOUS - DEPUTY REPORTER STATEMENT

ORDER - JUDGE'S RULING

ORDER - DENYING

NOTICE OF APPEAL

DEFENDANTS' REQUEST FOR CLERKS RECORD

CORRESPONDENCE LETTER TO FILE RE: REQUEST FOR REPORTER'S RECORD

COURT OF APPEALS - NOTICE CARD

COURT OF APPEALS - NOTICE CARD

MOTION TO COMPEL TO PROVIDE POST JUDGMENT DISCOVERY

MOTION TO COMPEL

MOTION TO WITHDRAW AS DEFENDANTS' COUNSEL OF RECORD

PROPOSED ORDER WITHDRAWING COUNSEL

NOTICE OF HEARING

NOTICE OF HEARING

**APPENDIX 000101**

ORDER - WITHDRAW ATTORNEY

ORDER - COMPEL

NOTICE OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL

MOTION FOR A TURNOVER ORDER

NOTICE HEARING

RESPONSE TO MOTION FOR TURNOVER

ORDER -

MOTION FOR TURNOVER CANCELLED

CLERKS RECORDS

NOTICE OF AFFIDAVIT OF NET WORTH AND SUPERSEDEAS BOND

JEFF CARPENTER S CONTEST TO BRIAN POTASHNIK S CLAIMED NET WORTH

NOTICE OF HEARING

DEFENDANT BRIAN POTASHNIK S RESPONSE TO PLAINTIFF S CONTEST

SUPPLEMENTAL RECORD REQUEST

SUPPLEMENTAL DECLARATION IN LIEU OF AFFIDAVIT OF NET WORTH

REPLY

CORRESPONDENCE

COURT OF APPEALS - NOTICE CARD

CLERKS RECORDS

MOTION TO SET LESSER ALTERNATIVE SUPERSEDEAS BOND

MOTION TO SET LESSER, ALTERNATIVE SUPERSEDEAS

JEFF CARPENTER S RESPONSE

CORRESPONDENCE

ORDER - SET BOND

ENVELOPES

JEFF C. MOTION TO COMPEL

NOTICE OF HEARING

RESPONSE TO MOTION TO COMPEL NET WORTH DISCOVERY

ORDER - COMPEL

LETTER ADDRESSING JUDGE GREENBERG OF DOCUMENTS FILED IN THE FIFTH COURT OF APPEALS

PETITION FOR MANDAMUS

RECORD FOR PETITION FOR WRIT OF MANDAMUS

RELATORS EMERGENCY MOTION FOR STAY

SUPPLEMENT TO PETITION FOR WRIT OF MANDAMUS

REPLY IN SUPPORT OF HIS PETITION FOR WRIT OF MANDAMUS

ORDER - JUDGE'S RULING

COURT OF APPEALS - NOTICE CARD

MEMORANDUM - OPINION

LETTER TO COURT PROPOSED ORDER

APPENDIX 000102

PROPOSED ORDER MOTION TO COMPEL

PROPOSED ORDER COMPELLING DISCOVERY

ORDER - JUDGE'S RULING

ORDER - FILE SUPPLEMENTAL CLERKS RECORDS

ORDER - COMPEL

ORDER -TO FILE SUPPLEMENTAL CLERK'S RECORD

MOTION TO STAY REHEARING

MOTION FOR REHEARING

PETITION

RECORD

MOTION

NOTICE OF HEARING; AMENDED

DEFEDNANT SUPPLEMENT TO MOTION TO SET LESSER

JEFF C. FIRST AMENDED RESPONSE TO MOTION TO SET LESSER

DEFENDANT REPLY IN SUPPORT OF MOTION TO SET LESSER

ORDER - JUDGE'S RULING

COURT OF APPEALS - NOTICE CARD

MEMORANDUM - OPINION

MEMORANDUM - OPINION

COURT OF APPEALS - NOTICE CARD

MOTION FOR AN ORDER COMMANDING TO APPEAR AND SHOW CAUSE

MOTION FOR SHOW CAUSE

ORDER - JUDGE'S RULING

PROPOSED ORDER TO APPEAR AND SHOW CAUSE

ORDER - COMPEL

MANDATE - AFFIRM

MOTION TO WITHDRAW AS COUNSEL

NOTICE OF HEARING

RESPONSE TO MOTION TO WITHDRAW AS COUNSEL

REPLY IN SUPPORT OF MOTION TO WITHDRAW OF COUNSEL

RESPONSE TO MOTION TO WITHDRAW

CORRESPNDENCE LETTER TO FILE

PROPOSED ORDER TO WITHDRAW AS COUNSEL

ORDER - WITHDRAW ATTORNEY

CORRESPONDENCE

DEFAULT JUDGMENT

JEFF C. AMENDED MOTION FOR TURNOVER OF STOWERS CLAIM

PROPOSED ORDER AMENDED MOTION FOR TURNOVER OF STOWERS CLAIM

NOTICE OF HEARING

APPENDIX 000103

UNOPPOSED MOTION TO WITHDRAW AS COUNSEL

PROPOSED UNOPPOSED ORDER TO WITHDRAW AS COUNSEL

ORDER - WITHDRAW ATTORNEY

ORDER - TURNOVER

NONPARTY TWIN CITY MOTION FOR CLARIFICATION

APPENDIX 000104

# Exhibit 2-3

# February 1, 2018
# Charge of the Court
# & Jury Verdict

**Presiding Juror**

CAUSE NO. CC-08-2072-E

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | In the County Court |
| | § | |
| Southwest Housing | § | of Dallas County |
| Development Company, Inc.; | § | |
| Southwest Housing | § | at Law N° 5 |
| Management Corporation, | § | |
| Inc. a/k/a and d/b/a Southwest | § | |
| Housing Management | § | |
| Company, Inc.; Affordable | § | |
| Housing Construction, Inc.; | § | |
| Brian Potashnik, | § | |
| | § | |
| *Defendants.* | § | |

FILED
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY, TEXAS
2010 FEB -1 AM 10: 52

---

## CHARGE OF THE COURT

---

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

CC-08-02072-E
CCC
CHARGE OF COURT
1748785

APPENDIX 000106

Here are the instructions for answering the questions.

1.   Do not let bias, prejudice, or sympathy play any part in your decision.

2.   Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

Some of the exhibits may contain redactions. The portions of those exhibits have been redacted because I have excluded the redacted portions from the evidence. You should disregard any redactions just as you would disregard any other evidence that I have excluded from the record.

3.   You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.   If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.   All the questions and answers are important. No one should say that any question or answer is not important.

6.   Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence.

Preponderance of the evidence means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

APPENDIX 000107

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration as if the witness had been present and had testified from the witness stand in court.

7.     Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.     Do not answer questions by drawing straws or by any method of chance.

9.     Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Do not consider attorneys' fees. Do not guess about attorneys' fees.

10.     Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.    The answers to the questions must be based on the decision of at least five of the six jurors. The same five jurors must agree on every answer. Do not agree to be bound by a vote of anything less than five jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## DEFINITIONS

As used in this Charge of the Court,  Southwest Housing Development means Southwest Housing Development Company, Inc.

As used in this Charge of the Court, Southwest Housing Management means Defendants Southwest Housing Management Corporation, Inc., also known as and doing business as Southwest Housing Management Company, Inc.

As used in this Charge of the Court, Affordable Housing Construction means Affordable Housing Construction, Inc.

APPENDIX 000110

## QUESTION 1

Did Jeff Carpenter and Southwest Housing Management agree that Southwest Housing Management would pay one or more annual bonuses to Jeff Carpenter covering the period from March 15, 2005 through March 15, 2007?

An agreement may be oral, written, or partly oral and partly written.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

The written agreement with Southwest Housing Management may be modified by a later oral agreement, even though it provides that it can be modified only in writing.

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.

**Authority** for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized. More than one person may have a party's actual authority.

**Apparent authority** exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists. More than one person may have a party's apparent authority.

When a **vice-principal** of a corporation commits some act, that act may be deemed to be the act of the corporation itself. A corporation can have more than one vice-principal. A person is a "vice-principal" if—

APPENDIX 000111

1.   that person is a corporate officer; or

2.   that person has authority to employ, direct, and discharge an employee of a corporation; or

3.   the corporation has confided to that person the management of the whole or a department or division of the business of the corporation.

A person is a manager or is employed in a managerial capacity if—

1.   that person has authority to employ, direct, and discharge an employee of a corporation; or

2.   a corporation has confided to that person the management of the whole or a department or division of the business of a corporation.

Answer "Yes" or "No."

Answer: ___NO___

If you answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 2

Did Southwest Housing Management fail to comply with the agreement to pay Jeff Carpenter one or more annual bonuses covering the period from March 15, 2005 through March 15, 2007?

Answer "Yes" or "No."

Answer: ___NA___

If you answered "Yes" to Question 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jeff Carpenter for his damages, if any, that resulted from such failure to comply with the agreement to pay Jeff Carpenter one or more annual bonuses covering the period from March 15, 2005 through March 15, 2007?

You are instructed that any monetary recovery for such annual bonus is subject to federal income taxes.

Consider the following elements of damages, if any, and none other.

a. past lost compensation in the form of annual bonuses

Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any:

Answer _____ NA _____

## QUESTION 4

Did any of the defendants named below and Jeff Carpenter agree on October 13, 2006 to pay Jeff Carpenter:

1. 3% of the total of: gross asset sale revenue to sellers, less normal closing costs, less sale proceeds bonuses paid to employees
2. if Jeff Carpenter would stay as long as needed on to help make the asset sale happen

An agreement may be oral, written, or partly oral and partly written.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

The written agreement with Southwest Housing Management may be modified by a later oral agreement, even though it provides that it can be modified only in writing.

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.

**Authority** for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized. More than one person may have a party's actual authority.

**Apparent authority** exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists. More than one person may have a party's apparent authority.

APPENDIX 000115

When a **vice-principal** of a corporation commits some act, that act may be deemed to be the act of the corporation itself. A corporation can have more than one vice-principal. A person is a "vice-principal" if—

1.  that person is a corporate officer; or

2.  that person has authority to employ, direct, and discharge an employee of a corporation; or

3.  the corporation has confided to that person the management of the whole or a department or division of the business of the corporation.

     A person is a manager or is employed in a managerial capacity if—

     1.  that person has authority to employ, direct, and discharge an employee of a corporation; or

     2.  a corporation has confided to that person the management of the whole or a department or division of the business of a corporation.


Answer "Yes" or "No" for each:

Affordable Housing Construction      YES

Southwest Housing Development      YES

Southwest Housing Management      YES

Brian Potashnik      YES

APPENDIX 000116

If you answered "Yes" to Question 4 for any defendant, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 5

For each defendant for whom you answered "Yes" in Question 4, did that defendant also fail to comply with such agreement?

Answer "Yes" or "No" for each defendant for whom you answered "Yes" in Question 4:

Affordable Housing Construction     _YES_

Southwest Housing Development     _YES_

Southwest Housing Management     _YES_

Brian Potashnik     _YES_

APPENDIX 000117

If you answered "Yes" to Question 4 for any defendant, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 6

As of October 13, 2006, was the agreement found in Question 4 possibly performable in less than one year?

Answer "Yes" or "No."

Answer: __YES__

APPENDIX 000118

If you answered "Yes" to Question 5 for any defendant, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 7

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jeff Carpenter for his damages, if any, that resulted from such failure to comply with such agreement?

You are instructed that any monetary recovery for such sale proceeds payment is subject to federal income taxes.

Consider the following elements of damages, if any, and none other.

a. 3% of the total of: gross asset sale revenue to sellers, less normal closing costs, less sale proceeds bonuses paid to employees

Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any:

Answer: ___$928,020.76___

## QUESTION 8

Did Jeff Carpenter perform compensable work staying on as long as needed to help make the asset sale happen for any of the below-named defendants for which he was not compensated?

Jeff Carpenter performed compensable work if he rendered valuable services or furnished valuable materials to a defendant; that defendant accepted, used, and benefited from the services or materials; and, under the circumstances, that defendant was reasonably notified that Jeff Carpenter expected to be compensated for the services or materials.

Answer "Yes" or "No" for each:

Affordable Housing Construction      NO

Southwest Housing Development      NO

Southwest Housing Management      NO

Brian Potashnik      NO

If you answered "Yes" to Question 8, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 9

What is the reasonable value of such compensable work at the time and place it was performed?

Answer in dollars and cents, if any.

Answer: _____NA_____

## QUESTION 10

Did Jeff Carpenter perform compensable work for Southwest Housing Management for which he was not compensated, excluding any staying on to help make the asset sale happen?

Jeff Carpenter performed compensable work if he rendered valuable services or furnished valuable materials to a defendant; that defendant accepted, used, and benefited from the services or materials; and, under the circumstances, that defendant was reasonably notified that Jeff Carpenter expected to be compensated for the services or materials.

Answer "Yes" or "No":

Answer: __NO__

APPENDIX 000122

If you answered "Yes" to Question 10, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 11

What is the reasonable value of such compensable work at the time and place it was performed?

Answer in dollars and cents, if any.

Answer: ___NA___

APPENDIX 000123

## QUESTION 12

Which, if any, of the defendants were engaged in a joint enterprise in connection with the asset sale?

A "joint enterprise" exists if the persons or entities concerned have (1) an agreement, either express or implied, with respect to the enterprise or endeavor; and (2) a common purpose; and (3) a community of pecuniary interest in the common purpose of the enterprise, among the members of the group; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

Answer "Yes" or "No" for each:

Affordable Housing Construction      __NO__

Southwest Housing Development      __NO__

Southwest Housing Management      __NO__

Brian Potashnik      __NO__

## QUESTION 13

Which, if any, of the defendants were engaged in a joint venture in connection with the asset sale?

A "joint venture" exists if the persons or entities concerned have (1) a community of interest in the venture, (2) an agreement to share profits, (3) an express agreement to share losses, and (4) a mutual right of control or management of the venture.

Answer "Yes" or "No" for each:

Affordable Housing Construction        NO

Southwest Housing Development        NO

Southwest Housing Management        NO

Brian Potashnik        NO

APPENDIX 000125

## QUESTION 14

Is Brian Potashnik responsible for the conduct of the entities named below?

Brian Potashnik is "responsible" for the conduct of an entity if—

Brian Potashnik used the entity for the purpose of perpetrating and did perpetrate an actual fraud on Jeff Carpenter primarily for the direct personal benefit of Brian Potashnik.

Answer "Yes" or "No" for each:

Affordable Housing Construction _____YES_____

Southwest Housing Development _____YES_____

Southwest Housing Management _____YES_____

APPENDIX 000126

When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

The presiding juror has these duties:

1.    have the complete charge read aloud if it will be helpful to your deliberations;

2.    preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

3.    give written questions or comments to the bailiff who will give them to the judge;

4.    write down the answers you agree on;

5.    get the signatures for the verdict certificate; and

6.    notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror?  If you do not, please tell me now.

You may answer the questions on a vote of five jurors.  The same five jurors must agree on every answer in the charge.  This means you may not have one group of five jurors agree on one answer and a different group of five jurors agree on another answer.

If five jurors agree on every answer, those five jurors sign the verdict.  If all six of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

All jurors should deliberate on every question.  You may end up with all six of you agreeing on some answers, while only five of you agree on other answers.  But when you sign the verdict, only those five who agree on every answer will sign the verdict.

You are again instructed that it is your duty not to communicate with, or permit yourselves to be addressed by, any other person about any subject relating to the case.

*Submitted by —*
*Mark Greenberg*
*Judge Presiding*
*Jan.*

APPENDIX 000127

## Verdict Certificate

Check one:

_____ Our verdict is unanimous.  All six of us have agreed to each and every answer.  The presiding juror has signed the certificate for all six of us.

_____     _____
Signature of Presiding Juror   Printed Name of Presiding Juror

__✓____ Our verdict is not unanimous.  Five of us have agreed to each and every answer and have signed the certificate below.

| | Signature | Name Printed |
|---|---|---|
| 1. | *Samantha Ciraci* | Samantha Ciraci |
| 2. | *Norma Parson* | Norma Parson |
| 3. | *Lisa Billingsly* | Lisa Billingsley |
| 4. | *Lauryn Josephs* | Lauryn Josephs |
| 5. | *Jimmy Nguyen* | Jimmy Nguyen |

APPENDIX 000128

IS question 8 in reference to the 3% deal?

Thank you for your questions You should ~~greet the~~ interpret the question according to the the ordinary meaning of the question.

$\mathcal{M}6$

What was the final bonus calculation from the 3% deal?

Thank you for your question You should use your best collective memory as to the evidence.

$\mathcal{M}$

2018 FEB -1 AM 9:49
DALLAS COUNTY, TEXAS
COUNTY CLERK
JOHN F. WARREN
FILED

2018 FEB -1 AM 9:49
DALLAS COUNTY, TEXAS
COUNTY CLERK
JOHN F. WARREN
FILED

APPENDIX 000129

In reference to Question #6 on page 13 —

Could we get a clarified explanation of the term "possibly performable"?

Thank you for your question. ⊘ You should give those words their ordinary meaning.

Mark Greenberg

2018 JAN 31 AM 8: 53

DALLAS COUNTY TEXAS
COUNTY CLERK
JOHN F. WARREN
FILED

# Exhibit 2-4

# December 17, 2018
# Final Judgment

CAUSE NO. CC-08-2072-E

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | In the County Court |
| | § | |
| Southwest Housing | § | of Dallas County |
| Development Company, Inc.; | § | |
| Southwest Housing | § | at Law N° 5 |
| Management Corporation, | § | |
| Inc. a/k/a and d/b/a Southwest | § | |
| Housing Management | § | |
| Company, Inc.; Affordable | § | |
| Housing Construction, Inc.; | § | |
| Brian Potashnik; and | § | |
| Cheryl Potashnik n/k/a | § | |
| Cheryl Geiser, | § | |
| | § | |
| Defendants. | § | |

## FINAL JUDGMENT

This case was called to jury trial on January 23, 2018. Jeffrey W.
Carpenter appeared in person and through counsel and announced ready for
trial. Brian Potashnik and Cheryl Potashnik n/k/a Cheryl Geiser appeared in
person and through counsel and announced ready for trial. Southwest Housing
Development Company, Inc., Southwest Housing Management Corporation,
Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., and

Affordable Housing Construction, Inc. appeared through their representatives and through their counsel and announced ready for trial.

Before jury trial, during a motions hearing, four counter-plaintiffs — Cheryl Potashnik n/k/a Cheryl Geiser, Brian Potashnik, Southwest Housing Development Company, Inc., and Affordable Housing Construction, Inc. — announced their intent to voluntarily dismiss all their counterclaims against Jeffrey W. Carpenter, which they originally filed on April 7, 2008. This dismissal was accomplished with the September 9, 2015 filing of *Defendants' First Amended Answer and Defendant's First Amended Counterclaim Against Jeffrey W. Carpenter*, in which only Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc. continued to pursue counterclaims. Before jury trial, on the record, Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc. dismissed with prejudice all remaining counterclaims against Jeffrey W. Carpenter.

