IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | Civil Action No. 3:23-CV-00769-N |
| Twin City Fire Insurance Company, | § | |
| | § | Jury Demand |
| *Defendant.* | § | |

---

## JEFF CARPENTER'S RESPONSE TO DEFENDANT'S
## MOTION FOR PROTECTION AND BRIEF IN SUPPORT

---

# I. Summary

A *Stowers* claim involves negligence by an insurance company — putting at issue the care an insurance company took in refusing to pay an offer to settle within limits, leaving its own customers liable for a judgment in excess of limits. The discovery sought here are divided into six topics: (1) claims handling; (2) coverage interpretation; (3) moral hazard; (4) history of bad faith or negligence; (5) reinsurance; and (6) documents removed from any claim file. Courts permit discovery on each. Courts permit this kind of discovery.

A protective order here is unnecessary. Twin City already has available to it a process for objecting. Which it did. So, it cannot meet its burden to show a protective order is necessary. Further, Twin City failed to confer on any burdens of discovery before filing this motion. Since that time, Carpenter's counsel requested to confer on Carpenter's anticipated motion to compel this same discovery. Counsel held a conference. Carpenter's counsel discussed the discovery. Carpenter's counsel is still waiting on information from Twin City — about the nature of its business — to assess whether and to what extent requests may be tweaked. It is more efficient to deny this motion. And wait for any motion to compel the discovery.

## TABLE OF CONTENTS

SUMMARY ...…………………………………………………………….................... 2

TABLE OF CONTENTS ...…………………………………………………………….. 3

TABLE OF AUTHORITIES ...…………………………………………………………. 5

II. BACKGROUND …………………………………….....……………………………. 7

A.    Context for the discovery sought: *Stowers* fundamentals ...…………………….…… 7

B.    The topics of the discovery sought ……………………………………….................. 9

III. ARGUMENT AND AUTHORITIES …………………………………………….......... 9

A.    Relevance ……………………………………………….......…………………….. 9

       1.    Negligence is at issue: Discovery relates to negligence ................................. 10

       2.    Punitive damages are at issue ........................................................................ 11

       3.    Bad faith is relevant to negligence ................................................................ 12

       4.    Coverage interpretation is at issue ................................................................ 13

       5.    Moral hazard is at issue ................................................................................. 13

       6.    *Stowers* and bad faith lawsuits may be relevant ............................................ 14

       7.    Reinsurance is discoverable and should have been disclosed ....................... 14

B.    Proportionality ..............................................................……………………….. 14

       1.    Twin City fails to provide specificity concerning burden ……………..……... 15

       2.    [Request 15] claims handling: Twin City fails to address production of policy manuals, standards, guidelines, procedures, best practices, training materials, seminar materials, and litigation manuals ……………..………………… 16

       3.    [Request 21] policies for evaluating claims handlers: Twin City's description of burden is too general to be useful and courts regularly require this production... 17

4.      [Request 47] other approvals for front pay / back pay awards: The same
exclusion on which Twin City relies here .................................................... 18

5.      [Request 53] *Stowers* and bad faith lawsuits: Producing such lawsuits is not
unduly burdensome and Twin City fails to prove otherwise ..................................... 18

6.      Twin City failed to confer on proportionality — or any particular request
 — prior to filing this motion .................................................................. 19

IV. CONCLUSION...…………………………………………………………………………   20

TABLE OF AUTHORITIES

**Cases**

*American Auto Ins. Co. v. Hawaii Nut & Bolt, Inc.*,
    No. 15-cv-00245 (D. Haw. Jan. 9, 2017), ECF No. 200 ……………………............. 17

*American Physicians Ins. Exch. v. Garcia*,
    876 S.W.2d 842 (Tex. 1994) ……………………........................................... 10

*Athridge v. Aetna Cas. & Sur. Co.*,
    184 F.R.D. 181 (D.D.C. 1998) …………………........................................... 16

*Carlson v. Freightliner LLC*,
    226 F.R.D. 343 (D. Neb. 2004) …………………......................................... 15

