CIVIL ACTION NO. 3:23-CV-00769-N

# In the United States District Court
# Northern District of Texas - Dallas Division

JEFFREY W. CARPENTER,

                        *Plaintiff*,

v.

TWIN CITY FIRE INSURANCE COMPANY,

                        *Defendant*.

## TWIN CITY FIRE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Twin City Fire Insurance Company ("Twin City") files this Reply Brief in Support of its Motion to Dismiss under Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure.

                        CHAMBERLAIN, HRDLICKA, WHITE,
                        WILLIAMS & AUGHTRY, P.C.

                        CHRISTINE KIRCHNER
                        State Bar No. 00784403
                        c.kirchner@chamberlainlaw.com
                        STEVEN J. KNIGHT
                        State Bar No. 24012975
                        steven.knight@chamberlainlaw.com
                        CHRIS M. LEMONS
                        State Bar No. 24094799
                        chris.lemons@chamberlainlaw.com
                        1200 Smith Street, Suite 1400
                        Houston, Texas 77002
                        (713) 658-1818

                        COUNSEL FOR TWIN CITY FIRE INSURANCE
                        COMPANY

**TO THE HONORABLE DISTRICT COURT:**

Nothing Carpenter says in his response to Twin City's motion to dismiss, (Doc. No. 39), supports his contention that the turnover order assigned him claims or remedies that the order does not mention and that are non-transferrable under Texas law. For the reasons set forth in Twin City's motion to dismiss and brief (Doc. Nos. 34 and 35) and this reply, Twin City respectfully requests the Court to dismiss Carpenter's claims for punitive damages and equitable/injunctive relief with prejudice.

## ARGUMENTS IN REPLY

**A.     The terms of the turnover order do not support Carpenter's position.**

Following his discussion about "Context: Nature of the *Stowers* Case"—not relevant here and copied word for word from his previous filing, (*compare* Doc. No. 30 at 11-12 *with* Doc. 39 at 7-8)—Carpenter highlights the state court's turnover order's language as though it supports his position. It does not. In his amended motion for turnover, which Twin City's insured *opposed*, *see* Doc. No. 40 at 177, Carpenter asked for the turnover of any *Stowers* claim for a limited purpose—so that "recovery, if any, can be applied as a credit to satisfy the judgment in whole or in part." Doc. No. 40 at 174.

The state court granted Carpeneter's turnover request, which turned over a single *Stowers* claim for that limited purpose: "in aid of the judgment in this case" and to "satisfy in whole or in part, the judgment." Doc. No. 39 at 9-10. The turnover order does not authorize a recovery in excess of the judgment. Therefore, even if Carpenter could prevail under *Stowers*, the most that he could recover is the amount of the underlying judgment. In this regard, the turnover order is consistent with Texas law. *See In re Yorkshire Ins. Co.*, 337 S.W.3d 361, 365 (Tex. App.—Amarillo 2011, orig. proceeding) ("damages are fixed as a matter of law in the amount of the

1

excess of the judgment rendered in the underlying suit in favor of the plaintiff over the applicable policy limits").

**B.     Twin City's motion to dismiss does not raise issues about documents and privileges.**

In its motion to dismiss, Twin City challenges Carpenter's standing to assert a claim for punitive damages and equitable/injunctive relief as well as the viability of those claims. Doc. No. 35. In his response, Carpenter talks about irrelevant aspects of the turnover order pertaining to such things as documents and privileges. Doc. No. 39 at 11. He goes on to claim that there was no challenge to the turnover order. Doc. No. 39 at 12. That is incorrect. After his attorney e-mailed the turnover order to Twin City's counsel and demanded documents, Twin City, a non-party that had no advance notice of any turnover proceeding, moved for clarification and, in the alternative, protection. Doc. No. 40 at 91. Carpenter never responded to Twin City's filing.

**C.     Comment about Carpenter's "*Stowers* Fundamentals"**

Carpenter purports to educate the Court about "*Stowers* Fundamentals," once again duplicating his earlier briefing. *Compare* Doc. No. 30 at 12-13 *with* Doc. 39 at 12-13. As Twin City previously pointed out, Carpenter omits the most fundamental component of a *Stowers* claim—coverage. *See Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 548 (Tex. 1994) ("We start with the proposition that an insurer has no duty to settle a claim that is not covered by the policy."). *See* Doc. 33 at 3. Carpenter also repeats his mistaken claims that Twin City assumed the right of control in the underlying case and gambled with its insured's money. Doc. No. 39 at 13. Twin City previously corrected Carpenter on these points as well. *See* Doc. No. 33 at 2-3 and 6-7.

