CIVIL ACTION NO. 3:23-CV-00769-N

# In the United States District Court
# Northern District of Texas - Dallas Division

JEFFREY W. CARPENTER,

*Plaintiff*,

v.

TWIN CITY FIRE INSURANCE COMPANY,

*Defendant*.

## TWIN CITY FIRE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTION

Twin City Fire Insurance Company ("Twin City") files this Reply Brief in Support its Motion for Protection from Carpenter's second request for production.

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, P.C.

CHRISTINE KIRCHNER
State Bar No. 00784403
c.kirchner@chamberlainlaw.com
STEVEN J. KNIGHT
State Bar No. 24012975
steven.knight@chamberlainlaw.com
CHRIS M. LEMONS
State Bar No. 24094799
chris.lemons@chamberlainlaw.com
1200 Smith Street, Suite 1400
Houston, Texas 77002
(713) 658-1818

COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

## MOTION FOR PROTECTION – ARGUMENTS IN REPLY

**A      Introduction**

Pending before the Court is Twin City's motion for summary judgment on coverage (Doc. Nos. 19, 20, and 23), which raises questions of law for which neither party needed any discovery from the other to fully brief. If the Court grants that motion, the need for discovery and the resolution of complex discovery disputes will be moot. Twin City respectfully renews its request that the Court stay discovery pending the Court's determination of Twin City's motion. *See* Doc. Nos 13 and 14. Alternatively, Twin City requests the Court to grant it protection from Carpenter's second request for production and to sustain its objections. Supplemental Appendix at 1-43.

In its motion for protection, Twin City demonstrated that Carpenter's forty-one additional discovery requests, which have no bearing on the third *Stowers* element (the insured's potential exposure to an excess judgment) are not relevant and are disproportional to the needs of this lawsuit. In his response, Carpenter argues that his requests are relevant to the broader topic of negligence, punitive damages, bad faith, coverage, moral hazard, and reinsurance. On proportionality, Carpenter addresses only four of his forty-one requests. For the reasons Twin City has addressed in its motion for protection, and for the additional reasons addressed below, the scope of discovery in this case should be substantially narrowed.

**B.      Relevancy**

Carpenter asks the Court to deny Twin City's motion for protection because Twin City did not explain, for each of the forty-one requests, why, individually, they are not relevant in this case. Doc. No. 41 at 9. However, as Twin City explained in its motion, the requests, which Twin City summarized on the first page of its motion, are irrelevant for the same reason. They do not address any of the *Stowers* elements. *See* Doc No. 37 at 1; *see also* Supplemental Appendix at 1-43.

Carpenter disagrees with this conclusion, highlighting the third *Stowers* element: "the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." Doc. No. 41 at 11 (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994)). According to Carpenter, Twin City's claims handling manuals, training materials, and documents related to the qualifications of its employees goes to the broader question of whether it acted as a reasonably prudent insurer. Doc. No. 41 at 11. However, that is not the correct inquiry.

As the Texas Supreme Court instructs, the correct inquiry is whether an ordinarily prudent insurer would have accepted the demand "*considering the likelihood and degree of the insured's potential exposure to an excess judgment.*" *Garcia*, 876 S.W.2d at 849 (emphasis added). To decide this question, courts consider "*solely* the merits of the [underlying plaintiff's claim] and the potential liability of its insured on that claim." *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 316 (Tex. 1994) (emphasis added). At the time of the settlement demand, if that information indicates that the insured is likely to be subject to an excess judgment, then the insurer may have a duty accept the offer. If not, there would be no duty. Twin City's internal documents, processes, procedures, other claim files, employee files, and all of the other information Carpenter seeks sheds no light on this specific inquiry.

Because the discovery Carpenter seeks is unrelated to the facts and circumstances of the underlying lawsuit that existed at the time he issued his demand, it appears Carpenter issued the discovery to try to support his claim for punitive damages. However, Carpenter lacks standing to assert a claim for punitive damages for the reasons Twin City addressed in its motion to dismiss. *See* Doc. Nos. 35 and 36. Moreover, Carpenter has not asserted and cannot assert a claim for common law or statutory bad faith. Despite this, Carpenter asks the Court to broaden discovery

3

into these matters, claiming the discovery could also support his *Stowers* claim. Doc. No. 41 at 1211-12.

