IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JEFFREY W. CARPENTER,                    §
                                         §
          Plaintiff,                     §
                                         §
v.                                       §          Civil Action No. 3:23-CV-0769-N
                                         §
TWIN CITY FIRE INSURANCE CO.             §
                                         §
          Defendant.                     §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Twin City Fire Insurance Co.'s ("Twin City")

motion for summary judgment [20] on Plaintiff Jeff Carpenter's claim for *Stowers* liability.

Because Twin City is not entitled to judgment as a matter of law on the issue of coverage,

the Court denies this motion.

## I. ORIGINS OF THE MOTION

This case arises out of a *Stowers* claim[1] brought by Plaintiff Jeff Carpenter against

Defendant Twin City Fire Insurance Company.  In a separate case, Carpenter sued his

employer for breach of contract.  Pl.'s Original Petition at ¶ 2 [1-2].  Carpenter's employer

was selling the company that Carpenter worked for.  *Id.* at ¶ 26.  The sale would result in

the termination of Carpenter's position.  *Id.* at ¶ 28.  Carpenter alleged that his employer

promised to give him a percentage of the profits from the sale if he would stay on in his

---

[1] A *Stowers* claims arises when an insurer violates its duty to settle third-party claims against its insureds when it would be reasonably prudent to accept the settlement.  *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021). The duty was first recognized in *G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

MEMORANDUM OPINION AND ORDER – PAGE 1

position until the sale closed to help with the transition. *Id.* at ¶ 27. In the previous litigation, Carpenter alleged that once the sale occurred, his employer reneged on the agreement and did not compensate him. *Id.* at ¶ 30-32. Carpenter's employer was insured by Twin City. *Id.* at ¶ 17. Carpenter offered to settle his case against his employer within the limits of his employer's insurance policy with Twin City, but Twin City declined the settlement offer. *Id.* at ¶ 34–36. Carpenter prevailed at trial against his employer. Final Judgment, Pl.'s Appx. at 1732 [29]. The jury found that there was an agreement between the parties and that Carpenter's employer violated that agreement. Jury Verdict, Pl.'s Appx at 1712–13 [29]. The jury awarded damages that exceeded the limits of the insurance policy. Final Judgment, Pl.'s Appx. at 1735 [29]. This gave rise to the *Stowers* claim at issue in the present litigation. To help recover the judgment against Carpenter's employer, the court in that proceeding assigned the employer's *Stowers* claim to Carpenter via turnover order. Turnover Order, Def.'s Appx. at 29–31 [40]. Carpenter then initiated the present proceeding against Twin City, bringing the assigned *Stowers* claim as well as seeking punitive damages and injunctive relief. Twin City removed the case to federal court. Notice of Removal [1]. Twin City moved to dismiss Carpenter's claims for punitive damages and injunctive relief. Def.'s Motion to Dismiss [34]. The Court granted this motion. Order [50]. Twin City now moves for summary judgment on Carpenter's remaining claim for *Stowers* liability. Def.'s Motion [19].

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have

MEMORANDUM OPINION AND ORDER – PAGE 3

submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III.   THE COURT DENIES SUMMARY JUDGMENT

To survive a motion for summary judgment, Twin City, as the movant, must show that no genuine issue of material fact exists, and that the undisputed facts entitle him to judgment as a matter of law.  The Court finds that Twin City has not shown that the law requires judgment in his favor on the issue of coverage.  Twin City has not adequately shown that the undisputed facts require a finding that Twin City owed no *Stowers* duty to its insured to settle the original case with Carpenter within policy limits.  Accordingly, Twin City is not entitled to summary judgment and its motion is denied.

### A.  Ambiguous Terms in Insurance Contracts
### Are Interpreted in Favor of the Insured

The parties disagree about the correct interpretation of the policy at issue in this case.  The insurance policy states that Twin City "shall not pay Loss for any Claim for employment termination severance payments."  Insurance Policy, Def.'s Appx. at 30 [21].  Twin City argues that the agreement between Carpenter and his employer that gave rise to the underlying litigation was a severance agreement and was therefore not covered by the policy.  Carpenter disagrees.  Pursuant to Texas law, the undefined provisions of the insurance policy at issue in this litigation such as "severance agreement" and "back pay" must be defined according to Carpenter's reasonable interpretation.

