IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Jeffrey W. Carpenter, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | Civil Action No. 3:23-CV-00769-N |
| Twin City Fire Insurance Company, | § | |
| | § | Jury Demand |
| *Defendant.* | § | |
| | § | |

---

## REPLY BRIEF SUPPORTING PLAINTIFF JEFF CARPENTER'S MOTION FOR SUMMARY JUDGMENT

---

## A.    Coverage — summary[1]

Core basic coverage is undisputed.[2] Only two exclusions are disputed: (1) the loss exclusion for salaries, wages, or bonuses except as a component of a *back pay award* and (2) the *employment termination severance payments* exclusion.

Again, the Court previously found Carpenter's interpretation of each exclusion to be reasonable.[3] And it made findings favorable to Carpenter in connection with application of policy exclusions to the facts.[4] As a reminder, here are three examples:

> Carpenter can show that he performed the requested work by staying …. Carpenter can also show that he was not compensated as promised for staying …. Twin City has not and cannot rebut these facts.[5]
>
> The agreement was for a payment to stay on and perform additional work, not a payment to leave the company.[6]

---

[1] Unless otherwise noted, Carpenter's attorneys have (1) supplied all emphases, (2) omitted from quoted passages in legal authority all internal quotation marks, internal citations, and internal footnotes, and (3) omitted from citations to legal authority all citing and quoting references.

[2] *Compare* Carpenter Brief [ECF No. 56], pp. 19-25 (PageID 3563-69) (establishing core basic coverage as matter of law) *with* Twin City Brief [ECF No. 64], p. 11 (PageID 5166) ("As discussed earlier, Twin City agrees that Carpenter's lawsuit constituted an 'Employment Practices Liability Claim,' which is why Twin City agreed to pay defenses costs …. Accordingly, this response addresses Carpenter's remaining arguments concerning the two Policy provisions that eliminate or exclude coverage …."). *See also generally* Twin City Brief [ECF No. 64] (not disputing core basic coverage).

[3] Carpenter Brief [ECF No. 56], p. 11 & nn. 17-18 (PageID 3555), p. 26 & n.51 (PageID 3570) (back pay), p. 33 & n.64 (PageID 3577) (employment termination severance payments).

[4] *Id.* at p. 11 & nn. 17, 19 (PageID 3555), p. 32 & n.61 (PageID 3576) (back pay), p. 35 & nn. 68-70 (employment termination severance payments).

[5] *Id.* at p. 32 & n.61 (PageID 3576).

[6] *Id.* at p. 11 n. 19 (PageID 3555).

> Because Carpenter had to perform additional work to receive the payment at issue, the payment was in exchange for something other than termination, and thus was not a severance payment.[7]

Twin City offers nothing new to support reversal of the Court's prior rulings or findings.

## B.    A few important things Twin City does *not* address

Twin City does not counter or address the legal authority or argument that the facts found in the prior case control.[8] It does not counter or address the Texas Supreme Court opinion in *Vanegas v. American Energy Servs.*, which described "valuable" consideration for a similar agreement as "remaining with the company."[9]

Twin City does not counter or address that (1) a separate severance plan was in place that paid 6 weeks' salary in exchange for a release, (2) Carpenter rejected the severance and release due to his pay-to-stay agreement, (3) defense argued at trial that Carpenter was limited to 6 weeks' salary under the separate severance plan, and (4) the jury did not buy that argument and found a pay-to-stay agreement.[10]

---

[7] Carpenter Brief [ECF No. 56], p. 35 & n.69 (PageID 3579).

[8] *Compare* Carpenter Brief [ECF No. 56], pp. 17-18 (PageID 3561-3562) (legal authority) & pp. 12-15 (PageID 3556-3559) (conclusive findings) *with* Twin City Brief [ECF No. 64] (not addressing this issue).

[9] *Compare* Carpenter Brief [ECF No. 56], p. 36 (PageID 3580) *with* Twin City Brief [ECF No. 64] (not addressing this opinion or argument).

[10] *Compare* Carpenter Brief [ECF No. 56], pp. 36-39 & nn.72-73 (PageID 3580-3581) *with* Twin City Brief [ECF No. 64] (not addressing this issue).

Twin City does not counter or address that employment practices liability ("EPL") insurance policies cover what many others do not — like punitive damages, intentional misconduct, and failure to comply with agreements.[11] This is important because EPL insurers like Twin City *do* knowingly and intentionally cover things that might otherwise be considered moral hazards. For example, this policy covers oral agreements and punitive damages under some statutes.[12]

### C.    Twin City arguments that would eviscerate oral agreement coverage

> This court is bound to read all parts of a contract together to ascertain the agreement of the parties. Moreover, each part of the contract should be given effect.

