IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JEFFREY W. CARPENTER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:23-CV-00769-N |
| § | |
| TWIN CITY FIRE INSURANCE CO., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses plaintiff Jeffrey W. Carpenter's motion for summary judgment [55]. Because the Court concludes that Carpenter's claim is within the scope of coverage under the applicable insurance policy, the Court grant's Carpenter's motion for summary judgment.

### I. ORIGINS OF THE MOTION

This is a *Stowers* case.[1] In a previous case, Carpenter prevailed at trial and secured a judgment against his employer based on breach of a "pay to stay" agreement. *See* Jury Verdict, Pl.'s Appx. at 324–26 [57]; Pl.'s Br. 14 [56]. Defendant Twin City Fire Insurance Co. ("Twin City") sold Carpenter's employer an employment practices insurance policy that was in effect at the time Carpenter filed the underlying lawsuit. *See* Pl.'s Appx. 64,

---

[1] A *Stowers* claim arises when an insurer violates its duty to settle third-party claims against its insureds when it would be reasonably prudent to accept the settlement. *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021). The duty was first recognized in *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

MEMORANDUM OPINION AND ORDER – PAGE 1

67, 254 [57]; Def.'s Resp. Br. 1–2 [64]. During the underlying case, Carpenter offered to settle his claim within the policy limits, but Twin City declined the settlement offer. Stipulation 2–3 [54]. At trial, the jury found the employer breached its agreement with Carpenter and awarded him damages. Jury Verdict, Pl.'s Appx. at 326–28. The resulting judgment exceeded the limits of the insurance policy. *See id.*; Stipulation 2–3. The court in that proceeding then assigned the employer's *Stowers* claim to Carpenter, who initiated this case based on that claim. *See* Pl.'s Appx. 26–28.

This Court previously denied Twin City's motion for summary judgment, finding that Carpenter's interpretation of the policy was reasonable. Mem. Op. & Order, Mar. 4, 2024 [51]. Following that order, Twin City admitted to every element of *Stowers* liability except for one: whether liability for the underlying judgment is within the scope of the insurance policy. Stipulation 2–3. Carpenter now moves for summary judgment on this sole remaining element.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d

521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS CARPENTER'S MOTION FOR SUMMARY JUDGMENT

To prevail on a motion for summary judgment, Carpenter, as the movant, must show that no genuine issue of material fact exists, and that the undisputed facts entitle him to judgment as a matter of law. The Court finds that Carpenter has shown he is entitled to judgment as a matter of law on the sole remaining issue for determining liability — scope of insurance coverage. Accordingly, the Court grants Carpenter's motion for summary judgment.

Under Texas law, a court must adopt the insured's construction of an ambiguous policy provision, "as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent." *Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.3d 239, 242 (5th Cir 1998) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). Exclusions from coverage in a policy "are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008) (citing *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 458 (Tex. App. — Houston [14th Dist.] 2008, pet. denied)).

Here, the parties dispute the interpretation of two provisions in the insurance policy. First, the policy excludes from coverage "employment termination severance payments." Pl.'s Appx. 89. Second, the policy excludes from coverage payments for

MEMORANDUM OPINION AND ORDER – PAGE 4

"salaries, wages, or bonuses, except as a component of a front or back pay award." *Id.* at 87. Carpenter argues that these exceptions do not apply, and that therefore the underlying claim is within the scope of coverage. Pl.'s Br. 26, 33. The Court takes each argument in turn.

### A. Carpenter's Interpretation of "Severance" is Reasonable

First, the Court sees no reason to depart from its previous determination that the policy term "employment termination severance agreement" is ambiguous, and that Carpenter's interpretation is reasonable and therefore must be adopted by the Court. The policy states that "[o]ther than Defense Costs, the Insurer shall not pay Loss for any Claim . . . for employment termination severance payments." Pl.'s Appx. 89. This could be read, as Twin City proposes, to exclude any payment paid out to an employee on termination of employment, usually as a reward or incentive for length of service. *See* Def.'s Resp. Br. 13 [64]. However, it could also reasonably be read as Carpenter proposes — to exclude only payments given in exchange for termination of employment, usually related to a waiver of claims and with the end of employment being the key condition for receiving the funds. *See* Pl.'s Br. 33–35. The use of the phrase "employment termination" in front of "severance payments" further demonstrates the reasonableness of Carpenter's interpretation. It is reasonable for the insured to read this phrase to mean that a severance payment is something that comes as the result of employment termination. Under this definition, the end of the employment, and not any other condition, is what prompts a severance payment. This is a reasonable reading of this exclusion because nothing in the same section or any adjoining section otherwise limits or defines "severance" in a way that

MEMORANDUM OPINION AND ORDER – PAGE 5

makes this reading unreasonable or illogical. Thus, because there are multiple reasonable interpretations of this provision, the Court must adopt the insured's interpretation and apply it to the facts of this case.