After close of evidence and before closing arguments in the jury trial, the Court granted the motion of Cheryl Potashnik n/k/a Cheryl Geiser for directed verdict on the claims against her. Cheryl Potashnik n/k/a Cheryl Geiser and Jeffrey W. Carpenter were each unsuccessful on the counterclaims and claims between them. As a result, no costs are awarded to Cheryl Potashnik n/k/a

FINAL JUDGMENT CAUSE NO. CC-08-2072-E — PAGE 2 OF 7

Cheryl Geiser. The Court also finds good cause not to award costs to Cheryl Potashnik n/k/a Cheryl Geiser. First, Cheryl Potashnik n/k/a Cheryl Geiser and Jeffrey W. Carpenter were each unsuccessful on the counterclaims and claims between them. Second, awarding costs to Cheryl Potashnik n/k/a Cheryl Geiser would, as a practical matter under the circumstances, burden Jeffrey W. Carpenter with paying shared defense costs for the four defendants against whom he was successful. All defendants shared the same legal counsel. All defendants shared the same liability insurance carrier. With few exceptions, all defendants asserted the same defenses. For all oral depositions that Cheryl Potashnik n/k/a Cheryl Geiser initiated, all defendants jointly noticed and took those depositions. All defendants counted as one side — or one party — for purposes of paying for court-ordered mediations.

A jury and one alternate juror, consisting of 7 citizens good and true, were empaneled and sworn and thereafter heard the admissible evidence. Having retained the original 6 jurors during the course of the trial, the Court dismissed the alternate juror before deliberations. The Court then submitted its Charge to the jury, which was followed by the closing arguments of the lawyers. Thereafter, on February 1, 2018, the jury returned a five-to-one verdict in favor of Jeffrey W. Carpenter and against Brian Potashnik, Southwest Housing Development Company, Inc., Southwest Housing

FINAL JUDGMENT CAUSE NO. CC-08-2072-E — PAGE 3 OF 7

Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., and Affordable Housing Construction, Inc. on certain claims. The Court then received and accepted the jury's verdict, which is incorporated by reference as if fully set forth herein.

Before jury trial, all parties agreed to try to the Court the issue of attorneys' fees under Texas Civil Practice and Remedies Code Chapter 38. That portion of the case was called to trial on November 15, 2018. Jeffrey W. Carpenter appeared in person and through his counsel and announced ready for trial. Brian Potashnik, Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., and Affordable Housing Construction, Inc. appeared through their counsel and announced ready for trial. The Court heard the admissible evidence and the arguments of counsel and took judicial notice as appropriate. At the conclusion of the presentation, the Court announced its ruling on the record, noting that a written judgment would follow.

Having considered the verdict of the jury, the Court's ruling on attorneys' fees, the admissible evidence, the record in this case, the arguments of counsel, and the previous orders of the Court, it is hereby

FINAL JUDGMENT CAUSE NO. CC-08-2072-E — PAGE 4 OF 7

ORDERED, ADJUDGED and DECREED that Jeffrey W. Carpenter do have and recover of and from Brian Potashnik, Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., and Affordable Housing Construction, Inc., jointly and severally:

a. actual damages in the amount of $928,020.76;

b. prejudgment interest on actual damages [$928,020.76] at the rate of 5.25% per annum simple interest from March 11, 2008 through the day before the date of this Judgment;

c. reasonable attorneys' fees in the amount of $820,818.00 for the prosecution of this case through the day before the date of this Judgment for Plaintiff Jeffrey W. Carpenter's breach of contract claim against Defendants Brian Potashnik, Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. a/k/a and d/b/a Southwest Housing Management Company, Inc., and Affordable Housing Construction, Inc.;

d. costs of court; and

e. postjudgment interest on all of the amounts above at the rate of 5.25% per annum, compounded annually, from the date of this Judgment until the date this Judgment is satisfied.

It is further ORDERED, ADJUDGED and DECREED, that if any defendant other than Defendant Cheryl Potashnik n/k/a Cheryl Geiser unsuccessfully appeals this Judgment, then Jeffrey W. Carpenter shall additionally recover from such unsuccessful appealing defendant — or jointly and severally from such unsuccessful appealing defendants if more than one such defendant unsuccessfully appeals — the following amounts, representing

conditional and reasonable attorneys' fees that would be incurred by Jeffrey

W. Carpenter in any such appeal:

- a.    $86,625.00 for an appeal to the Dallas Court of Appeals, excluding oral argument and rehearing response;

- b.    an additional $9,900.00 for oral argument, if any, before the Dallas Court of Appeals;

- c.    an additional $9,900.00 for a response to a motion for rehearing, if the Dallas Court of Appeals requests that Jeffrey W. Carpenter file such a response;

- d.    an additional $32,175.00 for a petition for review or response to a petition for review filed with the Supreme Court of Texas;

- e.    an additional $37,125.00 for merits briefing, if the Supreme Court of Texas requests briefing on the merits;

- f.    an additional $14,850.00 for oral argument, if any, before the Supreme Court of Texas; and

- g.    an additional $7,425.00 for a response to a motion for rehearing, if the Supreme Court of Texas requests that Jeffrey W. Carpenter file such a response.

All other relief requested by any individual or entity in this case and not

specifically granted herein or previously disposed of is DENIED.

This Judgment finally disposes of all parties and all claims and is

appealable.

APPENDIX 000137

The Court ORDERS execution to issue for this Judgment.

Signed this ___17___ day of _December_____, 2018.

_Mark Greenberg_

Mark Greenberg
Judge, Dallas County Court at Law No. 5

APPENDIX 000138

# Exhibit 2-5

# August 27, 2020
# Dallas Court of Appeals
# Memorandum Opinion
# affirming judgment

**AFFIRMED and Opinion Filed August 27, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-00238-CV**
_____

**BRIAN POTASHNIK, SOUTHWEST HOUSING DEVELOPMENT COMPANY, INC., SOUTHWEST HOUSING MANAGEMENT CORPORATION, INC. A/K/A AND D/B/A SOUTHWEST HOUSING MANAGEMENT COMPANY, INC., AND AFFORDABLE HOUSING CONSTRUCTION, INC., Appellants**
**V.**
**JEFFREY W. CARPENTER, Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-08-02072-E**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Evans
Opinion by Justice Evans

After an eight-day jury trial, Brian Potashnik, Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc., a/k/a and d/b/a Southwest Housing Management Company, Inc., and Affordable Housing Construction, Inc. appeal from an adverse judgment on Jeffrey W. Carpenter's breach of contract claim against them. In two issues, appellants challenge the legal sufficiency of the evidence to support the jury's finding that the

APPENDIX 000140

parties formed an enforceable agreement.  After reviewing the record, we affirm the trial court's judgment for the reasons that follow.

## BACKGROUND

Brian and Cheryl Potashnik[1] operated the various appellant companies which developed, owned, and managed affordable housing complexes.  In 2006, Brian and Cheryl decided to sell their business.  At that time, Jeff Carpenter was the executive vice president of Southwest Housing Management Corporation, Inc.  Brian and Cheryl wanted Carpenter and other key employees to stay on until the transfer of management to the ultimate purchaser for the purposes of continuity, which was important to the asset sale.  According to Cheryl, when they informed Carpenter and other key employees of their plans to sell, they told them that if the sale was successful and there was money left over at the end of the day, they wanted them to participate in the success of the sale.  At trial, Cheryl also admitted she told Carpenter that they intended to pay him a bonus if and when the sale went through.  Carpenter similarly testified that in May 2006, when Brian and Cheryl told him about their plans to sell, Brian told him this would be good for both families and that they worked hard and should reap some of the rewards.  According to Carpenter, Brian told him he wanted Carpenter to stay because there was a lot to do and Carpenter would be involved in the due diligence and communication between the teams once

---

[1] Cheryl's legal last name is Geiser, but she used Potashnik in business during the relevant time period.

–2–

APPENDIX 000141

a buyer was selected.  Brian further told Carpenter that once they selected a buyer and knew the numbers better, they would put together a very lucrative bonus program for Carpenter's efforts.  Brian and Carpenter shook hands after that first conversation about the sale.  Another executive testified at trial that Brian later told him that if the transactions went well, Carpenter might not have to work again.

Carpenter testified that on October 13, 2006, Brian informed him that a buyer had been selected.  Brian then indicated to Carpenter his bonus would be based on the letter of intent they were about to sign with the buyer.  Carpenter testified that he and Brian "walked through" the numbers that were based on three percent of the gross sales price of $36 million minus normal closing costs and minus sale proceed bonuses paid to other key employees.  Carpenter and Brian did the math and estimated a stay bonus of around $1,020,000.  They shook hands after Brian explained the bonus formula.  At that time, the anticipated closing date for the transaction was spring/summer 2007.  The next business day, Carpenter approached Brian to ask about increasing the bonus from three percent to five percent.  Brian rejected the idea of five percent, stating it would have to stay at three percent because that was what was approved, "we've committed to it," and he could not do any more than that.

At some point while the sale was pending, Carpenter and the sellers learned definitively that Carpenter would not have a position with the buyer because the buyer had its own person for Carpenter's job.  Subsequently, Carpenter was

APPENDIX 000142

approached by another company that tried to recruit him immediately with a higher starting base salary than he was earning at the time.  Nevertheless, Carpenter testified he declined the offer because he was "a man of his word," said he would stay on, and was not willing to walk away from the three percent stay bonus and back-earned bonuses.[2]  At trial, Jeff Richards, the recruiter for the company, confirmed Carpenter would not start the new job immediately because he had a considerable amount of money coming to him from his current employer if he stayed on.

In late September/early October 2007, Carpenter learned from Brian and Cheryl that criminal indictments were looming against them and the business was losing up to $1 million per month on their personal legal defense fees.[3]  The sale of the business, which was initially expected to close in the spring/summer of 2007, was delayed, and the management transition from appellants to the new buyer was set for November 1, 2007.  At trial, Cheryl confirmed that they wanted Carpenter to stay on, so they intended to pay him a bonus to work through a certain point in connection with the asset sale which ultimately was the point in which the management of the business was transferred to the new buyer.

Carpenter testified that he met with Brian on October 12, 2007 at which time Brian acknowledged that Carpenter had earned both his three percent bonus as well

---

[2] The jury found against Carpenter on the back-earned annual bonuses.

[3] The FBI had previously searched appellants' offices in 2005, but Brian and Cheryl assured Carpenter they had done nothing wrong.

as the back-earned bonuses.  On October 21, 2007, Carpenter met Brian and Cheryl for dinner and they told him he would get paid when they get paid, i.e., at the closing. Cheryl again reassured Carpenter she "would never screw [him]."  Cheryl testified that October 31, 2007 was the last day they needed Carpenter to stay on to help with the asset sale.  It is undisputed that Carpenter worked for appellants through October 31, 2007.  The next day, on November 1, Carpenter received his termination paperwork/severance agreement offering him $50,000 and no other payments if he released all potential claims against appellants.  Carpenter did not sign the agreement and ultimately filed this breach of contract lawsuit.

After a jury trial consisting of five days of testimony from various witnesses and other evidence, the jury answered the following question in Carpenter's favor:

QUESTION 4

Did any of the defendants named below and Jeff Carpenter agree on October 13, 2006 to pay Jeff Carpenter:

1. 3% of the total of: gross asset sale revenue to sellers, less normal closing costs, less sale proceeds bonuses paid to employees

2. if Jeff Carpenter would stay as long as needed on[sic] to help make the asset sale happen

An agreement may be oral, written, or partly oral and partly written.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

The written agreement with Southwest Housing Management may be modified by a later oral agreement, even though it provides that it can be modified only in writing.

APPENDIX 000144

The trial court rendered judgment on the jury's verdict in favor of Carpenter, awarding him $928,020.76 in actual damages plus pre- and post-judgment interest, attorney's fees, and conditional appellate attorney's fees.  Appellants then filed this appeal challenging the legal sufficiency of the evidence to support the jury's affirmative finding in question four.

## ANALYSIS

In their two issues on appeal, appellants contend the evidence is legally insufficient to support the jury's "yes" answer to Question 4.  Because appellants challenge the legal sufficiency of an adverse finding on an issue on which they did not have the burden of proof, they must demonstrate that there is no evidence to support the finding.  *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014).  Evidence is legally sufficient to support a jury's verdict when it would allow reasonable and fair-minded jurors to reach the challenged finding.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  When we review a finding for legal sufficiency, we consider the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not.  *See id.*

In their first issue, appellants argue there is no evidence to support the jury's finding that the parties formed a contract on October 13, 2006.  They contend Carpenter's own admission that he asked Brian for five percent of sales revenue on the next day, October 14, 2006, "is fatal to the jury's finding that the parties reached

APPENDIX 000145

an agreement on October 13."   Appellants specifically rely on the following Carpenter testimony to establish conclusively the parties never reached an agreement on October 13:

> Q. So what's the date of your asking for five percent, sir?
>
> A. It was the next business day after October 13th.
>
> Q. So October 14 you were still negotiating, correct?
>
> A. I believe so.

Appellants assert this evidence demonstrates as a matter of law there was no meeting of the minds to prove the parties agreed that Carpenter would be paid three percent of gross asset sale revenue to sellers, less normal closing costs, less sale proceeds bonuses paid to employees.  We do not agree that this lone statement by Carpenter, taken out of context and ignoring multiple days of testimony and numerous admissions by Brian and Cheryl, precludes the jury's finding.

To prove the existence of a valid contract, a party must establish an offer was made, the other party accepted the offer, the parties had a meeting of the minds on the essential terms of the contract (mutual assent), each party consented to the terms, and the parties executed and delivered the contract with the intent that it be mutual and binding.  *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).   An action for breach of contract may involve disputes on any combination of these requirements, as well as a number of defenses that can be asserted by a defendant.  *Id*.  Here, appellants challenge the legal sufficiency of the

evidence with respect to the mutual assent or meeting of the minds requirement to contract formation. Whether the parties reached an agreement is a question of fact. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.— Houston [14th Dist.] 2010, pet. denied).

Carpenter testified that on October 13, 2006, Brian informed him of the specifics of the bonus he would receive and they walked through the math. The bonus was based on the letter of intent that was going to be signed and would equal three percent of the gross sales price of $36 million minus normal closing costs, including items like broker fees, title fees, legal fees, and bonuses or severances paid to other employees. Carpenter testified they estimated his bonus to be about $1,020,000. At that time, the two shook hands on the deal. Brian never stated the deal had to be in writing. Cheryl also admitted that they intended to pay Carpenter a bonus out of sales proceeds when the sale went through. According to Carpenter, the next day he went to Brian's office and asked to raise the percentage from three percent to five percent. Brian responded that "it would have to stay at three percent, that's what we talked about, that's what I approved, and we've committed to it." Carpenter also testified that Brian said "he has another person that he has to approve or . . . work through. She can – it's been approved at three percent and that's what we discussed, that's what we talked about, and I can't do five percent." There is no evidence that Carpenter rejected the three percent on which they had already agreed. In addition to this evidence, the jury heard testimony from Cheryl that, to encourage

–8–

key employees to stay on through the sale, they talked to the employees and "let them know that if, at the end of the day, the sale was successful and there was money left over at the end of the day that we wanted them to participate in the success of the sale and of the business."  Carpenter also testified that Brian told him that if he stayed, and when they settled on a buyer, "we'll put together a very lucrative bonus program for you for your efforts."

According to Carpenter, when he and Brian were in Las Vegas around January 12, 2007 they discussed putting the deal in writing, and Brian said it was going to be done but attorneys were too busy.  Brian then stated to Carpenter, "Jeff if it's that important to you, you know, I'll write it on the back of a napkin."  But there were only cloth napkins available so Carpenter decided to trust Brian on the oral deal.  Moreover, Carpenter stated that, on October 12, 2007, Brian told him that Carpenter had fulfilled his obligation and had earned his three-percent bonus and back-earned bonuses as of that day.  Another executive, Deepak Sulakhe, testified that Brian told him that if the transaction went well, Carpenter might not have to work again.

Carpenter's testimony that he attempted to get Brian to agree to a five percent bonus after they agreed to three percent the day before is not conclusive evidence that the parties were still negotiating and thus never reached an agreement.  Instead, the jury could have viewed Carpenter's statement as seeking a modification of the original agreement that Brian rejected.  At best, this testimony could be viewed as conflicting with other evidence.  In a legal sufficiency analysis, we assume the jury

–9–

resolved conflicting testimony in a manner favorable to the verdict. *See City of Keller*, 168 S.W.3d at 819. We resolve appellants' first issue against them.

In their second issue, appellants contend that because the terms of the purported agreement are too indefinite, it is unenforceable as a matter of law. Specifically, appellants argue that evidence Carpenter "would stay on as long as needed to make the asset sale happen" in exchange for three percent of undefined gross asset sale revenue to sellers minus undefined normal closing costs was, at best, a promise to work together and not an enforceable contract because the agreement does not reflect a meeting of the minds on the services to be provided.

We agree with appellants that in order to be legally enforceable, a contract must be sufficiently definite in its terms to allow a court to understand what a promisor undertook. *See T.O. Stanley Boot Co. Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The parties must agree to the material terms of the contract before a contract can be enforced and where an essential term is open for future negotiation, there is no binding contract. *Id.* But a contract need only be definite and certain as to those terms that are essential and material to the agreement. *Fischer v. CTMI L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). When a material or essential term is missing or not certain when the contract was allegedly formed, the contract will fail for indefiniteness. *See Marx v. FDP, LP*, 474 S.W.3d 368, 376 (Tex. App.—San Antonio 2015, pet. denied).

–10–

In analyzing whether a contract is sufficiently definite to be enforceable, we are guided by the following five basic principles:  (1) we may not rewrite the parties' contract; (2) because the law disfavors forfeitures, whenever the contract language is reasonably susceptible to an interpretation that is sufficiently definite, we will apply that interpretation, (3) we will imply terms that can be reasonably implied, (4) terms that appear indefinite may be given precision by usage of trade or by course of dealing between parties, and (5) partial performance under an agreement may remove uncertainty and establish an enforceable contract; in fact, a party's actions "[i]n reliance on an agreement may make a contractual remedy appropriate even though uncertainty is not removed." *Fischer*, 479 S.W.3d at 239–40 (internal citations omitted).

In support of their position, appellants focus on the meaning of Carpenter's promise to stay on to "help make the asset sale happen" after Brian and Cheryl informed him they were selling the companies.  They argue the meaning of the promise cannot be ascertained because it provides no objective criteria or guidelines by which a court can measure Carpenter's efforts.  After reviewing the record before us, we conclude that the evidence was legally sufficient to establish the material terms of the agreement between appellants and Carpenter were sufficiently definite and clear, no terms were left open for future negotiation, and the parties mutually agreed to the material terms.