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
    445 S.W.3d 716 (Tex. 2014) …………………............................................ 8

*Certain Underwriters at Lloyd's v. National R.R. Passenger Corp.*,
    No. 14-cv-4717 (E.D.N.Y. May 16, 2016), ECF No. 380……………………............. 14

*Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*,
    No. 08-cv-2527 (D. Kan. Nov. 6, 2009), ECF No. 69……………………................. 16

*Colonial Am. Life Ins. Co. v. Commissioner of Internal Revenue*,
    843 F.2d 201 (5th Cir. 1988), *aff'd* 491 U.S. 244 (1989) …………………................ 14

*Computer Sciences Corp. v. Endurance Risk Solutions Assurance Co.*,
    No. 20-cv-01580 (S.D.N.Y. March 10, 2022), ECF No. 112 ........................................ 13

*Equal Emp't Opportunity Comm'n v. BDO USA, L.L.P.*,
    876 F.3d 690 (5th Cir. 2017) …………………............................................ 10

*G.A. Stowers Furniture Co. v. Am. Indem. Co.*,
    15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved) …………………........…... 7

*Heller v. City of Dallas*,
    303 F.R.D. 466 (N.D. Tex. 2014) …………………........................................ 15

*In re Sulfuric Acid Antitrust Litig.*,
    231 F.R.D. 351 (N.D. Ill. 2005) …………………........................................ 15

*James River Ins. Co. v. Thompson*,
    No. 20-cv-01052 (D. Ariz. Dec. 6, 2021), ECF No. 110……………………................ 13

*Lurensky v. Wellinghoff*,
    258 F.R.D. 27 (D.D.C. 2009) ……………………............................................... 10, 15

*Massachusetts Mut. Life Ins. Co. v. Beeharilal*,
    No. 14-cv-0085 (M.D. La. March 24, 2015), ECF No. 40……………………............. 16

*Phillips v. Clark Cnty Sch. Dist.*,
    No. 10-cv-02068 (D. Nev. Jan. 18, 2012), ECF No. 64 ……………………................ 13

*Soricelli v. GEICO Indem. Co.*,
    No. 16-cv-1535 (M.D. Fla. Jan. 20, 2017), ECF No. 32 ……………………................ 17

*Surgery Ctr. at 900 N. Mich. Ave., LLC v. American Assur. Corp.*,
    317 F.R.D. 620 (N.D. Ill. 2016) ……………………....................................... 19

*White Mountain Cmtys. Hosp. Inc. v. Hartford Cas. Ins. Co.*,
    No. 13-cv-8194 (D. Ariz. Dec. 8, 2014), ECF No. 106 ……………………................ 17

## II. BACKGROUND[1]

**A.      Context for the discovery sought: *Stowers* fundamentals**

> If [a liability] insurer refuses an offer of settlement when it appears that an ordinary prudent person in the insured's situation would have settled, the insurer may be held liable for damages.
>
> —*Ranger Cnty. Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex. 1987)

This is a *Stowers* case.[2] It arises out of an earlier Texas state court jury verdict and judgment in favor of Jeff Carpenter. In that prior case, defendants' liability insurance carrier — Twin City — rejected a reasonable opportunity to settle for less than remaining policy limits. It did so even though policy limits were eroding toward zero with every penny of litigation costs and every dollar of attorneys' fees. Ultimately, four of its insureds were hit with an adverse jury verdict and a judgment that exceeded remaining policy limits by around $2 million. The defendant insureds appealed to the Fifth District Court of Appeals at Dallas and the Texas Supreme Court but were not successful. The judgment was affirmed and remains unsatisfied.

A *Stowers* claim sounds in negligence. When insurance companies have the right to control settlement of claims against their insureds, they owe their insureds a *Stowers* duty. The *Stowers*

---

[1] Unless otherwise noted, Jeff Carpenter's attorneys have supplied all emphases, omitted all internal quotation marks and internal citations from case quotations, and omitted all citing and quoting references from case citations.