**D.     Comment about Carpenter's "Turnover Fundamentals"**

This Court is familiar with the Texas turnover statute codified in Chapter 31 of the Texas Civil Practice and Remedies Code—the existence and terms of which are not material to any issue

2

Twin City raised in its motion. *See, e.g., Allstate Ins. Co. v. Receivable Finance Co.*, No. 3:01-CV-2247-N, 2005 WL 8158032, *1 (N.D. Tex. Oct. 19, 2005); *Wester Oil and Gas J.V. Inc. v. Griffiths*, No. Civ.A.300CV2770N, 2002 WL 32319043, *4 (N.D. Tex. Oct. 28, 2002). Carpenter, however, briefs his view of "Texas turnover fundamentals." Doc. No. 39 at 14-18.

Under that heading, he argues that a judgment creditor can acquire a turnover order to reach a judgment debtor's assets; that a judgement debtor's cause of action against a third party can be subject to a turnover order; and that the judgment creditor is entitled to recover attorneys' fees under § 31.002(e). Doc. 39 at 14-15. These points are not relevant to any issue Twin City raised in its motion.[1]

Next, Carpenter—apparently in search for a way to distinguish cases holding that punitive damages are personal and punitive and do not follow the transfer of a *Stowers* claim—attempts to find a material difference between an assignment of a claim, which is a voluntary transfer, and a turnover of a claim, which is an involuntary transfer. Doc. No. 39 at 16. He begins with the proposition that "[u]ntil a claim is liquidated, the amount to be applied toward judgment satisfaction, costs, and attorneys' fees is unknown." Doc. No. 39 at 16. He then says that once a judgment creditor liquidates a claim and applies it to the judgment, any money left over goes back to the judgment debtor pursuant to § 34.047. Then, citing no authority, he summarily declares, "This possibility of surplus return to the judgment debtor would not exist with assignment." Doc.

---

[1] Carpenter's point about attorneys' fees, though, is interesting at least. Despite his failure to include a request for fees in his pleadings, *see* Doc. No. 40 at 173, Carpenter says he intends to pursue his attorneys' fees in state court "*after* the *Stowers* claim is liquidated." Doc. 39 at 14 (emphasis added). Presumably, Carpenter believes the fees he incurs in this lawsuit are recoverable under § 31.002(e), hence his delay in seeking them. However, as courts make clear, "the reasonable attorney's fees awarded under section 31.002(e) must be for services rendered in a turnover proceeding rather than for services seeking satisfaction of the judgment outside the context of turnover relief." *See Feldman v. Watts*, 586 S.W.3d 591 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

3

No. 39 at 16. These arguments miss the mark.

First, the notion that the amount of a recovery that applies to the judgment is unknown in the *Stowers* context is not tenable. Even if Carpenter's claim for unpaid severance pay was within the scope of coverage (which it is not), and even if he could establish the remaining elements of his *Stowers* claim (which is unlikely), he would be entitled to recover, at most, the amount of the judgment. *See In re Yorkshire Ins. Co.*, 337 S.W.3d at 365. The underlying judgment reflects the amount of the *Stowers* recovery; there would be no excess.

Second, and for entertaining Carpenter's sale of personal property example, if the judgment debtor voluntarily assigned property to the judgment creditor to satisfy the judgment, who is to say that the excess would not be returned to the judgment debtor? Carpenter declares that possibility "would not exist." Doc. No. 39 at 16. However, whether it exists would depend on the terms of the voluntary assignment. A rational judgment debtor in possession of tangible property worth more that the judgment against him would insist on the return of the excess after liquidation. A rational judgment creditor who wants to collect on the judgment and avoid the formal turnover process would agree to return the excess. So, the distinction between a forced assignment (as in the *Puga* case) and a turnover order (as in this case) that Carpenter attempts to draw is no distinction at all.