However, this argument again ignores the Texas Supreme Court's holding that, for purposes of *Stowers*, whether the insurer acted prudently in not accepting the demand is based on a single consideration: the likelihood of the insured's potential exposure to an excess judgment. *See Garcia*, 876 S.W.2d at 849. That inquiry requires consideration of the merits of the underlying lawsuit against the insured at the time of the demand. *Soreiano*, 881 S.W.2d at 316. Twin City's internal documents have no bearing on this inquiry.

Moreover, while Carpenter apparently wants to inquire whether the reason Twin City did not accept the demand was linked to some internal policy or procedure, at the end of the day, the reason it did not accept the demand is irrelevant. The issue is solely whether a reasonably prudent insurer would have accepted the demand given the insured's potential exposure. Further, even if Carpenter were to find what he is fishing for (some nonexistent yet nefarious policy to reject settlement demands), the most he could recover is the amount of the excess judgment. Thus, there is no reason to expand the scope of discovery to include documents commonly pursued in furtherance of statutory bad faith claims, which are absent here.

While Carpenter suggests that *Stowers* lawsuits filed by other insureds should be discoverable, he fails to articulate how that information would benefit a jury in this case. Doc. No. 41 t 14. In reality, Twin City's handling of some other settlement demand, at some other point in time, in relation to some other lawsuit, says nothing about its insured's potential exposure to an excess judgment in the underlying case.

Next, Carpenter argues that some of his requests pertain to insurance coverage interpretation in relation to common policy exclusions and moral hazard issues. Doc. No. 41 at 13-

14. He argues, "Courts permit discovery on coverage interpretation." Doc. 41 at 13. However, the interpretation of the policy and the moral hazard legal concept are both questions of law for the Court, and both parties have fully briefed their respective positions, neither needing any discovery from the other. Moreover, the orders that Carpenter says permitted discovery into other unrelated claims are all from jurisdictions other than Texas, implicitly showing that Carpenter could find no Texas case law supporting his position. Further, all of the foreign jurisdiction orders Carpenter cites involve lawsuits by insureds against their insurers for, among other things, statutory and/or common law bad faith, which is not at issue here.[1]

**C.       Proportionality**

In its motion for protection, Twin City argued that Carpenter's forty-one requests for production are not proportional in this lawsuit. None of the information Carpenter seeks is important in resolving the three basic *Stowers* elements, and the significant burden that compliance would impose on Twin City outweighs its likely benefit. *See* FED. R. CIV. P. 32. In support of its motion, Twin City offered the declaration of Joseph M. Coppola, who asserted that all of Carpenter's requests are disproportionate and burdensome in this lawsuit. This includes extensive requests that lack any temporal limitation or that extend back fifteen years; claim file documents used by adjusters around the country on unrelated claims; unrelated lawsuits from around the country; unrelated claims from around the country; intrusive information about Twin City's employees and evaluations, etc.

---

[1] *See Computer Sciences Corp v. Endurance Risk Solutions Assurance Co*., No. 20-CV-01580 (S.D.N.Y.) (Doc No. 1: Complaint describing common law extra-contractual claims against numerous insurers arising from a complex arbitration award in excess of $89 million); *James River Ins. Co. v. Thompson*, No. 20-cv-01052 (D. Ariz.) (Doc. No. 26: Answer and counterclaim for, among other things, common law extra-contractual claims); *Phillips v. Clark Cnty Sch. Dist*., No. 10-cv-02068 (D. Nev.) (Doc. No. 1-2: Complaint alleging statutory and common law bad faith).