MEMORANDUM OPINION AND ORDER – PAGE 4

Under Texas law, the rules of construction for insurance policies generally operate in favor of the insured. *Lubbock Cnty Hosp. Dist. v. Nat'l Union Fire Ins. Co.*, 143 F.3d 239, 242 (5th Cir. 1998). A court must adopt the insured's construction of the provision, "as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent." *Lubbock Cnty Hosp.*, 143 F.3d at 242 (quoting *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)). Exclusions from coverage in a policy "are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008).

There are multiple reasonable interpretations of the policy provisions at issue. The policy says, "Other than Defense Costs, the Insurer shall not pay Loss for any Claim . . . for employment termination severance payments . . . ." Insurance Policy, Def.'s Appx. at 30 [21]. This can be read, as Twin City proposes, to exclude any payment paid out to an employee on termination of employment, usually as a reward or incentive for length of service. Def.'s Brief at 9–10 [20]. However, it can also be reasonably read, as Carpenter[2] proposes, to exclude only payments given in exchange for termination of employment, usually related to a waiver of claims and with the end of employment being the "trigger" for receiving the funds. Pl.'s Response at 33–34 [28]. The use of the phrase "employment termination" in front of "severance payments" further demonstrates the reasonableness of

---

[2] Although not actually insured by Twin City, Carpenter assumes the role of "the insured" for the purposes of this litigation because he is asserting the rights of the insured via turnover order.

MEMORANDUM OPINION AND ORDER – PAGE 5

Carpenter's interpretation.  It is reasonable for the insured to read this phrase to mean that a severance payment is something that comes as the result of employment termination. Under this definition, the end of the employment, and not any other condition, is what prompts a severance payment.  This is a reasonable reading of this exclusion because nothing in the same section or any adjoining section otherwise limits or defines "severance" in a way that makes this reading unreasonable or illogical.

Whether the insured's reading is the reading intended or understood by Twin City in drafting this policy, and whether this reading is the "most reasonable" possible reading, are irrelevant for the purpose of analyzing an insurance policy in Texas.  Under Texas law, Carpenter's reasonable interpretation acts as the correct interpretation of the insurance policy.  Accordingly, for the purposes of this order, a severance agreement is an agreement promising a monetary reward to an employee on the condition of that employee's termination.  Using this definition, Twin City is not entitled to judgment as a matter of law that the agreement was for severance pay and thus was outside the scope of coverage.

### B.  Twin City Is Not Entitled to Judgment As a Matter of Law on the Issue of Severance

Defining a severance payment as one that is made in exchange for an employee's termination, Twin City has not carried its burden to show that, as a matter of law, the payment owed to Carpenter is a severance payment and therefore outside the scope of coverage.  While the parties have presented conflicting characterizations of the agreement, the facts surrounding the agreement are largely undisputed.  Carpenter's employer promised Carpenter 3% of the money received by selling the company if he stayed with

the company until the sale was complete. Trial Transcript, Def.'s Appx. at 206–09 [21]; Dallas Ct. App. Opinion, Pl.'s Appx. at 97–99 [29]. The only issue left to resolve is whether the 3% figure is a severance payment. The agreement was for a payment to stay on and perform additional work, not a payment to leave the company. Twin City therefore has not carried its burden to show that as a matter of law the agreement at issue was a severance payment.

For the payment to be excluded from coverage, Twin City must show that as a matter of law the agreement was for a severance payment. To do this, Twin City must show that, applying the insured's reasonable definition of "severance" to the facts surrounding the agreement, the agreement between the parties must be a severance. Twin City has not carried this burden. The parties have used inconsistent terminology in reference to the agreement at issue. The same agreement has at varying times been called a "stay bonus," a "stay-to-get-severance program," and a "severance." Trial Transcript, Def.'s App 211, 223 [21]. However, what is important is not the terminology used by the parties but whether content of the agreement is consistent with a severance as defined by the insured. Under the reasonable interpretation of the insured, a severance payment is one that is given in exchange for the termination of an employee's employment. Because Carpenter had to perform additional work to receive the payment at issue, the payment was in exchange for something other than termination, and thus was not a severance payment.