> — Justice John Cornyn,
> *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994)

### 1.    moral hazard

Twin City sold a policy that expressly covers breach of oral agreements.[13] It does not contend or argue that Texas law prohibits the insurance coverage it sold — coverage for breaching oral agreements.[14] So, there is no moral hazard to address. The mere existence of the possibility that moral hazard may exist somewhere in the ether has no bearing on interpretation or application of the exclusions at issue here.

---

[11] *Compare* Carpenter Brief [ECF No. 56], pp. 18-19 (PageID 3562-3563) *with* Twin City Brief [ECF No. 64] (not addressing this issue).

[12] Carpenter Appendix [ECF No. 57], p. 86 (PageID 3669) (oral agreements), p. 87 (PageID 3670) (certain punitive damages).

[13] *Id*. at 86 (PageID 3669).

[14] *See* Twin City Brief [ECF No. 64], pp. 19-20 (PageID 5174-5175), pp. 29-30 (PageID 5184-5185).

Treating as a moral hazard express coverage for breach of an oral agreement would eviscerate that express coverage. Twin City knew what it was doing. It excluded from indemnity, but not defense, failure to comply with *written* agreements.[15] It excluded overtime and all Fair Labor Standards Act claims other than retaliation.[16] But it expressly covered breach of an oral agreement[17] and did not exclude oral agreement claims under either (1) exclusions from both defense and indemnity or (2) exclusions from indemnity but not defense.[18]

## 2.    *back pay* as only applicable to discrimination and wrongful termination claims

Under Twin City's proposed interpretation of *back pay*, a covered breach of an oral agreement would cover nothing. The policy would not cover *salaries, wages, or bonuses*. Because, under Twin City's theory, *back pay awards* are — by some unwritten definition — only for wrongful termination and employment discrimination claims. Never breach of oral employment agreements. The policy already excludes employee benefits that are not salaries, wages, or bonuses.[19] So, the expressly promised indemnity for breach of an oral employment agreement would be empty.

---

[15] Carpenter Appendix [ECF No. 57], p. 89 at (C)(4) (PageID 3672).

[16] *Id*. at 89 at (B)(4) (PageID 3672).

[17] *Id*. at 86 (PageID 3669).

[18] *Id*. at 88-89 (PageID 3671-3672) (Parts III(A)-(B) identify claims excluded from defense and indemnity; Part III(C) identifies claims excluded from indemnity but not defense).

[19] *Id*. at 89 (PageID 3672) (excluding loss "for Benefits, provided that this exclusion shall not apply to any Employment Practices Claim for wrongful termination, dismissal or discharge of employment"); p. 85 (PageID 3668) (defining "benefits" as "any form of compensation other than salaries, wages, bonuses, or Stock Benefits"); p. 87 (PageID 3670) (excluding stock benefits from covered loss).

Twin City knew how to use discrimination or wrongful termination claims as limiting language. It did so with another exclusion.[20] It did not do so with respect to the undefined phrase *back pay*. And Texas law governing interpretation of policies, referenced above, forbids writing-in any of this now.

What a *back pay award* can and cannot remedy does not change what *back pay* means. Any more than whether a mop can clean up milk or water — or is more often used to clean up one or the other — changes it from being a mop. A back pay award can remedy failure to comply with an oral agreement, discrimination, and retaliation. And Twin City does not address the authority pointing out that anti-discrimination back pay remedies mirror a "common law suit for back wages for breach of contract."[21]

## D.    Selective reliance on *disputed* trial facts contrary to jury *findings*

Twin City selectively cites disputed facts from the transcript of an 8-day jury trial. It ignores the facts *found* by the jury — a jury that was presented with the disputed trial facts that Twin City cites. For example, the word *stay* appears 300 times in the transcript and exhibit excerpts included in Carpenter's Appendix.[22] And contemporaneous documentation in trial exhibit 52 refers to "stay

---

[20] Carpenter Appendix [ECF No. 57], p. 89 (PageID 3672) (excluding loss for any claim "for Benefits, provided that this exclusion shall not apply to any Employment Practices Claim for wrongful termination, dismissal or discharge of employment").

[21] *Compare* Carpenter Brief [ECF No. 56], pp. 27-28 (PageID 3571-3572) *with* Twin City Brief [ECF No. 64] (not addressing legal authority or common law claims for back wages for breach of contract).