Here, Carpenter has established that the agreement in his case was not an "employment termination severance payment" under the policy, entitling him to judgment as a matter of law on this point. The agreement between Carpenter and his employer required Carpenter to stay with the company and assist in the transition and sale. *See* Jury Verdict, Pl.'s Appx. at 324 (finding employer agreed to pay Carpenter "if [he] would stay as long as needed on [sic] to help make the asset sale happen"). Because there is something other than termination given in exchange for the money offered to Carpenter, the payment does not meet Carpenter's reasonable definition of "employment termination severance payment." The mere fact that the sale would terminate his employment was not enough on its own to entitle Carpenter to the agreed-upon payment. Additionally, Carpenter put forth evidence that it was not definitively known that his position would be terminated after the sale until "some point while the sale was pending." Dallas Ct. App. Opinion, Pl.'s Appx. 357. This further demonstrates that the agreement was not an "employment termination severance payment" because, at the time Carpenter and his employer reached an agreement about the payment he was to receive, the parties did not yet know that Carpenter would be terminated. Finally, although other courts have called similar agreements "severance," these characterizations in other cases are not determinative of the meaning of the specific policy and agreement at issue here. *See, e.g., Stout v. Smithfield Bioenergy, LLC*, 2010 WL

5487843 (N.D. Tex. 2010); *Goldman v. White Rose Distributing Co.*, 936 S.W.2d 393 (Tex. App. — Fort Worth 1996, writ granted w.r.m.).

Applying Carpenter's reasonable interpretation of the ambiguous "employment termination severance payment" provision, the Court concludes that as a matter of law, Carpenter's claim is not for an "employment termination severance payment" and not excluded from coverage on that basis.

### B. Carpenter's Interpretation of "Back Pay" is Reasonable

Next, the Court sees no reason to depart from its previous determination that the policy's term excluding payments for salary or bonuses "except as a component of a . . . back pay award" is ambiguous, and that Carpenter's interpretation is reasonable and must therefore be adopted by the Court. The policy pays for "Loss" incurred by the insureds. Pl.'s Appx. 85. But the policy definition of "Loss" states that "Loss shall not include . . . salaries, wages, or bonuses, except as a component of a front or back pay award." *Id.* at 87. The policy does not define front or back pay. In this context, "back pay" could be interpreted as Twin City proposes — limited only to the specific equitable remedy available in certain wrongful-termination or employment-discrimination cases. *See* Def.'s Resp. Br. 21. But it could also be reasonably interpreted as Carpenter proposes — owed but unpaid compensation for past performance. *See* Pl.'s Br. 27. Indeed, Twin City knew how to use policy language that would limit a provision to wrongful termination situations; it used similar language for a different policy exclusion. *See* Pl.'s Appx. 89 (excluding payments for benefits, "provided that this exclusion shall not apply to any Employment Practices Claim for wrongful termination, dismissal or discharge of employment."). Thus, because

MEMORANDUM OPINION AND ORDER – PAGE 7

there are multiple reasonable interpretations of this provision, the Court must adopt the insured's interpretation and apply it to the facts of this case.

Here, Carpenter has established that he rendered a distinct past performance and was not paid for it. Carpenter can show that he engaged in a distinct past performance by staying at the company until the sale occurred, to help with the transition. *See* Jury Verdict, Pl.'s Appx. at 324 (finding employer agreed to pay Carpenter "if [he] would stay as long as needed on to help make the asset sale happen"); Dallas Ct. App. Opinion, Pl.'s Appx. at 359–360 (noting Carpenter was told he "would be involved in the due diligence and communication between the teams once a buyer was selected"). Carpenter can also show that he was not compensated as promised for staying until the sale. *See* Jury Verdict, Pl.'s Appx. at 326 (finding employer failed to comply with agreement). Twin City has not and cannot rebut these facts. Accordingly, Carpenter has shown that, as a matter of law, the payment he is owed is back pay under the policy.

## CONCLUSION

Whether Carpenter's reading is the reading intended or understood by Twin City in drafting this policy and whether this reading is the "most reasonable" possible reading are irrelevant for the purpose of analyzing this insurance policy. Under Texas law, Carpenter's reasonable interpretation is the correct interpretation and must be adopted by the Court. And under Carpenter's reading, the undisputed facts show that his claimed payment is within the scope of coverage. The Court accordingly grants Carpenter's motion for summary judgment. In accordance with their stipulation, the parties are ordered to submit a joint proposed final judgment within twenty-one (21) days of this Order. If the parties

MEMORANDUM OPINION AND ORDER – PAGE 8

cannot agree on the form of a final judgment, they should each submit a proposal by this same deadline.

Signed April 22, 2025.

                                                                                                 _____
                                                                                                 David C. Godbey
                                                                     Chief United States District Judge