APPENDIX 000150

To the extent that appellants rely on Carpenter's testimony that he was still negotiating on October 14 to conclusively establish there was no meeting of the minds, we have already considered and rejected this argument in our resolution of their first issue.

Appellants also argue the duration for Carpenter's performance was also indefinite because of Carpenter's testimony that:

> A. Well, we did have an agreement for me to help assist in closing the sale. And it -- depending on the time frame, it was going to be either the sales closing or until my time is no longer needed, knowing that I was not going to have a position to go to. So it was a floating target.
>
> Q. All right. None of that was agreed to when you had the bump, shake, oral agreement with Mr. Potashnik in October 13, 2006?
>
> A. We had -- we had a targeted frame of closing in, as I said before, in April, May of 2007. And as we got closer to that it became more of a moving target.

They assert this testimony establishes that the parties did not agree on the time for performance or how long Carpenter had to stay on. We do not agree. That the parties did not have a specific date on which Carpenter's performance would end does not render the agreement too indefinite to be enforceable. Carpenter also testified that when Brian informed him that he was going to sell the business, he told Carpenter that he wanted Carpenter to stay and do his job. Brian specifically told Carpenter that Carpenter would be involved in the due diligence and communication between the teams once a buyer was selected. Based on the evidence, a reasonable jury could have determined that the parties agreed that if Carpenter continued to do

–12–

his job and perform these other responsibilities until the asset sale closed or he was no longer needed, he would be entitled to the three percent bonus.  Carpenter and others testified that even when Carpenter was offered another job at a more lucrative base salary, he did not quit his position but instead stayed through October 31, 2007, the day before the management transition to the buyer.  Moreover, there was evidence that about ten days earlier, on October 21, 2007, Brian and Cheryl confirmed to Carpenter that he sufficiently performed his obligations and would get paid his three percent bonus at closing, when they got paid.

We likewise are unpersuaded by appellants' argument that the agreement's payment term was not clear or definite enough to be enforceable because there was no understanding as to how "normal closing costs" were to be determined.  Carpenter testified that Brian and he estimated the amount of normal closing costs to be about $1 million when they went through the math to calculate the bonus on October 13 and there is no indication that these costs would not be able to be ascertained with specificity at the time of the closing of the asset purchase agreement when the bonus was to be paid.

The supreme court's decision in *Vanegas v. American Energy Services* also supports our conclusion that an enforceable contract exists.  302 S.W.3d 299, 303–04 (Tex. 2009).  In *Vanegas*, the supreme court concluded the employer's promise to pay employees a five percent bonus from sale/merger proceeds was enforceable upon the employees' performance of staying until the sale.  *Id*. at 304.  The court

–13–

APPENDIX 000152

reasoned whether the promise was illusory at the time it was made is irrelevant; what matters is whether the promise is enforceable by the time of breach.  *Id*. at 303.  We conclude the material terms of the contract are sufficiently definite to enable a court to determine the parties' respective obligations and provide a remedy for the contract's breach.  Accordingly, we resolve appellants' second issue against them.

CONCLUSION

Based on the record before us, we conclude the evidence was legally sufficient to support the jury's finding of an enforceable contract.  Accordingly, we affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

190238F.P05

APPENDIX 000153



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

| | |
|---|---|
| BRIAN POTASHNIK, SOUTHWEST HOUSING DEVELOPMENT COMPANY, INC., SOUTHWEST HOUSING MANAGEMENT CORPORATION, INC. A/K/A AND D/B/A SOUTHWEST HOUSING MANAGEMENT COMPANY, INC., AND AFFORDABLE HOUSING CONSTRUCTION, INC., Appellants | On Appeal from the County Court at Law No. 5, Dallas County, Texas Trial Court Cause No. CC-08-02072-E. Opinion delivered by Justice Evans, Justices Partida-Kipness and Nowell participating. |

No. 05-19-00238-CV        V.

JEFFREY W. CARPENTER,
Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Jeffrey W. Carpenter recover his costs of this appeal from appellants Brian Potashnik, Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. A/K/A and D/B/A Southwest Housing Management Company, Inc., and Affordable Housing Construction, Inc.

Judgment entered August 27, 2020.

–15–

APPENDIX 000154

# Exhibit 2-6

## January 22, 2021 notice

—

## Texas Supreme Court
## denies petition for review

RE: Case No. 20-0763                    DATE: 1/22/2021
COA #: 05-19-00238-CV                   TC#: CC-08-02072-E
STYLE: POTASHNIK v. CARPENTER

     Today the Supreme Court of Texas denied the petition
for review in the above-referenced case.




                    MS. AMY  GIBSON
                    GIBSON WILEY, PLLC
                    1500 JACKSON ST, STE 714
                    DALLAS, TX  75201
                    * DELIVERED VIA E-MAIL *

```
                   RE: Case No. 20-0763              DATE: 1/22/2021
                   COA #: 05-19-00238-CV             TC#: CC-08-02072-E
STYLE: POTASHNIK v. CARPENTER
```

Today the Supreme Court of Texas denied the petition for review in the above-referenced case.

```
                   MS. LISA  MATZ
                   CLERK, FIFTH COURT OF APPEALS
                   600 COMMERCE, SUITE 200
                   DALLAS, TX  75202-4658
                   * DELIVERED VIA E-MAIL *
```

RE: Case No. 20-0763                    DATE: 1/22/2021
COA #: 05-19-00238-CV                   TC#: CC-08-02072-E
STYLE: POTASHNIK v. CARPENTER

       Today the Supreme Court of Texas denied the petition
for review in the above-referenced case.

                        MR. DAVID LINWAYNE  WILEY
                        GIBSON WILEY PLLC
                        1500 JACKSON ST APT 109
                        DALLAS, TX  75201-4923
                        * DELIVERED VIA E-MAIL *

                RE: Case No. 20-0763                DATE: 1/22/2021
                COA #: 05-19-00238-CV               TC#: CC-08-02072-E
     STYLE: POTASHNIK v. CARPENTER

          Today the Supreme Court of Texas denied the petition
     for review in the above-referenced case.




                         MR. ROBERT B. GILBREATH
                         HAWKINS PARNELL & YOUNG LLP
                         HIGHLAND PARK PLACE
                         4514 COLE AVENUE, SUITE 500
                         DALLAS, TX  75205-5412
                         * DELIVERED VIA E-MAIL *

RE: Case No. 20-0763                        DATE: 1/22/2021
COA #: 05-19-00238-CV                       TC#: CC-08-02072-E
STYLE: POTASHNIK v. CARPENTER

     Today the Supreme Court of Texas denied the petition
for review in the above-referenced case.


                     DISTRICT CLERK  DALLAS COUNTY
                     DALLAS COUNTY COURTHOUSE
                     GEORGE L. ALLEN, SR. COURTS BUILDING
                     600 COMMERCE, SUITE 103
                     DALLAS, TX  75202
                     * DELIVERED VIA E-MAIL *

APPENDIX 000160

# Exhibit 2-7

# March 5, 2021 notice
# —
# Texas Supreme Court
# denies motion for rehearing

RE: Case No. 20-0763                          DATE: 3/5/2021
COA #: 05-19-00238-CV                    TC#: CC-08-02072-E
STYLE: POTASHNIK v. CARPENTER

  Today the Supreme Court of Texas denied the motion for
rehearing of the above-referenced petition for review.

       MS. AMY  GIBSON
       GIBSON WILEY, PLLC
       1500 JACKSON ST, STE 714
       DALLAS, TX  75201
       * DELIVERED VIA E-MAIL *

RE: Case No. 20-0763                    DATE: 3/5/2021
COA #: 05-19-00238-CV                   TC#: CC-08-02072-E
STYLE: POTASHNIK v. CARPENTER

     Today the Supreme Court of Texas denied the motion for
rehearing of the above-referenced petition for review.




                    MS. LISA  MATZ
                    CLERK, FIFTH COURT OF APPEALS
                    600 COMMERCE, SUITE 200
                    DALLAS, TX  75202-4658
                    * DELIVERED VIA E-MAIL *

```
          RE: Case No. 20-0763                    DATE: 3/5/2021
          COA #: 05-19-00238-CV                   TC#: CC-08-02072-E
   STYLE: POTASHNIK v. CARPENTER
```

       Today the Supreme Court of Texas denied the motion for
  rehearing of the above-referenced petition for review.




```
                     MR. DAVID LINWAYNE  WILEY
                     GIBSON WILEY PLLC
                     1500 JACKSON ST APT 109
                     DALLAS, TX  75201-4923
                     * DELIVERED VIA E-MAIL *
```

```
          RE: Case No. 20-0763              DATE: 3/5/2021
          COA #: 05-19-00238-CV             TC#: CC-08-02072-E
   STYLE: POTASHNIK v. CARPENTER
```

        Today the Supreme Court of Texas denied the motion for
rehearing of the above-referenced petition for review.




                    MR. ROBERT B. GILBREATH
                    HAWKINS PARNELL & YOUNG LLP
                    HIGHLAND PARK PLACE
                    4514 COLE AVENUE, SUITE 500
                    DALLAS, TX  75205-5412
                    * DELIVERED VIA E-MAIL *

RE: Case No. 20-0763                    DATE: 3/5/2021
    COA #: 05-19-00238-CV                TC#: CC-08-02072-E
STYLE: POTASHNIK v. CARPENTER

        Today the Supreme Court of Texas denied the motion for
rehearing of the above-referenced petition for review.

                        DISTRICT CLERK  DALLAS COUNTY
                        DALLAS COUNTY COURTHOUSE
                        GEORGE L. ALLEN, SR. COURTS BUILDING
                        600 COMMERCE, SUITE 103
                        DALLAS, TX  75202
                        * DELIVERED VIA E-MAIL *

# Exhibit 2-8

# March 12, 2021 file-stamped Mandate

FILED
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY, TEXAS

2021 MAR 12 AM 10: 50



## Court of Appeals
## Fifth District of Texas at Dallas

## MANDATE

### TO THE COUNTY COURT AT LAW NO. 5 OF DALLAS COUNTY, GREETINGS:

Before the Court of Appeals for the Fifth District of Texas, on the 27th day of August 2020, the cause on appeal to revise or reverse the judgment between

BRIAN POTASHNIK, SOUTHWEST HOUSING DEVELOPMENT COMPANY, INC., SOUTHWEST HOUSING MANAGEMENT CORPORATION, INC. A/K/A AND D/B/A SOUTHWEST HOUSING MANAGEMENT COMPANY, INC., AND AFFORDABLE HOUSING CONSTRUCTION, INC., Appellants

No. 05-19-00238-CV        V.

JEFFREY W. CARPENTER, Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas Trial Court Cause No. CC-08-02072-E.
Opinion delivered by Justice Evans, Justices Partida-Kipness and Nowell participating.

was determined; and this Court made its order in these words:

We **VACATE** our judgment dated August 27, 2020. This is now the judgment of the Court. In accordance with this Court's opinion of August 27, 2020, the judgment of the trial court is **AFFIRMED**.

CC-08-02072-E
CMA
MANDATE - AFFIRM
2405748



APPENDIX 000188

It is **ORDERED** that appellee Jeffrey W. Carpenter recover his costs of this appeal and the full amount of the trial court's judgment from appellants Brian Potashnik, Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc. A/K/A and D/B/A Southwest Housing Management Company, Inc., and Affordable Housing Construction, Inc. and from U.S. Specialty Insurance Company in the amount of $214,625.00 as surety on appellants Brian Potashnik, Southwest Housing Development Company, Inc. and Affordable Housing Construction, Inc.'s, supersedeas bond.

**WHEREFORE, WE COMMAND YOU** to observe the order of the Court of Appeals for the Fifth District of Texas, in this behalf, and have it duly obeyed and executed.

**WITNESS** the HON ROBERT D. BURNS, III, Chief Justice of the Court of Appeals, with the Seal thereof affixed, at the City of Dallas, this 11th day of March 2021.

Lisa Matz, Clerk

–2–

CHIEF JUSTICE
ROBERT D. BURNS, III

JUSTICES
LANA MYERS
DAVID J. SCHENCK
KEN MOLBERG
LESLIE OSBORNE
ROBBIE PARTIDA-KIPNESS
BILL PEDERSEN, III
AMANDA L. REICHEK
ERIN A. NOWELL
CORY L. CARLYLE
BONNIE LEE GOLDSTEIN
CRAIG SMITH
DENNISE GARCIA



**Court of Appeals**
**Fifth District of Texas at Dallas**

600 COMMERCE STREET, SUITE 200
DALLAS, TEXAS 75202
(214) 712-3400

LISA MATZ
CLERK OF THE COURT
(214) 712-3450
theclerk@5th.txcourts.gov

SUSAN FOX
BUSINESS ADMINISTRATOR
(214) 712-3417
susan.fox@5th.txcourts.gov

FACSIMILE
(214) 745-1083

INTERNET
WWW.TXCOURTS.GOV/5THCOA.ASPX

March 11, 2021

R. Michael Northrup
Cowles & Thompson, P.C.
901 Main Street
Ste. 3900
Dallas, TX 75202-3793
* DELIVERED VIA E-MAIL *

Amy Gibson
Gibson Wiley PLLC
1500 Jackson Street
Ste. 109
Dallas, TX 75201
* DELIVERED VIA E-MAIL *

David Linwayne Wiley
Gibson Wiley PLLC
1500 Jackson Street
Ste. 109
Dallas, TX 75201
* DELIVERED VIA E-MAIL *

The Honorable Mark Greenberg
County Court at Law No. 5
George Allen Courts Bldg.
600 Commerce St Rm 629
Dallas, TX 75202
* DELIVERED VIA E-MAIL *

Robert B. Gilbreath
Hawkins Parnell & Young LLP
4514 Cole Avenue
Suite 500
Dallas, TX 75205
* DELIVERED VIA E-MAIL *

John F. Warren
Dallas County Clerk
1201 Elm Street, Suite 2200
Dallas, TX 75270
* DELIVERED VIA E-MAIL *

Sim Israeloff
Cowles & Thompson, P.C.
901 Main St Ste 3900
Dallas, TX 75202-3793
* DELIVERED VIA E-MAIL *

RE:   Court of Appeals Number:     05-19-00238-CV
      Trial Court Case Number:      CC-08-02072-E

APPENDIX 000170

Style: Brian Potashnik, Southwest Housing Development Company, Inc.,
        Southwest Housing Management Corporation, Inc. a/k/a and d/b/a
        Southwest Housing Management Company, Inc., and Affordable Housing
        Construction, Inc.
        v.
        Jeffrey W. Carpenter

 Today pursuant to Rule 18 of the T.R.A.P. the mandate has been issued. The parties are advised that: (i) exhibits submitted to the Court by a party may be withdrawn by that party or the party's attorney of record; and (ii) exhibits on file with the Court will be destroyed six years after the final disposition of the case, but if ordered by the Court, may be destroyed earlier.

     Respectfully,

     /s/ Lisa Matz, Clerk of the Court

2

# Exhibit 2-9

# April 19, 2021 Amended Motion for Turnover of *Stowers* Claim

FILED
4/19/2021 1:28 PM
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

CAUSE NO. CC-08-2072-E

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Judgment Creditor,* | § | |
| | § | |
| v. | § | In the County Court |
| | § | |
| Southwest Housing | § | at Law № 5 |
| Development Company, Inc.; | § | |
| Southwest Housing | § | Dallas, County, Texas |
| Management Corporation, | § | |
| Inc. a/k/a and d/b/a Southwest | § | |
| Housing Management | § | |
| Company, Inc.; Affordable | § | |
| Housing Construction, Inc.; | § | |
| and Brian Potashnik, | § | |
| | § | |
| *Judgment Debtors.* | § | |

## JEFF CARPENTER'S AMENDED MOTION FOR TURNOVER OF *STOWERS* CLAIM

### INTRODUCTION AND PROCEDURAL BACKGROUND

This is an unlawful employment practices case involving refusal to pay earned compensation. A *Stowers* demand[1] was made and not accepted. The case proceeded to trial. The final judgment was affirmed at the Dallas Court of Appeals, and the Supreme Court of Texas denied review. The judgment

---

[1] *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 395 (Tex. 2016) ("A *Stowers* cause of action arises when an insurer negligently fails to settle a claim covered by an applicable policy within policy limits.").

APPENDIX 000173

remains unsatisfied.  Mr. Carpenter seeks turnover of a *Stowers* claim so it can be prosecuted and liquidated and recovery, if any, can be applied as a credit to satisfy the judgment in whole or in part.

## TURNOVER OF *STOWERS* CLAIMS

Texas Civil Practice and Remedies Code Chapter 31 entitles judgment creditors to court aid in satisfying a judgment.[2]  Turning over assignable causes of action directly to a judgment creditor is a decades-old Texas practice.[3]  *Stowers* claims are subject to turnover, even while others are not.[4]

All judgment debtors have a *Stowers* claim against insurer Twin City Fire Insurance Company.  As a claim, it cannot readily be attached or levied on by ordinary legal process and it is not exempt under any statute from attachment,

---

[2] *See* Tex. Civ. Prac. & Rem. Code § 31.002(a) ("COLLECTION OF JUDGMENT THROUGH COURT PROCEEDING.  (a)  A judgment creditor is entitled to aid from a court of appropriate jurisdiction, including a justice court, through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.").

[3] *See, e.g., Renger Mem. Hosp. v. State*, 674 S.W.2d 828, 829 (Tex. App.—Austin 1984, no writ) ("Renger Memorial Hospital appeals from a district court order requiring a turnover (by way of assignment) to appellees The University of Texas and Texas Lutheran College of a cause of action. We affirm.").

[4] *See Goin v. Crump*, No. 05-18-00307-CV, 2020 WL 90919 (Tex. App.—Dallas Jan. 8, 2020, no pet.) (mem. op.) (attached as Exhibit 2).

---

APPENDIX 000174

execution, or seizure.  A court "may" order turnover of nonexempt property to a sheriff or constable for execution.[5]  "May" means that aid — turnover to a sheriff or constable — is illustrative rather than exclusive.[6]  In 2016, the Dallas Court of Appeals affirmed turnover of a *Stowers* claim directly to a judgment creditor.[7]  It did so without first requiring release or credit before the claim can be liquidated and recovery (if any) applied to full or partial satisfaction.  All of which makes sense:  Sheriffs and constables are not in a position to liquidate intangible legal claims.  And until a claim is liquidated, the amount to be applied toward satisfaction is unknown.

## REQUEST FOR RELIEF

Mr. Carpenter requests this Court order turnover (1) of any and all rights judgment creditors may have to prosecute and collect on that claim; and (2) of the right to all documents concerning that claim, including [but not limited to] files and documents of judgment debtors' current or former counsel concerning

---

[5] *See* Tex. Civ. Prac. & Rem. Code § 31.002(b) ("The court may: (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution; . . . .").