  This response is supported by the *Appendix in Support of Jeff Carpenter's Response to Defendant's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(c)*. The Appendix is bates-labeled on the bottom right. It is cited as App., followed by the relevant bates-labeled appendix page.

[2] *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

opinion explains that the insurance company is:[3]

> held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages.

This duty sounds in negligence, has been around for almost a century, and is similar to other areas of law in which a right of control gives rise to a legal duty.[4] So, the ultimate issue in a *Stowers* case is whether a settlement offer is such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the potential harm to the insured, such as exposure to a judgment higher than policy limits.

The *Stowers* duty is born of insurance companies who want to save money for themselves to the detriment of insureds. If a policy limit is the maximum insurance company risk — whether a

---

[3] *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

[4] *Compare, e.g., Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("Having undertaken to install a plumbing system in the house, the plumber assumed an implied duty not to flood or otherwise damage the [] house while performing its contract with the builder.").

case settles or goes to trial —, then why settle at all? Why not gamble the insured's personal finances and take a chance at trial? Even if odds of a defense win are slim. Even if trial could expose the insured to damages higher than policy limits.

## B.     The topics of the discovery sought

The discovery sought here are divided into six topics: (1) claims handling; (2) coverage interpretation; (3) moral hazard; (4) history of bad faith or negligence; (5) reinsurance; and (6) documents removed from any claim file. Each topic contains one or several specific requests for production of documents on that topic. Twin City produces nothing in response to any of them, seeks protection from all, and its motion here asserts only two grounds: relevance and proportionality.

## III. Argument and Authorities

## A.     Relevance

Twin City fails to provide any individualized relevance analysis here. Though the motion mentions some requests by number, it lacks reasons or analysis on why any *particularly identified* request is unrelated to any claims or defenses in this case. Just that all are: Twin City argues by conclusion alone.[5] This is insufficient for a motion seeking protection.

---

[5] *See, e.g.,* Motion at p. 2 ("this information is neither relevant nor proportional in this lawsuit."); *id.* at p. 3 ("The documents Carpenter seeks have no bearing on any of these issues"); *id.* at p. 4 ("For all of these reasons, Carpenter's discovery requests—in furtherance of a claim he has no standing to pursue—are not relevant.").

Instead of merely serving its objections to discovery [which it did], Twin City here affirmatively undertakes the burden of proving a protective order is *necessary*.[6] Without particularized relevance analysis, Twin City fails this burden of showing necessity. Indeed, with the available process of just serving objections under Federal Rule of Civil Procedure 34(b) [which Twin City did], a motion is unnecessary and should be denied on that basis alone.[7]

Still, Twin City's global irrelevance claims appear to be three-fold: that (1) the discovery sought is irrelevant to *Stowers* elements; (3) punitive damages are unrecoverable; and (3) bad faith is not at issue. Carpenter addresses each below.

### 1.    Negligence is at issue: Discovery relates to negligence.

First, Twin City contends that if coverage exists, "the only other inquiry is whether (A) the settlement demand was within policy's limits, and (B) the likelihood of the insured's potential exposure to a judgment in excess of the policy's limits."[8] If only it were that simple. In citing *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842 (Tex. 1994) for that proposition, Twin City omits the ordinary prudence standard *Garcia* mentions:

> The *Stowers* duty is not activated by a settlement demand unless three prerequisites are met: (1) the claim against the insured is within the scope of coverage, (2) the demand is

---

[6] *See Equal Emp't Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) ("The movant bears the burden of showing that a protective order is necessary, 'which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'").

[7] *Cf. Lurensky v. Wellinghoff*, 258 F.R.D. 27, 30 (D.D.C. 2009) ("Inasmuch as the defendant's motion is an attempt at a blanket objection to the entire production request as overly burdensome, it is insufficient under this framework.").

[8] Motion at p. 3.

within the policy limits, and (3) ==the terms of the demand are such that an ordinarily prudent insurer would accept it==, considering the likelihood and degree of the insured's potential exposure to an excess judgment.[9]

In short, Twin City omits citing the broader negligence requirement at issue: how an ordinarily prudent insurer would handle the offer to settle within limits — i.e., reasonableness.