Carpenter concludes his "turnover fundamentals" discussion with briefing about rules governing appeals, direct attacks, and the underlying court's continuing jurisdiction to clarify its orders. Doc. No. 39 at 17-18. He revisits that same discussion later in his response. Doc. No. 39 at 19-21. Presumably, the point Carpenter is trying to make is that Twin City's challenge to Carpenter's standing to assert a claim for punitive damages is an attack on the validity of the turnover order itself. Carpenter misunderstands the basis of Twin City's motion.

Unlike the defendants in the cases Carpenter cites in footnotes 55-58 (Doc. No. 39 at 20-21), Twin City is not arguing that the turnover order is invalid. Instead, Twin City argues: "[T]he only claim that the turnover order assigned or transferred to him was a single claim under *Stowers*. Carpenter does not allege—and he cannot allege—that the turnover order assigns him any claim for malice or gross negligence." *See* Doc. No. 35. Twin City also argues that, under Texas law, for reasons grounded in public policy, "no claim for punitive damages accompanies the *Stowers* negligence claim." *See Puga v. New York Marine & Gen. Ins. Co.*, No. 2:19-CV-381, 2021 WL 293270, at *4 (S.D. Tex. Jan. 28, 2021).[2] That is why the turnover order says nothing about punitive damages, malice, or gross negligence.

The absence of those terms is also attributable to Carpenter's state court filing. When Carpenter moved for entry of the turnover order, he recognized that "*Stowers* claims are subject to turnover, *even while others are not*." *See* Doc. No. 40 at 174 (emphasis added). For that proposition, he cited *Crump*, one of the cases Twin City cited in its brief, which holds claims that are personal and punitive—including claims for punitive damages—are not transferrable under Texas law. *See* Doc. No. 35 at 4. Thus, during the turnover proceeding, Carpenter did not seek or obtain any claim that is personal and punitive. Carpenter does not own a claim for punitive damages. Therefore, he lacks standing to assert one.

Notwithstanding the fact that, during the turnover process, Carpenter did not seek or acquire non-transferrable claims that are personal and punitive, Carpenter argues that, allowing him to pursue a claim for punitive damages "supports public policy." Doc. No. 39 at 18. Why? Because recovering more than the underlying judgment, Carpenter surmises, will enable him to

---

[2] *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 134 (Tex. App.—Houston [14th Dist.] 1997), *aff'd.* 20 S.W.3d 692 (Tex. 2000); *PPG Ind., Inc. v. JMB/Houston Centers Partners Ltd. P'ship.,* 146 S.W.3d 79, 88 (Tex. 2004); *Goin v. Crump*, No. 05-18-00307-CV, 2020 WL 90919 (Tex. App.—Dallas Jan. 8, 2020, no pet.).

*pay his attorneys* and then, maybe, return any surplus to the judgment debtors. *See* Doc. No. 39 at 19 (asserting that the judgment debtors [who *opposed* Carpenter's turnover proceeding, *see* Doc. 40 at 177], "may have a right to any surplus after satisfaction of judgment in the prior case and costs *including attorneys' fees*.") (emphasis added). Carpenter says this is the proper outcome here because he acquired the *Stowers* claim through a turnover order rather than by assignment, which he says is "so different." Doc. 39 at 18.

However, the only difference between an assignment and a turnover order is that the former is voluntary and the latter is not. Other than that, there is no material difference. So, even if Carpenter had requested turnover of claims that were personal and punitive (which he did not) the state court likely would have followed Texas law and refused his request. As courts recognize, "the public policy concerns that would bar voluntary assignment also oppose forced transfer through turnover." *Charles v. Tamez*, 878 S.W.2d 201, 206 (Tex. App.—Corpus Christi 1994, writ denied). In this respect, public policy does have a role in this case. Its role, however, is not to search for ways to pay more money to attorneys. This is particularly so here given Carpenter's repeated assertion that the *Stowers* action sounds in negligence—a cause of action for which attorneys' fees are not recoverable under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 38.001.