In response, Carpenter only addresses four requests (15, 21, 47, and 53), ignoring all other requests. In request number 15, Carpenter seeks:

> All claim manuals, policy manuals, standards, guidelines, procedures, best practices, training materials, seminar materials, litigation manuals, and other documents or reference sources which were used by you at any time since April 28, 2008, in connection with the adjusting or claims-handling for claims arising out of any employment practices liability you cover or insure.

As Mr. Coppola explained, this request has no geographical restriction and would require Twin City to search nationwide for "all" documents that have been "used" by its employees for purposes of adjusting all employment practice liability claims. Carpenter fails to explain why this information is necessary in this *Stowers* lawsuit that has nothing to do with unrelated claims, manuals, standards, guidelines, or training materials. Instead, Carpenter argues that he is entitled to this information because other courts have permitted this type of discovery in unpublished orders. Doc. No. 41 at 16. Once again, however, the orders Carpenter says permitted this type of discovery are all from jurisdictions other than Texas and involve complex statutory bad faith claims that are not at issue here.[2]

In request number 21, Carpenter seeks:

> A copy of any and all policies, booklets, and procedural guidelines describing or explaining your implementation of employee performance reviews/evaluations for your claims-handling unit – or any other employee of yours involved in the assessment or adjustment of any claim concerning the underlying suit or the rejections of any offer to settle the underlying suit—between the period of April 28, 2008, and June 1, 2016.

---

[2] *See Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, No. 08-cv-2527 (D. Kan.) (Doc. No. 57: "As a result of the wrongful conduct of Hartford, as described above, Hartford is liable to Cohen-Esrey for attorneys' fees, other costs, and additional damages pursuant to K.S.A. §§ 40-201 *et seq*. and 40-256); *Massachusetts Mus. Life Ins. Co. v. Beeharilal*, No. 14-cv-0085 (M.D. La.) (Doc. No. 35: "MassMutual bears the risk of its erroneous interpretation, rendering it liable for a penalty under La. R.S. 22: 1821 (formerly La. R.S. 22:657(A)) of double the amount of benefits due under the terms of the Policy during the period of delay.").

As Mr. Coppola explained, this request targets Twin City's entire "claims handling unit," which would include offices on a nationwide basis. Carpenter fails to explain why this information is necessary in a *Stowers* lawsuit that has a narrow focus on three basic elements that have nothing to do with employee evaluations. Yet Carpenter claims that he is entitled to this information because courts commonly require production, citing various discovery rulings. Once again, however, the orders he cites are from foreign jurisdictions and involve bad faith and punitive damages claims, which are not at issue here.[3]

In request number 47, Carpenter seeks:

> A copy of each communication in which you approved an insurance claim for payment of benefits, in whole or in part, because the claimed loss was for a component of a front or back pay award under any insurance policy you issued. For any oral communications about such history, all notes or recordings made of such oral communications.

As Mr. Coppola correctly pointed out, this request has no geographic or temporal limitation, and he is unaware of any database to enable him to search for this material, necessitating a burdensome and expensive search that is disproportionate to the needs of this case. Indeed, whether Twin City has paid a claim involving an equitable award of front pay or back pay in an employment discrimination lawsuit has no bearing on any of the *Stowers* elements. Further, whether Carpenter's claim for the unpaid severance payment is covered is a legal determination for the court and is not driven by what claims asserted by other insureds, at other points in time, and in other geographic locations.

---

[3] *American Suto Ins. Co. v. Hawaii Nut & Bolt, Inc.*, No. 15-cv-00245 (D. Haw.) (Doc. No. 14: Counterclaim for common law bad faith); *Soricelli v. GEICO Indem. Co.*, No. 16-cv-1535 (M.D. Fla) (Doc. No. 1: Complaint for common law bad faith); *White Mountain Cnty. Hosp. v. Hartford Cas. Inc. Co.*, No. 13-cv-8194 (D. Ariz.) (Doc. No. 1-1: Complaint alleging first party bad faith and seeking punitive damages).