The sale of the company would terminate Carpenter's position because there was already someone in his role at the acquiring company. Pl.'s Original Petition at ¶ 28 [1-2]. However, the mere fact that the sale terminated his position did not entitle Carpenter to

MEMORANDUM OPINION AND ORDER – PAGE 7

receive the agreed-upon payment.  The agreement between Carpenter and his employer required Carpenter to stay with the company and assist in the transition and sale.  Dallas Ct. App. Opinion, Pl.'s Appx. at 97–98 [29].  Because there is something other than termination given in exchange for the money offered to Carpenter, the payment was not a severance as a matter of law.  Additionally, Carpenter put forth evidence that it was not definitively known that he would not have a position after the sale until "some point while the sale was pending." *Id.* at 98–99.  This further demonstrates that the agreement was not a severance because, at the time Carpenter and his employer reached an agreement about the payment he was to receive, the parties did not yet know that Carpenter would be terminated.  Finally, although other courts have called agreements similar to the one at issue severance agreements, none of these courts mandate that every agreement of this kind be termed as a severance agreement. *See, e.g., Stout v. Smithfield Bioenergy, LLC*, 2020 WL 5487843 (N.D. Tex. 2010); *Goldman v. White Rose Distributing Co.*, 936 S.W.2d 707 (Tex. 1997).

The payment in question does not meet definition of "severance" as determined by Carpenter's reasonable interpretation of the policy because it was not predicated on the termination of Carpenter's employment.  Twin City has therefore not proven that the agreement is excluded from coverage as a matter of law.  Accordingly, Twin City is not entitled to summary judgment on the issue of coverage.

### C.  Twin City Is Not Entitled to Judgment As a Matter
### of Law on the Issue of the Back Pay Exception

Twin City argues that even if the Court agrees with Carpenter that the payment was not a severance but was instead a bonus offered as an incentive to stay with the company, the payment is nonetheless excluded from coverage.  Def.'s Brief at 13–14 [20].  The policy excludes coverage for certain types of payments, including salaries, wages, or bonuses. Insurance Policy, Def.'s Appx. at 28.  However, the policy includes an exception to this exclusion for these types of payments if they are paid as "a component of a front or back pay award."  *Id.*  Carpenter argues that, although the money owed to him is a bonus, it is not excluded from coverage because it fits into the back pay exception.  Pl.'s Response Brief at 44–45 [30].  Twin City argues that, as a matter of law, the money owed to Carpenter is not back pay.  Def.'s Brief at 10–12 [20].  The Court holds that Twin City has not shown that as a matter of law the money owed to Carpenter does not constitute back pay.

Carpenter interprets "back pay" as compensation owed but not given for some kind of employment duty or performance.  Def.'s Response at 45 [28]. This is a reasonable interpretation of an undefined term, so the Court will use Carpenter's interpretation of "back pay."  Under this interpretation, to show that something is back pay a party must show he rendered a service but was not compensated.  Carpenter has adequate facts to meet these requirements.  Carpenter can show that he performed the requested work by staying at the company until the sale occurred to help with the transition.  Dallas Ct. App. Opinion, Pl.'s Appx. at 99 [29].  Carpenter can also show that he was not compensated as promised for staying until the sale.  Jury Verdict, Pl.'s Appx. at 1714.  Twin City has not and cannot

rebut these facts. Accordingly, Twin City has not shown that as a matter of law the payment owed to Carpenter is not back pay. Therefore, even if the agreement between Carpenter and his employer was barred by the severance exclusion, it could still be covered under the back pay exception. Thus, Twin City has not shown that as a matter of law the underlying dispute was outside the scope of coverage.

## V. CONCLUSION

The ambiguous terms in the insurance policy must be interpreted in favor of the insured's reasonable understanding. Using Carpenter's reasonable interpretation of the term "severance agreement," Twin City has not shown that as a matter of law the agreement between Carpenter and his employer does not meet this definition. Likewise, Twin City has not shown as a matter of law that, if the agreement is a severance agreement, it cannot the back pay exception under Carpenter's reasonable interpretation of the term. Because Twin City has not shown as a matter of law that the agreement between Carpenter and his employer is not within the scope of the insurance coverage provided by Twin City, there is a remaining issue of fact as to whether Twin City violated its duties under *Stowers*, so Twin City is not entitled to judgment as a matter of law. Accordingly, the Court denies summary judgment.

Signed March 4, 2024.

David C. Godbey
Chief United States District Judge