[22] Carpenter Appendix [ECF No. 57-1], pp. 367-1552 (PageID 3950-5135).

and pay incentives."[23] Twin City chooses other portions of the trial record. But the jury decided in favor of Carpenter — an agreement to stay as long as needed to help make the asset sale happen, breach of that agreement by the insured-defendants, and damages.[24]

**E.    Erroneous claim of no additional work and reliance on *quantum meruit* finding**

Twin City's claim that Carpenter performed "no additional work"[25] is untrue and a red her-ring. The jury found that Carpenter stayed on *to help make the asset sale happen.*[26] As the Texas Supreme Court explained, "the employee's one consideration, rendition of services, supports all of the employer's promises, to pay the salary and to pay the bonus."[27] The bonus in that case was tied to staying through the time of sale or merger.[28] What Twin City cites here is a *quantum meruit* jury question that does not apply in the face of an agreement covering the services, and the jury found an agreement covering the services.[29]

---

[23] Carpenter Appendix [ECF No. 57-1], p. 1551 (PageID 5134).

[24] *See* Carpenter Brief [ECF No. 56], pp. 13-15 (PageID 3557-3559).

[25] Twin City Brief [ECF No. 64], p. 25 (PageID 5180).

[26] *See* Carpenter Brief [ECF No. 56], pp. 13-14 (PageID 3557-3558).

[27] *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 304 (Tex. 2009).

[28] *Id*. at 300.

[29] *See* State Bar of Tex. Committee on Pattern Jury Charges, *Texas Pattern Jury Charges — Business, Consumer, Insurance, Employment* (2022) at PJC 101.42 (quantum meruit question) & cmt. ("If a valid express contract covering the services rendered or materials furnished exists, recovery on quantum meruit generally is not allowed under Texas law.").

**F.    Objections to unsupported statements, labeling, and spin**

Carpenter objects to statements, labeling, and spin that either (1) lack citations to the record, (2) are unsupported by the record. Here are examples.

Twin City says: "Jeffrey Carpenter sued [its] insured for breach of an oral agreement to pay him a severance package upon the termination of his employment."[30] That statement is not accurate. The pleaded claim for stay compensation never mentions severance, any severance package, or any payment triggered due to termination of employment.[31] The pleaded claim speaks of staying to help effectuate a potential asset sale and a promised sales proceeds payment as the incentive to do that.[32]

Twin City says it "reserved its right to deny indemnity coverage because the Policy does not cover … severance payments."[33] That statement is not accurate. The reservation of rights letter does not mention severance or the severance exclusion.[34] Twin City raised the severance exclusion for the first time during this litigation.

---

[30] Twin City Brief [ECF No. 64], p. 1 (PageID 5156).

[31] *See* Carpenter App. [ECF No. 57], pp. 136-142 (PageID 3719-3725) at highlighted text (background) & pp. 146-149 (PageID 3729-3732) at highlighted text (second claim for relief — oral agreement for sales proceeds payment) & p. 147 (PageID 3730) (describing need for Carpenter to "stay on and help make the asset sale happen" and "stay on as long as needed to help make the asset sale happen"). *See also* Carpenter App. [ECF No. 57-1], pp. 1554-1555 at ¶ 8(1) (declaration showing that second amended petition just cited was operative petition at time of *Stowers* offer).

[32] *See supra* note 31.

[33] Twin City Brief [ECF No. 64], p. 6 (PageID 5161).

[34] Twin City App. [ECF No. 65], pp. 108-113 (PageID 5297-5302).

Twin City claims (1) its insured could have pursued claims against it if its insured believed there was policy coverage and (2) its insured has never disputed that the policy does not cover payroll or severance obligations.[35] That claim is not accurate and lacks any record citation. Twin City knows that (1) all of its insureds demanded that it accept the *Stowers* offer — so indicating a belief in coverage, (2) its insureds pursued policy coverage through coverage counsel Blake Evans, and (3) it raised the severance exclusion for the first time in this lawsuit — *after* claims against Twin City were turned over to Carpenter.

---

[35] *See* Twin City Brief, p. 9 (Page ID 5164).

Respectfully submitted,


*/s/ Amy Gibson*

Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Jeff Carpenter*

CERTIFICATE OF SERVICE

The undersigned certifies that, on November 19, 2024, she filed the *Reply Brief Supporting Plaintiff Jeff Carpenter's Motion for Summary Judgment* with the United States District Court for the Northern District of Texas through the CM/ECF system, such that defendant should be served with a copy of the filed document as follows:

**VIA CM/ECF SYSTEM**

Ms. Christine Kirchner
c.kirchner@chamberlainlaw.com
Mr. Steven J. Knight
steven.knight@chamberlainlaw.com
Mr. Chris M. Lemons
chris.lemons@chamberlainlaw.com

Chamberlain Hrdlicka, White, Williams & Aughtry
1200 Smith Street #1400
Houston, Texas 77002

*Attorneys for Twin City Fire Insurance Company*

Mr. Michael W. Johnston
johnston@johnstonlegalgroup.com

Johnston Legal Group PC
1616 Wabash Avenue
Fort Worth, Texas 76107-6598

*Local Counsel for Twin City Fire Insurance Company*

*/s/ Amy Gibson*

_____
Amy E. Gibson