[6] *See Ford v. State*, 305 S.W.3d 530, 537 (Tex. Crim. App. 2009) ("[W]hen statutes or rules use the permissive word 'may,' that term generally indicates that the specified items are merely examples of the types of topics covered or methods allowed.").

[7] *See Goggans v. Ford*, No. 05-15-00052-CV, 2016 WL 2765033 (Tex. App.—Dallas May 11, 2016, pet. denied) (mem. op.) (attached as Exhibit 1).

insurance coverage of liability for the claims adjudicated in the final judgment in this case.[8]  A proposed order is submitted with this motion.

Respectfully submitted,

*David Wiley*

Amy Gibson
Texas State Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas State Bar No. 24029901
david@gwfirm.com

**Gibson Wiley PLLC**
1500 Jackson Street #109
Dallas, Texas 75201-4923
T: (214) 522-2121
F: (214) 522-2126
Email:
amy@gwfirm.com
david@gwfirm.com

*Attorneys for Jeff Carpenter*

---

[8] *See* Order of the 44th Judicial District Court for Dallas County granting turnover of *Stowers* claim in *Ford v. Goggans* (attached as Exhibit 3); Order of this Court granting turnover of *Stowers* claim in *Shrestha v. Gonzalez* (attached as Exhibit 4).

APPENDIX 000176

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies that on June 24, 2019, he and Amy Gibson conferred with judgment debtors' former attorney Sim Israeloff via telephone about the relief requested in this motion.  It is opposed and an opposition to relief requested herein was filed June 25, 2019.

*David Wiley*

_____
David L. Wiley


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 19, 2021, a true copy of this document was served on all other parties through their attorneys of record as follows via the Texas E-File System:

Mr. Robert B. Gilbreath
Hawkins Parnell & Young, LLP
Highland Park Place
4514 Cole Avenue, Suite 500
Dallas, Texas 75205
rgilbreath@hpylaw.com

*David Wiley*

_____
David L. Wiley

APPENDIX 000177

# Exhibit 1:

# *Goggans v. Ford*

**MATTHEW GOGGANS, Appellant**

**v.**

**TONIA MARIE FORD, Appellee**

**No. 05-15-00052-CV**

**Court of Appeals Fifth District of Texas at Dallas**

**May 11, 2016**

**On Appeal from the 44th Judicial District Court Dallas County, Texas Trial Court Cause No. DC-12-02281**

**MEMORANDUM OPINION**

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Evans

In this appeal from a turnover order, appellant Matthew Goggans contends the trial court erred in turning over claims he might have against his liability insurer while the underlying judgment against him is being appealed. We conclude the trial court did not abuse its discretion and we affirm the turnover order.

**BACKGROUND**

Appellee Tonia Marie Ford sued Goggans for injuries she sustained in an automobile accident. Goggans was provided a defense by his insurer, Germania Insurance Company. Prior to trial, Ford offered to settle her claims against Goggans for the limits of his insurance coverage. Germania refused the settlement offer. After a trial on the merits, a jury found Goggans was negligent in his operation of a motor vehicle and that such negligence proximately caused the

Page 2

injuries and damages sustained by Ford. The trial court signed a judgment awarding Ford $323,391.94 in damages plus post-judgment interest at a rate of five percent per annum.

This amount exceeded the limits of Goggans's liability insurance policy.

After entry of the judgment, Goggans filed, among other things, a notice of appeal and a motion to decrease the security required for a supersedeas bond. The trial court conducted a hearing on the motion to decrease security and denied it without prejudice to allow Goggans to refile his request with an amended affidavit concerning his assets. Goggans filed his first amended motion to decrease security on November 12, 2014.

One week before Goggans filed his amended motion to decrease security, Ford filed a motion for turnover order. The motion requested the court to order Goggans to turn over all claims he had against his insurance company, including any cause of action for negligent failure to settle within policy limits (a "*Stowers* claim"). *See G. A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex. 1929) (insurer has duty to settle within policy limits when reasonably prudent to do so). Submitted along with the motion were letters showing that Ford offered to settle her claims against Goggans for the coverage limits of Goggans's liability insurance policy and that Germania refused the offer. Goggans responded to the request for turnover order arguing that Ford's motion was premature because the judgment establishing his liability was not final and no *Stowers* claim in which he would have a property interest yet existed. In the alternative, Goggans argued it was against public policy to allow a *Stowers* claim to be made the subject of a turnover order.

At the hearing on Ford's motion for turnover, the following exchange between the court and Ford's counsel occurred:

THE COURT: Well, first, let me make sure that I understand what [Ford] wants. [Ford] wants the potential cause of

-1-

action, the *Stowers* cause of action . . . . That's what you want as far as in lieu of the supersedeas bond?

Page 3

APPELLEE'S COUNSEL: Yes

The trial court granted the motion for turnover order and ordered that "any and all causes of action [Goggans] has, or in the future may possess, including but not limited to the *Stowers* action are hereby award [sic] and turned over to [Ford]." The record contains no ruling, and the parties concede there is none, on Goggans's motion to decrease the security required for a supersedeas bond. Goggans then brought this appeal from the trial court's order.

During the pendency of this appeal, a different panel of this Court affirmed the judgment against Goggans in the underlying personal injury case. *See Goggans v. Ford*, No. 05-14-01239-CV, 2015 WL 8523302 (Tex. App.—Dallas Dec. 9, 2015, pet. filed) (mem. op.). Goggans has filed a petition for review of that decision with the Texas Supreme Court.

## ANALYSIS

We review the trial court's decision to grant or deny a turnover order for an abuse of discretion. *See HSM Dev., Inc. v. Barclay Props., Ltd.*, 392 S.W.3d 749, 751 (Tex. App.—Dallas 2102, no pet.). We may reverse the trial court's ruling only if we conclude the court acted in an unreasonable or arbitrary manner or acted without reference to any guiding rules or principles. *Id.*

Under section 31.002 of the Texas Civil Practice and Remedies Code, a trial court may order a judgment debtor to turnover nonexempt property, including present or future rights to such property, that cannot readily be attached or levied on by ordinary legal process. *See* TEX. CIV. PRAC. & REM.

CODE ANN. § 31.002 (West 2015). Rights to a judgment debtor's claims against his insurer may properly be made the subject of a turnover order. *See D & M Marine, Inc. v. Turner*, 409 S.W.3d 853, 858 (Tex. App.—Fort Worth 2013, no pet.). Goggans argues he has no present or future property rights in any *Stowers* claim against his insurer because the *Stowers* claim does not yet exist and will not accrue unless all appeals of the underlying

Page 4

judgment have been exhausted and the judgment against him is affirmed. Goggans relies on the case of *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988). *Street*, however, contradicts Goggans's position rather than supports it.

In *Street*, the court held that "a judgment is final for the purposes of bringing a *Stowers* action if it disposes of all issues and parties in the case, the trial court's power to alter the judgment has ended, and execution on the judgment, if appealed, has not been superseded." *Id.* The court went on to hold that, if the underlying judgment against the insured has not been superseded, the insured may bring a *Stowers* claim against his insurer regardless of the appellate status of the case because the outstanding judgment causes injury while it remains unpaid. *Id.* Goggans suggests the judgment against him is not final under *Street* because Ford cannot execute upon the judgment until the trial court rules on his amended motion to decrease the security required for the supersedeas bond. Goggans essentially contends that his motion, which has been pending for almost a year and a half, has the same effect as if he had posted a sufficient bond to supersede the judgment. Goggans cites no authority for the proposition that filing a motion to decrease security, by itself, prevents enforcement of a judgment and we have found none.



There are only four methods by which a judgment may be superceded: (1) filing with the trial court clerk a written agreement with the judgment creditor for suspending enforcement of the judgment; (2) filing with the trial court clerk a good and sufficient bond; (3) making a deposit with the trial court clerk in lieu of a bond; or (4) providing alternate security ordered by the court. TEX. R. APP. P. 24.1. Goggans argues that the discussion between the trial court judge and Ford's counsel at the hearing on the turnover order constitutes an agreement suspending enforcement of the judgment. The exchange to which Goggans refers was a question by the judge asking if Ford wanted a turnover of the *Stower's* claim "in lieu of a supersedeas bond" to which Ford's counsel responded "yes." Counsel's oral representation to the court that Ford

Page 5

would prefer a turnover order to a supersedeas bond in no way constitutes an agreement between the parties, let alone a written agreement filed with the trial clerk as required by the Texas Rules of Appellate Procedure. *Id.* Indeed, Goggans brought this appeal for the sole purpose of attempting to reverse the very order he contends Ford accepted in exchange for suspending enforcement of the judgment. Because the underlying judgment against Goggans has not been superseded and is final for purposes of *Stowers,* a claim may be brought against Goggans's insurer regardless of the fact that all appeals have not been exhausted. *See Gulf Ins. Co. v. Clarke,* 902 S.W.2d 156, 160 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (finality of judgments rule stated in *Street* equally applicable to claims brought by third parties against insurer). The claim, therefore, exists as property subject to turnover.

Goggans next argues that public policy prohibits the turnover of his *Stowers* claim. Although Goggans concedes that *Stowers* claims are assignable, he contends

assignment by virtue of a turnover order constitutes an impermissible "involuntary assertion" of the claim. Generally, causes of action against third parties are properly made the subject of a turnover order when the judgment creditor has the same interest in pursuing them to maximum value as the judgment debtor. *See D & M,* 409 S.W.3d at 857. Some Texas courts have held, however, that a *Stowers* claim is not subject to turnover if the insured has indicated he was satisfied with his insurer's decision not to settle or he has released his potential claims against the insurance company. *See Charles v. Tamez,* 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied); *Nationwide Mut. Ins. Co. v. Haffley,* 78 Fed. Appx. 348 (5th Cir. 2003). Where the insured has no complaints about his representation or no interest in pursuing a claim, he and the judgment creditor would not be aligned. The duty to settle a lawsuit under *Stowers* is a personal duty and the insured should not be forced to pursue a claim that he has no wish to pursue. *See Tamez,* 878 S.W.2d at 208. Furthermore, where the insured is satisfied with his insurer's

Page 6

representation and denies that he suffered any injury, no *Stowers* cause of action exists. *See id.* at 209; *Dauter-Clouse for Benefit of Bankr. Estate of Johnson v. Robinson,* 936 S.W.2d 329, 332 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

Unlike the cases that have held a turnover order would violate public policy, there is no evidence here that Goggans was satisfied with his insurer's refusal to settle the underlying suit or that he did not wish to pursue a *Stowers* claim. Such evidence could easily have been produced. Goggans has not taken the position that a *Stowers* claim does not exist on the basis that he was not injured. Absent such evidence, we cannot conclude the trial court abused its discretion in granting the turnover. *See D & M,* 409 S.W.3d at 858





(turnover did not violate public policy where there was no evidence insured did not want to be indemnified).

To the extent Goggans has raised concerns that pursuit of a *Stowers* claim could interfere with his defense during the pendency of his appeals, the supreme court in *Street* noted that "a trial court might in some instances have the authority to abate such a suit until all appeals are exhausted [and] it is within the sound discretion of the trial court to regulate discovery and the setting of trial to advance the ends of justice." *Street*, 756 S.W.2d at 302. Here, Goggans does not complain that discovery, if any, pursuant to the turnover order has or may interfere with Goggans's prosecution of his appeals with counsel retained through his insurance policy. There is nothing, therefore, for us to rule on regarding interference discovery might cause.

Page 7

## CONCLUSION

Based on the foregoing, we resolve Goggans's sole issue against him. We affirm the trial court's order.

| /David | Evans/ |
| --- | --- |
| DAVID | EVANS |
| JUSTICE | |

150052F.P05

Page 8

## JUDGMENT

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-12-02281. Opinion delivered by Justice Evans. Justices Lang-Miers and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's order on motion for turnover dated December 15, 2014 is **AFFIRMED.**

It is **ORDERED** that appellee TONIA MARIE FORD recover her costs of this appeal from appellant MATTHEW GOGGANS.

Judgment entered this 11th day of May, 2016.



APPENDIX 000182

# Exhibit 2:

# *Goin v. Crump*

**JOHN GOIN, Appellant/Relator**
**v.**
**HOPE CRUMP, Appellee/Real Party in Interest**

**No. 05-18-00307-CV**

**Court of Appeals Fifth District of Texas at Dallas**

**January 8, 2020**

On Appeal from the 95th District Court
Dallas County, Texas
Trial Court Cause No. DC-13-03801-D

**MEMORANDUM OPINION**

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

This appeal and, alternatively, petition for writ of mandamus arises from the court-ordered turnover of a judgment debtor's malpractice, Deceptive Trade Practices Act (DTPA), and Insurance Code claims to a receiver who is authorized to settle the claims and to pay the settlement proceeds to the judgment creditor in satisfaction of the underlying judgment. We conclude that the turnover of each of the foregoing claims, with the exception of one claim asserted under the Insurance Code, is void because it is against public policy. We reverse the subject order in part, conditionally grant the petition for writ of mandamus in part, and remand the case for further proceedings, as explained below.

Page 2

# I.
# BACKGROUND

Appellant/relator John Goin was employed by MICA Corporation in January 2012. On January 23, he was assigned to work out of town on a construction project in Tyler, Texas. MICA provided Goin with a hotel room

and a 2002 Ford 450 pickup truck for the project. After work on the evening of January 25, Goin drove MICA's truck to a local club where he met appellee/real party in interest Hope Crump. The next evening, Goin drove the truck to Crump's home for dinner, and they consumed alcoholic beverages. Goin's foreman telephoned Goin during the dinner and told him to drive the truck back to the hotel. Crump rode with Goin on the return trip, and the two were involved in a rollover accident. Crump was ejected from the truck and suffered injuries that rendered her a paraplegic.

**A. The Civil and Criminal Cases against Goin**

In March 2012, Crump sued Goin and MICA in the 369th Judicial District Court of Anderson County. MICA is the named insured in two commercial policies at issue here—an auto policy with Travelers Property Casualty Company of America (Travelers) and an umbrella policy with Great American Insurance Company (Great American). The Travelers policy provides that "anyone us[,] while using *with your permission* a covered 'auto' you own, hire[,] or borrow," is an "insured." (Emphasis added). Travelers retained attorney Michael Dunn and his firm, Smead, Anderson, & Dunn (SAD), to defend Goin in the lawsuit, though Travelers also sent Goin a letter reserving its right to deny coverage "if it [is] determined that Goin's use of the MICA vehicle at the time of the accident was without MICA's permission."

In addition to Crump's suit, the State charged Goin with the criminal offense of intoxication assault[1] related to his role in the accident. Dunn and Travelers attended Goin's criminal trial for

Page 3

the purpose of assisting in the defense of the civil case against him. However, Goin claims that Dunn and Travelers, in reality, worked to



develop testimony favorable for Travelers—i.e., that, at the time of the accident, Goin was using MICA's truck without its permission. Goin also contends that Dunn secretly collaborated with MICA's outside counsel and provided information to Travelers to assist in its non-coverage defense. At the conclusion of the criminal trial, Goin was convicted and sentenced to twelve years' confinement. Dunn allegedly never communicated with Goin again.[2]

Crump non-suited her case in January 2013 and filed it again three months later, this time in the 95th Judicial District Court of Dallas County. She named Goin, MICA, and Ford Motor Company as defendants. Crump asserted negligence and gross negligence claims against Goin and respondeat superior, negligent entrustment, and negligent hiring claims, among others, against MICA. Travelers settled the claims against MICA, and Ford obtained a no-evidence summary judgment, which left Goin as the sole remaining defendant. Goin asserts that he was not served with process,[3] nor was he aware at the time that Crump had re-filed her case. He claims that, under this circumstance, Travelers and Dunn decided to abandon his defense by secretly insisting that he make a "new tender" and demand a defense.

In April 2014, the court issued notices of hearing regarding the pending dismissal of Crump's case for want of prosecution. According to Goin, Crump's trial counsel visited him in prison and advised that he should sign a handwritten pro se answer that Crump's counsel had prepared. Goin claims that he did not understand "any of what it was" but he "just signed it"

Page 4

because "they [were] saying this would help Hope."[4] In addition, Crump's counsel allegedly did not disclose that, if Goin did not sign the answer, it was possible that no judgment would be taken against him.[5] The

pro se answer was filed on Goin's behalf, allegedly by Crump's counsel, and the dismissal hearing was cancelled.[6]

In October 2014, Travelers retained new counsel to represent Goin in the defense of Crump's case. Goin claims that, by then, he had been unrepresented in multiple depositions, including his own, and the discovery deadline, the deadline to designate expert witnesses, and the deadline for dispositive motions had expired. The case was tried in February 2015. The jury awarded $18,745,000 to Crump and found Goin sixty percent responsible for the damages. Based on the jury's verdict, the district court rendered judgment for Crump in the amount of $10,125,433.96, plus pre-judgment and post-judgment interest. Goin appealed the judgment but later dismissed the appeal. *See Goin v. Crump*, No. 05-15-00649-CV, 2015 WL 3823918, at *1 (Tex. App.—Dallas June 19, 2015, no pet.) (mem. op.).

## B. Goin's Suit against the Insurers and MICA

In April 2015, Goin filed suit in the 101st District Court of Dallas County against Travelers, Great American, and MICA. Goin asserted ten causes of action, including claims against Travelers and Great American for purported violations of the DTPA[7] and the Insurance Code.[8] His alleged damages include indemnity for the judgment rendered against him in Crump's case, pre- and post-

Page 5

judgment interest, actual damages, economic damages, mental anguish, disgorgement or forfeiture of fees, statutory treble damages, and exemplary damages.

## C. The Turnover Order

In June 2015, Crump filed a motion in her lawsuit in the 95th District Court for a turnover of Goin's causes of action asserted in



-2-

his lawsuit pending in the 101st District Court. At the June 18 hearing on Crump's motion, Goin's counsel confirmed that they did not oppose the turnover order. That same day, the 95th District Court granted Crump's motion and appointed Peter G. Malouf as Receiver.[9] The turnover order gave the Receiver the power to take possession of all of Goin's leviable property, including any causes of action against MICA, Travelers, and Great American. It also required Goin to execute an irrevocable assignment of the foregoing claims to the Receiver[10] and directed that the Receiver pay: (i) to Crump, ninety percent of any gross proceeds received from Goin's causes of action, and (ii) to Goin, "[ten percent] of any proceeds received, net of all costs of receivership incurred as of the date of distribution."[11]

On the following day, Goin executed the assignment ordered by the court. The assignment covers:

> all right, title, and interest in any causes of action and proceeds therefrom that I have or in the future may have against [MICA, Travelers, and Great American]. This assignment includes[,] but is not limited to[,] all causes of action now or hereafter asserted in *John Goin v. Travelers Property Casualty Company of America, et al.*, Cause No. DC-15-04399, 101st Judicial District Court, Dallas County, Texas. Receiver shall have the sole authority to settle, compromise, release, or waive the causes of action assigned herein.