How Twin City usually goes about its regular business of handling settlement offers is reasonably calculated to lead to evidence of whether it acted negligently handling this one. Like a hospital's processes of storing / handling scalpels could be relevant to medical negligence. Here, Twin City's claims handling manuals and processes bear a reasonable relation to negligence. How people involved here were qualified, trained, incentivized, and supervised regarding settlement of claims does too. Like how a hospital's staff's qualification, training, incentivization, and supervision on cleaning is related to negligence. So, Carpenter seeks discovery on these issues [Nos. 15 to 45].

### 2.    Punitive damages are at issue

Second, Twin City presumes that if the discovery is related to punitive damages, such damages are not at issue — citing its opposed motion to dismiss on punitive damages.[10] For the reasons provided in that opposition [e.g., challenging the state court's power to turnover the right to seek punitive damages, on public policy grounds, is an impermissible collateral attack], they are at issue. But for purposes of discovery, Twin City's presumption misses a larger point about the *Stowers* negligence at issue: Discovery related to a predicate question for punitive damages — i.e., whether

---

[9] *Garcia*, 876 S.W.2d at 849.

[10] *See* Motion at p. 4.

Twin City acted with *gross* negligence — is related to the question of *ordinary* negligence at issue in a *Stowers* claim. So, even if punitive damages were not at issue [they are], the discovery's relation to negligence still matters. Besides, Twin City's motion lacks any argument or claim that the discovery sought is *only* related to punitive damages. And lacks any specific attempt to tie any particularly identified request solely to punitive damages.

### 3.     Bad faith is relevant to negligence

Third, Twin City appears to contend that the discovery is irrelevant because aimed at unasserted bad faith claims. But the fact that a bad faith claim is separate from a *Stowers* claim misses a simpler point: Evidence relevant to one might also be relevant to the other. Like how a mop is separate from a broom, but both clean floors. Here, Twin City calls the discovery "institutional." Ostensibly for the notion that it goes to how Twin City operates institutionally. And so, as the argument apparently goes, addresses whether an insurance company has operated in bad faith with respect to a claim. But that such evidence might be relevant to show bad faith does not mean it cannot also be relevant to negligence.

Whether a company acted in bad faith [higher culpability] may well be some evidence that it acted negligently [lesser culpability]. Without any particularized analysis, whether any given request might also be relevant to show bad faith says nothing about whether it is reasonably calculated to lead to the discovery of admissible evidence of negligence.  Just as with punitive damages, Twin City's motion lacks any argument or claim that the discovery sought is *only* related to bad faith. And lacks any specific attempt to tie any particularly identified request solely to bad faith.

### 4. Coverage interpretation is at issue

Twin City characterizes requests about coverage interpretation [Nos. 46-50] as asking for documents "relating to unrelated lawsuits, unrelated policyholders, and unrelated claims files, apparently nationwide and dating back to the inception of Twin City's business."[11] But the discovery concerns interpretation of the same exclusions on which Twin City seeks summary judgment. Courts permit discovery on coverage interpretation.[12]

### 5. Moral hazard is at issue

As it does with coverage interpretation discovery, Twin City characterizes moral hazard discovery [Nos. 51-52] as asking for unrelated information.[13] But Twin City is the party that raises moral hazard in its motion for summary judgment.

---

[11] *See* Motion at p. 1.