Instead, as the Texas Supreme Court explained in *PPG Industries*, a DTPA case, public policy concerns prohibit the transfer of claims that are personal and punitive. *PPG Industries*, 146 S.W.3d 79 at 87-88.[3] One reason for this is that the "[j]urors are bound to experience some confusion in assessing . . . punitive damages based on the situation and sensibilities of the parties,

---

[3] In response to *PPG Industries*, Carpenter argues, "public policy problems with assignment are directed to claims, not remedies." Doc. No. 39 at 26. Carpenter ignores that it is the nature of the remedy that makes the claim and the remedy non-transferrable. *See id*. at 87, n.32 ("The general rule is that the right to collect a penalty is a personal right which is not assignable.") (quoting *Hart Conversions, Inc. v. Pyramid Seating Co.*, 658 N.E.2d 129, 131 (Ind. Ct. App. 1995)).

when the affected consumer is not a party." *Id.* at 90. As the supreme court explained, that is why "[w]e have prohibited assignments that may skew the trial process, confuse or mislead the jury . . . ." *Id.* Courts also prohibit assignments when they would "increase or distort litigation." *Id*. This rationale is directly applicable here.

Carpenter premises his punitive damages claim on some undescribed harm Twin City allegedly caused its insured—the party Carpenter sued. Doc. No. 1-2 at 18. The jury in this case would naturally be confused as to why Carpenter—the instigator of the lawsuit against the insured—should profit from some undescribed harm Twin City allegedly caused the insured, particularly when the insured never accused Twin City of any wrongdoing and actively opposed Carpenter's turnover proceeding. Doc. No. 40 at 177.

Other than the simple desire for more money, Carpenter presents no coherent explanation—and certainly no legitimate public policy rationale—for why he should profit from the harm he says the underlying defendant he sued incurred. Regardless, Carpenter did not request the turnover of any claims that are personal and punitive, and the turnover order omits any such claim and caps any recovery at the amount of the judgment. Therefore, Carpenter has no standing to pursue a claim for punitive damages.

E.   **Negligence/Gross Negligence**

Next, Carpenter cites cases like *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc*., 106 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2002, pet. denied), which held that, "in the context of a release for acts of negligence, negligence and gross negligence are not separable." *Id*. at 127 (citing *Newman v. Tropical Visions, Inc*., 891 S.W.2d 713, 722 (Tex. App.—San Antonio 1994, writ denied)). That proposition does not help him.

The turnover order provided Carpenter with rights and interests solely "to see if they might

satisfy, in whole or in part, the judgment" under *Stowers*. Doc. No. 39 at 10. As Carpenter concedes, the sole purpose of the turnover order is to "liquidate *Stowers* claim toward satisfaction of judgment." Doc. No. 39 at 10. If Carpenter prevails on his *Stowers* claim, the damages would be capped at the amount of the judgment. *In re Yorkshire Ins. Co.*, 337 S.W.3d at 365. Nothing in the turnover order entitles Carpenter to assert additional remedies.

Moreover, every case involving the transfer of a *Stowers* claim holds that the transferee acquires no rights to assert claims that are personal and punitive. In contrast, Carpenter has not identified a single case holding that a recipient of a *Stowers* claim, whether by way of assignment, subrogation, or turnover order, has standing to assert a claim for punitive damages, which are non-transferrable under Texas law.

F.     *Puga v. New York Marine & General Insurance Company*

Citing no contrary authority to call its holding into question, Carpenter unilaterally declares *Puga* incorrectly decided because it relied, in part, on an equitable subrogation case—*National Union*. However, *National Union* holds that the excess insurer, which stepped into the insured's shoes to sue defense counsel in the *Stowers* context, was not entitled to bring the insured's statutory or punitive damages claims. *National Union*, 955 S.W.2d at 133.

In reaching that conclusion, the *National Union* court followed the lead of the Texas Supreme Court in *American Centennial Insurance. Company v. Canal*, 843 S.W.2d 480, 483 (Tex. 1992), which commented that an excess carrier may step into the insured's shoes to sue the primary carrier, but recovery is limited to the amount of its out-of-pocket losses. *Id*. at 133 (citing *American Centennial*, 843 S.W.2d at 485). Consistent with its holding in *PPG Industries*, the Texas Supreme Court held that the excess carrier is not entitled to profit by asserting the insured's claims for statutory or punitive damages. *Id.* Rather, "it is only entitled to be made whole." *Id*. The same

rationale applies here.