Once again, Carpenter cites no case law that has ever permitted this type of discovery in a *Stowers* lawsuit. Instead, his entire argument is that a court in Hawaii has permitted similar discovery. However, as already noted, *Hawaii Nut & Bolt*, like all of the other foreign cases he cites, involved common law bad faith claims. The court in that case may have decided the insured was entitled to the discovery to satisfy the insured's burden of proof under Hawaii law. However, Carpenter fails to explain why the discovery is necessary here and how it might offset the disproportionate burden involved in locating the information.

Lastly, Carpenter discussed request number 53, which states:

> A copy of each and every complaint or petition filed against you in any court of law or court of equity, within the past 15 years, in which you were accused of (a) violating any duty under *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved), (b) engaging in any negligent refusal to settle a case or claim, or (c) committing any bad faith or unfair insurance, trade, or practice –including concerning or arising out of your provision of employment practices liability insurance.

To comply with this request, Twin City would have to contact its offices or courts nationwide to survey lawsuits alleging negligence or bad faith. Yet, Carpenter fails to explain why this information is necessary and proportional in this lawsuit. Nor does he cite any case law suggesting this type of discovery is permitted in the context of *Stowers*.

Instead, he cites *Surgery Center at 900 Michigan Avenue, LLC v. American Physicians Assurance Corporation, Inc.*, 317 F.R.D. 620 (N.D. Ill. 2016), which determined that the insurer was required to answer an interrogatory inquiring about previous bad faith lawsuits. However, as with the other foreign jurisdiction cases Carpenter cites, the insured in *Surgery Center* pursued this discovery in support of its claim for bad faith and punitive damages. *See id.* at 629 ("The Center contends that this information is relevant to its claim for punitive damages."). As Twin City

explained in its brief in support of its motion to dismiss and its reply brief, the state court turnover order in this case does not transfer a claim for punitive damages to Carpenter. *See* Doc. Nos. 35 and 47; *see also Puga v. New York Marine & Gen. Ins. Co.*, No. 2:19-CV-381, 2021 WL 293270, *4 (S.D. Tex. Jan. 28, 2021) ("[W]hen a Stowers action is transferred . . . no claim for punitive damages accompanies the *Stowers* negligence claim."). Therefore, *Surgery Center*, and all of the other cases Carpenter cites, are distinguishable.

**D.     Conference**

Lastly, Twin City's counsel conferred with Carpenter's counsel before filing the motion for protection. Admittedly, the conference call was relatively short, but the reason for that has to do with counsels' fundamental disagreement about the scope of discovery in this lawsuit, which does not involve common law or statutory bad faith claims or legitimate claims for punitive damages. Because this lawsuit is limited to *Stowers*, which has three straightforward elements, all of which are unrelated to Twin City's internal documents, Twin City's counsel requested Carpenter's counsel to withdraw the discovery set. Carpenter's counsel indicated that she viewed the requests as appropriate and would not withdraw them. As such, Twin City moved for protection. In response to that motion, and consistent with the position taken during the conference, Carpenter maintains that all of its requests are appropriate.

## CONCLUSION

Twin City respectfully asks the Court for an order of protection from Carpenter's second request for production and any additional relief to which it may be entitled.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.

By: */s/ Steven J. Knight*
   CHRISTINE KIRCHNER
   State Bar No. 00784403
   c.kirchner@chamberlainlaw.com
   STEVEN J. KNIGHT
   State Bar No. 24012975
   steven.knight@chamberlainlaw.co
   CHRIS M. LEMONS
   State Bar No. 24094799
   chris.lemons@chamberlainlaw.co
   m 1200 Smith Street, Suite 1400
   Houston, Texas 77002
   (713) 658-1818

COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

   MICHAEL W. JOHNSTON
   State Bar No. 10840300
   johnston@johnstonlegalgroup.com
   JOHNSTON LEGAL GROUP P.C.
   1616 Wabash Avenue
   Fort Worth, Texas 76107-6598
   (817) 820-0825

LOCAL COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record via the court's electronic filing system on November 14, 2023.

          */s/ Steven J. Knight*
          STEVEN J. KNIGHT