Page 6

Thereafter, Travelers deposited into the court's registry $303,829.37 of remaining indemnity limits under its policy, in partial satisfaction of Crump's judgment.

Goin represents that, despite the turnover order, he continued to actively pursue his claims.[12] In July 2015, Goin's case was transferred from the 101st to the 95th District Court, which had rendered judgment in Crump's case. In March of the following year, Goin's suit was transferred to the 336th Judicial District Court of Fannin County.[13] Crump and the Receiver then filed petitions in intervention in Goin's suit, and he amended his petition twice. Goin's amendments, among other changes, dropped Great American as a defendant and added a malpractice claim against Dunn and SAD.

In January 2017, the 95th District Court in Crump's case approved a settlement among Great American, MICA, Crump, and Goin. In that same month, Crump withdrew from the court's registry the remaining indemnity proceeds from Travelers's policy, plus post-judgment interest. Following these events, Goin's remaining claims are his DTPA and Insurance Code claims against Travelers and his legal malpractice claim against Dunn and SAD, each of which is currently pending in Goin's suit in Fannin County. In addition, Crump's and the Receiver's petitions in intervention asserting these same claims remain pending in Goin's suit.

Dunn and SAD responded to the Receiver's petition in intervention by alleging that the Receiver lacked standing to bring the assigned claims. They also filed a motion for leave to designate Crump's counsel as responsible third parties. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004. Specifically, Dunn and SAD alleged that Crump's counsel agreed to provide legal

Page 7

services to Goin in Crump's lawsuit (while also representing Crump in the same suit), which formed an attorney-client relationship with Goin. Alternatively, Dunn and SAD alleged that, even if no such relationship was established, Crump's counsel "committed



negligent misrepresentations directed at . . . Goin in order to coerce Goin into signing a Pro Se Answer that was insufficient, detrimental to Goin's defense, precluded a motion to transfer venue, and prevented the claims against . . . Goin from being dismissed for want of prosecution." The 336th District Court granted Dunn and SAD's motion for leave to designate.

### D. The Motions to Clarify, and to Modify, the Turnover Order

On December 15, 2017, Crump filed a motion in her case in the 95th District Court to clarify whether the turnover order transferred ownership to the Receiver of all causes of action in Goin's suit, including the claims against Travelers and the malpractice claim that Goin added after the turnover order was signed. Goin filed a competing motion in the 95th District Court to modify the turnover order, arguing that his DTPA, Insurance Code, and legal malpractice claims were not assignable. Goin also sought to modify the order so that it transferred ninety percent of the *net* proceeds of any judgment rendered in Goin's favor in his lawsuit, rather than assigning the foregoing claims themselves, which Goin contends are unassignable.[14]

The district court held a hearing on the foregoing motions on February 27, 2018, and signed an order that same day (referred to herein as the clarification order) granting Crump's motion to clarify and denying Goin's motion to modify. The order states that:

> [T]he Turnover Order dated June 18, 2015 irrevocably transferred to the Receiver all causes of action and all proceeds from all causes of action now or hereafter asserted in Cause No. CV-16- 42626; *John C. Goin v. Travelers Property Casualty Company of America, Great American*

> *Insurance Company, Mica Corporation and Michael Dunn, and Smead, Anderson, & Dunn*; In the 336th Judicial District Court of Fannin County, Texas.

Page 8

Goin filed this "Notice of Appeal/Mandamus" with respect to the court's February 27 order.

### II.
### DISCUSSION

Goin raises three issues. His first issue contends that the district court erred in granting Crump's motion to clarify, and his second argues that the court erred in denying Goin's motion to modify. Goin's third issue asserts that he has no adequate remedy by appeal, thereby necessitating a writ of mandamus. We review a trial court's decision to grant or deny a turnover order for an abuse of discretion. *HSM Dev., Inc. v. Barclay Props., Ltd.*, 392 S.W.3d 749, 751 (Tex. App.— Dallas 2012, no pet.). We conclude that this standard also applies to a decision to grant or deny the clarification or modification of such an order. In addition, to obtain relief by writ of mandamus, a relator must establish that an underlying order is void or a clear abuse of discretion and that no adequate appellate remedy exists. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or made without regard for guiding legal principles or supporting evidence. *Id.*

### A. Timeliness of Appeal/Mandamus

Crump asserts that Goin's appeal is a misguided attempt to reverse the district court's 2015 turnover order and that this Court lacks jurisdiction to review the order. She also urges that the court's plenary



-4-

authority to modify the turnover order expired on July 18, 2015, long before Goin requested such a modification. We must determine these threshold questions before considering the merits of Goin's issues.

Page 9

### 1. Appeal

#### a. Claims against Travelers

A turnover order that acts as a mandatory injunction is a final, appealable judgment. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 582, 586 (Tex. 2018) (per curiam);[15] *see also Transcon. Realty Inv'rs, Inc. v. Orix Capital Mkts. LLC*, 470 S.W.3d 844, 847 (Tex. App.—Dallas 2015, no pet.) (noting that turnover orders "are final, appealable orders because they are analogous to mandatory injunctions requiring a judgment debtor to turnover property"). As noted previously, the June 2015 turnover order required Goin to assign to the Receiver his interest in any causes of action against MICA, Travelers, and Great American. This order was a final, appealable judgment. *See Alexander Dubose*, 540 S.W.3d at 582, 586; *Transcon. Realty*, 470 S.W.3d at 847. However, Goin did not appeal the turnover order; he instead waited until this appeal from the clarification order to raise arguments that he could have raised previously. *See Davis v. West*, 317 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (noting that turnover orders must be attacked on direct appeal); *In re Wiese*, 1 S.W.3d 246, 251 (Tex. App.—Corpus Christi-Edinburg 1999, orig. proceeding) (holding that relator failed to directly attack turnover order and court was without jurisdiction to grant habeas relief based upon order that was merely voidable and not void).

For example, Goin asserts that the turnover of his Insurance Code and DTPA claims is barred by public policy and is therefore void. Goin could have, but he did not, raise this complaint in a direct appeal of the turnover order. Moreover, Goin urges that the court abused its discretion by failing to modify the turnover order to transfer the net proceeds of the foregoing claims rather than the claims themselves. Again, this argument could have been, but was not, raised in a direct

Page 10

appeal of the turnover order.[16] We are without jurisdiction to consider the foregoing arguments at this late juncture. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) ("After the time to bring a direct attack has expired, a litigant may only attack a judgment collaterally."); *Davis*, 317 S.W.3d at 308-10 (holding that appellant could not raise alleged deficiencies in voidable turnover order when she failed to timely prosecute a direct appeal of such order or seek injunctive or mandamus relief prohibiting the execution of the order); *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 546 (Tex. App.—Dallas 2009, no pet.) ("Even void orders must be timely appealed." (citation and internal quotation marks omitted)).[17]

#### b. Claim against Dunn and SAD

The subject assignment also included within its scope "all causes of action now *or hereafter asserted*" in Goin's lawsuit. (Emphasis added). Goin's malpractice claim against Dunn qualified as a cause of action "hereafter asserted." However, this claim was not alleged until December 2016, nearly one and one-half years after the turnover order. Accordingly, Goin's contention that the turnover order and assignment did not transfer his legal malpractice claim, and that such an assignment is invalid as a matter of public policy, could not have been asserted within the time for filing a direct appeal of the turnover order. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850-52 (Tex. 2000) (noting that ripeness is a component of



APPENDIX 000188

subject-matter jurisdiction that "focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all" (citation and internal quotation marks omitted)); *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) ("It is fundamental that a court has no

Page 11

jurisdiction to render an advisory opinion on a controversy that is not yet ripe."). Nor could Goin have urged his argument that the court erred by failing to modify the turnover order to transfer the net proceeds of the malpractice claim, as opposed to the claim itself. These issues became ripe for the district court's consideration in December 2016, when Goin amended his petition to allege a malpractice claim. The court's February 2018 clarification order reiterated that this claim was encompassed within Goin's June 2015 assignment, and Goin has timely appealed the clarification order. *See* TEX. R. APP. P. 26.1 (requiring that notice of appeal be filed thirty days after judgment is signed). Accordingly, we have jurisdiction over Goin's appeal with respect to the portion of the clarification order related to the turnover of his malpractice claim.

### 2. Mandamus

The Texas Rules of Appellate Procedure do not provide a fixed deadline for filing a petition for writ of mandamus. *CMH Homes v. Perez*, 340 S.W.3d 444, 453 (Tex. 2011). Instead, mandamus is governed largely by equitable principles, *id.*, and "a petition for mandamus may be denied under the equitable doctrine of laches if the relator has failed to diligently pursue the relief sought," *In re Spiller*, 303 S.W.3d 426, 429 (Tex. App.—Waco 2010, orig. proceeding); *see also Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) ("[E]quity aids the diligent and not those who slumber on their rights." (citation and

internal quotation marks omitted)). However, laches does not apply when the order subject to the mandamus proceeding is void. *In re Choice! Energy, L.P.*, 325 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).[18] To the extent Goin's issues establish that the turnover order, and the subsequent clarification order, are void, mandamus is proper in this case.

Page 12

### B. Scope of Assignment

Turning to the merits of Goin's appeal, he first contends that the turnover order and assignment did not transfer his malpractice claims to Crump or to the Receiver. We disagree. As previously explained, the turnover order grants the Receiver authority to take possession of all of Goin's leviable property, including, *but not limited to*, any causes of action against MICA, Travelers, and Great American. In addition, while the assignment applies to Goin's causes of action against the foregoing entities, it also "includes . . . all causes of action now or *hereafter* asserted" in Goin's lawsuit without reference to a specific defendant. (Emphasis added). This language, on its face, applies to the malpractice claim that Goin added to his lawsuit after the turnover order and assignment. *Cf. D & M Marine, Inc. v. Turner*, 409 S.W.3d 853, 857 (Tex. App.—Fort Worth 2013, no pet.) ("Generally, causes of action constitute property subject to turnover by a court."); *accord Goggans v. Ford*, No. 05-15-00052-CV, 2016 WL 2765033, at *2 (Tex. App.—Dallas May 11, 2016, pet. denied) (mem. op.); *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306 (Tex. App.—Dallas 1992, no writ).[19]

### C. Validity of Turnover

Goin next contends that the turnover of his malpractice, DTPA, and Insurance Code causes of action is invalid and void as a matter of public policy. We will consider this



-6-

argument separately with respect to each of Goin's claims.

Page 13

## 1. Malpractice claim

Under Texas law, causes of action may generally be assigned absent a statutory bar. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 390 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.); *Charles v. Tamez*, 878 S.W.2d 201, 206 (Tex. App.—Corpus Christi-Edinburg 1994, writ denied). However, there are exceptions to this rule, including that "an assignment of a legal malpractice action arising from litigation is invalid." *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd);[20] *accord Baker v. Mallios*, 971 S.W.2d 581, 583-84 (Tex. App.—Dallas 1998), *aff'd on other grounds*, 11 S.W.3d 157 (Tex. 2000). The public policy concerns supporting this exception include:

1. a market in malpractice claims may demean the legal profession;

2. a risk of collusion exists between the assignor and assignee;

3. assignability of legal malpractice claims may deter attorneys from zealous advocacy on behalf of their clients—i.e., an attorney who represents an insolvent defendant may be deterred from zealous representation out of fear that this will incentivize the plaintiff to retaliate by taking an assignment from the defendant and suing defense counsel;

4. an assignment may cause legal services to be less available, especially to clients

with inadequate insurance or assets; and

5. an illogical reversal of roles is inherent in allowing a party to sue the adverse party's attorney.

*Baker*, 971 S.W.2d at 584-86; *see also Zuniga*, 878 S.W.2d at 317-18. The foregoing concerns are premised on "the unique quality of legal services, the personal nature of the attorney's duty to the client[,] and the confidentiality of the attorney-client relationship." *Zuniga*, 878 S.W.2d at 316 n.4 (quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 397, 133 Cal. Rptr. 83, 87

Page 14

(1976)); *see also City of Garland v. Booth*, 895 S.W.2d 766, 769 (Tex. App.—Dallas 1995, writ denied) (discussing *Goodley*).

*Booth* and *Zuniga* involved a party's voluntary assignment of its legal malpractice claim to an opposing party in the litigation. *See Booth*, 895 S.W.2d at 767-68; *Zuniga*, 878 S.W.2d at 314. However, the *Zuniga* court noted in dicta that the reasons for its holding would "prevent the judgment creditor from obtaining the malpractice claim by execution or turnover from a defendant who was willing to assert it as a valid claim." *Zuniga*, 878 S.W.2d at 317 n.5. Other appellate courts to consider this question have concluded, under the circumstances, that Texas law did not permit the trial court to order the transfer of a legal malpractice claim. *See Charles*, 878 S.W.3d at 208 (holding that "unasserted, denied causes of action for legal malpractice for failure to settle under the *Stowers* doctrine[21] are not assets subject to turnover" but also declining to "reach the question of whether asserted or ignored claims for legal malpractice may be turned over"); *Britton v. Seale*, 81 F.3d 602, 605-06 (5th Cir. 1996) (concluding that probate court's order directing transfer of legal malpractice claim was in derogation of



-7-

Texas law and had no res judicata effect with respect to attorney defendants who were not parties to probate proceeding and did not represent any parties at time probate court approved assignment); *see also Vinson & Elkins*, 946 S.W.3d at 390 n.3 ("Courts also hold that certain causes of action are not subject to turnover . . . because it would violate public policy.").[22]

In addition, this Court and others have concluded that a court-ordered turnover of a non-malpractice claim that had the effect of extinguishing or unreasonably restricting the claim was invalid as against public policy. *See In re Great N. Energy*, *Inc.*, 493 S.W.3d 283, 289-91 (Tex.

Page 15

App.—Texarkana 2016, orig. proceeding) (invalidating turnover of judgment debtor's counterclaim against third party in separate lawsuit under circumstances in which (i) judgment creditor had no interest in pursuing such counterclaim to its maximum value, and (ii) turnover would impair judgment debtor's ability to fully and fairly defend itself in separate suit);[23] *Associated Ready Mix*, *Inc. v. Douglas*, 843 S.W.2d 758, 762-63 (Tex. App.—Waco 1992, orig. proceeding) (concluding that turnover order, having effect of extinguishing judgment debtor's causes of action, did not accomplish purpose of turnover statute); *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306-07 (Tex. App.—Dallas 1992, no writ) (reversing turnover of judgment debtor's cause of action to judgment creditor; holding that such turnover extinguished cause of action without it ever being litigated, thereby violating open courts doctrine); *Commerce Sav. Ass'n v. Welch*, 783 S.W.2d 668, 668-71 (Tex. App.—San Antonio 1989, no writ) (holding that trial court did not abuse its discretion in refusing to grant turnover order that, if granted, would have allowed defendant to extinguish cause of action asserted against it by plaintiff who

happened to be judgment debtor in unrelated action).

### a. Arguments against turnover

The parties disagree whether the policy concerns discussed in the foregoing cases are implicated here. Goin contends that "the overall magnitude of the costly effect on the administration of justice" requires a prohibition of all malpractice assignments, including the turnover order at issue in this case. *See Vinson & Elkins*, 946 S.W.2d at 395 (noting that "the reasoning in [*Zuniga*] extends well beyond its facts"); *Britton*, 81 F.3d at 604 (noting that *Zuniga* "appear[s] to prohibit assignment altogether in order to prevent . . . problems from occurring"). He also contends that the subject assignment would trigger several of the above-referenced concerns.

Page 16

First, the Receiver, in proving Goin's malpractice claim, may need to prove that some or all of Crump's judgment against Goin was based on Dunn's negligence and not on the strength of Crump's own claims. As support for this argument, Goin cites *Zuniga*, which involved the defendant's assignment to the plaintiffs of the defendant's right to sue its counsel for malpractice in exchange for the plaintiffs' agreement not to collect on their judgment against the defendant. 878 S.W.3d at 314. Our sister court noted that, in the underlying case, the plaintiffs argued that they would win their case on the merits of their claim, whereas in the malpractice case, these same plaintiffs, as assignees, would need to take the contrary position that they would have lost the underlying case had the defendant's lawyers capably defended their suit. *Id.* at 318. Such a reversal of roles would demean the legal profession and "would give prominence (and substance) to the image that lawyers will take any position, depending on where the money lies, and that litigation is a mere game and not a search for the truth." *Id.*



APPENDIX 000191

Second, Goin urges that the Receiver is charged to aid only Crump in pursuing Goin's causes of action, as opposed to prosecuting the claims to their maximum value. *Cf. In re Great N. Energy*, 493 S.W.3d at 289 ("Specifically permitted as subjects of a turnover order are causes of action against third parties to a judgment creditor *who [has] the same interest in pursuing them to maximum value as the judgment debtor*" (emphasis added) (citation and internal quotation marks omitted)); *accord Goggans*, 2016 WL 2765033, at *3. Also, Goin asserts that neither Crump nor the Receiver would be concerned about managing the litigation to avoid sanctions, knowing that liability for those sanctions might be borne by Goin alone. *See InLiner Ams., Inc. v. MaComb Funding Grp., L.L.C.*, 348 S.W.3d 1, 9 (Tex. App.—Houston [14th Dis.] 2010, pet. denied) ("[I]f the legal-malpractice claims were assigned, then [the creditor] could direct the debtors to manage the malpractice litigation in a manner that risked sanctions, knowing that such liabilities would be borne by the debtors alone.").

Page 17

Third, Goin asserts that Crump and the Receiver might gain privileged information previously disclosed by Goin in his attorney-client relationship with Dunn. *See Vinson & Elkins*, 946 S.W.2d at 394 (stating that an attorney's duty of confidentiality is threatened by assignment of legal malpractice claims).[24] Moreover, Goin contends that the subject turnover is especially problematic because Crump's attorneys have been designated as responsible third parties for the injuries and damages that Goin purportedly suffered. In Goin's view, the turnover of his malpractice cause of action against Crump's counsel would have the effect of extinguishing this claim since Crump is not likely to prosecute the claim. *See In re Great N. Energy*, 493 S.W.3d at 289-91; *Associated Ready Mix*, 843 S.W.2d at 762-63; *Criswell*, 843 S.W.2d at

306-07; *Commerce Sav. Ass'n*, 783 S.W.2d at 668-71.

Fourth, Goin argues that (i) the turnover order will dissuade his counsel from prosecuting his case on a contingency basis and (ii) he has no other means to fund the litigation since he is in prison and has no money.

### b. Arguments in favor of turnover

Crump counters that the turnover of Goin's legal malpractice claim to the Receiver does not implicate the foregoing policy concerns and that this case is controlled by our decision in *Baker*. The plaintiff in *Baker* assigned a fifty-percent portion of any recovery in his legal malpractice claim to a third party in exchange for that party's financing of the action. 917 S.W.2d at 582-84. This Court noted that the cases prohibiting assignment of legal malpractice claims "raise legitimate public policy concerns against the assignment *by a losing defendant* of his legal malpractice claim against his attorney *to the winning plaintiff*" in exchange for an agreement by the plaintiff not to execute on the judgment." *Id.* at 587. However, "[t]hese concerns [did] not support

Page 18

a prohibition against a *plaintiff* assigning to a third party a portion of any proceeds he recovers in his legal malpractice claim against his own attorney." *Id.* (emphasis in original).