[12] *See, e.g.*, *Computer Sciences Corp. v. Endurance Risk Solutions Assurance Co.*, No. 20-cv-01580 (S.D.N.Y. March 10, 2022), ECF No. 112 at p. 2 (collecting cases and stating: "Courts in this district have held that, in order to properly interpret an insurance policy, it is necessary to discern how that policy has been interpreted in the past."); *James River Ins. Co. v. Thompson*, No. 20-cv-01052 (D. Ariz. Dec. 6, 2021), ECF No. 110 at p. 7 (collecting cases and stating: "The discovery requests at issue specifically seek information about other claims involving the sexual act exclusion.... [Insurer] provides no basis for the Court to reconsider its ruling that other claims involving the sexual act exclusion are relevant to the coverage issue."); *Phillips v. Clark Cnty Sch. Dist.*, No. 10-cv-02068 (D. Nev. Jan. 18, 2012), ECF No. 64 at pp. 7-8, 18 (collecting cases and stating: "Courts generally hold that the policy drafting history is discoverable.... Most courts also permit discovery regarding other lawsuits and claims involving the identical policy provisions.... As the court in *Nestle* observed, such information 'may show that identical language has been afforded various interpretations by the insurer' and 'could undermine the insurer's position that the language in question is clear and unambiguous.'... As the Court understands this request, it seeks internal company documents relating to the interpretation of the policy at issue. To the extent that Defendant has any such documents relating to the interpretation of the Catastrophe Cash Benefit Rider, its objections are overruled and it is ordered to produce the documents.").

[13] *See* Motion at p. 1.

6.    ***Stowers* and bad faith lawsuits may be relevant**

Other than calling them unrelated and claiming it goes back to the inception of time [in reality, it expressly limits to 15 years], Twin City provides no specific analysis of why production of lawsuits against it for *Stowers* or bad faith litigation [No. 53] is not discoverable.

7.    **Reinsurance is discoverable and should have been disclosed**

Twin City fails to explain why the existence of reinsurance [Nos. 54-55] is irrelevant. Reinsurance is "an arrangement whereby an insurance company transfers some or all of the risks it has underwritten to another insurance company."[14] Twin City contends it is irrelevant. But if it exists, reinsurance is not only discoverable — it should have already been disclosed with Federal Rule of Civil Procedure 26 initial disclosures. And courts routinely permit discovery of it.[15]

**B.    Proportionality**

As with its argument on relevance, Twin City fails to provide any individualized proportionality analysis here. Instead, Twin City appears to claim that *all* discovery served is disproportionate because wholly irrelevant. And to date, Twin City only produces the policy itself. Nothing else. On

---

[14] *See Colonial Am. Life Ins. Co. v. Commissioner of Internal Revenue*, 843 F.2d 201, 201-02 (5th Cir. 1988), *aff'd* 491 U.S. 244 (1989).

[15] *See, e.g., Certain Underwriters at Lloyd's v. National R.R. Passenger Corp.*, No. 14-cv-4717 (E.D.N.Y. May 16, 2016), ECF No. 380 at p. 33 (collecting cases: "The Court concludes that Amtrak is entitled to reinsurance agreements under Rule 26(a)(1)(A)(iv) — a conclusion that is supported by the majority of the precedent addressing this issue, the plain language of Rule 26(a)(1)(A)(iv), and the policy and purpose of Rule 26.... Most federal courts across the country that have examined this issue, including at least one within this district, have determined that the reference in Rule 26(a)(1)(A)(iv) to 'any insurance agreement' includes reinsurance agreements. ").

proportionality, Twin City's claim really seems to be one of burden. Which, again, with the available process of just serving objections under Federal Rule of Civil Procedure 34(b) [which Twin City did], a motion is unnecessary and should be denied on that basis alone.[16] Nevertheless, Carpenter addresses the claim of undue burden.

### 1.    Twin City fails to provide specificity concerning burden

For most requests, Twin City claims that proving burden is itself too burdensome.[17] But when a party claims discovery is unduly burdensome, it must prove the burden.[18] The only requests particularly addressed are no. 15 [claims handling for employment practices claims], no. 21 [policies

---

[16] *Cf. Lurensky v. Wellinghoff*, 258 F.R.D. 27, 30 (D.D.C. 2009) ("Inasmuch as the defendant's motion is an attempt at a blanket objection to the entire production request as overly burdensome, it is insufficient under this framework.").

[17] *See* Appendix attached to Defendant's Motion [Declaration of Joseph M. Coppola] at p. 19 ("All of Carpenter's requests are extremely burdensome. To point out the many reasons for this in connection with all forty-two requests would cause this declaration to be quite lengthy.").