As noted earlier, the turnover order entitles Carpenter to assert a *Stowers* claim "in aid of the judgment in this case" and to "satisfy in whole or in part, the judgment." Doc. No. 39 at 9-10. That is all. Just as equitable subrogation enables an excess carrier to assert claims belonging to the insured to recoup the amount of its loss (a known amount), Carpenter acquired the right to assert the insured's *Stowers* claim to attempt to collect on the judgment (a known amount). Carpenter has no justification for using the turnover order for purposes other than attempting to satisfy the judgment—the sole purpose of the turnover order.

**G.    Equitable Relief**

Twin City moved to dismiss Carpenter's claim for injunctive relief because (i) he has not pled and he cannot show that he would suffer irreparable injury; (ii) no case or law authorizes injunctive relief under *Stowers*; and (iii) the turnover order does not mention equitable claims. Doc. No. 35 at 5-6. In response, Carpenter argues Twin City "applied the wrong legal standard." Doc. No. 39 at 25.

Presumably, Carpenter believes that a party seeking a permanent injunction does not have to establish that he would suffer irreparable injury without the relief. Carpenter is incorrect. *See Qatalys, Inc. v. Mountain Medical Technologies, Inc.*, No. 3:14–cv–1784–L, 2015 WL 1401220, at *7 (N.D. Tex. March 27, 2015) ("The elements of a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success.") (citing *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)).

Carpenter cites *Meyer v. Brown & Root Construction Company*, 661 F.2d 369 (5th Cir. 1981), for the proposition that "post-verdict injunctive relief that benefits non-parties may

9

sometimes be proper." Doc. No. 39 at 25. Carpenter's reliance on *Meyer* is misplaced. In that case, an employee sued her employer for discrimination under Title VII, claiming her employer terminated her employment due to her sex. *Id*. at 371. The employee prevailed and recovered (i) back pay (equitable relief in the context of discrimination lawsuits), (ii) attorneys' fees, and (iii) an injunction that prohibited the employer from committing future acts.

On appeal, the employer challenged the injunction as being too broad inasmuch as it pertained to other employees. *Id*. at 373. The court recognized that injunctions that benefit a plaintiff and, simultaneously, similarly situated individuals is not *per se* overly broad inasmuch as "[a]n individual who brings a Title VII sue 'takes on the mantel of the sovereign." *Id*. at 373. However, the court reversed the injunction because the plaintiff did not seek prospective relief. *Id*. at 374 ("However, in the instant case as in *Gregory* [*v. Litton Systems, Inc*., 472 F.2d 631 (9th Cir. 1972)] we are faced with facts which do not warrant an injunctive remedy because plaintiff sought prospective relief in neither case.").

Implicitly, *Meyer* recognizes that the injunction that benefited the plaintiff and others may have been proper if the plaintiff had sought prospective relief against her employer with whom she had an employee/employer relationship. Here, Carpenter has no dealings with Twin City—there is no relationship whatsoever. Thus, even if *Stowers* authorized injunctive relief in addition to recovering the amount of the excess judgment (which it does not), that relief would not be available to Carpenter—a stranger to Twin City and to the policy.

## CONCLUSION

For all of these reasons, Twin City respectfully requests the Court to dismiss Carpenter's claims for punitive damages and equitable relief, and to award Twin City any other relief to which it may be entitled.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.

By: */s/ Steven J. Knight*
 CHRISTINE KIRCHNER
 State Bar No. 00784403
 c.kirchner@chamberlainlaw.com
 STEVEN J. KNIGHT
 State Bar No. 24012975
 steven.knight@chamberlainlaw.co
 CHRIS M. LEMONS
 State Bar No. 24094799
 chris.lemons@chamberlainlaw.co
 m 1200 Smith Street, Suite 1400
 Houston, Texas 77002
 (713) 658-1818

COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

 MICHAEL W. JOHNSTON
 State Bar No. 10840300
 johnston@johnstonlegalgroup.com
 JOHNSTON LEGAL GROUP P.C.
 1616 Wabash Avenue
 Fort Worth, Texas 76107-6598
 (817) 820-0825

LOCAL COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record via the court's electronic filing system on November 13, 2023.

 */s/ Steven J. Knight*
 STEVEN J. KNIGHT

11