Crump notes that Goin turned his claim over to the Receiver, not to Crump, and she contends that this turnover does not give rise to a reversal of roles. *See id.* at 585 (concluding that there was no "demeaning" role reversal where plaintiff sued his own, as opposed to his adversary's, attorneys for malpractice). In Crump's view, one of the principal risks from such a reversal—that lawyers may be less willing to represent insolvent defendants, thereby endangering

-9-



the availability of legal services—does not exist when the claim is assigned to a Receiver. *Cf. id.* (stating that this policy consideration is inapplicable in instances when unsuccessful *plaintiff* assigns his cause of action against *his previous attorney* to third party not involved in underlying litigation). In addition, the post-judgment transfer of the claim to a Receiver poses no risk in the underlying litigation that the plaintiff will collude with the defendant to have the defense counsel bear responsibility for the defendant's liability. *Cf. id.* at 586 (noting that, unlike prevailing-plaintiff assignee in *Zuniga*, the third-party assignee in *Baker* had no means of engaging in unfair, collusive activity in conjunction with plaintiff's case). Moreover, the unique character of a court-appointed receivership removes any risk of the assignee filing frivolous malpractice claims in retaliation for zealous advocacy by the assignor's counsel. *Cf. id.* ("We see no relevance between this policy concern and an assignment to a party not involved in the underlying suit.").

### c. Analysis

The subject turnover order is based on section 31.002 of the Civil Practice and Remedies Code. This section entitles a judgment creditor to an injunction or other relief from the court in order to reach the judgment debtor's non-exempt property to obtain satisfaction of the judgment. CIV. PRAC. & REM. § 31.002(a); *see also Pillitteri v. Brown*, 165 S.W.3d 715, 721 (Tex. App.— Dallas 2004, no pet.) ("The purpose of the turnover statute is to assist a judgment creditor in

Page 19

reaching certain property of a judgment debtor to obtain satisfaction on a judgment."). The statute permits the court to appoint a receiver "to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to

satisfy the judgment." *Id.* § 31.002(b)(3). In addition, "[s]ection 31.002 is purely procedural and may not be used to adjudicate substantive rights." *D & M Marine*, 409 S.W.3d at 857.

In this case, the turnover order authorizes the Receiver, upon approval by the district court, to "settle the Causes of Action and execute a binding release of said Causes of Action; and hire any person or business necessary to accomplish any right or power under this Order." Pursuant to the order, the Receiver, who is an attorney, filed a petition in intervention in Goin's suit that incorporated (i) the causes of action pled by Goin against Travelers, Dunn, and SAD in his then-live petition, and (ii) any additional claims asserted by Goin against Travelers, Dunn, and SAD in any subsequent petition.

The turnover of Goin's malpractice claim to the Receiver, as opposed to Crump, mitigates several of the foregoing public policy concerns. "A receiver is an 'officer of the court, the medium through which the court acts.'" *Congleton v. Shoemaker*, No. 09-11-00453-CV, 2012 WL 1249406, at *2 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) (mem. op.) (quoting *Sec. Trust Co. v. Lipscomb Cty.*, 180 S.W.2d 151, 158 (Tex. 1944)). A receiver derives her authority from the appointing court and has only the powers conferred upon her by such court. *Id.* "[S]he is a disinterested party, the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property in receivership." *Magaraci v. Espinosa*, No. 03-14-00515-CV, 2016 WL 858989, at *2 (Tex. App.—Austin Mar. 4, 2016, no pet.) (mem. op.) (quoting *Sec. Trust Co.*, 180 S.W.2d at 158).

Since the Receiver is a disinterested party, this case does not involve a "demeaning" role reversal as in *Zuniga*. *Cf. Baker*, 971 S.W.2d at 585. Moreover, the Receiver had no means of



Page 20

engaging in collusive activity in conjunction with Crump's case against Goin. *Cf. id.* at 586. In addition, Goin does not argue that his counsel was deterred from zealously representing him because of the threat of an assignment to a receiver. *Cf. id.* Also, the turnover of Goin's malpractice claim against Dunn and SAD to the Receiver poses no risk of creating a marketplace for such claims, nor would the turnover have the effect of extinguishing the claim. Finally, we are not persuaded by Goin's suggestion that the Receiver could be incentivized to act inappropriately while litigating Goin's malpractice claim. This risk is mitigated by the fact that the Receiver is answerable to the district court. *See Sec. Trust Co*, 180 S.W.2d at 158; *Congleton*, 2012 WL 1249406, at *2.

However, not all of the foregoing concerns are mitigated by the turnover of Goin's malpractice claim to the Receiver. Namely, Crump also filed a petition in intervention in Goin's case. Crump's petition incorporates Goin's original petition—which was his then-live petition[25]—and asserts breach of contract, DTPA, and Insurance Code claims similar to those alleged in Goin's petition. Subsequent to the turnover order, Crump's counsel has continued to participate in her case against Goin. For example, it was Crump, not the Receiver, who filed the motion to clarify, though the Receiver did attend the hearing on this motion. In addition, in a meet-and-confer between opposing counsel regarding the motion, Crump's counsel handled the conference on behalf of both Crump and the Receiver. Goin also claims that the Receiver attended no depositions or hearings in the litigation prior to the hearing on Crump's motion to clarify.

These circumstances implicate several of the policy concerns against assignment of legal malpractice claims. To the extent Crump continues to participate alongside the Receiver in the litigation, there is a risk that

Goin's malpractice claim against Crump's counsel will be

Page 21

extinguished.[26] *See Associated Ready Mix*, 843 S.W.2d at 762-63; *Criswell*, 843 S.W.2d at 306-07; *Commerce Sav. Ass'n*, 783 S.W.2d at 668-71. Moreover, while the turnover order authorizes the Receiver to take possession of, and to settle, Goin's causes of action, it does not, as written, require the Receiver to pursue these claims for the maximum benefit of Goin. *Cf. Associated Ready Mix, Inc.*, 843 S.W.2d at 763 ("The court could preserve the value of the causes of action, if any, for [the judgment creditor] by placing them in the hands of a receiver who would be ordered to pursue them for the maximum benefit of [the judgment debtor] and to pay the proceeds to [the judgment creditor] to the extent required to satisfy his judgment." (emphasis added)). In other words, Crump's interest is to satisfy the remaining balance on her $10 million judgment, if possible, through a settlement. In contrast, Goin's interest includes obtaining exemplary damages for his malpractice claim,[27] treble damages for his DTPA and Insurance Code Claims,[28] and mental anguish for his DTPA claim.[29] These damages may exceed the amount of Crump's judgment, but they will likely require a trial (and the associated risks of no recovery at all) to obtain them. Based on these facts, we cannot say that the Receiver has the same interest as Goin in pursuing his claims to their maximum value. *Cf. In re Great N. Energy*, 493 S.W.3d at 289; *Goggans*, 2016 WL 2765033, at *3.

In addition, the threat of a turnover to a Receiver charged with recovering on the plaintiff's behalf, as occurred in this case, may cause a lawyer to be less willing to represent an underinsured, undercapitalized defendant because the only way a plaintiff can fully recover in that situation is

Page 22



for the Receiver to pursue a claim against the defense lawyer as the defendant's assignee. *Cf. Zuniga*, 878 S.W.2d at 318 ("Lawyers would soon realize that representing the low-asset defendant could bring an assigned malpractice suit after the plaintiff and defendant have made their peace.").

Crump also does not address Goin's concern regarding the potential waiver of Goin's privileged communications with Dunn and SAD as a result of the turnover of Goin's malpractice claim. We acknowledge that Dunn and SAD are permitted to reveal confidential information insofar as necessary to defend themselves against the malpractice claim asserted against them. *See Vinson & Elkins*, 946 S.W.2d at 394. However, absent the subject turnover order, Goin would retain control over the scope of any such disclosure by virtue of his power to drop the claim. *See id.* Now that the claim has been turned over, Goin's control over the privilege is lost, but Dunn and SAD's right to defend themselves by revealing the confidential information survives. *See id.* To permit the turnover of a malpractice claim under these circumstances would impermissibly erode the principles fostered by the duty of confidentiality. *See id.*[30]

We next consider whether, in light of the foregoing policy concerns, the turnover order is void. "[I]n widely different contexts," the Texas Supreme Court "[has] invalidated assignments of choses in action that tend to increase and distort litigation." *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 711 (Tex. 1996). For example, in *Gandy*, the court held that the defendant's assignment to the plaintiff of the defendant's claims against his insurer violated public policy under the circumstances of that case. *See id.* at 714 (holding such an assignment is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) defendant's insurer has either accepted coverage, or has made a good

faith effort to adjudicate coverage issues prior to adjudication of

Page 23

plaintiff's claim). Moreover, in *Elbaor v. Smith*, the court held that "Mary Carter agreements"—in which the settling defendant retains a financial stake in the plaintiff's recovery and remains a party at the trial of the case—are void as against public policy. 845 S.W.2d 240, 247, 250 (Tex. 1992); *see also Gandy*, 925 S.W.2d at 709 (noting that, with respect to a "Mary Carter agreement," the plaintiff "[i]n effect . . . assigns the settling defendant part of [the] plaintiff's claim against the nonsettling defendants"). Goin also cites *Wright v. Sydow*, in which our sister court concluded that the secret assignment by two clients of their legal malpractice claims shortly before the execution of a settlement agreement, to avoid the preclusive effects of the agreement, was void as against the public policy favoring voluntary settlement agreements. 173 S.W.3d 534, 552-53 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

The facts before us do not perfectly align with the circumstances in the foregoing cases. Unlike the circumstances in *Gandy* and *Elbaor*, it is unlikely that the turnover of Goin's claims will prolong his lawsuit any more than had no such turnover occurred, given that Goin wishes to pursue these same claims in lieu of the Receiver pursuing them. *Cf. Gandy*, 925 S.W.2d at 712 ("The purpose of this settlement was not to end the litigation but to prolong it."); *Elbaor*, 845 S.W.2d at 248 ("Although the agreements do secure the partial settlement of a lawsuit, they nevertheless nearly always ensure a trial against the nonsettling defendant."). Moreover, unlike the assignees in *Gandy* and *Elbaor*, in this case the Receiver, an independent third party, would not be required to take an inconsistent position when pursuing Goin's claims assigned to it. *Cf. Gandy*, 925 S.W.2d at 712 (noting that

-12-



plaintiff-assignee could not avoid "shifting positions"); *Elbaor*, 845 S.W.2d at 249 (noting that "Mary Carter agreements . . . present to the jury a sham of adversity between the plaintiff and one codefendant" (citation and internal quotation marks omitted)). Also, unlike the assignment in *Wright*, the turnover in this case would not encourage parties to execute settlement agreements in bad faith. *Cf. Wright*, 173 S.W.3d at 553 (noting that the assignment in

Page 24

that case "would incite litigation rather than settling it" and would "produce disharmony and ill will rather than peace").

Nevertheless, we conclude that the subject turnover order distorts the litigation of Goin's claims because it encourages the Receiver, on Crump's behalf, to satisfy her judgment, if possible, through a settlement, potentially in conflict with Goin's interest in obtaining exemplary or treble damages. Accordingly, the order is void and thus it is of no effect with respect to the transfer of Goin's malpractice claim. *See Gandy*, 925 S.W.2d at 698 (holding that invalid assignment "conveyed [assignee] nothing"); *Elbaor*, 845 S.W.2d at 251-52 (holding invalid portion of settlement agreement "null and void"); *Wright*, 173 S.W.3d at 553 (holding that assignments violated "strong public policy of this State" and were thus void).[31] For this reason, the district court abused its discretion in signing the order. *See In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam) ("[B]ecause a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law."); *In re Jorden*, 249 S.W.3d 416, 424 (Tex. 2008) (orig. proceeding) ("A trial or appellate court has no discretion in determining what the law is or in applying the law to the facts, even if the law is somewhat unsettled."). Moreover, Goin, not the Receiver, has standing to

pursue his malpractice claim. *See Allodial Ltd. P'ship v. N. Tex. Tollway Auth.*, 176 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied) (holding that agreement did not reflect *present* assignment of rights and thus did not support purported assignee's position that it had standing to bring action to assert such claim).

Page 25

## 2. DTPA claim

Goin also alleges that Travelers, Dunn, and SAD violated sections 17.46(b) and 17.50 of the Business and Commerce Code, which are part of the DTPA. In *PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd.*, the Texas Supreme Court held that "assigning DTPA claims would defeat the primary purpose of the statute—to encourage individual consumers to bring such claims themselves." 146 S.W.3d 79, 82 (Tex. 2004). In addition, the court concluded that "the personal and punitive aspects of DTPA claims cannot be squared with a rule allowing them to be assigned as if they were mere property." *Id.*; *see also id.* at 92 (holding that "DTPA claims generally cannot be assigned by an aggrieved consumer to someone else").

The court began its analysis by comparing the DTPA, which says nothing about assignment, with the UCC, specifically, Texas Business and Commerce Code section 2.210(b), which expressly provides that warranty claims are assignable. *Id.* at 83-84. Given the DTPA's silence on this issue, the court next looked to the purposes of the statute to determine whether the assignment of claims is consistent with its goals. *Id.* at 84.

"While the DTPA allows the attorney general to bring consumer protection actions, one of the statute's primary purposes is to encourage *consumers themselves* to file their *own* complaints." *Id.* (emphasis in original). In contrast, "[m]aking DTPA claims assignable would have just the opposite



APPENDIX 000196

effect: instead of swindled customers bringing their own DTPA claims, they would be brought by someone else." *Id.* at 85. Moreover, if DTPA claims could be assigned, a party excluded by the statute could still assert such a claim by stepping into the shoes of a qualifying assignor, thereby frustrating the clear intent of the Legislature. *Id.*

In addition, consumers would "likely . . . be at a severe negotiating disadvantage with the kinds of entrepreneurs willing to buy DTPA claims cheap and settle them dear." *Id.* at 86. In other words, "allowing assignment of DTPA claims would ensure that aggrieved consumers do not file

Page 26

them, that some consumers receive nothing in compensation, and others are deceived a second time." *Id.* at 87. Moreover, treble damages would often go to wealthy entrepreneurs rather than the consumers who were actually defrauded. *Id.* at 86.[32] In the words of the court, "[i]t is one thing to place the power of treble damages in the hands of aggrieved parties or the attorney general; it is quite another to place it in the hands of those considering litigation for commercial profit." *Id.* at 85. All of these scenarios "would defeat the very purpose for which the DTPA was enacted." *Id.* at 87.

The court also looked to related common-law principles and noted that courts addressing assignability have often distinguished between claims that are property-based and remedial and those that are personal and punitive, holding that the former are assignable and the latter are not. *Id.* at 87. It concluded that DTPA claims fall in the latter category—i.e., "there must be a 'personal' aspect in being 'duped' that does not pass to subsequent buyers the way a warranty does." *Id.* at 87, 89. Related to this point, a DTPA claim offers a more favorable remedy, specifically, treble and mental anguish damages, than other overlapping

causes of action. *Id.* at 89. "If consumers can assign their DTPA claims, they may still have to testify at the trial about the nature, duration, and severity of their mental anguish, but someone else will keep the money." *Id.*

Finally, the court considered whether assignment of DTPA claims may increase or distort litigation. *Id.* at 90. If an assignee, rather than the affected consumer, brings a DTPA claim, jurors are bound to experience some confusion in assessing mental anguish or punitive damages. *Id.* By way of example, if A sells defective goods to B, who then sells them to C, "B and C both have a strong incentive to direct the suit elsewhere for relief." *Id.* "If B settles with C for a small amount and assigns any DTPA claims it may have against A, C now has a case with potential punitive

Page 27

damages, and B has avoided potential liability." *Id.* In this scenario, "the litigation will continue with the parties in different roles—precisely the results that have led us to prohibit assignments in other contexts." *Id.*

Crump asserts that the holding in *PPG* was based on concerns that do not apply under the circumstances of this case. Namely, transferring a DTPA claim to a court-appointed receiver does not pose a serious risk of collusion, nor does it create a potential for role reversal. Also, transferring a claim pursuant to a post-judgment turnover order poses no risk that an unwitting consumer might be duped into transferring his claim for little or no value. We agree with Crump that these concerns are not triggered here.

In addition, Crump urges that the personal and punitive nature of a DTPA cause of action does not bar the turnover of Goin's DTPA claim because, according to Crump, "Goin retains an interest in 10% of any recovery and remains involved in the case."



APPENDIX 000197

We disagree with Crump on this point. As described previously, the turnover order authorized the Receiver to take possession of Goin's DTPA claim, and upon approval by the district court, to settle, and to execute a binding release of, such claim. Moreover, the irrevocable assignment transferred to the Receiver "*all right, title, and interest*" in "*any*" of Goin's present or future causes of action, and the proceeds therefrom, against MICA, Travelers, and Great American. (Emphasis added). This assignment necessarily includes Goin's DTPA claim. Although the turnover order requires the Receiver to pay Goin ten percent of any proceeds received, net of receivership costs, we are not persuaded that this interest is sufficient to permit the turnover of Goin's claim to the Receiver.

Nor are we convinced that Goin's continued involvement in the case subsequent to the turnover order is sufficient to allow the turnover of his claim. As noted above, the turnover order incentivizes the Receiver, on Crump's behalf, to satisfy her judgment, if possible, through a settlement, which is potentially inconsistent with Goin's interest in obtaining treble damages. Even

Page 28

if Goin were to remain involved in the case, the Receiver retains the power to decide whether to settle Goin's claim. Moreover, although the Receiver is subject to the court's oversight, the turnover order does not require the Receiver to pursue Goin's claims for his maximum benefit, as opposed to Crump's. *Cf. Associated Ready Mix, Inc.*, 843 S.W.2d at 763. For this reason, the turnover order is void and is of no effect with respect to the transfer of Goin's DTPA claim. *Cf. Gandy*, 925 S.W.2d at 698; *Elbaor*, 845 S.W.2d at 251-53; *Wright*, 173 S.W.3d at 553. Accordingly, the district court abused its discretion in signing the order, *see In re Dawson*, 550 S.W.3d at 628; *In re Jorden*, 249 S.W.3d at 424, and the Receiver lacks

standing to pursue the claim, *see Allodial Ltd. P'ship.*, 176 S.W.3d at 683.

### 3. Insurance Code claims

Goin asserts two Insurance Code claims against Travelers, one alleging a violation of Chapter 541, *see* TEX. INS. CODE ANN. §§ 541.051-.061, .151.-152, and the other alleging that Travelers violated Chapter 542, *see id.* § 542.060. We will separately consider the validity of the turnover order with respect to each of these claims.