[18] *See, e.g., Heller v. City of Dallas*, 303 F.R.D. 466, 490-91 (N.D. Tex. 2014) ("A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive. This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive *by submitting affidavits or offering evidence revealing the nature of the burden*. Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate. And another court has observed that '[i]t would be difficult to dispute the notion that the very act of making such boilerplate objections is *prima facie* evidence of a Rule 26(g) violation, because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, *he or she should have disclosed them in the objection*, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver."); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360-61 & n.9 (N.D. Ill. 2005) ("In order to demonstrate undue burden, that [objecting party] must provide affirmative proof in the form of affidavits or record evidence") (citing numerous similar cases); *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 370 (D. Neb. 2004) ("An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectionable. It is not sufficient to simply state that the discovery is overly broad and burdensome, nor is a claim that answering the discovery will require the objecting party to expend considerable time and effort

for evaluating claims handlers], no. 47 [approvals of front pay / back pay awards], and 53 [*Stowers* and bad faith lawsuits]. For each, the proof submitted is too general to prove undue burden.

**2.  [Request 15] claims handling: Twin City fails to address production of policy manuals, standards, guidelines, procedures, best practices, training materials, seminar materials, and litigation manuals.**

In addressing burden, Twin City focuses on "documents used" in adjusting employment practices claims — but fails to address any burden of producing generally-applicable manuals, etc.[19] As for such "documents used" in adjusting other claims, Twin City or its parent has been required to produce that sort of information before.[20] Ostensibly, they were able to comply. Courts have required other insurers to produce this sort of information too.[21]

---

analyzing 'huge volumes of documents and information' a sufficient factual basis for sustaining the objection."); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 191 (D.D.C. 1998) (failure to proffer proof of nature of alleged burden waived objections).

[19] *See* Appendix attached to Defendant's Motion [Declaration of Joseph M. Coppola] at pp. 19-20.

[20] *See, e.g., Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, No. 08-cv-2527 (D. Kan. Nov. 6, 2009), ECF No. 69 at pp. 3 ("First Request No. 11 asks Hartford [Twin City's parent] to produce all documents 'which describe, *relate* and/or respond to any review or analysis of your claims handling practices regarding claims for wrongful acts by employees, employee dishonesty, or employee theft that have been conducted since 2004.'... Because the Court has overruled all of Hartford's objections to First Request No. 11, the Court grants the Motion to Compel as to it").

[21] *See, e.g., Massachusetts Mut. Life Ins. Co. v. Beeharilal*, No. 14-cv-0085 (M.D. La. March 24, 2015), ECF No. 40 at pp. 4, 14 , 18("Through Request for Production No. 17 and 18, Beeharilal seeks, respectively, *documents used by MassMutual's claims adjusters in the process of adjusting disability insurance claims* and his claim in particular.... [T]he court will limit the time range of the request to documents used by, and available to, MassMutual's claims handlers from the date Beeharilal submitted his claim (July 9, 2013) to the date MassMutual denied his claim (January 28, 2014).... MassMutual shall produce responsive documents to Requests for Production Nos. 15 and 17, as outlined in this Order, no later than ....").

**3. [Request 21] policies for evaluating claims handlers: Twin City's description of burden is too general to be useful and courts regularly require this production.**

Twin City contends that it would require "contacting every office nationwide." But other than noting where it is licensed, Twin City provides no information of how many offices that means. Twin City claim that "it could take hundreds of hours" fails to exclude the possibility or probability that it could take ten hours. Besides, it appears Twin City is confusing the evaluations themselves with what is actually requested about policies for implementing them: "policies, booklets, and procedural guidelines describing or explaining your implementation of employee performance reviews/evaluations for your claims-handling ...."[22] In any case, courts commonly require this *and* production of the performance reviews/evaluations themselves.[23]

---

[22] *See* Appendix attached to Defendant's Motion [request 21] at p. 8.