#### a. Chapter 541

Chapter 541 is entitled "Unfair Methods of Competition and Unfair or Deceptive Acts or Practices." As with the DTPA, Chapter 541 provides remedies that are personal and punitive in nature. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991) (noting that treble damages provision in predecessor statute to Insurance Code section 541.152(b) is punitive in nature and designed to deter violations of the Code). Violations of Chapter 541 are also actionable under the DTPA.[33] In addition, Goin cites *Great American Insurance Co. v. Federal Insurance*

Page 29

*Co..*, in which a federal district court extended the supreme court's holding in *PPG* to foreclose an assignee's cause of action under Insurance Code article 21.21, the predecessor statute to Chapter 541. No. 3:04-CV-2267-H, 2006 WL 2263312, at *10 (N.D. Tex. Aug. 8, 2006). The court noted that (i) like the DTPA, the Insurance Code makes no provision for assignability, and (ii) each and every policy argument articulated in *PPG* against the assignment of a DTPA claim applies with equal force to a claim brought under the Insurance Code. *Id.* Other Texas courts, including one of our sister courts, have held likewise. *See Lee v. Rogers Agency*, 517 S.W.3d 137, 146 n.3 (Tex. App.—Texarkana



2016, pet. denied) (concluding that, while plaintiff could not assign his DTPA and Insurance Code claims, he could have relinquished them); *Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 226 (E.D. Tex. 2010) ("[S]tatutory remedies under the Texas Insurance Code are personal and punitive in nature and the Insurance Code makes no provision for assignability." (citing *Great American*, 2006 WL 2263312, at *10)).

Crump argues that, notwithstanding these holdings, the "[r]ights to a judgment debtor's claims against his insurer may properly be made the subject of a turnover order." *Goggans*, 2016 WL 2765033, at *2 (citing *D & M Marine*, 409 S.W.3d at 858). The order in *Goggans* required the judgment debtor to turn over all of his causes of action.[34] However, as pertinent to this appeal, the question in *Goggans* was whether public policy prohibited the turnover of the judgment debtor's *Stowers* claim. *See id.* at *3 (holding, absent evidence that judgment debtor did not wish to pursue *Stowers* claim, that trial court did not abuse its discretion in granting turnover of such claim).[35] The general rule in a *Stowers* action is that the plaintiff's damages cannot exceed the amount of the underlying judgment. *In re Yorkshire Ins. Co.*, 337 S.W.3d 361, 365 (Tex. App.—

Page 30

Amarillo 2011, orig. proceeding) (noting that "damages are fixed as a matter of law in the amount of the excess of the judgment rendered in the underlying suit in favor of the plaintiff over the applicable policy limits").[36] In contrast, Chapter 541 allows for extra-contractual damages if the policyholder proves that the insurer knew its actions were false, deceptive, or unfair. *See* INS. § 541.152(b); *Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 775, 777 (Tex. 2006). This distinction highlights the potential conflict of interest that we discussed previously—the subject turnover order incentivizes the Receiver to satisfy Crump's judgment, if

possible, through a settlement, whereas Goin is incentivized to obtain treble damages, which will likely require a trial. In this circumstance, we conclude that the turnover order is void with respect to the turnover of Goin's Chapter 541 claim, and the district court abused its discretion in ordering the turnover of this claim. Moreover, the Receiver lacks standing to pursue the claim.

### b. Chapter 542

Chapter 542 is entitled "Processing and Settlement of Claims." A violation of Chapter 542 is not of the same character as a violation of Chapter 541. *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, No. A-10-CA-362-SS, 2011 WL 9879170, at *9 (W.D. Tex. Apr. 27, 2011), *rev'd on other grounds*, 690 F.3d 342 (5th Cir. 2012). Moreover, damages for failure to promptly pay in violation of Chapter 542 are limited to the amount of the claim, plus eighteen percent interest and reasonable attorney's fees. *Id.* (citing INS. § 542.060(a)). In addition, "unlike DTPA or Chapter 541 claims, there is little concern prompt payment claims are susceptible to the sorts of gamesmanship or strategic maneuvering that might skew the adversary process." *Id.* For these reasons, the court in *Berkley* concluded that claims under Chapter 542 may be assignable. *Id.* at

Page 31

*8. We likewise agree that the policy concerns discussed above with reference to Goin's malpractice, DTPA, and Chapter 541 claims do not apply with respect to his Chapter 542 claim. Accordingly, the turnover of Goin's Chapter 542 claim is valid.

### III.
### CONCLUSION

We sustain Goin's first and third issues with respect to the turnover of his malpractice claim. We reverse the portion of the district court's February 27, 2018 clarification order



-16-

related to this claim, and we remand this portion of the order to the district court for further proceedings consistent with this opinion. We hold that Goin's appeal is untimely with respect to the portion of the clarification order relating to his DTPA and Insurance Code claims. We therefore lack jurisdiction to consider this portion of the appeal.

We also conditionally grant Goin's petition for writ of mandamus with respect to the turnover of his malpractice claim and order the district court to vacate the portion of its June 18, 2015 turnover order related to this claim. The writ will issue only if the district court fails to act in accordance with this opinion.

In addition, we sustain Goin's third issue with respect to the turnover of his DTPA claim and his claim under Chapter 541 of the Insurance Code. We conditionally grant his petition for writ of mandamus with respect to these claims and order the district court to vacate its June 18, 2015 turnover order and its February 27, 2018 clarification order as to these claims. The writ will issue only if the district court fails to act in accordance with this opinion.

We overrule Goin's third issue with respect to the turnover of his claim under Chapter 542 of the Insurance Code. We deny Goin's petition for writ of mandamus with respect to this claim.

Given our disposition of this appeal/mandamus, we need not address Goin's second issue. *See* TEX. R. APP. P. 47.1.

Page 32

/Bill          Pedersen,          III//
BILL          PEDERSEN,          III
JUSTICE

180307f.p05

Page 33

## JUDGMENT

On Appeal from the 95th District Court, Dallas County, Texas Trial Court Cause No. DC-13-03801-D. Opinion delivered by Justice Pedersen, III. Justices Whitehill and Partida-Kipness participating.

In accordance with this Court's opinion of this date, we **REVERSE** the district court's February 27, 2018 clarification order with respect to the turnover of appellant JOHN GOIN'S malpractice claim. We remand this portion of the order to the district court for further proceedings consistent with this opinion. We **DISMISS** the remainder of appellant's appeal for lack of jurisdiction.

In addition, we conditionally **GRANT** relator JOHN GOIN'S petition for writ of mandamus with respect to the portions of the district court's February 27, 2018 clarification order that pertain to relator's Deceptive Trade Practices Act claim and his claim under Chapter 541 of the Insurance Code. We **ORDER** the district court to vacate its February 27, 2018 clarification order with respect these claims. Should the district court fail to comply with this order, the writ will issue.

Moreover, we conditionally **GRANT** relator's petition for writ of mandamus with respect to the portions of the district court's June 18, 2015 turnover order related his malpractice claim, his DTPA claim, and his claim under Chapter 541 of the Insurance Code. We **ORDER** the district court to vacate its June 18, 2015 turnover order with respect these claims. Should the district court fail to comply with this order, the writ will issue.

Relator's petition for writ of mandamus is otherwise **DENIED.**



APPENDIX 000200

It is **ORDERED** that appellant/relator JOHN GOIN recover his costs of this appeal/mandamus from appellee/real party in interest HOPE CRUMP.

Judgment entered this 8th day of January 2020.

--------

Footnotes:

1. *See* TEX. PENAL CODE ANN. § 49.07.

2. According to Crump, Dunn testified in his deposition that his representation of Goin ended on March 6, 2013, the last day of the criminal trial. However, Dunn admitted in his deposition that he never sent any correspondence to Goin terminating the representation. Goin also confirms that Dunn never withdrew from representing him.

3. He also claims that Dunn refused to accept service on his behalf.

4. In contrast, Crump asserts that Goin agreed to sign a pro se answer to avoid a default judgment, which would cause him to lose his insurance coverage.

5. By the time Goin signed his pro se answer, the statute of limitations for Crump's claims purportedly had expired. In addition, Goin claims that the answer precluded him from filing a motion to transfer venue.

6. Goin also claims that Crump's counsel convinced him to sign a joint motion for bench trial, which in his view was against his best interests. However, the record reflects that Crump's case was actually tried before a jury.

7. *See* TEX. BUS. & COM. CODE ANN. §§ 17.46(b), .50.

8. *See* TEX. INS. CODE ANN. §§ 541.051-.061, .151.-152, 542.060.

9. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 32.001, 31.002(b)(3). Abel A. Leal was subsequently appointed as Receiver in Malouf's place, and Kristina Kastl was appointed as Receiver in Leal's place.

10. In this opinion, we will collectively refer to the turnover and to the irrevocable assignment of Goin's claims as the turnover or the turnover order.

11. Receivership costs include (i) "[r]easonable and necessary expenses incurred by the Receiver in fulfilling the duties of Receiver"; (ii) "Receiver's reasonable and necessary fees, which shall be 3% of all proceeds that come into Receiver's possession"; and (iii) "Plaintiff's reasonable and necessary attorney's fees and costs incurred in obtaining the appointment of a turnover receiver."

12. Such pursuit included defending a declaratory judgment action filed by Great American in federal court. The federal case was ultimately dismissed, which, according to Goin, allowed him to pursue his remaining claims in state court.

13. Previously, the defendants in Goin's suit filed a joint motion to transfer venue to Fannin County pursuant to the inmate litigation mandatory venue statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.019(a). The 95th District Court denied the motion, and the defendants filed a petition for writ of mandamus. This Court conditionally granted the petition and ordered the district court to vacate its order denying the defendants' motion. *See In re Travelers Prop. Cas. Co. of Am.*, 485 S.W.3d 921, 927 (Tex. App.—Dallas 2016, orig. proceeding). The district court then granted the defendants' motion in March 2016, thereby transferring Goin's case to Fannin County.

14. Goin's motion also requested that the proceeds pledged to the Receiver are "his interest—sixty percent of the recovery." Crump interprets this language as a request



APPENDIX 000201

by Goin that (i) his counsel take a forty percent fee (which Crump characterizes as a more than ten-fold increase in the fee to be paid to Goin's counsel), (ii) with the remaining sixty percent to be distributed by the Receiver, ninety percent to Crump and ten percent to Goin.

15. "[I]n the rare instance when a turnover order does not function as a mandatory injunction, it is not final." *Id.* at 587. For example, the portions of a turnover order pertaining to disputed funds do not function as a mandatory injunction. *See id.* at 578, 587-88.

16. Moreover, Goin's motion to modify could have been, but was not, filed before July 18, 2015, the date that the district court's plenary power over the turnover order expired. *See First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984) (per curiam) (orig. proceeding) (holding that trial court retained plenary power to vacate, set aside, modify, or amend judgment for a period of thirty days after court signed such judgment (citing, inter alia, TEX. R. CIV. P. 329b(d), (f))); *cf. Kenseth v. Dallas Cty.*, 126 S.W.3d 584, 600 (Tex. App.—Dallas 2004, pet. denied) ("The only post-judgment proceedings over which the trial court retains jurisdiction after the expiration of its plenary power are proceedings to clarify or enforce a judgment.").

17. *See also Tafoya v. Green Tree Servicing LLC*, No. 03-14-00391-CV, 2014 WL 7464321, at *2 n.2 (Tex. App.—Austin Dec. 30, 2014, no pet.) (mem. op.) ("Texas courts have consistently held that a party cannot attack a void judgment in an untimely direct appeal." (collecting cases)).

18. *See also In re Collin Cty.*, 528 S.W.3d 807, 814 (Tex. App.—Dallas 2017, orig. proceeding) ("[I]f an order is void, the relator need not show it does not have an adequate appellate remedy, and mandamus relief is appropriate."); *In re Tyson*, No. 05-17-00371-CV, 2017 WL 3015731, at *2 (Tex. App.—

Dallas July 17, 2017, orig. proceeding) (mem. op.) ("[V]oid orders may be circumvented by collateral attack or remedied by mandamus."); *In re Great N. Energy, Inc.*, 493 S.W.3d 283, 290 (Tex. App.—Texarkana 2016, orig. proceeding) ("Illustrative of the types of turnover orders which could render an appellate remedy inadequate are those that (1) violate public policy, (2) violate the open-courts doctrine, and (3) extinguish a cause of action."); *In re Farmers Ins. Exch.*, No. 13-14-00330-CV, 2014 WL 6804986, at *3-4 (Tex. App.—Corpus Christi-Edinburg Dec. 4, 2014, orig. proceeding) (mem. op.) (granting mandamus with respect to turnover order that was void because trial court exceeded its jurisdiction by purporting to determine insurance coverage issue in such order).

19. Goin also contends that the clarification order impermissibly expanded the turnover order. As support, he relies on case law holding that "a turnover order must be definite, clear, and concise in order to give the person to whom it is directed sufficient information as to his duties and should not be such as would call on him for interpretations, inferences, or conclusions." *Thomas v. Thomas*, 917 S.W.2d 425, 454 (Tex. App.—Waco 1996, no writ); *cf. Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981) (orig. proceeding) (holding that a court order, to support a finding of contempt, "must spell out the details of compliance in clear, specific and unambiguous terms so that [the person who may be held in contempt] will readily know exactly what duties or obligations are imposed upon him"). As set forth above, the turnover order and assignment, by their plain terms, apply to Goin's subsequently pled malpractice claim, and the clarification order did not expand on the scope of these documents.

20. The Texas Supreme Court's refusal of writ of error in *Zuniga* indicates its approval of the judgment and principles of law



declared in the opinion. *Vinson & Elkins*, 946 S.W.2d at 391 n.5.

21. "A *Stowers* cause of action arises when an insurer negligently fails to settle a claim covered by an applicable policy within policy limits." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 395 (Tex. 2016) (citing *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved)).

22. Goin also cites *Vitale v. Keim*, which held that "public policy prohibits any legal malpractice claim from being the subject of a turnover order." No. 01-95-00401-CV, 1997 WL 549186, at *6 (Tex. App.—Houston [1st Dist.] Aug. 29, 1997, pet. denied) (not designated for publication). *Vitale* is an unpublished decision issued before 2003 and therefore has no precedential value. *See* TEX. R. APP. P. 47.7(b).

23. *See also id.* at 290 ("Illustrative of the types of turnover orders which could render an appellate remedy inadequate are those that . . . extinguish a cause of action.").

24. *See also Mallios*, 11 S.W.3d at 164-65 (Hecht, J., concurring) ("As to both voluntary and involuntary assignments, courts cite the personal nature of both legal services and the attorney-client relationship, as well as the preservation of the attorney-client privilege, as justifications for disallowing assignments of such claims.").

25. Goin subsequently amended his petition twice, and these amendments included the addition of his malpractice claim against Dunn and SAD.

26. To date, Goin's petition asserts a malpractice claim only against his own counsel. However, his motion to modify suggested that he may file such a claim against Crump's counsel in the event the district court grants Dunn and SAD's motion for leave to designate Crump's attorneys as responsible third parties. As noted previously,

that court has since granted Dunn and SAD's motion.

27. *See Henry S. Miller Commercial Co. v. Newsom, Terry & Newsom, L.L.P.*, No. 05-14-01188-CV, 2016 WL 4821684, at *3 (Tex. App.—Dallas Sept. 14, 2016, pet. denied) (mem. op.) ("A client who establishes the elements of its legal malpractice claim may also recover exemplary damages upon proof of the attorney's gross negligence.").

28. *See* BUS. & COM. § 17.50(b)(1); INS. § 541.152(b).

29. *See* BUS. & COM. § 17.50(b)(1).

30. For example, clients who anticipate the possibility of an assignment (or turnover) would be encouraged to withhold information from their attorney to preserve the ability to assign a malpractice claim without fear of losing control over confidential information. *See id.* In contrast, the purpose of the attorney-client privilege—to ensure the free flow of information between attorney and client—cannot be achieved unless a client is able to confide in his attorney, secure in the knowledge that his information will not be disclosed. *Id.*

31. An erroneous turnover order is not necessarily void. *See Ex parte Johnson*, 654 S.W.2d 415, 417-19 (Tex. 1983) (holding that trial court erred in ordering turnover directly to judgment creditor, as opposed to sheriff or constable, but such error went to the manner in which trial court exercised its power and not the power itself); *In re Great N. Energy*, 493 S.W.3d at 289 ("The fact the turnover order is contrary to a statute or contains errors only makes the judgment voidable and does not give a party the right to circumvent ordinary appellate or other direct procedures to correct it." (citation and internal quotation marks omitted)). However, the subject turnover order is void because it violates Texas public policy against assigning malpractice claims, as set forth above.



32. In addition, "in many cases consumers may not even know they have DTPA claims when they sign a general assignment included in contract boilerplate." *Id.* Thus, the claims meant to protect customers would "quite literally be gone before they know it." *Id.*

33. *See* BUS. & COM. § 17.50(a)(4) ("A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . (4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code."); *see also* INS. § 541.151(2) ("A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice: . . . (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.").

34. *See id.* at *1 (quoting trial court's order that "'any and all causes of action [Goggans] has, or in the future may possess, including but not limited to a *Stowers* action are hereby award [sic] and turned over to [Ford]'").

35. *Cf. D & M Marine*, 409 S.W.3d at 857-58 (referencing public policy and open-courts concerns that have doomed turnover orders in the past and concluding such concerns "are not present in this case"); *Charles*, 878 S.W.2d at 207-08 (holding that "unasserted, denied causes of action for legal malpractice for failure to settle under the *Stowers* doctrine are not assets subject to turnover").

36. There is an exception to this rule: if the defendant insured assigns his *Stowers* claim to the plaintiff in the underlying suit, the underlying judgment is inadmissible evidence of damages unless it is rendered as the result of a fully adversarial trial. *See Gandy*, 925 S.W.2d at 714; *In re Yorkshire*, 337 S.W.2d at 365. This exception does not apply here because Goin does not assert a *Stowers* claim.