[23] *See, e.g., American Auto Ins. Co. v. Hawaii Nut & Bolt, Inc.*, No. 15-cv-00245 (D. Haw. Jan. 9, 2017), ECF No. 200 at p. 14, PageID #: 3622 ("Safeway seeks the personnel files and information for individuals who played a role in the handling of HNB's insurance claim.... the personnel files for those individuals involved in the handling of HNB's insurance claim are relevant and proportional to the needs of the case, and are thus discoverable."); *Soricelli v. GEICO Indem. Co.*, No. 16-cv-1535 (M.D. Fla. Jan. 20, 2017), ECF No. 32 at pp. 1, 10, PageID 875, 884("This is a third-party bad faith suit in which Plaintiff alleges that GEICO acted in bad faith in its handling of and failure to settle a bodily injury claim he brought against its insured, Peggy Costin, that resulted in a judgment against Ms. Costin in excess of policy limits in an underlying state court negligence action .... On this Motion, it is hereby ORDERED Defendant shall produce from the personnel files of Shelley Maldonado, Dave Seavey, and Mark Sugden the following: Performance evaluations or reviews; complaints, criticisms, commendations, or other reviews for work performed adjusting claims; documents establishing quotas in relation to settlements or claim adjustments; documents relating compensation, including bonuses, to the adjustment of claims and settlements; and any documents in any way related to the adjustment of Peggy Costin's claims. Counsel are directed to confer regarding any other GEICO employees or supervisors who were more than incidentally involved in the handling of the claim, and for any such employee or supervisor identified, the same information shall be provided."); *White Mountain Cmtys. Hosp. Inc. v. Hartford Cas. Ins. Co.*, No. 13-cv-8194 (D. Ariz. Dec. 8, 2014), ECF No. 106 at p. 9 ("The contents of the personnel files of the three individuals may disclose information showing that the adjustors had reasons to 'low-ball' their evaluations, were not actually competent to adjust the type of claim made by White Mountain, or did not process the claim in a reasonable manner.").

4. **[Request 47]** other approvals for front pay / back pay awards: **The same exclusion on which Twin City relies here.**

Courts permit discovery of an insurer's approval of similar claims — and reject burdensomeness challenges. For example, in *American Auto Ins. Co. v. Hawaii Nut & Bolt, Inc.*,[24] a party sought all claims in a state made under commercial general policies for a period of 15 years.[25] The insurer complained there were approximately 340,000 claims made under such policies and it could not make electronic searches.[26] Nevertheless, the Court permitted such discovery — limited to 10 years and involving the *same* provisions and exclusions.[27] Here, the subject request is narrower: for *approvals* of claims for payment of front pay or back pay awards. Surely searching for claims *paid* on a particular issue is easier for Twin City than searching for claims made.

---

[24] No. 15-cv-00245 (D. Haw. Jan. 9, 2017), ECF No. 200.

[25] *See American*, ECF No. 200 at p. 19, PageID #: 3627 ("Safeway requests reports, analysis, documents, and ESI relating to claims, complaints, or lawsuits involving FF that are similar to the instant insurance claim, i.e. CGL policies issued to business in the State of Hawaii for the past 15 years and claims made under those policies.").

[26] *See American*, ECF No. 200 at pp. 19-20, PageID #: 3627-28 ("FF opposes the request as overbroad, irrelevant, and unduly burdensome. It estimates that in the past 15 years, there were approximately 340,000 claims under CGL policies for FF companies and its systems are incapable of conducting electronic searches to locate similar claims.").

[27] *See American*, ECF No. 200 at pp. 20-21, PageID #: 3628-29 ("Inasmuch as FF's handling of other similar insurance claims and lawsuits in Hawaii is relevant to the claims in this action, it is discoverable.... To minimize the burden to FF, production shall be limited to paid claims/settlements and lawsuits in Hawaii for a 10-year period (2005-2015) involving CGL policies that included the same provisions/exclusions that formed the basis of the denial of coverage. The production should also be limited to products liability claims involving property damage that resulted from an occurrence.").