--------



APPENDIX 000204

# Exhibit 3:

# Turnover Order in *Ford v. Goggans*

CAUSE NO. DC-12-02281

| TONIA MARIE FORD; | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| MATTHEW GOGGANS; | § | |
| | § | |
| Defendant. | § | 44th JUDICIAL DISTRICT |

## ORDER ON PLAINTIFF'S MOTION FOR TURNOVER ORDER

On the 25th day of November, 2014, this court heard Plaintiff's Motion for Turnover Order. The Court, having considered the pleadings on file, the motion, the evidence, and the arguments of counsel, is of the opinion Plaintiff in this cause is entitled to the right to any cause of action Defendant Matthew Goggans might have against any liability insurance carrier whether that cause of action is based upon contract, tort, statute or otherwise. Specifically, Plaintiff is entitled to such cause of action whether it is for any amount within or exceeding policy limits of any such insurance policy. Plaintiff is further entitled to such cause or causes of action which might be by virtue of Stowers, negligence, breach of contract, and common law violation of the Texas Insurance Code. **THE COURT FURTHER FINDS** that Plaintiff herein is a judgment creditor as to Defendant in this cause and that Defendant Matthew Goggans is the owner of a cause of action against any liability insurance carrier which might insure him for his own negligence in the collision made the basis of this suit. This Court finds that these rights constitute property and cannot be attached or levied on by ordinary legal process and are not exempt from attachment, execution or any type of seizure for the satisfaction of liabilities. **THIS COURT FURTHER FINDS**  that Plaintiff

**PLAINTIFF'S MOTION FOR TURNOVER ORDER - Page 1**

APPENDIX 000206

should be granted title to and/or ownership of the causes of action described above. The Court finds that Plaintiff is a judgment creditor under a valid and enforceable judgment, specifically a judgment granted by this Court, on July 1, 2014, in the above-styled and numbered cause, for Plaintiff and against Defendant for damages of  Three Hundred Twenty Three Thousand Three Hundred Ninety One and 94/100 ($323,391.94) plus post judgment interest at the rate of five percent (5%) per annum. **THE COURT FURTHER FINDS** that, to date, the judgment remains unsatisfied.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff have and recover title/ownership of each and every cause of action which might be owned or in the future might come to be owned by Defendant Mathew Goggans, by virtue of an policy of liability insurance protecting Defendant as to the occurrence made the basis of this suit.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff have and recover of Defendant Mathew Goggans, all right, title and interest to any cause of action or claim against any liability insurance carrier which was in force and effect to protect him because of the collision made the basis of this suit.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this right, title and interest shall be to any cause of action, whether based upon contract, tort, statute on any other basis, both for any amounts within the policy limits of any such insurance and for any amounts in excess of the said limits.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff have the same property and property rights and causes of action together with all documents or records related to the same property and cause of action and, specifically, that Plaintiff

receive and recover from any party in whose possession the same may be the insurance policy or any insurance policies described previously herein.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff be allowed to exercise these rights and the ownership to this property either in her own name or in the name of the Defendant Matthew Goggans herein giving her the same rights.

Accordingly, the Court is of the opinion that the relief sought should be granted and the following orders made to assist the applicant in obtaining satisfaction of the judgment rendered by this Court on July 1, 2014.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that any and all causes of action Defendant Matthew Goggans has, or in the future may posses, including but not limited to the Stowers action, contract, tort, statute or otherwise against any liability insurance carrier, specifically Germania Insurance Company, are hereby award and turned over to Plaintiff Tonia Marie Ford.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** this this Order shall become effective on today's date.

Signed this __15th__ day of __DECEMBER__, 2014.

_____
JUDGE PRESIDING

APPENDIX 000208

# Exhibit 4:

# Turnover Order in *Shrestha v. Gonzalez*

CAUSE NO: CC-17-05452-E

| | | |
|---|---|---|
| **DRISTI SHRESTHA,** | § | **IN THE COUNTY COURT AT LAW** |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| | § | |
| **VS.** | § | **NUMBER 5** |
| | § | |
| | § | |
| **ENYA HERNANDEZ GONZALEZ &** | § | |
| **LAURO HERNANDEZ,** | § | |
| **Defendants.** | § | **DALLAS COUNTY, TEXAS** |

## <u>ORDER ON PLAINTIFF'S APPLICATION FOR TURNOVER RELIEF</u>

**CAME TO BE CONSIDERED** Plaintiff's Application for Turnover Relief. Plaintiff appeared through her Counsel of Record, Timothy J. Adams.

The Court after considering the pleadings, the evidence, and the argument of counsel finds as follows:

### A.

Defendants are the owners of property described as claims and causes of action against their automobile liability insurance company, Empower Insurance Group, its staff counsel, attorneys, principals, agents, representatives, and related entities related to the judgment entered against Defendants in this lawsuit. Specifically, Defendants are the owners of particular causes of action related to the judgment entered against them in this cause. These claims and causes of action include:

1. Common Law Breach of Contract;

2. Violations of the Texas Insurance Code;

3. Violations of the Texas Deceptive Trade Practices Act;

*ORDER ON APPLICATION FOR TURNOVER RELIEF – PAGE 1 OF 2*



CC – 17 – 05452 – E
COTO
ORDER – TURNOVER
2008171

APPENDIX 000210

4. Common Law Breach of the Duty of Loyalty;

5. Common Breach of the *Stowers* Duty;

6. Breach of the Duty of Good Faith and Fair Dealing;

7. Negligent Handling of a Claim; and

8. Such other claims and causes of action related to the judgment taken against Defendants.

### B.

The property in question is not exempt from attachment, execution, or seizure for the satisfaction of the Final Default Judgment in this cause and the property in question cannot be readily attached or levied on by ordinary legal process.

### C.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that any and all claims and causes of action, as set forth above, against Empower Insurance Group, its staff counsel, attorneys, principals, agents, representatives, and related entities related to the judgment entered against Defendants in this lawsuit along with all documents and records related to said property, notwithstanding whose custody such documents and records are in, and specifically including any paper or electronic claim file relating to Defendants in any way, and the entire paper and electronic attorney/client file, in the possession of Empower Insurance, its staff counsel, attorneys, principals, agents, representatives, and related entities are to be immediately turned over for levy from Defendants to Plaintiff.

SIGNED ON this the ___7___ day of _Janual y_ 2018. 2019

_____
JUDGE PRESIDING

*ORDER ON APPLICATION FOR TURNOVER RELIEF – PAGE 2 OF 2*

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

David Wiley
Bar No. 24029901
david@gwfirm.com
Envelope ID: 52592064
Status as of 4/19/2021 2:00 PM CST

Associated Case Party: JEFFREYW.CARPENTER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy EGibson | | amy@gwfirm.com | 4/19/2021 1:28:38 PM | SENT |
| David L.Wiley | | david@gwfirm.com | 4/19/2021 1:28:38 PM | SENT |

Associated Case Party: BRIAN POTASHNIK

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert Gilbreath | | rgilbreath@hpylaw.com | 4/19/2021 1:28:38 PM | SENT |

# Exhibit 3

# *Goggans v. Ford* opinion

Goggans v. Ford, Not Reported in S.W. Rptr. (2016)

Case 3:23-cv-00769-N    Document 40    Filed 10/18/23    Page 214 of 217    PageID 3382

2016 WL 2765033
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas, Dallas.

Matthew GOGGANS, Appellant

v.

Tonia Marie FORD, Appellee

No. 05–15–00052–CV
|
Opinion Filed May 11, 2016
|
Rehearing En Banc Overruled June 30, 2016

**Synopsis**

**Background:** After judgment was entered against defendant motorist in personal injury action in excess of his insurer's policy limits, and while defendant's direct appeal was pending, plaintiff motorist filed a motion for turnover order relating to defendant's claim against his insurer for failure to settle within policy limits. The 44th Judicial District Court, Dallas County, Carlos Cortez, J., granted the motion. Defendant motorist appealed.

**Holdings:** The Court of Appeals, Evans, J., held that:

[1] underlying personal injury judgment had not been superseded and was final for purposes of turnover order, and

[2] turnover order did not violate public policy.

Affirmed.

West Headnotes (2)

[1] **Creditors' Remedies** 🔑 **Tort claims; bad faith**

Underlying personal injury judgment against judgment debtor had not been superseded and

was final for purposes of a cause of action against debtor's insurer for negligent failure to settle within policy limits, and therefore, claim, subject to turnover, could be brought against insurer regardless of fact that all appeals had not been exhausted; judgment creditor's counsel's oral representation to court that creditor would prefer a turnover order to a supersedeas bond in no way constituted an agreement between the parties, let alone the required written agreement filed with the trial clerk. Tex. R. App. P. 24.1; Tex. Civ. Prac. & Rem. Code Ann. § 31.002.

2 Cases that cite this headnote

[2] **Creditors' Remedies** 🔑 **Tort claims; bad faith**

Order requiring judgment debtor to turnover his cause of action against his insurer for negligent failure to settle within policy limits to judgment creditor did not violate public policy, absent evidence that debtor was satisfied with his insurer's refusal to settle the underlying suit or that he did not wish to pursue a claim against insurer. Tex. Civ. Prac. & Rem. Code Ann. § 31.002.

2 Cases that cite this headnote

On Appeal from the 44th Judicial District Court, Dallas County, Texas, Trial Court Cause No. DC–12–02281, Carlos Cortez, Judge.

**Attorneys and Law Firms**

Vanessa Rosa, Scott B. Prewett, Roger D. Higgins, Jacquelyn Chandler, Dallas, TX, for Appellant.

Shelly T. Greco, Dallas, TX, Rosalyn R. Tippett, Coppell, TX, for Appellee.

Before Justices Lang–Miers, Evans, and Schenck

**MEMORANDUM OPINION**

Opinion by Justice Evans

APPENDIX 000214

Goggans v. Ford, Not Reported in S.W. Rptr. (2016)

Case 3:23-cv-00769-N Document 40 Filed 10/18/23 Page 215 of 217 PageID 3383

**\*1** In this appeal from a turnover order, appellant Matthew Goggans contends the trial court erred in turning over claims he might have against his liability insurer while the underlying judgment against him is being appealed. We conclude the trial court did not abuse its discretion and we affirm the turnover order.

## BACKGROUND

Appellee Tonia Marie Ford sued Goggans for injuries she sustained in an automobile accident. Goggans was provided a defense by his insurer, Germania Insurance Company. Prior to trial, Ford offered to settle her claims against Goggans for the limits of his insurance coverage. Germania refused the settlement offer. After a trial on the merits, a jury found Goggans was negligent in his operation of a motor vehicle and that such negligence proximately caused the injuries and damages sustained by Ford. The trial court signed a judgment awarding Ford $323,391.94 in damages plus post-judgment interest at a rate of five percent per annum. This amount exceeded the limits of Goggans's liability insurance policy.

After entry of the judgment, Goggans filed, among other things, a notice of appeal and a motion to decrease the security required for a supersedeas bond. The trial court conducted a hearing on the motion to decrease security and denied it without prejudice to allow Goggans to refile his request with an amended affidavit concerning his assets. Goggans filed his first amended motion to decrease security on November 12, 2014.

One week before Goggans filed his amended motion to decrease security, Ford filed a motion for turnover order. The motion requested the court to order Goggans to turn over all claims he had against his insurance company, including any cause of action for negligent failure to settle within policy limits (a "*Stowers* claim"). *See G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544, 547 (Tex.1929) (insurer has duty to settle within policy limits when reasonably prudent to do so). Submitted along with the motion were letters showing that Ford offered to settle her claims against Goggans for the coverage limits of Goggans's liability insurance policy and that Germania refused the offer. Goggans responded to the request for turnover order arguing that Ford's motion was premature because the judgment establishing his liability was not final and no *Stowers* claim in which he would have a property interest yet existed. In the alternative, Goggans argued it was against public policy to

allow a *Stowers* claim to be made the subject of a turnover order.

At the hearing on Ford's motion for turnover, the following exchange between the court and Ford's counsel occurred:

THE COURT: Well, first, let me make sure that I understand what [Ford] wants. [Ford] wants the potential cause of action, the *Stowers* cause of action.... That's what you want as far as in lieu of the supersedeas bond?

APPELLEE'S COUNSEL: Yes

The trial court granted the motion for turnover order and ordered that "any and all causes of action [Goggans] has, or in the future may possess, including but not limited to the *Stowers* action are hereby award [sic] and turned over to [Ford]." The record contains no ruling, and the parties concede there is none, on Goggans's motion to decrease the security required for a supersedeas bond. Goggans then brought this appeal from the trial court's order.

**\*2** During the pendency of this appeal, a different panel of this Court affirmed the judgment against Goggans in the underlying personal injury case. *See Goggans v. Ford,* No. 05–14–01239–CV, 2015 WL 8523302 (Tex.App.–Dallas Dec. 9, 2015, pet. filed) (mem.op.). Goggans has filed a petition for review of that decision with the Texas Supreme Court.

## ANALYSIS

We review the trial court's decision to grant or deny a turnover order for an abuse of discretion. *See HSM Dev., Inc. v. Barclay Props., Ltd.,* 392 S.W.3d 749, 751 (Tex.App.–Dallas 2102, no pet.). We may reverse the trial court's ruling only if we conclude the court acted in an unreasonable or arbitrary manner or acted without reference to any guiding rules or principles. *Id.*

**[1]** Under section 31.002 of the Texas Civil Practice and Remedies Code, a trial court may order a judgment debtor to turnover nonexempt property, including present or future rights to such property, that cannot readily be attached or levied on by ordinary legal process. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2015). Rights to a judgment debtor's claims against his insurer may properly be made the subject of a turnover order. *See D & M Marine, Inc. v. Turner,* 409 S.W.3d 853, 858 (Tex.App.–Fort Worth 2013, no pet.). Goggans argues he has no present or future property

Goggans v. Ford, Not Reported in S.W. Rptr. (2016)

Case 3:23-cv-00769-N  Document 40   Filed 10/18/23   Page 216 of 217   PageID 3384

rights in any *Stowers* claim against his insurer because the *Stowers* claim does not yet exist and will not accrue unless all appeals of the underlying judgment have been exhausted and the judgment against him is affirmed. Goggans relies on the case of *Street v. Honorable Second Court of Appeals,* 756 S.W.2d 299, 301 (Tex.1988). *Street,* however, contradicts Goggans's position rather than supports it.

In *Street,* the court held that "a judgment is final for the purposes of bringing a *Stowers* action if it disposes of all issues and parties in the case, the trial court's power to alter the judgment has ended, and execution on the judgment, if appealed, has not been superseded." *Id.* The court went on to hold that, if the underlying judgment against the insured has not been superseded, the insured may bring a *Stowers* claim against his insurer regardless of the appellate status of the case because the outstanding judgment causes injury while it remains unpaid. *Id.* Goggans suggests the judgment against him is not final under *Street* because Ford cannot execute upon the judgment until the trial court rules on his amended motion to decrease the security required for the supersedeas bond. Goggans essentially contends that his motion, which has been pending for almost a year and a half, has the same effect as if he had posted a sufficient bond to supersede the judgment. Goggans cites no authority for the proposition that filing a motion to decrease security, by itself, prevents enforcement of a judgment and we have found none.

There are only four methods by which a judgment may be superceded: (1) filing with the trial court clerk a written agreement with the judgment creditor for suspending enforcement of the judgment; (2) filing with the trial court clerk a good and sufficient bond; (3) making a deposit with the trial court clerk in lieu of a bond; or (4) providing alternate security ordered by the court. Tex. R. App. P. 24.1. Goggans argues that the discussion between the trial court judge and Ford's counsel at the hearing on the turnover order constitutes an agreement suspending enforcement of the judgment. The exchange to which Goggans refers was a question by the judge asking if Ford wanted a turnover of the *Stower's* claim "in lieu of a supersedeas bond" to which Ford's counsel responded "yes." Counsel's oral representation to the court that Ford would prefer a turnover order to a supersedeas bond in no way constitutes an agreement between the parties, let alone a written agreement filed with the trial clerk as required by the Texas Rules of Appellate Procedure. *Id.* Indeed, Goggans brought this appeal for the sole purpose of attempting to reverse the very order he contends Ford accepted in exchange for suspending enforcement of the

judgment. Because the underlying judgment against Goggans has not been superseded and is final for purposes of *Stowers,* a claim may be brought against Goggans's insurer regardless of the fact that all appeals have not been exhausted. *See Gulf Ins. Co. v. Clarke,* 902 S.W.2d 156, 160 (Tex.App.–Houston [1st Dist.] 1995, writ denied) (finality of judgments rule stated in *Street* equally applicable to claims brought by third parties against insurer). The claim, therefore, exists as property subject to turnover.

**\*3  [2]**  Goggans next argues that public policy prohibits the turnover of his *Stowers* claim. Although Goggans concedes that *Stowers* claims are assignable, he contends assignment by virtue of a turnover order constitutes an impermissible "involuntary assertion" of the claim. Generally, causes of action against third parties are properly made the subject of a turnover order when the judgment creditor has the same interest in pursuing them to maximum value as the judgment debtor. *See D & M,* 409 S.W.3d at 857. Some Texas courts have held, however, that a *Stowers* claim is not subject to turnover if the insured has indicated he was satisfied with his insurer's decision not to settle or he has released his potential claims against the insurance company. *See Charles v. Tamez,* 878 S.W.2d 201, 208 (Tex.App.–Corpus Christi 1994, writ denied); *Nationwide Mut. Ins. Co. v. Haffley,* 78 Fed. Appx. 348 (5th Cir.2003). Where the insured has no complaints about his representation or no interest in pursuing a claim, he and the judgment creditor would not be aligned. The duty to settle a lawsuit under *Stowers* is a personal duty and the insured should not be forced to pursue a claim that he has no wish to pursue. *See Tamez,* 878 S.W.2d at 208. Furthermore, where the insured is satisfied with his insurer's representation and denies that he suffered any injury, no *Stowers* cause of action exists. *See id.* at 209; *Dauter–Clouse for Benefit of Bankr.Estate of Johnson v. Robinson,* 936 S.W.2d 329, 332 (Tex.App.–Houston [14th Dist.] 1996, no pet.).

Unlike the cases that have held a turnover order would violate public policy, there is no evidence here that Goggans was satisfied with his insurer's refusal to settle the underlying suit or that he did not wish to pursue a *Stowers* claim. Such evidence could easily have been produced. Goggans has not taken the position that a *Stowers* claim does not exist on the basis that he was not injured. Absent such evidence, we cannot conclude the trial court abused its discretion in granting the turnover. *See D & M,* 409 S.W.3d at 858 (turnover did not violate public policy where there was no evidence insured did not want to be indemnified).

Goggans v. Ford, Not Reported in S.W. Rptr. (2016)

Case 3:23-cv-00769-N   Document 40   Filed 10/18/23   Page 217 of 217   PageID 3385

To the extent Goggans has raised concerns that pursuit of a *Stowers* claim could interfere with his defense during the pendency of his appeals, the supreme court in *Street* noted that "a trial court might in some instances have the authority to abate such a suit until all appeals are exhausted [and] it is within the sound discretion of the trial court to regulate discovery and the setting of trial to advance the ends of justice." *Street,* 756 S.W.2d at 302. Here, Goggans does not complain that discovery, if any, pursuant to the turnover order has or may interfere with Goggans's prosecution of his appeals with counsel retained through his insurance policy.

There is nothing, therefore, for us to rule on regarding interference discovery might cause.

**CONCLUSION**

Based on the foregoing, we resolve Goggans's sole issue against him. We affirm the trial court's order.

**All Citations**

Not Reported in S.W. Rptr., 2016 WL 2765033

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.