**5.  [Request 53]** *Stowers* **and bad faith lawsuits: Producing such lawsuits is not unduly burdensome and Twin City fails to prove otherwise.**

Courts permit discovery of other lawsuits.[28] And it strains credibility for Twin City to contend that it cannot possibly produce the lawsuits in which it was sued for violating *Stowers* or bad faith or negligence — without having to go search public records. After all, its obligation is only to produce documents in its possession, custody, or control. Not every lawsuit in which it was never served. Just the lawsuits in its file. If burdensome, Twin City does not provide sufficient evidence of burden — like listing the numbers of lawsuits, etc.

**6.  Twin City failed to confer on proportionality — or any particular request — prior to filing this motion.**

This Court's Scheduling Order requires a meaningful, substantive conference.[29] Here, defense attempted to short-circuit doing so via email — but counsel for Carpenter insisted on a meaningful conference via telephone.[30] That conference was short. Twin City's counsel noted that he already had Twin City's motion for protection drafted. He filed it that day then served objections the next. Carpenter's counsel requested a substantive conference on the objections. In contrast to Twin City's conference, that conference lasted more than an hour. And Carpenter looked at narrowing

---

[28] *See, e.g., Surgery Ctr. at 900 N. Mich. Ave., LLC v. American Assur. Corp.*, 317 F.R.D. 620, 620 (N.D. Ill. 2016) (failure to settle within limits case: "In interrogatory No. 12, The Surgery Center asks for information on every suit brought against the defendants for bad faith/negligence during in the period from 2003 through 2011.... Four years should be the starting point.... Accordingly, the motion to compel is granted in part and denied in part as to Interrogatory No. 12.").

[29] *See* Scheduling Order, ECF No. 10 at p. 3, PageID 88 ("Seeking relief from the Court on discovery disputes prior to conducting a meaningful, substantive conference with the opposing party is STRONGLY discouraged.").

[30] *See* Appendix [declaration of Amy E. Gibson re: conference] at pp. 4-6.

certain requests. But asked for certain information about Twin City's business to assess whether and to what extent some requests may be tweaked. Twin City's counsel has not yet provided that information. For these reasons too, this present motion for protection should be denied.

## IV. CONCLUSION

For the foregoing reasons, Carpenter respectfully requests that the Court deny the motion. And, as in other briefing, continues to object to the aspersions Twin City continues to make on Carpenter's counsel — making accusations of mischaracterizing, harassment, etc.[31] Carpenter's counsel represented Carpenter throughout trial, appeals, and defense of Twin City suing Carpenter; in several courts; and won each. No court has found anything of the sort.

---

[31] *See, e.g.*, Defendant's MSJ brief [ECF No. 20] at p. 11, PageID 404 ("Carpenter's attorney began to realize that her effort to mischaracterize ...."); Reply [ECF No. 33] at p. 14, PageID 3082 ("this Court should reject Carpenter's attempt to mischaracterize the nature of the underlying case."); Motion [ECF No. 37] at p. 9, PageID 3115 ("the timing of the requests coupled with their irrelevance and disproportionality makes it apparent there was a motive to harass. This raises concerns in light of Rule 26(g)(1)'s signature and verification requirements.").

Respectfully submitted,


*/s/ David L. Wiley*

_____

Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Jeff Carpenter*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on October 24, 2023, he filed *Jeff Carpenter's Response to Defendant's Motion for Protection and Brief in Support* with the United States District Court for the Northern District of Texas through the CM/ECF system, such that defendant should be served with a copy of the filed document as follows:

**<u>VIA CM/ECF SYSTEM</u>**

Ms. Christine Kirchner
c.kirchner@chamberlainlaw.com
Mr. Steven J. Knight
steven.knight@chamberlainlaw.com
Mr. Chris M. Lemons
chris.lemons@chamberlainlaw.com

Chamberlain Hrdlicka, White, Williams & Aughtry
1200 Smith Street #1400
Houston, Texas 77002

*Attorneys for Twin City Fire Insurance Company*

Mr. Michael W. Johnston
johnston@johnstonlegalgroup.com

Johnston Legal Group PC
1616 Wabash Avenue
Fort Worth, Texas 76107-6598

*Local Counsel for Twin City Fire Insurance Company*

*/s/ David L. Wiley*

_____
David L. Wiley